# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

LUMINATI NETWORKS LTD.

       Plaintiff,

    v.

BI SCIENCE INC.

       Defendant.

Case No.  2:18-CV-483-JRG

JURY TRIAL DEMANDED

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Fed. R. Civ. Pro. 15(a)(1)(B), Plaintiff, Luminati Networks Ltd. ("Luminati") amends the Complaint bringing this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against BI Science (2009) Ltd., also known as BI Science Inc. ("BI Science" or "Defendant"):

## THE PARTIES

1.     Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.     Upon information and belief, Defendant BI Science is an Israeli corporation headquartered at 6 Hanechoshet St., Tel Aviv, 6971070, ISRAEL.

## JURISDICTION AND VENUE

3.     This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*

4.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over BI Science because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2).  On information and belief, BI Science transacts substantial business in the State of Texas, directly or through agents, including: (i) at least some of the infringement alleged herein in the United States occurring in Texas, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, on information and belief, BI Science utilizes software, which is, *inter alia*, the subject of the infringement alleged herein, that routes internet communications through user devices having IP addresses serving as residential proxies located in the State of Texas, as well as this Judicial District, permitting BI Science to include user devices in this Judicial District as part of BI Science's residential proxy service.  In addition, on information and belief, by selling the same accused infringing service in competition with Plaintiff's residential proxy service in the State of Texas and the United States to Plaintiff's customers using Plaintiff's former salespeople and Plaintiff's trade secrets, BI Science has committed acts in the State of Texas and the United States that have harmed Plaintiff in furtherance of Plaintiff's non-patent claims.  This Court has at least specific personal jurisdiction and/or pendent personal jurisdiction over BI Science for all asserted claims.

6.     Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, BI Science is a foreign entity.

## FACTUAL ALLEGATIONS

7.     Derry Shribman and Ofer Vilenski are the named inventors of a number of patents, including U.S. Patent Nos. 9,241,044 ("'044 Patent") and divisional 9,742,866 ("'866 Patent") (collectively the "Asserted Patents").

8.     The Asserted Patents are directed toward methods for fetching content over the Internet through the use of intermediary tunneling devices. Luminati identifies its patents on its website at https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers.

9.     The Asserted Patents were assigned to Hola Networks Ltd. ("Hola"). Hola has subsequently changed its name to Luminati Ltd., before changing its name to Luminati Networks Ltd., the Plaintiff in this action.

10.     Luminati, formerly known as Hola, provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network.  Each participating device allows the network to utilize a small fraction of that device's idle time for the network.  Luminati utilizes this network to provide proxy-based services to businesses.

11.     Since 2014, Luminati has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents.  Luminati permits its business customers to utilize its residential proxy network to access data over the Internet using residential IP addresses from various localities as required by the customers.  These residential IP addresses provide businesses with a number of advantages.  For example, Luminati's customers

may use this network to anonymously compare prices leading to more transparency and lower prices for consumers.  Luminati's customer's may also use residential proxy addresses to test their web sites from any city in the world.  Prior to and separate from the technology at issue in this case, Hola provided a Virtual Private Network ("VPN") service called HolaVPN.

12.    Luminati, formerly known as Hola, has a number of investor shareholders.  One of these investors, iAngels Crowd Ltd. In Trust ("iAngels"), executed an Agreement to be Bound by an April 15, 2015 Amended and Restated shareholders Rights Agreement on July 14, 2015.  This Agreement to be Bound was signed by Shelly Hod Moyal, founding partner of iAngels.  As the representative for the shareholder iAngels, Ms. Moyal had access to Luminati confidential information and know-how.  Upon information and belief, Ms. Moyal was aware of Luminati's intellectual property (including trade secrets and know-how), including the pending patent applications that resulted in the Asserted Patents.

13.    Upon information and belief, as a condition for iAngels to invest in Luminati, Ms. Moyal's husband, Kfir Moyal, conducted technical due diligence at Hola on behalf of iAngels in May 2015.  Upon information and belief, in this role Mr. Moyal also had access to Luminati's confidential information as well Luminati's intellectual property (including trade secrets and know-how), including the then pending patent applications that resulted in the Asserted Patents and financial records regarding Luminati's residential proxy service.  Upon information and belief, Mr. and Ms. Moyal knew of the pending patent applications that resulted in the Asserted Patents and were aware of Luminati's commercial success resulting from its residential proxy network services.  Upon information and belief, Mr. Moyal did not disclose that BI Science had a residential proxy service or intended to offer a residential proxy service prior to or during the performance of due diligence on behalf of iAngels.

14.     Upon information and belief, Kfir Moyal and Assaf Toval, founded BI Science in 2009.  Upon information and belief, as early as October 14, 2014 Mr. Moyal approached Luminati as a purported customer seeking information regarding Luminati's residential proxy service.  Upon information and belief, BI Science subsequently tested Luminati's residential proxy service as part of a free trial.  Upon information and belief, at some time after Mr. Moyal became aware of the patent applications that resulted in the Asserted Patents and Luminati's commercial success with its residential proxy network services, BI Science decided to provide a residential proxy service. Upon information and belief, BI Science had decided to provide this service as early as May 2017 having estimated that switching to a residential proxy service from a server-based service could dramatically reduce BI Science's ongoing server costs and provide BI Science with new revenue streams from this capability.  Upon information and belief, BI Science introduced its own residential proxy service under the "GeoSurf" brand by July 2017.

15.     Alon Ghelber, Samuel Levy, and Vadim Feldman each entered into a Personal Employment Agreement ("Employment Agreement") with Hola Networks Ltd., now known as Luminati, on December 18, 2014, March 1, 2015, and March 3, 2015 respectively.  The terms of the Employment Agreement include a confidentiality provision obligating the employee to keep in confidence Luminati's proprietary information.  The Employment Agreement also includes a non-compete clause prohibiting the employee from accepting employment with a company offering competing services within twelve months of the termination of employment with Luminati.

16.     Luminati terminated employment of Mr. Ghelber and Mr. Feldman on February 2, 2017 and February 20, 2017 respectively.  Mr. Levy terminated his employment with Luminati on February 8, 2017.  These employees had access to Luminati confidential know-how and trade

secrets, including client lists, client records, client data usage, accounts receivable documents, business plans, marketing research, technical documents related to the architecture of Luminati's residential proxy network, and related work product. Luminati's residential proxy service is intended for use in interstate or foreign commerce. Upon information and belief, BI Science subsequently hired these three individuals in 2017 within months of their termination by Luminati. Upon information and belief, BI Science hired Mr. Levy in May 2017 followed by Mr. Feldman in June 2017, which was approximately on or after BI Science decided to offer the residential proxy service. Upon information and belief, BI Science also hired Mr. Ghelber in 2017. Upon information and belief, BI Science hired these former Luminati employees despite the non-compete clause of the Employment Agreements or was willfully blind to these former Luminati employees being subject to such a provision. Upon information and belief, BI Science hired these former Luminati employees knowing them to be former Luminati employees with knowledge of Luminati's trade secrets including confidential information related to Luminati's residential proxy service. Upon information and belief, BI Science hired these former Luminati salespeople for the purposes of selling BI Science's competing "Geosurf" residential proxy service, including in Texas and the United States. Upon information and belief, the former Luminati employees have touted their experience with Luminati as part of their approach to Luminati clients offering the "GeoSurf" service as an alternative in competition with Luminati's residential proxy service. Upon information and belief, Luminati's former employees employed Luminati's confidential trade secrets on behalf of BI Science in furtherance of the competing "Geosurf" residential proxy service. Upon information and belief, Luminati lost Texas and United States customers for its residential proxy service and associated revenues to BI Science's competing Geosurf service.

17.    By July 2017, Luminati learned that BI Science had hired its three former employees and started offering a residential proxy service through Geosurf.  On July 12, 2017, Mr. Vilenski sent an email to Ms. Moyal requesting that Ms. Moyal collect and provide information about Mr. Moyal's competing business, including its employment of Luminati's three former sales people.  Mr. Vilenski specifically noted that Mr. Moyal gained detailed information from Mr. Vilenski as an advisor to Ms. Moyal, without Ms. Moyal disclosing that Mr. Moyal is involved in or is running a competing business.  On August 14, 2017, Mr. Vilenski sent a follow-up email to Ms. Moyal demanding that Mr. Moyal stop providing residential proxy services through GeoSurf.

18.    On February 8, 2018, Or Lenchner, then VP of Luminati and currently Luminati CEO, sent a letter to Mr. Moyal informing Mr. Moyal that Luminati had become aware that BI Science was developing, using, offering for sale or selling products and services in the field of VPN services based on residential IP peers, such as the GeoSurf service.  Mr. Lenchner notified BI Science that Luminati owns intellectual property within this field including specifically the '866 Patent attached to that letter in addition to other related patents and patent applications.  Mr. Lenchner invited BI Science to enter into licensing discussions to cover past and future use of this intellectual property by BI Science.  BI Science responded on March 8, 2018 in a letter from BI Science's outside counsel Asaf Biger.

19.    On April 16, 2018, Mr. Toval sent an email to Mr. Lenchner requesting a meeting to discuss potential licensing of Luminati's software patents, that resulted in a meeting on April 30, 2018.   On May 13, 2018, Mr. Lenchner sent a follow-up email with an attached request for information to promote licensing discussions.  Mr. Toval sent a response on May 31, 2018 indicating that BI Science was unable to provide such information.  Following additional efforts by Mr. Lenchner to propose a framework for a licensing agreement, Mr. Toval sent an email

response on June 18, 2018 agreeing to review the framework and provide feedback, but BI Science has not done so.

20.     Since at least the filing of the original Complaint on November 8, 2018, BI Science has made false and/or misleading statements regarding Luminati and Luminati's residential proxy service in advertising directed toward Luminati's customers.  For example, on November 19, 2018, BI Science published a blog post on its website titled "Six Mistakes to Avoid When You Buy a Proxy" by Mr. Ghelber, Luminati's former employee, located on BI Science's website at https://www.geosurf.com/blog/six-mistakes-to-avoid-when-you-buy-a-proxy/.   Exhibit C.   The blog post states that "[s]ome proxy providers look great and fancy until you try to integrate them. Some-such as Luminati-are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution."  *id*. at 3.  This statement is false.  Use of Luminati's residential proxy service does not require installation of Luminati's proxy manager. Upon information and belief, Mr. Ghelber made this statement despite knowing it to be false.  This false statement has been repeated in other blog posts including the December 2, 2018 blog post titled "Your Ultimate Guide to Data Mining and Scraping Using a Proxy" by Pavel Gomon at https://www.geosurf.com/blog/ultimate-guide-data-mining-scraping-with-proxy/.  Exhibit D at 7. Upon information and belief, BI Science has specifically targeted customers searching for Luminati in its advertising campaign for Geosurf, which directs prospective customers of residential proxy services to BI Science's website.

## *"Is the proxy going to be difficult to integrate?"*

Well, that depends on which proxy service you purchase.

Some proxy providers look great and fancy until you try to integrate them. Some—such as Luminati—are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution. Other proxy services require you to whitelist your IP addresses; but if you are using shared servers like Amazon Web Services (AWS) or any Software as a Service (SaaS) solution, you cannot whitelist the IPs, because they're probably in somebody else's whitelist.

In short, stay away from these proxies.

Instead, go for easy-integration proxies that support whatever your needs may be. GeoSurf, for instance, takes less than 5 minutes to integrate and supports the IP:port method with IP whitelist, the username-Password solution, and session persistence with an API.

https://www.geosurf.com/blog/ultimate-guide-data-mining-scraping-with-proxy/



21.    Upon information and belief, BI Science offers large-scale data harvesting products and services under the GeoSurf brand. https://www.GeoSurf.com/products/residential-ips/. Upon information and belief, this includes a residential proxy network with millions of residential IP

addresses from more than 192 countries. *id.* Upon information and belief, the IP addresses of these residential proxies are assigned by a standard Internet Service Provider (ISP) to a homeowner or other residential or mobile user. *id.* Upon information and belief, this residential proxy network is used to access content over the Internet, wherein that content may be divided into portions, each of which includes part of the content and its own content identifier. BI Science touts this service as permitting its customers to harvest data over the web via millions of "clean residential IPs." BI Science also advertises this service as permitting its customers to select the proxy devices based on their location in specific states and cities. BI Science also specifically touts the ability to select proxies located within 10 specific cities in Texas. Exhibit E at 2-3.



## USING MILLIONS OF RESIDENTIAL IPS WILL NEVER GET YOU BLOCKED

The World's most advanced solution for data harvesting, now offers residential IPs! Our Residential IPs are based on a P2P Network, which enables our clients the freedom to harvest the web by harnessing a pool of over 2 Million unblocked IPs.

Our inbuilt IP rotation API is tailor made for high scope & high-performance Enterprise level activities. This unique approach enables you to send unlimited parallel requests through millions of 100% verified working IPs; this means that you will never get blocked again.

https://www.GeoSurf.com/products/residential-ips/



### UNLIMITED CLEAN RESIDENTIAL IPS

Over 2Million clean residential IPs. Our IPs are never detected as proxies. This combination of proxy masking & residential IPs gives us the ability to stay undetectable.

https://www.GeoSurf.com/products/residential-ips/

**✚ ❷ What is GeoSurf™?**

GeoSurf™ is a straight-forward a premium proxy service which enables users to send requests via 3 networks:

• GeoSurf™ Residential IPs proxy network with more than 2 Million Residential IPs in every country and every city in the world.

• GeoSurf™ Premium Static proxy network with servers in 130+ global locations and 30+ DMA's.

• GeoSurf™ Static proxy network with more than 10K static IPs in 20+ global locations

GeoSurf™ products enable users to surf and view geo-targeted local content from other areas. It also emulates many mobile devices. The service is available as a browser toolbar, VPN client, Direct Connect API, Residential IPs API, and smart phone connection.

https://www.GeoSurf.com/resources/faq/#ac_15174_collapse1

**➖ ⚠ State Gateway Overview**

This Residential IP Gateway that allows you to choose State's IPs. This service is available for all 50 US states and Washington DC.

**How it works?**

• Authentication – The authentication is done in the same way as all other gateways, so, if your IP is white-listed in our system you can start using the State gateway immediately

• State selection – The State gateway allows you to choose from all states using "loc" proxy header.

• Session persistence – The state gateway allows you to maintain session persistence and open multiple session using the "X-Session" proxy header.

• Limits – Like all other GSR services you have unlimited number of requests/sessions or connections and unlimited concurrent connections.

• Gateway domain – state.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse4

**➖ 🔍 Can I select an IP per city?**

Yes, you can select an IP from all major US cities by using the City gateway. Check out GeoSurf Residential IPs Integration Guide for more information and request example. City IP is a premium feature, the city gateway's usage comes with a different pricing compared with your existing plan. Contact your customer success representative for additional information.

https://www.GeoSurf.com/resources/faq/#ac_15216_collapse4

> **— A  City Gateway overview**
>
> This service is currently available for all major US cities and we will continue to add more and more
> cities in the near future.
>
> **How it works?**
> •  Authentication – The authentication is done the same way as all other gateways, If your IP is
> whitelisted in our system you can start using the City gateway immediately.
> •  City selection – The city gateway allows you to choose from 100 US cities, each city has its own port
> range.
> •  Limits – Like all other GSR services you are unlimited with number of requests/sessions or
> connections, concurrent connections are limited to 20 per machine IP.
> •  Gateway domain – us-city1.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse1

Upon information and belief, some of these user devices serving as residential proxies (and associated with respective IP addresses) are located in the Eastern District of Texas.  Upon information and belief, on a given day a hundred or more user devices belong to residents in the Eastern District of Texas are available for use as proxy devices for the Geosurf service.  In addition to the residential proxies, upon information and belief, BI Science has customers in Texas who use its Geosurf residential service.

22.    Upon information and belief, the residential proxy network used as part of the GeoSurf service is based upon numerous user devices, each of which is a client device identifiable over the Internet by an IP address.  Upon information and belief, a server ("First Server") is operated by BI Science and/or a third party having a contractual obligation to BI Science to implement residential proxy network requests sent by BI Science.  BI Science touts itself as owning all the servers in the GeoSurf network.  However, upon information and belief, BI Science may contract with a third-party, such as Jetstar Media and/or Microleaves Ltd., to implement its GeoSurf residential proxy network.  Upon information and belief, whether BI Science owns the

First Server or contracts with a third-party to operate the First Server, BI Science directs and controls the First Server to implement the GeoSurf residential proxy service.

**— ❓ How secure and private is GeoSurf?**

Our network boasts the highest levels of reliability, availability, and security. Because we own all of the servers on our network and host them in Tier 1 backbone data centers around the world, all of our users experience a totally secure browsing experience. We sign legally binding agreements with our customers to ensure their privacy.

https://www.GeoSurf.com/resources/faq/#ac_15174_collapse5

23.     Upon information and belief, software ("Server Software") is executed that implements the GeoSurf service.  Upon information and belief, BI Science directs and controls the operation of the Server Software to the extent that the Server Software implements the GeoSurf service. For example, upon information and belief, BI Science can direct and control the GeoSurf service to select residential proxy devices located within a specific state or city and can determine how long a given proxy device will be utilized for a given session, which is referred to as sticky residential IPs and session persistence.

**— ⚠ State Gateway Overview**

This Residential IP Gateway that allows you to choose State's IPs. This service is available for all 50 US states and Washington DC.
**How it works?**
• Authentication – The authentication is done in the same way as all other gateways, so, if your IP is white-listed in our system you can start using the State gateway immediately
• State selection – The State gateway allows you to choose from all states using "loc" proxy header.
• Session persistence – The state gateway allows you to maintain session persistence and open multiple session using the "X-Session" proxy header.
• Limits – Like all other GSR services you have unlimited number of requests/sessions or connections and unlimited concurrent connections.
• Gateway domain – state.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse4

**— ⊕ Can I select an IP per city?**

Yes, you can select an IP from all major US cities by using the City gateway. Check out GeoSurf Residential IPs Integration Guide for more information and request example. City IP is a premium feature, the city gateway's usage comes with a different pricing compared with your existing plan. Contact your customer success representative for additional information.

https://www.GeoSurf.com/resources/faq/#ac_15216_collapse4

**— ⚙ Session persistence overview**



The requests are made by {key:value} pairs. The key represents the GateWay and the value represents the actual IP.

In our dashboard you will see all the different configurations for high rotation, 1 minute, 10 minutes and 30 minutes persistent sessions.

The Sticky country  gateways can be found in your dashboard.

**Port ranges (value) are defined based on the following locig:**

10 minutes sticky port values: +0 – + 2000

30 minutes sticky port values: +4001 – + 6000

1 minutes sticky port values: +2001 – + 4000

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15062_collapse1

24.    Upon information and belief, each user device in the residential proxy network sends its respective identifier to the First Server, which stores these identifiers.  Upon information

and belief, to the extent that BI Science has contractual relationship(s) with one or more third parties that provide server services, BI Science directs and/or controls these third-party servers to implement its residential proxy network for the GeoSurf service through the third-party servers and user devices included in the residential proxy network.  Upon information and belief, as part of the GeoSurf service, BI Science provides a device designated as a 'Gateway', which authenticates the user devices of BI Science customers and controls the access and operation of requests and responses through the one or more third-party proxy residential networks directed and controlled by BI Science, and is in continuous communication with the Server Software. Upon information and belief, BI Science's GeoSurf customers directly practice at least claim 81 of the '044 Patent and claim 15 of the '866 Patent by utilizing the BI Science's residential proxy service through their client devices.  BI Science also directly practice these claims by implementing customer requests through its Server Software as part of its Geosurf service.  In addition, upon information and belief, as BI Science knew of the Asserted Patents and had notice that its residential proxy service infringed these patents, but continued to advertise Geosurf's infringing features and enter into contracts with its customers to provide this service, BI Science intended its customers to implement this infringing service.

BROWSER & OS CONFIGURATION



Internet Explorer, Chrome & Edge Browser

Proxy configuration for Chrome, Edge & Internet Explore…

1. Open Windows Explorer.
2. Type in "Internet Properties"
3. Click on "connections" tab.
4. Navigate to "LAN settings"
5. Check the first checkbox under "Proxy server"
6. Click "Advanced"
7. Fill in your proxy address (ex: gw1.geosurf.io) and port (ex: 8020) under HTTP.
8. The "use the same proxy server" checkbox should be checked.
9. Click OK and Apply to save your proxy settings.
10. Go to ipinfo.io and verify the IP you got is from the desired country

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15054_collapse1

Do you support authentication by IP?

Yes, IP address of every device / Machine which uses Geosurf should be authorized. The IP can be easily managed from our dashboard, click here to login to your dashboard.

https://www.GeoSurf.com/resources/faq/#ac_15217_collapse4



https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6

**—  ❶  Are you getting 408 timeouts?**

If a significant portion of your requests is timing out ( 408 response code), there are a few reasons this could happen:

1.  The network connection between you and our gateway or between the gateway and the IP is not stable.
    1.  Try using another gateway (ex. gw2.geosurf.io) and see if it fixes the issue.
    2.  Try switching an IP, simply end the session and make another request through our gateway (IP will rotate automatically)
2.  The request you are making takes a long time to load.
    1.  Increase the request timeout using a within the request header.
    2.  Switch an IP.
3.  The residential IPs has been blocked by the remote site.
    1.  Although this rarely happens, switching an IP will resolve the issue.

If only a small percentage of your requests are getting a 408 response code, the optimal solution is to resend your requests with a short delay of at least 3 seconds in-between each request.

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse3

25.     Upon information and belief, BI Science has developed or is developing the software to be used in the user devices as part of the GeoSurf service by integration with different third-party software applications, including at least GSA search engine ranker, Foxy Proxy, AIO Sneakers Bot, EasyCopy sneakers bot, NikeSlayer, BretterNikeBot (BNB), Supreme Bot, Another Nike Bot, Sneaker Bot 2.0, StubTabs, ProxyTabs, and Insomniac Browser.

3RD PARTY SOFTWARE INTEGRATION

| |
|---|
| ✚  ⚙  Using Geosurf Residential IP proxy with GSA search engine ranker |
| ✚  ⚙  Using Geosurf Geosurf Residential IP proxy with Foxy Proxy |
| ✚  ⚙  Using Geosurf Residential IP proxy with AIO Sneakers Bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with EasyCop sneakers bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with NikeSlayer |
| ✚  ⚙  Using Geosurf Residential IP proxy with BetterNikeBot (BNB) |
| ✚  ⚙  Using Geosurf Residential IP proxy with Supreme Bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with Another Nike Bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with Sneaker Bot 2.0 |
| ✚  ⚙  Using Geosurf Residential Proxy Network with StubTabs & ProxyTabs |
| ✚  ⚙  Using Geosurf Residential Proxies With Insomniac Browser |

## 3RD PARTY SOFTWARE INTEGRATION

| |
|---|
| ✚  ⚙  Using Geosurf Residential IP proxy with GSA search engine ranker |
| ✚  ⚙  Using Geosurf Geosurf Residential IP proxy with Foxy Proxy |
| ✚  ⚙  Using Geosurf Residential IP proxy with AIO Sneakers Bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with EasyCop sneakers bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with NikeSlayer |
| ✚  ⚙  Using Geosurf Residential IP proxy with BetterNikeBot (BNB) |
| ✚  ⚙  Using Geosurf Residential IP proxy with Supreme Bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with Another Nike Bot |
| ✚  ⚙  Using Geosurf Residential IP proxy with Sneaker Bot 2.0 |
| ✚  ⚙  Using Geosurf Residential Proxy Network with StubTabs & ProxyTabs |

26.     https://www.geosurf.com/resources/residential-ips-integration-guide/Upon

information and belief, a GeoSurf customer may utilize the GeoSurf residential proxy network by

sending a request ("First Request") from the GeoSurf customer's device through the GeoSurf Gateway, either of which could serve as the first device ("First Device"), to the above First Server, which responds by sending the IP address ("Second Identifier") corresponding to one of a group of client devices in the proxy network, any one of which may serve as a proxy device ("Second Device"), back to the First Device.

---

**—  ⚙  US Residential 1 minute session persistence CURL example**

To use the USA residential session persistence, simply make a request to the USA sticky ips gateway (us-s1).
The port range is 10231 – 12231, each port will assign you with a new Sticky IP which can be accessed for 1 minutes.
**Example requests for a sticky residential IP in the United States:**
Curl -v –proxy us-s1.geosurf.io:10231"http://www.ipinfo.io"
Curl -v –proxy us-s1.geosurf.io:10232"http://www.ipinfo.io"
Curl -v –proxy us-s1.geosurf.io:10233"http://www.ipinfo.io"
…
Curl -v –proxy us-s1.geosurf.io:12230"http://www.ipinfo.io"
The process reloads every 30 min and assigns new IPs, even though the reload is very fast (less than 2 seconds) it is recommended to ping the gateway every 5 minutes for availability. Don't forget to whitelist your machine IP, see instruction.

---

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15062_collapse2

27.     Upon information and belief, having received the Second Identifier, the First Device may then send a request ("Second Request") to the Second Device for specific Internet data ("First Content") identified by an identifier ("Content Identifier") from a target server ("Second Server") identified by its own identifier ("Third Identifier"), which is forwarded by the Second Device to the Second Server.  Upon information and belief, the target Second Server responds to the forwarded Second Request by sending the First Content to the Second Device, which is then forwarded back to the First Device.  Upon information and belief, to the extent that the requested content may be divided into portions or slices, the GeoSurf customer's device, which

is a First Device, can construct the content from the plurality of Content Slices.  Upon information

and belief, BI Science advertises the infringing Geosurf service, including the specific use of proxy

devices or proxy IPs with the intent that its customers will implement the Geosurf service to

operate as advertised.



https://vimeo.com/250282014 **(Time: 00:47 sec to 01:20 sec)**



https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6

**☑  When and Where Should I use Sticky IPs?**

When should I use Sticky IPs?



You should use Sticky IPs when you must run sequential requests to the target domain or website in a single session.

Examples: Running requests to several web pages from the same website, Navigating through several web pages using the same session etc.

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15172_collapse1

28.    The use of the residential proxy network permits anonymity to GeoSurf customers, for example for engaging in activities such as web crawling without disclosing the customer's identity to the targeted web sites.

**COUNT I**
(Infringement of the '044 Patent)

29.    Luminati repeats and re-alleges the allegations contained in paragraphs 1-28 of this Complaint as if fully set forth herein.

30.    The '044 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on January 19, 2016, from Application No. 14/468,836 filed on August 26,

2014, claiming priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '044 Patent is attached hereto as Exhibit A.

31.    Each and every claim of the '044 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

32.    Luminati exclusively owns all rights, title, and interest in and to the '044 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

33.    Claim 81 of the '044 Patent recites:

Claim 81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
(a) sending the first identifier to the first server;
(b) sending a first request to the first server;
(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) receiving the first content from the second device.

34.    As described above, upon information and belief, BI Science's proxy residential network used for the GeoSurf service comprises numerous devices each of which is identifiable by its own IP address ("identifier"), which are stored on servers through the execution of Server Software under the control and/or direction of BI Science.  Consequently, BI Science's GeoSurf proxy residential network would comprise at least a First Device and a Second Device with their corresponding First Identifier and Second Identifier and a First Server.

35.    As described, upon information and belief, this network would permit a user to access Internet content ("First Content"), identifiable by a content identifier such as a URL ("First

Content Identifier") from a target server ("Second Server"), identifiable by its own corresponding IP address ("Third Identifier").

36.     As described, upon information and belief, the GeoSurf customer sends a request with its corresponding IP address to the GeoSurf Gateway which forwards the request to the "First Server."  At least the GeoSurf Gateway can serve as a "First Device" with the First Server storing the corresponding IP address ("First Identifier") of that "First Device."

37.     As described above, upon information and belief, a GeoSurf customer can utilize its device to send a request ("First Request") through the GeoSurf Gateway, with at least the Gateway serving as the first device ("First Device"), to the First Server, causing the First Server to respond by sending the Second Identifier back to the First Device.  Upon information and belief, a second request ("Second Request"), comprising a First Content Identifier and a Third Identifier to the Second Device, is then sent from the First Device to the Second Server using the Second Identifier.  Upon information and belief, the Second Server responds by sending the requested First Content to the Second Device, which is forwarded back to the First Device.

38.     Upon information and belief, BI Science has had actual notice of the '044 Patent since at least January 8, 2018, and has known, including by way of communications on and since that date and this lawsuit, that implementation of its GeoSurf residential proxy service would infringe at least claim 81 of the '044 Patent.  Despite this knowledge, BI Science has advertised these features of its GeoSurf residential proxy service and entered into service agreements with its customers with the intent that the customers would implement this service as described above.

39.     BI Science has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by

implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

40.     BI Science has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

41.     As a result of BI Science's infringement of the '044 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from BI Science the damages Luminati sustained as a result of BI Science's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

42.     Luminati has suffered damage because of the infringing activities of BI Science, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless BI Science's infringing activities are preliminarily and permanently enjoined by this Court.

43.     BI Science's infringement of the '044 Patent was, is, and continues to be deliberate and willful because BI Science was and is on notice of the '044 Patent at least as early as January 8, 2018, yet it continued and continues to infringe the '044 Patent.

## COUNT II
### (Infringement of the '866 Patent)

44.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-43 of this Complaint as if fully set forth herein.

45.    The '866 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on August 22, 2017 from Application No. 14/930,894 filed on August 22, 2017, a divisional of Application No. 14/468,836 that issued as the '044 Patent, both of which claim priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '866 Patent is attached hereto as Exhibit B.

46.    Each and every claim of the '866 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

47.    Luminati exclusively owns all rights, title, and interest in and to the '866 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

48.    Claim 15 of the '866 Patent recites:

Claim 15. A method for fetching a content over the Internet from a first server identified in the Internet by a second identifier via a group of multiple devices, each identified in the Internet by an associated group device identifier, the method comprising the step of partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:
(a) selecting a device from the group;
(b) sending over the Internet a first request to the selected device using the group device identifier of the selected device, the first request including the content slice identifier and the second identifier;
(c) in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and wherein the method further comprising the step of constructing the content from the received plurality of content slices, and
wherein each of the devices in the group is a client device.

49.    As described above, upon information and belief, BI Science's GeoSurf proxy residential network comprises numerous devices, each of which is a client device identifiable by its own identifier.  Upon information and belief, BI Science's GeoSurf proxy residential network

permits BI Science's customers to request content from the customer's device through the GeoSurf Gateway, which forwards such requests through a server and proxy residential user device ("Selected Device") to a target server ("First Server"), which is identifiable by its own IP address ("Second Identifier"). The Selected Device is selected from a group of client devices ("Group"), each of which has its own IP address ("Group Device Identifier".  As further described above, this content may be divided into portions ("Content Slices") identifiable by their own identifiers ("Content Slice Identifier").

50.    As described, upon information and belief, the GeoSurf service permits the GeoSurf customer to select a proxy user device from the Group and send a request ("First Request") over the Internet to the Selected Device using the selected device IP address ("Group Device Identifier of the Selected Device").  This First Request includes the Content Slice Identifier and Second Identifier.

51.    As described, upon information and belief, the above Selected Device responds to the First Request by sending the request to the First Server with the Content Slice Identifier.  The First Server responds by sending the requested Content Slice to the Selected Device, which forwards the Content Slice through the GeoSurf Gateway to the device of the GeoSurf customer, which is a client device.  The client device of the GeoSurf customer then constructs the content from the plurality of Content Slices.

52.    BI Science has had actual notice of the '866 Patent since at least January 8, 2018, and has known, including by way of communications on and since that date and this lawsuit, that implementation of its GeoSurf residential proxy service would infringe at least claim 15 of the '866 Patent.  Despite this knowledge, BI Science has advertised these features of its GeoSurf

residential proxy service and entered into service agreements with its customers with the intent that the customers would implement this service as described above.

53. BI Science has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

54. BI Science has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

55. As a result of BI Science's infringement of the '866 Patent, Luminati has suffered and continues to suffer damages. Thus, Luminati is entitled to recover from BI Science the damages Luminati sustained as a result of BI Science's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

56. Luminati has suffered damage because of the infringing activities of BI Science, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless BI Science's infringing activities are preliminarily and permanently enjoined by this Court.

57.     BI Science's infringement of the '866 Patent was, is, and continues to be deliberate and wilfull because BI Science was and is on notice of the '866 Patent at least as early as January 8, 2018, yet it continued and continues to infringe the '866 Patent.

### COUNT III
(Tortious Interference with Luminati's Employment Agreements)

58.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-57 of this Complaint as if fully set forth herein.

59.     Hola Networks Ltd., now known as Luminati, had entered into Employment Agreements with each of three former Luminati employees Alon Ghelber, Samuel Levy, and Vadim Feldman ("Former Luminati Employees"), which include confidentiality and non-compete clauses prohibiting each of these employees from disclosing information confidential to Luminati and from accepting employment with a company offering competing services within twelve months of the termination of employment with Luminati.

60.     BI Science intentionally and willfully interfered with the Employment Agreements having hired the Former Luminati Employees shortly after termination of their employment by Luminati knowing that they had been employed by Luminati as salesmen for the Luminati residential proxy service.  BI Science knew or should have known that the hiring of the Former Luminati Employees to sell BI Science's competing Geosurf service caused the Former Luminati Employees to violate at least the non-compete clause of their Employment Agreements.

61.     Luminati has suffered damages in Texas and the United States and BI Science has been unjustly enriched as Luminati lost business to BI Science's competing GeoSurf service. Upon information and belief, BI Science's interference with the Employment Agreements and hiring of the Former Luminati Employees was the proximate cause of this lost business.

### COUNT IV

(Misappropriation of Trade Secret Under Federal Defense of Trade Secret Act)

62.    Luminati repeats and re-alleges the allegations contained in paragraphs 1-61 of this Complaint as if fully set forth herein.

63.    Luminati takes reasonable measures to protect the confidentiality of valuable trade secrets related to its residential proxy service, including the requirement that its employees protect the confidentiality of Luminati trade secrets.  This non-public information has actual independent economic value derived from Luminati's experience in the residential proxy service field.

64.    Luminati's residential proxy service is intended for use in interstate or foreign commerce.

65.    Upon information and belief, BI Science misappropriated Luminati's trade secrets by hiring Luminati's former employees, knowing that each of them had access to Luminati's trade secrets related to Luminati's residential proxy service as well as a duty to preserve the confidentiality of Luminati's trade secrets, for the purpose of competing with Luminati's residential proxy service.

66.    Luminati has suffered damages in Texas and the United States and BI Science has been unjustly enriched as, upon information and belief, Luminati lost business to BI Science's competing GeoSurf service as a result of BI Science's misappropriation of Luminati's trade secrets.

67.    BI Science's misappropriation of Luminati trade secrets was willful and malicious.

68.    Luminati is entitled to recover the actual loss suffered by Luminati, any additional damages to account for BI Science's unjust enrichment, and exemplary damages as a result of BI Science's misappropriation of its trade secrets under 18 U.S.C. § 1836(b)(3)(B) and (C).

**COUNT V**
(False Advertising Under 15 U.S.C. § 1125(a) *et sec.*)

69.    Luminati repeats and re-alleges the allegations contained in paragraphs 1-68 of this Complaint as if fully set forth herein.

70.    Upon information and belief, since the filing of the original complaint and in retaliation thereto, BI Science has engaged in false advertising against Luminati under 15 U.S.C. § 1125(a) by making false advertisements to the public at large, including Luminati's customers. Through these false advertisements, Luminati believes and thus avers that BI Science has materially represented at least the nature and characteristics of Luminati's own residential proxy service.

71.    BI Science caused its false advertising to enter interstate commerce, including upon information and belief in the Eastern District of Texas.  BI Science's false advertising has at been distributed through at least Internet advertisements including, but not limited to, advertisements placed with Google responsive to queries regarding Luminati and BI Science's publicly accessible website.

72.    BI Science's actions have deceived, or are likely to deceive, a substantial segment of Luminati's customers who have purchased or would otherwise purchase Luminati's residential proxy service.

73.    BI Science's actions have caused Luminati injury to a commercial interest in both its business reputation and its sales by its customers.  Upon information and belief, Luminati's commercial injuries are a direct result of BI Science's false statements directed to Luminati's customers regarding at least Luminati's residential proxy service.

74.    Luminati is entitled to a judgment that BI Science has engaged in false advertising against Luminati, which is the direct cause of Luminati's injuries to its commercial interests in its reputation and sales under 15 U.S.C. 1125(a), and damages pursuant to 15 U.S.C. § 1117.

## COUNT VI
(Tortious Interference with Luminati's Current and Prospective Business Relationships)

75.      Luminati repeats and re-alleges the allegations contained in paragraphs 1-74 of this Complaint as if fully set forth herein.

76.      Luminati has contractual relationships with numerous customers and business relationships with numerous prospective customers, including in the Eastern District of Texas. These prospective customers have engaged in a relationship with Luminati with a reasonable probability for entering into an agreement to use Luminati's residential proxy service in the Eastern District of Texas, including at least through the testing of Luminati's residential proxy service. Upon information and belief, Defendant and the Former Luminati Employees have known about these relationships.

77.      Upon information and belief,  BI Science has intentionally and willfully contacted current and prospective Luminati customers to sell its competing Geosurf service using misappropriated Luminati proprietary information desiring to prevent Luminati's business relationship with these current and prospective customers and knowing that BI Science's actions were substantially certain to result in this interference.  Upon information and belief, Luminati has lost current and prospective customers of its residential proxy service and the associated revenues to BI Science's competing Geosurf service in Texas and the United States.

78.      Luminati has suffered damages and BI Science has been unjustly enriched as Luminati lost business to BI Science's competing GeoSurf service.  BI Science's interference with Luminati's current and prospective customer relationships was the proximate cause of this lost business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luminati respectfully requests that this Court enter:

A.  A judgment that each of the Asserted Patents is valid and enforceable.

B.  A judgment in favor of Luminati that the Defendant has and is infringing the Asserted Patents;

C.  A judgment declaring Defendant's infringement to be willful.

D.  A judgment in favor of Luminati that the Defendant tortiously interfered with Luminati's Employment Agreements;

E.  A judgment in favor of Luminati that the Defendant misappropriated Luminati's trade secrets under 18 U.S.C. § 1836(b);

F.  A judgment and order for damages under 18 U.S.C. § 1836(b)(3)(B);

G.  A judgment and order for exemplary damages under 18 U.S.C. § 1836(b)(3)(C);

H.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

I.  A permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, associates, partners, customers, server owners and / or operators, and other persons who are in active concert or participation with BI Science, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

J.  A judgment and order requiring the Defendant to pay to Luminati its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for the Defendants' infringement of the Asserted Patents

as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement;

K. Disgorgement of the amount by which BI Science has been unjustly enriched;

L. A judgment in favor of Luminati that Defendant had engaged in false advertising against Luminati, and order requiring Defendant to pay monetary relief to Luminati, including (i) profits received by Defendant and/or damages sustained by Luminati as a result of Defendant's false advertising and (ii) damages in the form of money to be spent on corrective advertising, to dispel any actual confusion that may have already occurred among relevant consumers and in the marketplace by virtue of Defendant's false advertising;

M. That Defendant be found to have acted wilfully in its false advertising, and that monetary relief for Defendant's false advertising be increased due to the wilfull nature of Defendant's false advertising pursuant to 15 U.S.C. § 1117;

N. A permanent injunction enjoining Defendant, its officers, employees, agents, representatives, attorneys and others acting on its or their behalf, from committing further acts of false advertising described herein;

O. A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, 15 U.S.C. § 1117(a) and/or other applicable laws, and that Luminati is entitled to recover its reasonable attorney's fees and costs upon prevailing in this action;

P. A judgment in favor of Luminati that the Defendant tortiously interfered with Luminati's business relationships;

Q. Disgorgement of the amount by which Luminati has been unjustly enriched; and

R. Any and all other relief, at law or in equity that this Court deems just or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luminati hereby demands

a trial by jury of all issues so triable.

Dated:  February 19, 2019

By: */s/ Korula T. Cherian*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com


Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702
(510) 944-0190
Email: sunnyc@ruyakcherian.com
Email:  bobh@ruyakcherian.com


Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Email: ronw@ruyakcherian.com


Attorneys for Plaintiff