**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **LUMINATI NETWORKS LTD.** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 2:18-cv-483-JRG** |
| | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **BISCIENCE INC.** | § | **FILED UNDER SEAL** |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION TO DISMISS, AND IN THE ALTERNATIVE,**
**MOTION TO TRANSFER VENUE**

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 2

II.     THIS CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION .................... 3

        A.      Requirements for Personal Jurisdiction .................................................. 3

        B.      There is No General Jurisdiction Over BIScience in Texas .................................. 5

        C.      There is No Specific Jurisdiction Over BIScience in Texas.................................. 6

        D.      There is No Pendent Jurisdiction over the Tortious Interference Claims.............. 8

III.    ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE
        SOUTHERN DISTRICT OF NEW YORK........................................................... 10

        A.      This Case Could Have Been Brought in the Southern District of New York....... 10

        B.      The Private Factors Strongly Favor Transfer........................................ 11

                1.      Relevant Sources of Proof Are in the Southern District of New
                        York and Israel........................................................................ 11

                2.      The Cost and Convenience for Witnesses Favors Transfer ..................... 12

                3.      Other Practical Considerations Are Neutral ............................................. 13

        C.      The Public Factors Favor Transfer ....................................................... 14

                1.      The Local Interest Factor Supports Transfer ............................................. 14

                2.      The Other Public Interest Factors ........................................................... 15

IV.     THIS CASE SHOULD ALSO BE DISMISSED DUE TO DEFECTS IN THE
        COMPLAINT ..................................................................................................... 15

        A.      The Defense of Trade Secrets Act Does Not Cover Conduct Abroad.................. 15

        B.      Luminati's Amended Complaint Fails to Assert a Plausible Claim for False
                Advertising ........................................................................................ 15

V.      CONCLUSION..................................................................................................... 18

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

## TABLE OF AUTHORITIES

**CASES**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012)...............................................5

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009)...............................................3

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018)...............................................11

*Blue Spike, LLC v. Texas Instruments, Inc.*,
No. 6:12-cv-499, 2014 WL 11829323 (E.D. Tex. Mar. 31, 2014).................3, 7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
137 S. Ct. 1773 (2017)...............................................5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...............................................4, 5

*Celgard, LLC v. SK Innovation Co., Ltd.*,
792 F.3d 1373 (Fed. Cir. 2015)...............................................3

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...............................................4, 6

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
No. 6:13-cv-919, 2014 WL 6847569 (E.D. Tex. Nov. 17, 2014)...................13

*Freudensprung v. Offshore Technical Servs., Inc.*,
379 F.3d 327 (1985)...............................................5

*In re Genentech, Inc.*,
566 F.3d 1388 (Fed. Cir. 2009)...............................................10, 12

*Gonzalez v. Autotrader.com*,
2:14-cv-650, 2015 WL 1387858 (E.D. Tex. Mar. 25, 2015)...........................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...............................................4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)...............................................4

*Hoffman v. Blaski*,
363 U.S. 335 (1960)...............................................14

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL**

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2008)..................................................................14

*In re HTC Corp.*,
    889 F.3d 1349 (Fed. Cir. 2018)..................................................................11

*HTI IP LLC v. DriveOk, Inc.*,
    No. 6:09-cv-370, 2010 WL 3075200 (E.D. Tex. Aug. 4, 2010).........................4

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*,
    321 F.2d 53 (5th Cir. 1963) ......................................................................11

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..................................................................................4

*Internet Machines LLC v. Alienware Corp.*,
    No. 6:10-cv-023, 2011 WL 2292961 (E.D. Tex. June 7, 2011) .........................6

*Logan v. Burgers Ozark Cty. Cured Hams, Inc.*,
    263 F.3d 447 (5th Cir. 2001) ....................................................................17

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000)..................................................................4

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009).............................................................10, 11

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010)..................................................................5

*Pinnacle Label, Inc. v. Spinnaker Coating, LLC*,
    No. 3:09-cv-0950-D, 2009 WL 3805798 (N.D. Tex. Nov. 12, 2009) ................9

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ....................................................................12

*Roberts v. Paulin*,
    No. 07-cv-13207, 2007 WL 3203969 (E.D. Mich. Oct. 31, 2007)....................7

*Rolls-Royce Corp. v. Heros, Inc.*,
    576 F. Supp. 2d 765 (N.D. Tex. 2008) ........................................................9

*In re Toa Techs., Inc.*,
    543 F. App'x 1006 (Fed. Cir. 2013) ...........................................................12

*Tuna Processors, Inc. v. Anova Food, Inc.*,
    No. 07-6192, 2007 WL 3232609, at *4 (D. Or. Nov. 1, 2007).........................7

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

*Uniloc USA, Inc. v. Apple Inc.*,
    2:17-cv-00258 (E.D. Tex. Dec. 22, 2017) ........................................................................12

*Vendavo, Inc. v. Price f(x) AG*,
    3:17-cv-06930 (N.D. Cal. Mar. 23, 2018) ........................................................................16

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .............................................................................10, 11, 14

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................................14

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).....................................................................................................4, 5

*WorldVentures Hldgs., LLC v. Mavie*,
    No. 4:18-cv-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ......................................4


## STATUTES / RULES

28 U.S.C. § 1404(a) .............................................................................................1, 10, 12

18 U.S.C. § 1837 ......................................................................................................15, 16

Fed. R. Civ. P. 4(k)(2)................................................................................................2, 5, 6

Fed. R. Civ. P. 12(b)(2)....................................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................1, 8, 15, 18

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

Defendant BIScience (2009) Ltd. (which Plaintiff alleges is also known as BIScience Inc.) (hereinafter referred to as "BIScience") respectfully submits this motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 28) pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). In addition, this motion identifies defects in certain claims of Plaintiff Luminati Networks Ltd.'s ("Luminati") complaint that warrant dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

BIScience first addresses Luminati's repeated unwarranted criticisms and characterizations of BIScience's declaration submitted in response to Plaintiff's Original Complaint. In Kfir Moyal's previous declaration attached in support of Defendant's Motion to Dismiss (Dkt. No. 15), Mr. Moyal mistakenly transposed a number on BIScience's New York office address which resulted in 345 Madison Ave., rather than the correct address of 335 Madison Ave. Plaintiff went to great lengths hiring an investigator to take pictures in New York to prove there was no 345 Madison Ave. and even went so far to claim that the undersigned was "grossly negligent" or "asserted blatant falsehood" to the Court. Dkt. No. 21, p.11. And most recently in its latest filing, Plaintiff launched the same attack. Dkt. No. 33, pp.1-2. This mistake was the result of a clerical typographical error, not "gross negligence" or "blatant falsehood" and, importantly, an issue which could have been quickly corrected with a simple phone call to the undersigned. These parties are business competitors and keenly aware of each other's business operations and office locations. To suggest otherwise is not credible. And further, BIScience lists another New York address on its website which is not an office location (it is a mailing address), but certainly even following that information would lead to at least some indication of a presence in New York rather than a

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

claim that BIScience intentionally made the office address up in New York to support a response to a motion, which clearly it did not do.

## I.    INTRODUCTION

On November 8, 2018, Luminati, an Israeli company, filed suit against BIScience, also an Israeli company, alleging patent infringement, tortious interference with Luminati's employment agreements, and misappropriation of trade secrets under the Federal Defense of Trade Secrets Act. Dkt. No. 1.  In response, BIScience filed its Motion to Dismiss and in the alternative, Motion to Transfer Venue.  Dkt. No. 15.  Luminati then filed its Opposition to Defendant's Motion to Dismiss, and in the alternative, Motion to Transfer Venue and Motion For Early Venue Discovery Dkt. Nos. 21 and 22.  On February 19, 2019, Plaintiff filed an Amended Complaint for Patent Infringement against BIScience.  Dkt. No. 28.  In its Amended Complaint, Plaintiff added additional causes of action for false advertising and tortious interference with current and prospective business relationships.  Dkt. No. 28, pp. 29-31.  Additionally, Plaintiff added allegations related to activities in Texas and the United States sporadically throughout in an attempt to address issues raised in BIScience's previous motion to dismiss.  However, those allegations are still not sufficient to establish jurisdiction or even venue in this Court.

Indisputably, all of the non-patent claims involve facts and witnesses in Israel—for Luminati and for BIScience.  Luminati contends that this Court has personal jurisdiction over BIScience because it has "sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2)."  Dkt. No. 28 ¶ 5. Luminati alleges that "some" of the alleged infringement occurred in Texas and that BIScience "maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

provided in Texas." *Id*.  As discussed in more detail below, this is not true.  BIScience has insufficient contacts with Texas such that the exercise of personal jurisdiction over BIScience would offend traditional notions of fair play and substantial justice.  BIScience has none of the indicia of personal jurisdiction recognized by the law, such as having an office or other real estate in Texas.  Nor does it have employees, a registered agent, or a bank account in Texas, make business trips to Texas, attend trade show attendance in Texas, or engage in specific marketing to Texas customers.  BIScience has also never invoked the legal system in Texas.  Nothing in Luminati's Amended Complaint alleges otherwise.

BIScience is an Israeli corporation with its headquarters in Tel Aviv, Israel.  Contrary to Luminati's assertions, BIScience conducts its U.S. activities out of an office in New York.  It conducts sales activity from this New York office, attends trade shows in New York, and regularly visits its New York office as part of its regular business operations.  For these and other reasons set forth below, there is no personal jurisdiction over BIScience in Texas and venue would be inconvenient for all parties and witnesses in this forum.  Both personal jurisdiction and venue are instead proper in the Southern District of New York.  Putting aside the parties' disputes on the merits, this case could have and should have been filed in that judicial district.

## II.   THIS CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION

### A.   Requirements for Personal Jurisdiction

Personal jurisdiction is governed by Federal Circuit law in patent infringement actions. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1016 (Fed. Cir. 2009); *see also Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-499, 2014 WL 11829323 at *1 (E.D. Tex. Mar. 31, 2014).  The burden is on the plaintiff to establish that the defendant is subject to personal jurisdiction.  *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

A court can exercise personal jurisdiction over an out-of-state defendant only if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). *HTI IP LLC v. DriveOk, Inc.*, No. 6:09-cv-370, 2010 WL 3075200, at *4 (E.D. Tex. Aug. 4, 2010) (*citing LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000)). The Texas long-arm statute is coextensive with due process that the analysis collapses into a single inquiry. *WorldVentures Hldgs., LLC v. Mavie*, No. 4:18-cv-393, 2018 WL 6523306, at *4 (E.D. Tex. Dec. 12, 2018). To establish whether a court has personal jurisdiction over a defendant, a plaintiff must show: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316-20 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). The type of contacts with the forum state determine whether specific or general jurisdiction may be invoked. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *WorldVentures*, 2018 WL 6523306, at *4.

General jurisdiction exists for a corporate defendant only when its "corporate operations within a state [are] so substantial and of such a nature" to justify suit based on activity entirely distinct from the alleged activities. *Daimler*, 571 U.S. at 127 (citing *Int'l Shoe*, 326 U.S. at 318). The operations must be so continuous and systematic that the corporate defendant is "essentially at home in the forum State." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 9 (1984)). Only a limited set of contacts support general jurisdiction of a corporate defendant, including the defendant being incorporated or having a principal place of business in the forum

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

state. *Id.* at 137; *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

To exercise specific jurisdiction, a court must determine "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012) (*citing Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)). The focus of the specific jurisdiction inquiry is on the "relationship between the defendant, the forum, and the litigation." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (1985) (*quoting Burger King*, 471 U.S. at 474). However, the primary concern is the burden on the defendant. *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Random, fortuitous, or attenuated contacts are insufficient to establish purposeful availment. *Burger King*, 471 U.S. at 476.

**B.    There is No General Jurisdiction Over BIScience in Texas**

BIScience is not subject to general personal jurisdiction in Texas.[1] BIScience is not incorporated in nor does it operate a principal place of business in Texas. Ex. 1 ¶¶ 7, 8. BIScience is not registered to do business in Texas, does not have a registered agent in Texas, does not have a bank account in Texas, does not have an office or any property in Texas, does not employ personnel in Texas, does not conduct visits to Texas for business (or otherwise), does not attend trade shows or conferences in Texas, and does not specifically advertise to Texas residents as

---

[1] For completeness, Fed. R. Civ. P. 4(k)(2) also fails to provide personal jurisdiction over BIScience. Since BIScience is subject to general personal jurisdiction in the Southern District of New York as discussed herein, the rule does not apply. *See* Fed. R. Civ. P. 4(k)(2)(A) (limited to situations where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction").

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

opposed to other locations.  *Id.* ¶ 8.  BIScience's corporate activities are therefore not so continuous and systematic such that it would be "at home" in Texas sufficient to exercise general jurisdiction in this forum.  *Daimler*, 571 U.S. at 126.  Luminati, including in its Amended Complaint, alleges no activities that establish otherwise.  *See, e.g.*, *Internet Machines LLC v. Alienware Corp.*, No. 6:10-cv-023, 2011 WL 2292961, at *4 (E.D. Tex. June 7, 2011).

## C.     There is No Specific Jurisdiction Over BIScience in Texas

BIScience is not subject to specific personal jurisdiction in this forum because Luminati fails to establish that BIScience purposefully directs activities toward Texas or that Luminati's claims arise out of any contact BIScience has with Texas.

Luminati generally alleges that BIScience "has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2)."  *See* Dkt. No. 28 ¶ 5.  The only non-general allegations made are that "BI Science utilizes software, which is, *inter alia*, the subject of the infringement alleged herein, that routes internet communications through user devices having IP addresses ***serving as residential proxies*** located in the State of Texas, as well as this Judicial District, permitting BI Science to include user devices in this Judicial District as ***part of BI Science's residential proxy service***."  *Id.* (emphasis added).  However, the location and use of residential proxy software is not the focus of Luminati's alleged theory of infringement, as made clear by the complaint.

The asserted claims of the '044 and '866 patents are each method claims.  Dkt. No. 28 ¶¶ 33, 48.  Luminati alleges that the claimed methods are performed by a "user" or "customer" of the accused GeoSurf service.  *Id.* at ¶¶ 34-37, 49-51.  This is Luminati's infringement theory in its Amended Complaint (Dkt. No. 28 ¶¶ 34-37, 49-51), just as it was in its original Complaint (Dkt. No. 1 ¶¶ 33-36, 48-50).  However, the existence or operation of residential proxy software in

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL**

Texas—activity distinct from the actions of any BIScience customer or user—fails to demonstrate BIScience purposefully availed itself of the benefits of doing business in Texas as Luminati alleges. *Blue Spike*, 2014 WL 11829323, at *3 ("Plaintiff further suggests that because [defendant] incorporated its software into the products of Texas-based corporations, [defendant] must necessarily be charged with independently establishing contacts with Texas. But Plaintiff has not demonstrated that [defendant] purposefully availed itself of the benefits of doing business in Texas."). Luminati's Amended Complaint thus fails to establish a *prima facie* case that BIScience purposefully directs activities at residents of this forum relating to or arising out of the allegedly infringing activity.

The customer activity alleged by Luminati is also minimal when compared to BIScience's overall business. As of February 28, 2019, there were only ███ GeoSurf residential active customers and only ████ former GeoSurf customers in Texas. Ex. 1 ¶ 11. The total revenue of the ██ active customers in February 2019 is ██████████. *Id.* The total revenue among the ██ active Texas customers and the █████ former Texas customers, combined, is only ████. *Id.* To put those numbers in perspective, BIScience had total worldwide revenue across all of its products of ██████ in 2018. *Id.* The total sales among all current and former GeoSurf residential customers in Texas is thus only ████ of BIScience's overall 2018 revenue. As courts have recognized, minimal sales in a forum state, absent any purposeful activity focused on the state, are insufficient to confer personal jurisdiction. *See, e.g., Roberts v. Paulin*, No. 07-cv-13207, 2007 WL 3203969 (E.D. Mich. Oct. 31, 2007) (finding lack of personal jurisdiction where defendant had less than $500 of sales in forum state); *Tuna Processors, Inc. v. Anova Food, Inc.*, No. 07-6192, 2007 WL 3232609, at *4 (D. Or. Nov. 1, 2007) (finding lack of personal jurisdiction despite sales of two allegedly infringing sales in forum state). Accordingly, while there are a small

7

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

number of BIScience customers in Texas, representing minimal sales, BIScience has never purposefully directed any aspect of its business operations to Texas.

For these reasons, the allegations in Luminati's Amended Complaint are insufficient to confer specific personal jurisdiction.

### D.    There is No Pendent Jurisdiction over the Tortious Interference Claims

In addition to alleging patent infringement, Luminati asserts claims for tortious interference with Luminati's employment agreements, tortious interference with Luminati's current and prospective business relationships, misappropriation of trade secret under the Federal Defense of Trade Secret Act, and false advertising. As discussed below, the trade secret and false advertising claims should be dismissed under Fed. R. Civ. P. 12(b)(6). With the trade secret and false advertising claims dismissed, the Court should also dismiss the tortious interference claims—state law claims—as a matter of declining to assert pendent personal jurisdiction.

Luminati's tortious interference claims involve three former Luminati employees— Mr. Ghelber, Mr. Feldman, and Mr. Levy. *See* Dkt. 28 ¶¶ 59-61. These individuals allegedly worked for Hola Networks Ltd., now known as Luminati, in Israel. *Id*. The employment agreements complained of were executed in Israel.[2] These former Luminati employees were allegedly hired by BIScience in Israel to work in Israel.

If the Court dismisses Luminati's trade secret and false advertising claims for the reasons below, the Court should decline to exercise pendent personal jurisdiction over BIScience for the tortious interference claims. Pendent personal jurisdiction exists when the Court has "personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction

---

[2] The agreements are not exhibits to Luminati's original Complaint or Amended Complaint, nor does Luminati address whether they contain choice of venue clauses, arbitration clauses, or other potentially material provisions.

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008); *Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, No. 3:09-cv-0950, 2009 WL 3805798 (N.D. Tex. Nov. 12, 2009) (court granted motion to dismiss the state law claims for lack of personal jurisdiction because the state law claims and the Lanham act claims did not arise from a common nucleus of operative fact.).  Here, in order for there to be pendent jurisdiction, Luminati's patent claims would need to arise from the same facts as its tortious interference claim.  They do not.

The patent infringement claims involve allegations that BIScience infringed Luminati's patents by implementing and providing the GeoSurf service to customers.  Dkt. 28 ¶¶ 29-57.  The non-patent claims are entirely distinct, sharing none of the same elements of a cause of action. One of the tortious interference claims involves allegations relating to three specific Israeli individuals, their alleged employment agreements with Luminati, and their alleged hiring in Israel. *Id*. at ¶¶ 58-61.  The other tortious interference claim involves Luminati's business relationships with customers.  *Id*. at ¶¶ 75-78.  This claim includes allegations that BIScience has "contacted current and prospective Luminati customers to sell its competing Geosurf service…" Dkt. No. 28 ¶77.  Luminati's patent claims and tortious interference claims do not involve the same facts or even a common nucleus of operative facts.  The Israeli employees at issue in the tortious interference claim were business salespeople.  Luminati admits this in its Amended Complaint. *Id*. at ¶ 60.  They were not involved in any research or development of GeoSurf.  The other tortious interference claim involves alleged interference with Luminati's current and prospective business relationships, essentially its customers.  *Id*. at ¶¶ 76-77.

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

There are no allegations in Luminati's Amended Complaint to support a theory that both sets of claims (the patent claims and tortious interference claims) arise out of the same nucleus of operative facts. The only overlapping fact is essentially the parties—Luminati and BIScience. This is not sufficient to establish pendent jurisdiction. Accordingly, the Court should decline to exercise pendent jurisdiction over the two asserted tortious interference claims.

## III.    ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

### A.    This Case Could Have Been Brought in the Southern District of New York

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009).

The first step is to determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). This case could have been brought in the Southern District of New York. BIScience has one office in the U.S., which is located in shared office space at 335 Madison Ave, Floor 16, New York, New York, 10017.[3] Ex. 1 ¶ 5. BIScience conducts business out of its New York office, employs personnel in New York, references a New York

---

[3] In Kfir Moyal's previous declaration attached in support of Defendant's Motion to Dismiss (Dkt. No. 15), Mr. Moyal mistakenly transposed a number on the office address which resulted in 345 Madison Ave., rather than the correct address of 335 Madison Ave.. Plaintiff went to great lengths hiring an investigator to take pictures in New York to prove there was no 345 Madison Ave. and even went so far to claim that the undersigned was grossly negligent or asserted blatant falsehood to the Court. Dkt. No.21, p.11. Certainly, that is not true and this typo could have been quickly corrected with a simple phone call to the undersigned.

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

office on its website www.biscience.com, visits New York regularly, and attends trade shows and conferences in New York. Ex. 1 ¶¶ 6, 10, 16. In BIScience's contracts with customers, purchase agreements, non-disclosure agreements, and terms of use for GeoSurf, BIScience consistently and specifically invokes New York law and the venue of New York courts. BIScience's contacts with New York are so systematic and continuous that it is essentially at home there such that the Southern District of New York could exercise general jurisdiction over it. Venue is also proper because BIScience is a foreign corporation amenable to venue in the Southern District of New York. *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018); *In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018).

### B.    The Private Factors Strongly Favor Transfer

Once the threshold first step is met, courts then analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *Nintendo*, 589 F.3d at 1198.

The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203.

### 1.    Relevant Sources of Proof Are in the Southern District of New York and Israel

As stated, BIScience has two office locations outside of Israel, one in Ukraine and the other being located at 335 Madison Ave, Floor 16, New York, New York, 10017, which is within the Southern District of New York. Ex. 1 ¶ 4. This New York office has access to relevant documentation, such as documents regarding sales and marketing activity. *Id.* ¶¶ 10. In contrast,

there are no sources of proof or even access to the same located in Texas.  *Id*. ¶¶ 17.  To the extent documents are available electronically, they can be securely accessed remotely and maintained in the New York office.  The critical inquiry "is relative ease of access, not absolute ease of access." *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013) (citing *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)).  Here, the relative ease of access to relevant sources of proof weighs in favor of transfer.

## 2.    The Cost and Convenience for Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Uniloc USA, Inc. v. Apple Inc.*, 2:17-cv-00258, slip op. at 15 (E.D. Tex. Dec. 22, 2017) (Ex. B) (quoting *Genentech, Inc.*, 566 F.3d at 1342). "[T]he convenience of non-party witnesses [] is the more important factor and is accorded greater weight in a transfer of venue analysis." *Gonzalez v. Autotrader.com*, 2:14-cv-650, 2015 WL 1387858 at *2 (E.D. Tex. Mar. 25, 2015). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Uniloc*, slip op. at 15 (quoting *Genentech*, 566 F.3d at 1343).

Here, the travel for *every* witness to the Southern District of New York will be far more convenient than to the Eastern District of Texas.  There are no nonstop flight options to Dallas from Israel, where most if not all witnesses from both Luminati and BIScience are located. Ex. 1 ¶ 14.  The air travel between Dallas and Israel would range from 15 to 33 hours depending on the number of flight connections.  In contrast, there are several nonstop flight options between Israel and New York area airports, with flight times of approximately 10-11 hours.  *Id*.  The individuals referenced and identified in Plaintiff's Complaint *all* live and work in Israel, including

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

Kfir Moyal, Assaf Toval, Alon Ghelber, Samuel Levy, and Vadim Feldman, along with Luminati's own employees and witnesses.  *See id.* ¶ 15.  Further, the two named inventors of the asserted patents—Derry Shribman and Ofer Vilenski—are both believed to be based in Israel.

Accordingly, the cost and convenience of traveling to New York versus Marshall, Texas for **all** witnesses and for **both** parties weighs in favor of transfer.

### 3.    Other Practical Considerations Are Neutral

The last private interest factor addresses practical considerations related to the ease, expense, and time to trial.  These considerations include "judicial economy."  *DSS Tech. Mgmt., Inc. v. Apple Inc.*, No. 6:13-cv-919, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 17, 2014).  This case is at its early stage in the proceedings, so a transfer would not cause any significant delay.  It is anticipated that Luminati will raise the pending case—*Luminati Networks Ltd. v. UAB Tesonet*, Cause No. 2:18-cv-299-JRG, to support its position that the case should not be transferred.  However, the *Tesonet* case does not heavily impact the transfer analysis.  The parties in the *Tesonet* case have separate deadlines for discovery disclosures, claim construction briefing, a claim construction hearing, dispositive motions, and trial.  Additionally, the issues in the *Tesonet* case are specific to the facts and the parties in that case, not to BIScience or GeoSurf.  Thus, regardless of whether this case is kept in the Eastern District of Texas or transferred to the Southern District of New York, BIScience and Luminati will have to engage in discovery specific to them, claim construction briefing and argument specific to their case, dispositive motions unique to the facts in their case, and trial as to them alone.  here are no practical difficulties that would weigh heavily in favor or against transfer, this factor is neutral.

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

### C.    The Public Factors Favor Transfer

In addition to the private factors, the public factors also weigh in favor of transfer.  The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Volkswagen I*, 371 F.3d at 203.  These factors are to be decided based on "the situation which existed when suit was instituted."  *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).  Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008).

### 1.    The Local Interest Factor Supports Transfer

The Southern District of New York has an interest in this dispute because BIScience operates its U.S. business out of an office in that district.  As alleged by Luminati, this suit calls into question the work and reputation of BIScience employees conducting business in the Southern District of New York.  *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2008) (transferee district's local interest is strong because the case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.").  In contrast, the Eastern District of Texas has no local interest in this dispute.  Neither party has any ties to the Eastern District of Texas.  Neither company has any offices or employees located in the Eastern District of Texas.  Therefore, this factor weighs in favor of transfer.

14

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

### 2.    The Other Public Interest Factors

Familiarity with the governing law is neutral.  Both districts are familiar with patent law and the asserted tort claims, suggesting that this factor is neutral.  The avoidance of unnecessary problems of conflict of laws or in the application of foreign law does not appear to apply here, therefore, this factor is also neutral.

The administrative difficulties flowing from court congestion lean slightly in favor of the Eastern District of Texas as opposed to the Southern District of New York.  According to recent statistics, the average time to trial in a civil case in the Eastern District of Texas is 19.1 months, as compared to 29.4 months in the Southern District of New York. Administrative Office of the United States Courts, Caseload Statistics Data Tables, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf.  The average time to trial difference between the two districts is only approximately 10 months.  When compared to the complete lack of contacts to the Eastern District of Texas combined with the convenience of transfer to the Southern District of New York, this factor should only be given minimal weight, if any.

## IV.    THIS CASE SHOULD ALSO BE DISMISSED DUE TO DEFECTS IN THE COMPLAINT

The Court should also dismiss Luminati's trade secret, indirect infringement, and false advertising claims for failing to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

### A.    The Defense of Trade Secrets Act Does Not Cover Conduct Abroad

Luminati's trade secret allegations must fail because the Defense of Trade Secrets Act ("DTSA") has explicit extraterritorial limits. 18 U.S.C. § 1837.  First, an "offender" must be either a U.S. citizen or "an organization organized under the laws of the United States or a State or political subdivision thereof."  18 U.S.C. § 1837(1).  Failing this, the statute requires "an act in

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL

furtherance of the offense [be] committed in the United States." 18 U.S.C. § 1837(2).  Neither of these situations apply here and Luminati's claim should be dismissed.

Under the first prong, Luminati's Amended Complaint fails to state a claim because BIScience is an Israeli corporation not covered under the statute.  BIScience's U.S.-based office is not a separate legal entity and, notwithstanding this, did not engage in any of the purported activity in Luminati's complaint—i.e., the alleged hiring of three former Luminati employees in Israel and the activities of those former Luminati employees in Israel.  *See* Dkt. 28 at ¶¶ 62-68. Under the second prong of the statute, Luminati fails to allege any conduct occurring in the U.S. relating to the alleged misappropriation.  The Amended Complaint merely alleges that Luminati employees based in Israel were terminated and then hired by BIScience in Israel.  Along with failing to even identify the subject of any purported trade secret in its Amended Complaint, Luminati fails to allege any conduct related to the misappropriation occurring outside of Israel. *See Vendavo, Inc. v. Price f(x) AG,* 3:17-cv-06930, slip op. at 6-7 (N.D. Cal. Mar. 23, 2018) (Ex. C) ("Given the territorial and temporal limits of the DTSA, such facts are foundational to the existence of a viable claim").  While Luminati's Amended Complaint attempted to cure this deficiency by pleading that "Luminati has suffered damages in Texas," this is inapposite—the statute is plain in requiring "an act in furtherance of the offense" be committed in the United States, not merely alleged damages being projected in the United States. 18 U.S.C. § 1837(2).  For these reasons, Luminati's trade secret claims should be dismissed.

**B.    Luminati's Amended Complaint Fails to Assert a Plausible Claim for False Advertising**

In Plaintiff's Amended Complaint, it asserts for the first time a claim for false advertising under the Lanham Act.  Dkt. 28 ¶ 69-74.  This allegation is devoid of substance.

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL**

In order to establish a claim of false advertising under the Lanham Act, plaintiff is required to show the following: (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result. *Logan v. Burgers Ozark Cty. Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (citation and brackets omitted). Luminati's Amended Complaint does not come close to plausibly alleging a cause of action for false advertising. The insufficient allegations are as follows:

> 70. Upon information and belief, since the filing of the original complaint and in retaliation thereto, BI Science has engaged in false advertising against Luminati under 15 U.S.C. § 1125(a) by making false advertisements to the public at large, including Luminati's customers. Through these false advertisements, Luminati believes and thus avers that BI Science has materially represented at least the nature and characteristics of Luminati's own residential proxy service.

> 71. BI Science caused its false advertising to enter interstate commerce, including upon information and belief in the Eastern District of Texas. BI Science's false advertising has at been distributed through at least Internet advertisements including, but not limited to, advertisements placed with Google responsive to queries regarding Luminati and BI Science's publicly accessible website.

> 72. BI Science's actions have deceived, or are likely to deceive, a substantial segment of Luminati's customers who have purchased or would otherwise purchase Luminati's residential proxy service.

Dkt. No. 28, p.30. Luminati does not identify what the false statement was, what product the false statement was in reference to, what "advertisements" are being referred to placed with Google, or what "advertisements placed with Google responsive to queries regarding Luminati and BIScience's publicly accessible website" even means. In paragraph 73 of its Amended Complaint, Luminati alleges that its "commercial injuries are a direct result of BIScience's false statements

17

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL**

directed to Luminati's customers regarding at least Luminati's residential proxy service." Dkt. No. 28, p.30. However, Luminati does not identify these "false statements" nor allege how they are related to a claim for false advertising. In a previous paragraph, paragraph 20, Luminati alleges that BIScience published two blog posts on its website containing a "false" statement regarding installation of Luminati's proxy manager. Dkt. No. 28, p.8. Again, to the extent these allegations are part of the false advertising claim, it is unclear how a competitor's blog post on its website regarding difficulties in integrating some proxy services constitutes false advertising. Further, in the same paragraph 20, Luminati alleges that "BIScience has specifically targeted customers searching for Luminati in its advertising campaign for Geosurf, which directs prospective customers of residential proxy services to BIScience's website." *Id.* This allegation is not clear and does not even put BIScience on notice of the claim being made against it.

Luminati's vague allegations are not sufficient, plausible allegations to support a claim for false advertising. For these reasons, Luminati's claim for false advertising should be dismissed.

## V.    <u>CONCLUSION</u>

For the above reasons, the Court should dismiss this case for lack of personal jurisdiction or, in the alternative, transfer the case to the Southern District of New York. Luminati's trade secret claim should also be dismissed as an improper extraterritorial application of law. Luminati's false advertising claim does meet the plausibility standard for pleading and should be dismissed under Fed. R. Civ. P. 12(b)(6).


Dated:  March 4, 2019             By:       */s/ Eric H. Findlay*
                                            Eric H. Findlay (TX Bar No. 00789886)
                                            FINDLAY CRAFT, P.C.
                                            102 North College Avenue, Suite 900
                                            Tyler, Texas 75702
                                            Tel: (903) 534-1100

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL**

Fax: (903) 534-1137
Email: efindlay@findlaycraft.com

*ATTORNEY FOR DEFENDANT*
*BI SCIENCE INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2019 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Unopposed Motion for Leave to File Under Seal (D.I. 35) entered in this case.

*/s/ Eric H. Findlay*
Eric H. Findlay