**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD. | |
| Plaintiff, | Case No.  2:18-CV-00483-JRG |
| v. | FILED UNDER SEAL |
| BI SCIENCE INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, AND**
**IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................................1

II.  PROCEDURAL HISTORY ...................................................................................2

III. THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED UNDER 12(B)(6),
     BECAUSE LUMINATI PROPERLY PLED ITS CLAIMS............................................4

   A. Defendant No Longer Disputes that Plaintiff's Patent Infringement and Tortious
      Interference with Employee Agreements Claims Were Properly Pled .................................4

   B. The Defense of Trade Secrets Act Covers Defendant's Misappropriation of Trade Secrets,
      Because Defendant Used the Trade Secrets to Sell the Competing Geosurf Service in the
      United States......................................................................................................5

   C. Luminati Properly Pled All the Allegations Necessary for Its False Advertising Claim
      Under the Lanham Act. .......................................................................................7

IV. DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF PERSONAL
    JURISDICTION OR TO TRANSFER VENUE, IF CONSIDERED, SHOULD BE
    DENIED ...........................................................................................................9

   A. Background Facts ...............................................................................................9

      1. Accused Geosurf Service Is Directed Toward Texas.......................................................9

      2. BI Science's Allegation Of A Presence In New York Are Contradictory, Completely
         Unsupported By Facts, And Utterly Insufficient To Establish That Defendant Has An
         Office In New York City...................................................................................11

   B. The Court Has Personal Jurisdiction Over BI Science.......................................................13

      1. This Court has Personal Jurisdiction Over the Patent Infringement Claims, Because
         Defendant Directed Its Infringing Geosurf Service to Texas.........................................13

      2. The Court Also Has Personal Jurisdiction under Fed. R. Civ. P. 4(k)(2), Because Neither
         New York, Nor Any Other State has General Personal Jurisdiction Over Defendant. .....16

      3. The Court Has At Least Pendant Jurisdiction Over the Non-Patent Claims, Because
         They Share the Same Nucleus of Facts with the Patent Claims.....................................17

   C. BI Science Fails To Meet Its Burden For Its Motion to Transfer To New York ...............19

      1. The Private Factors Disfavor Transfer .................................................................20

         a. The Relevant Sources of Proof Are In Israel .........................................................20

         b. The Availability of Compulsory Process To Secure The Attendance of Witnesses Is
            Neutral..........................................................................................................21

         c. Cost and Convenience For Witnesses Is Neutral. ...................................................21

         d. All Other Practical Considerations, Including Judicial Economy, Strongly Disfavor
            Transfer .......................................................................................................22

2. The Public Factors Also Disfavor Transfer..........................................................................22

a. The Administrative Difficulties Flowing From Court Congestion Strongly Disfavor
Transfer ............................................................................................................... 22

b. The Local Interest in Having Localized Interests Decided at Home ........................ 23

c. The Remaining Public Interest Factors.................................................................... 23

**V.   CONCLUSION ........................................................................................................23**

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 4

*Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) ......................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 4

*ConCam Int., Inc. v. Mobotix Corp.*, 2:13-cv-798 (E.D. Tex. Aug. 26, 2014)........................... 22

*Daimler AG v. Bauman.*  571 U.S. 117 (2014) ................................................................. 16

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ..................................... 4

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009)......................................................... 20

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ................................................... 20, 22

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) ............................... 4

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) .............................................. 4

*NobelBiz, Inc. v. InsideSales.com, Inc.*, No. 6:13-cv-360 (E.D. Tex. Oct. 14, 2014)................... 4

*Pizza Hut Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489 (5th Cir. 2000).................................. 7

*Roberts v. Paulin*, 2007 U.S. Dist. LEXIS 80490 (E.D. Mich. 2007) ...................................... 14

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp.2d 765 (N.D. Tex. 2008) ................................. 18

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005)................................. 4

*Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 U.S. Dist. LEXIS
    79068 (E.D. Tex. Mar. 9, 2018)......................................................................... 7

*Tuna Processors, Inc. v. Anova Food, Inc.*, No. 07-6192-AA, 2007 U.S. Dist. LEXIS 81386 (D.
    Or. Nov. 1, 2007) ..................................................................................... 15

*United States v. Kolon Indus., Inc.*, 926 F.Supp.2d 794 (E.D. Va. 2013) ................................ 5

**Statutes**

18 U.S.C. § 1837................................................................................................ 5

28 U.S.C. § 1404(a) .......................................................................................... 19

**Rules**

Fed. R. Civ. P. 4(k)(2)................................................................................... 16, 17

## I.    INTRODUCTION

This is the second motion to dismiss or transfer filed by Defendant BI Science (2009) Ltd. (a.k.a. BI Science Inc.) ("Defendant" or "BI Science"), and it was filed while the jurisdictional and venue motions from the first motion to dismiss or transfer (Dkt. 15) were already fully briefed and awaiting the Court's disposition.  As a result, Plaintiff Luminati Networks Ltd.'s ("Plaintiff" or "Luminati") moved to strike the duplicative motions to dismiss for lack of jurisdiction or to transfer (Dkt. 40).

This motion also contains a Rule 12(b)(6) motion as to Luminati's misappropriation of trade secrets and false advertising claims, and that portion of the motion was permissibly refiled subsequent to Luminati's filing of an amended complaint (Dkt. 36).  However, the arguments made in it are incorrect, and that motion should be denied as well.  Luminati has pled its claims appropriately. Luminati pled specific facts supporting its trade secret misappropriation claim, and it identified with specificity the false statements in BI Science advertising as well as alleging facts that, if true, meet the other legal requirements for false advertising.  Therefore, the only procedurally appropriate part of the motion should be denied.

While Defendants' motion to dismiss for lack of personal jurisdiction or transfer venue is inappropriate and should be stricken, it is also as factually baseless as the first motion, and were the Court to consider it substantively, it should nonetheless deny these motions.  This Court has personal jurisdiction over the asserted patent claims, because BI Science directed its "Geosurf" service toward Texas by selling the service in Texas and advertising the use of proxy devices belonging to Texas Residents in ten Texas cities as part of its "Geosurf" service.  This Court also has at least pendant personal jurisdiction over the non-patent claims as they share the same nucleus of facts involving the sale of the same competing and infringing "Geosurf" service.

1

Defendant also has no basis to repeat its motion to transfer to the Southern District of New York as the First Motion to Dismiss/Transfer falsely identified BI Science as having a purported office on the sixteenth floor of a vacant fifteen-story building and the Second Motion to Dismiss/Transfer has provided no evidence beyond Mr. Moyal's bare assertions that BI Science sublets space in a second location and has two unnamed "employees (through consulting agreements)" that work in New York city, when in fact the second location does not list BI Science as an occupant and has no signage on the building or in the lobby indicating otherwise.[1]   In addition, this motion should be denied because there are no relevant sources of discovery in New York, judicial efficiencies favor retaining the case in Texas with the related Tesonet case, and the Courts in the proposed transferee district are far more congested.

Consequently, the Second Motions to Dismiss/Transfer should be denied.  However, to the extent that the Court entertains either motion, Plaintiff requests a ruling on its pending motion for venue discovery for limited discovery regarding Defendant's purported presence in New York and activities in Texas (filed at Dkt. 22).[2]

## II.    PROCEDURAL HISTORY

---

[1] Despite a pending motion for venue discovery (Dkt. 22) seeking, among other discovery, documentary evidence of BI Science's control of this office space and relationship with these unidentified purported "employees (through consulting agreements)," BI Science has provided no such discovery to Luminati nor attached such documentation to the Second Motion to Dismiss/Transfer. First Moyal Declaration at 4; Second Moyal Declaration at 5.  Without these agreements, Luminati cannot take a position on the relationship between BI Science and these two unnamed individuals, but based on Mr. Moyal's description they would appear to be no more than consultants at best and will be described as such herein.

[2] Despite the opening of discovery with yesterday's scheduling conference, this motion is still relevant as Plaintiff should not be forced to conduct a deposition of declarant Mr. Moyal as a matter of right under FRCP 30(a)(1) to secure limited venue discovery, only to require Plaintiff to later seek leave of the Court to depose Mr. Moyal under FRCP 30(a)(2) on the substantive issues of the case.

2

In Defendant's original motions to dismiss for lack of personal jurisdiction and alternative motion to transfer for *forum non conveniens* ("First Motion to Dismiss/Transfer", Dkt. 15) , BI Science submitted false representations regarding the location of its purported New York office supported by a declaration under oath from its CEO, Kfir Moyal ("First Moyal Declaration," Dkt. 15-2).  Luminati filed an opposition ("First Opposition," Dkt. 21 at 10-11), supported by a declaration from a licensed New York city investigator ("First Dell'Olio Declaration" Dkt. 21-9 at ¶¶ 3-9) showing the purported office to be located on the sixteenth floor of a vacant fifteen-story building, and a motion for venue discovery (Dkt. 22) including requests for documentation evidencing BI Science's control of the purported office, BI Science's relationship to the purported New York consultants, and a deposition of Mr. Moyal.  Despite having asked for and been given an extension, BI Science filed no reply in support of the First Motion to Transfer/Dismiss. Instead, BI Science filed only an opposition to the motion for venue discovery asserting incorrectly that all briefing following the original motion, including the motions challenging personal jurisdiction, requesting transfer of venue and venue discovery are mooted by the amended complaint. Dkt. 31.[3]

Less than a week after misleadingly asserting that the jurisdictional and venue briefing are moot in an apparent attempt to sweep its initial misrepresentations under the rug, BI Science filed its second motion to dismiss ("Second Motion to Dismiss/Transfer" Dkt. 36) attempting to reargue

---

[3] Luminati filed a prompt reply and notice (Dkts. 33 and 34) two days later providing case law to show that the mere filing of an amended complaint does not moot motions to dismiss under Fed. R. Civ. Pro. 12(b)(2), motions to transfer under 28 U.S.C. 1404 or motions for venue discovery.  Prior to BI Science's opposition, Luminati advised BI Science's counsel that the motions remained pending, sent counsel supporting case law, and advised BI Science that if it chose not to file a substantive reply that it was waiving its ability to file further pleadings on jurisdictional or venue grounds later.  Nevertheless, BI Science opted not to file any substantive response by the extended deadline.

the same jurisdictional and venue arguments already fully briefed in the First Motion to Dismiss/Transfer (which includes another declaration by the same declarant that made the first false representations under oath and further fails to show the existence a New York office, let alone one that would support BI Science's motion to transfer, *see* Section IV.A.ii, *infra*).

## III.   THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED UNDER 12(B)(6), BECAUSE LUMINATI PROPERLY PLED ITS CLAIMS

Motions to dismiss for failure to state a claim are governed by regional circuit law. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir. 2017). "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) for failure to state a claim 'are viewed with disfavor and are rarely granted.'" *NobelBiz, Inc. v. InsideSales.com, Inc.*, No. 6:13-cv-360, Dkt. 32 at 1-2, (E.D. Tex. Oct. 14, 2014); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a Rule 12(b)(6) motion if it includes facts sufficient "to raise a right to relief above the speculative level." *Id*. at 205 (quotations and citations omitted). In other words, the issue is whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### A.   Defendant No Longer Disputes that Plaintiff's Patent Infringement and Tortious Interference with Employee Agreements Claims Were Properly Pled

In the Second Motion to Dismiss/Transfer, BI Science no longer disputes that Luminati's patent infringement, tortious interference with employee agreements and tortious interference with

4

current and prospective business relationship claims were properly pled.[4]  BI Science only disputes

the misappropriation of trade secrets claim and false advertising claim under FRCP 12(b)(6).

> B. *The Defense of Trade Secrets Act Covers Defendant's Misappropriation of Trade Secrets, Because Defendant Used the Trade Secrets to Sell the Competing Geosurf Service in the United States.*

The Defense of Trade Secrets Act includes provisions specifically covering conduct

outside the United States by a foreign entity.  Pursuant to 18 U.S.C. § 1837, "[t]his chapter also

applies to conduct occurring outside the United States if (1) the offender is a natural person who

is a citizen or permanent resident alien of the United States, or an organization organized under

the laws of the United States or a State or political subdivision thereof; *or* (2) an act in furtherance

of the offense was committed in the United States." (emphasis added). "In enacting the trade secret

statutes, Congress plainly provided that their terms are applicable to foreign defendants where 'an

act in furtherance of the offense was committed in the United States.'" *United States v. Kolon

Indus., Inc.*, 926 F.Supp.2d 794, 802 (E.D. Va. 2013).  Consistent with the clear language of this

section, an "act in furtherance of the offense" need not include every element of the offense, as

such an offense would otherwise already be covered by this chapter without the need for this

section.

Plaintiff alleges that BI Science misappropriated Luminati's trade secrets by hiring

Luminati's former employees, knowing that each of them had access to Luminati's trade secrets

---

[4] BI Science includes a single introductory sentence that lists "indirect infringement" among the other claims that BI Science is challenging under FRCP 12(b)(6) (Second Motion to Dismiss/Transfer at 15), but this appears to be in error as BI Science has otherwise dropped all briefing on this issue from the First Motion to Dismiss/Transfer and excluded this request for relief from its conclusion.  To the extent that this is not a typographical error, Luminati opposes such a motion as Luminati has met the pleading requirements for this claim as argued in the Opposition and the Second Motion to Dismiss/Transfer has not made any allegation to the contrary.

related to Luminati's residential proxy service" for the purpose of promoting BI Science's competing "Geosurf" service, including through sales in Texas and the United States, causing harm to Luminati in the United States. Amended Complaint at ¶¶ 65-66; see also ¶¶ 15-17, 59-61. Luminati alleges, for example, that the former employees had access to "client lists, client records, client data usage, accounts receivable documents, business plans, marketing research, technical documents related to the architecture of Luminati's residential proxy network, and related work product." Amended Complaint at ¶16. "Upon information and belief, Luminati's former employees employed Luminati's confidential trade secrets on behalf of BI Science in furtherance of the competing "Geosurf" residential proxy service. Upon information and belief, Luminati lost Texas and United States customers for its residential proxy service and associated revenues to BI Science's competing Geosurf service." *Id.* BI Science is simply wrong when it asserts "Luminati fails to allege any conduct occurring in the U.S. relating to the alleged misappropriation." Second Motion to Dismiss at 16.

BI Science's actions in the United States related to the sale of the competing "Geosurf" residential proxy service using these trade secrets causing harm to Luminati in the United States was clearly in furtherance of its misappropriation of Luminati's trade secrets. As Defendant is well aware and Luminati previously asserted in its Opposition, these former Luminati employees did not exclude the United States from their "Geosurf" sales activities. For example, Luminati's former employee Vadim Feldman posted a picture on Facebook of him in what appears to be a Geosurf-branded shirt at a convention in Las Vegas, Nevada in July 2018. Ex. 1. Similarly, former employee Samuel Levy posted a notice on LinkedIn seeking to schedule meetings at the Affiliate Summit West 2019! Convention held in Las Vegas, Nevada. Ex. 2. Were the Court to find the allegations insufficient, Luminati requests leave to amend with additional facts, but based on the

6

pleading standards this should not be necessary.  As Defendant has furthered its misappropriation of trade secrets by selling the accused "Geosurf" service in the United States, Plaintiff may properly assert this claim and Defendant's motion should be dismissed.

### C. Luminati Properly Pled All the Allegations Necessary for Its False Advertising Claim Under the Lanham Act.

"The Fifth Circuit has held that the elements for a false advertising claim under the Lanham Act are: (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue." *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 U.S. Dist. LEXIS 79068, at *30 (E.D. Tex. Mar. 9, 2018) (citing *Pizza Hut Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).  The allegations in the amended complaint align with these requirements.

BI Science cannot plausibly assert that it has not been put on notice of Luminati's false advertising claims with specificity that meets these pleading requirements.  Luminati clearly identified those advertisements of which Luminati is aware including the two BI Science blog posts attached as exhibits C and D to the Amended Complaint. Dkt. 28-3 and 28-4.  Referring to exhibit C, Luminati specifically alleged that "BI Science has made false and/or misleading statements regarding Luminati and Luminati's residential proxy service in advertising directed toward Luminati's customers" including for example "a blog post on its website titled 'Six Mistakes to Avoid When You Buy a Proxy' by Mr. Ghelber, Luminati's former employee, located on

BI Science's website at https://www.geosurf.com/blog/six-mistakes-to-avoid-when-you-buy-a-proxy/." Amended Complaint at ¶ 20.

Luminati identified a specific false statement ("[s]ome proxy providers look great and fancy until you try to integrate them. *Id.* Some – such as Luminati-are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution"). *Id.* Luminati explained why it was false ("use of Luminati's residential proxy service does not require installation of Luminati's proxy manager"). *Id.* Luminati also alleged upon information and belief that Mr. Ghelber, who was a former Luminati salesperson, knew it to be false. *Id.* These blog posts are designed to divert customers away from Luminati's service to BI Science's competing Geosurf service. The post ends with the bold pitch "Get your GeoSurf's Residential IP Proxy Network account today!" which is a link to allow a prospective customer to order the Geosurf service. The same false statement was repeated in the second blog post. *Id.* Luminati further alleged "[u]pon information and belief, BI Science has specifically targeted customers searching for Luminati in its advertising campaign for Geosurf, which directs prospective customers of residential proxy services to BI Science's website" and provided an image of such an advertisement. *Id.* Luminati alleges, and there is no dispute, that "Geosurf" is a product in interstate commerce. By its very nature, this service is designed to allow a user to route requests through a proxy device located in a specific state or city, including ten cities in Texas. "BI Science hired these former Luminati salespeople for the purposes of selling BI Science's competing "Geosurf" residential proxy service, including in Texas and the United States." *Id.* at ¶ 16. "Finally, Luminati alleged that it has suffered "commercial injuries as a direct result of BI Science's false statements directed to Luminati's customers regarding at least Luminati's residential proxy service." *Id.* at ¶ 73. These allegations clearly meet the legal pleading standard for false advertising under the Lanham Act, and there is no basis to dismiss this claim. Were the Court to disagree, Luminati

requests leave to amend with additional facts, but based on the pleading standards this should not be necessary.

## IV. DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER VENUE, IF CONSIDERED, SHOULD BE DENIED

The remainder of this opposition should be unnecessary—if the Court grants Luminati's motion to strike, that resolves the duplicative jurisdictional and venue arguments. However, were the Court to entertain the second motion by BI Science on the same pending and fully briefed grounds, the second motion also fails.

### A. Background Facts

#### 1. Accused Geosurf Service Is Directed Toward Texas

In general, the asserted claims of the Asserted Patents (U.S. Patent Nos. 9,241,044 ("'044 Patent") and 9,742,866 ("'866 Patent")) are directed toward proxy services that permit a user to request content from a target server over the Internet via a proxy device, such as a third person's mobile device. By routing requests through a proxy device, these inventions permit a user to conceal its identity while the target server perceives the user to be a resident from a specific geographic location indicated by the residential proxy IP address. The claims necessarily require (1) a first device such as a user or client device, (2) one or more proxy devices, and (3) a target server.

Plaintiff asserts that Defendant's residential proxy service known under the brand name "Geosurf" infringes Asserted Patent claims by providing a service that performs all the steps of the claims. Amended Complaint at ¶¶ 21-57. BI Science's customers also infringe the Asserted Patents by implementing the service. Amended Complaint at ¶ 26. As shown in the Amended Complaint, BI Science advertises "Geosurf" as a residential proxy service enabling users to send

requests to a target server over the internet via a pool of millions of proxy devices and specifically touts the ability to select proxies located within 10 specific cities in Texas: Arlington, Austin, Crowley, Dallas, El Paso, Fort Worth, Houston, Katy, San Antonio, and Spring.   Amended Complaint at ¶ 21; Ex. E at 2-3 (Dkt. 28-5).  In addition, at any given time "Geosurf" is believed to have a hundred or more residential proxies available in the Eastern District of Texas. Amended Complaint at ¶ 21. This service involves both Texas customers, who implement the service by activating Defendant's software through their user devices, and Texas residents, who implement the service through Defendant's use of their devices as proxy devices.  Complaint at ¶¶ 5, 21, 22 (explanatory text added in red below).



https://vimeo.com/250282014 (**Time: 00:47 sec to 01:20 sec**)



https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6

Amended Complaint at ¶ 27.

Defendant admits that it has multiple Texas customers currently utilizing this service, but ignores its reliance on Texas residents to provide the necessary residential proxy devices in Texas, despite Luminati making this same argument in the Complaint, Opposition, and Amended Complaint and specifically requesting discovery on the volume and number of Geosurf requests routed through Texas proxies. Second Motion to Dismiss/Transfer at 6. Defendant cannot deny that it is providing a service allowing customers located outside of Texas to specifically route internet requests and responses through the devices of Texas residents.

> 2. <u>BI Science's Allegation Of A Presence In New York Are Contradictory, Completely Unsupported By Facts, And Utterly Insufficient To Establish That Defendant Has An Office In New York City</u>

After filing the First Motion to Dismiss/Transfer and First Moyal Declaration falsely stating that BI Science has an office at a first location in New York City and having asked the Court to wipe the slate clean by mooting all briefing, BI Science has provided a second declaration by Mr. Moyal ("Second Moyal Declaration," Dkt. 36-1 at ¶¶ 4-5) providing a different address for its purported New York office at a second location supposedly occupied by "2 employees (through consulting agreements)," neither of whom are identified, with pictures showing what appears to be an empty conference room (Dkt. 36-2, Ex. A), a receptionist area with approximately 143 mailboxes (Dkt. 36-3, Ex. B), and a large room with at least five rows of tables with at least 3-4 workstations/desks a piece (Dkt. 36-4, Ex. C).  These pictures do not show any signage for BI Science or other evidence that Defendant controls any portion of this office, much less a space where "some sales and marketing documents are located." (Dkt. 36-1 at ¶ 10).  Glaringly, despite Luminati's specific request for documentation showing Defendant's control over the purported

office and relationships with any purported employees residing in New York (Dkt. 22), BI Science provided no agreements or other such documentary evidence of BI Science's control of this space or employment of the two unnamed consultants.[5]

Mr. Dell'Olio, the licensed investigator who submitted the First Dell'Olio Declaration (Dkt. 21-9) showing the representations regarding the purported office in the original Motion to Dismiss and First Moyal Declaration to be false, has also investigated the purported BI Science office location identified in the Second Moyal Declaration, finding no signage for BI Science (2009) Ltd., BI Science Inc. or Geosurf outside the building or in the lobby and no listing for any of entities as occupants at this second location identified in the Second Moyal Declaration. Second Dell'Olio Declaration at ¶ 5.  Mr. Moyal asserts that this office "is part of shared office space, and BI Science sublets its office space there." Dkt. 36-1 at ¶ 5.   However, consistent with the pictures submitted as part of the Second Moyal Declaration, this location appears to simply be a shared office space where one can rent a desk for as little as $550/month. Ex. 4. http://www.coworkingnyc.info/places/build-grand-central-tech-midtown-west-335-madison-ave.html.  Without any documentary evidence showing what exactly BI Science is "subletting" from whom, it appears that BI Science could simply be claiming a desk used by a purported

---

[5] Neither Mr. Moyal nor BI Science have identified who these purported employees are, clarified how they are employees through consulting agreements, or provided the purported consulting agreements for these individuals.  Luminati has been provided no information to allow it to investigate whether these individuals really are employees of BI Science or third-parties who provide consulting work and control the purported office space themselves.  In addition, Mr. Moyal also asserts that BI Science is currently in process of leasing a different office location in New York City at yet a third location, but has not identified this location, and as with the purported current location, has provided no documentation evidencing BI Science's lease or control of this location.  Dkt. 36-1 at ¶ 6.   The only New York address on BI Science's website (https://www.biscience.com/) is at a fourth location, which BI Science admits is not an office, but merely a mailing address.  Dkt. 36 at 1.

12

consultant as BI Science's New York office space.  If BI Science were a domestic entity, which it is not, it is doubtful that such evidence would be sufficient to establish a regular and established place of business under 28 U.S.C. 1400, much less the higher requirements necessary to consider for a motion to transfer to the Southern District of New York under 28 U.S.C. 1404(a).

### B.   The Court Has Personal Jurisdiction Over BI Science

A district court may exercise "specific personal jurisdiction over the defendant subject to a three-part test: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' under the five-factor test articulated by the Supreme Court in *Burger King*." *Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).

### 1.   This Court has Personal Jurisdiction Over the Patent Infringement Claims, Because Defendant Directed Its Infringing Geosurf Service to Texas.

As discussed above, Defendant purposefully directs its activities at residents of Texas, both through Texas customers of the accused Geosurf service and the Texas residents whose devices serve as proxy devices for this service.  As admitted by Defendant, Plaintiff alleges that "BI Science utilizes software, which is, inter alia, the subject of the infringement alleged herein, that routes internet communications through user devices having IP addresses serving as residential proxies located in the State of Texas, as well as this Judicial District, permitting BI Science to include user devices in this Judicial District as part of BI Science's residential proxy service." Second Motion to Dismiss/Transfer at 6; Amended Complaint at ¶ 5.

The asserted infringement claims clearly arise or relate to BI Science's accused residential proxy service.  Amended Complaint at ¶¶ 21-57. Defendant admits that it has current and former

13

"GeoSurf" residential customers in Texas.  Second Motion to Dismiss/Transfer at 7.  As alleged in the Amended Complaint, Defendant and these customers practice the asserted claims *each time* they send a request from a client device in Texas through the Geosurf proxy service.  Amended Complaint at ¶ 26, see also ¶¶ 21-57.  Tellingly, Defendant provides no data showing the number of requests that each Texas customer submitted, but based upon Defendant's advertised prices, BI Science appears to charge about \$10-\$15/GB. Ex. 3.  Estimating an average request to be about 20KB or about 50,000 requests/GB, and given that Defendant admitted to sales of approximately ███████████ in Texas, we can conservatively estimate more than ███████ or ████████ requests a month in Texas. First Motion to Dismiss/Transfer at 5.[6]

As previously addressed in the Opposition, Defendant's reliance on *Roberts v. Paulin* and *Tuna Processors, Inc. v. Anova Food, Inc.* for the proposition that "minimal sales in a forum state, *absent any purposeful activity focused on the state*, are insufficient to confer personal jurisdiction" is misplaced.  Second Motion to Dismiss/Transfer at 7 (emphasis added).  *Roberts* states that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet…. At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of the computer files over the Internet, personal jurisdiction is proper." *Roberts v. Paulin*, 2007 U.S. Dist. LEXIS 80490, at *17 (E.D. Mich. 2007) (finding that defendant

---

[6] In the Second Motion to Dismiss/Transfer, BI Science now provides a lower total revenue that is specifically limited to the month of February 2019.  Second Motion to Dismiss/Transfer at 7.  Regardless of whether the previous average or the February data is used, we can safely estimate that Defendant's Texas customers are infringing the patents ███████████████ a month.

14

did not direct her activities to Michigan where defendant did not make the product available in Michigan stores or feature Michigan on defendant's website); *see also Tuna Processors, Inc. v. Anova Food, Inc*., No. 07-6192-AA, 2007 U.S. Dist. LEXIS 81386, at *7 (D. Or. Nov. 1, 2007) (finding lack of personal jurisdiction in Oregon where only two products were purchased by Oregon residents through defendant's website and crucially defendant had no distribution network designed to bring its products into Oregon).   In contrast, BI Science has admitted to entering into service contracts with Texas residents that necessarily involve the "knowing and repeated transmission" of computer files over the Internet in Texas and between Texas and other venues. In addition, by offering a residential proxy service advertising its IP addresses in Texas, Defendant is purposefully focusing on Texas.   Also, as discussed above, BI Science is purposefully directing Internet communications through devices in Texas as an express feature of its "Geosurf service," which is touted on BI Science's website. Amended Complaint at ¶ 21; Ex. E at 2-3 (Dkt. 28-5).

The asserted claims clearly arise *or relate* to BI Science's advertised use of proxy devices belonging to Texas residents.   The asserted claims of the '044 Patent include the elements of "sending a second request to the second device," and "receiving the first content from the second device" where the second device is a proxy device including the above devices of Texas residents. Amended Complaint at ¶37, ¶¶ 21-27.   The asserted claims of the '866 Patent include the elements of "sending over the Internet a first request to the selected device…" and "receiving over the Internet the content slice from the selected device" where the selected device is a proxy device including the above devices of Texas residents.   Complaint at ¶¶ 50-51, ¶¶ 21-27.   Given that BI Science touts Texas proxy devices, Defendant's position that the use of proxy devices in Texas "is unrelated to any BIScience customer or user" is ridiculous.   Second Motion to Dismiss/Transfer at 6.

Defendant's assertion that it "never purposefully directed any aspect of its business operations to Texas" is simply not true.   Second Motion to Dismiss/Transfer at 8.  Similarly, Defendant cannot credibly argue that assertion of personal jurisdiction is not reasonable and fair given that it actively provides the service to customers in Texas and advertises its service to non-Texas customers as allowing them to utilize residential proxies belonging to residents in Texas. With regard to the last prong, despite having the burden of proof, Defendant has put forth no argument that personal jurisdiction would not be reasonable and fair.   Consequently, personal jurisdiction is proper with regard to the patent infringement claims.

2.   <u>The Court Also Has Personal Jurisdiction under Fed. R. Civ. P. 4(k)(2), Because Neither New York, Nor Any Other State has General Personal Jurisdiction Over Defendant.</u>

In the alternative, Plaintiff asserted personal jurisdiction under Fed. R. Civ. P. 4(k)(2), which provides "for a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Amended Complaint at ¶5.  As discussed above in Section IV, Defendant has provided contradictory and unsupported facts that would not be sufficient to establish that BI Science has a regular and established place of business in New York, much less that it could meet the requirements for general jurisdiction in the New York.  At most, without any supporting documentary evidence, BI Science appears to allege that it sublets some space in a shared office in New York City, which may amount to renting a desk, where BI Science purportedly has two consultants.  Even assuming that these unsubstantiated representations are true, such ties are too tenuous and insubstantial to satisfy the requirements for general jurisdiction following *Daimler AG v. Bauman*.   571 U.S. 117, 127 (2014) ("a court may assert general

16

jurisdiction over foreign (sister state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state.")  Given Defendant's activities in Texas and without any evidence that the Southern District of New York has general jurisdiction over Defendant, this Court also has personal jurisdiction under Fed. R. Civ. P. 4(k)(2).

### 3. The Court Has At Least Pendant Jurisdiction Over the Non-Patent Claims, Because They Share the Same Nucleus of Facts with the Patent Claims.

The non-patent claims are similarly related to the infringement claims, specifically BI Science's sales activities related to its infringing "Geosurf" service, which BI Science admits selling to Texas customers and promoting as a service that uses Texas proxy devices. Plaintiff alleges that Defendant (a) tortiously interfered with Luminati's employee contracts with former salespeople of Luminati's residential proxy service, by employing them to sell BI Science's competing "Geosurf" service in Texas and the United States; (b) misappropriated Luminati trade secrets known to these former employees in the selling of the "Geosurf" service in Texas and the United States; (c) engaged in false advertising including the posting of a "Geosurf" promotional blog by one of the former Luminati employee with a false statement disparaging Luminati's residential proxy service; and (d) tortiously interfered with Luminati's business relationships by intentionally contacting Luminati current and prospective residential proxy service customers using Luminati's former salespeople and Luminati's trade secrets to prevent these relationships. Amended Complaint at ¶¶ 59-61, 65-66, 71-73; 76-78; see also ¶¶ 15-21.  All the claims are related through the sale and offers for sale of the infringing "Geosurf" service ties.

> "Upon information and belief, BI Science hired these former Luminati employees despite the non-compete clause of the Employment Agreements or was willfully blind to these former Luminati employees being subject to such a provision. Upon information and belief, BI Science hired these former Luminati employees knowing them to be former Luminati employees with knowledge of Luminati's trade secrets

including confidential information related to Luminati's residential proxy service. Upon information and belief, BI Science hired these former Luminati salespeople for the purposes of selling BI Science's competing "Geosurf" residential proxy service, including in Texas and the United States. Upon information and belief, the former Luminati employees have touted their experience with Luminati as part of their approach to Luminati clients offering the "GeoSurf" service as an alternative in competition with Luminati's residential proxy service. Upon information and belief, Luminati's former employees employed Luminati's confidential trade secrets on behalf of BI Science in furtherance of the competing "Geosurf" residential proxy service. Upon information and belief, Luminati lost Texas and United States customers for its residential proxy service and associated revenues to BI Science's competing Geosurf service." *Id.* at ¶ 16.

Luminati lost customers of its residential proxy service in Texas to BI Science's competing "Geosurf" service as a result of Defendant's actions that are the subject of Luminati's claims. Consequently, personal jurisdiction is proper, because elements of the claims, including the harm suffered by Plaintiff as a result of Defendant's tortious interference were committed in Texas.

In the alternative, to the extent that the Court does not find specific personal jurisdiction over the tortious interference claim, "[p]endant personal jurisdiction … exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp.2d 765, 783 (N.D. Tex. 2008). "[T]he exercise of pendent personal jurisdiction remains discretionary with the court." *Id.* at 784.

Here, all the non-patent claims involve overlapping allegations involving the former Luminati salesmen and the sale/promotion of the infringing "Geosurf" service that resulted in harm to Luminati in Texas and the United States. These non-patent claims share the same nucleus of facts with the patent claims, which includes Luminati's former employee salespeople selling or

18

offering to sell the infringing "Geosurf" service to prospective and current Luminati customers. Amended Complaint at ¶¶ 5, 20, 39-40, 53-54, 60-61, 65-66, 70.  BI Science cannot credibly argue that the tortious interference claims do not rise from the same set of facts as the patent infringement claims.  Second Motion to Dismiss/Transfer at 9.  Under either specific personal jurisdiction or pendant personal jurisdiction, the Court has personal jurisdiction over the tortious interference claim.

### C.  BI Science Fails To Meet Its Burden For Its Motion to Transfer To New York

As an alternative to dismissal, despite the still pending First Motion to Dismiss/Transfer, Defendant makes a new motion to transfer of this action to the Southern District of New York under 28 U.S.C. § 1404(a).  As discussed above in Section IV.A.ii, the motion to transfer in the First Motion to Dismiss/Transfer was based on Mr. Moyal's false representation that BI Science has an office on what turned out to be the sixteenth floor of a fifteen-story building.  This new motion is based upon Mr. Moyal's new representation that BI Science "sublets" what could be no more than a desk in a "shared space" at a second location in New York City where BI Science has two unnamed "employees (through consulting agreements)." Second Moyal Declaration at ¶ 5. As with the First Moyal Declaration, these representations are not supported by any sub-lease agreement or consulting agreements despite Luminati's pending motion for venue discovery seeking such. Instead, the Second Moyal Declarations include pictures of an empty conference room, over a hundred mailboxes, and a room which appears to be a large shared space with many rows of workstations, each of which appears to have at least 3-4 desks.  At best, these pictures are consistent with renting one of the desks advertised at $550 a month rather than office space. Ex. 4.  http://www.coworkingnyc.info/places/build-grand-central-tech-midtown-west-335-madison-

ave.html.  In addition, there is no signage for BI Science (2009) Ltd., BI Science Inc. or Geosurf outside the building or in the lobby and no listing for any of entities as occupants at this second location identified in the Second Moyal Declaration. Second Dell'Olio Declaration at ¶ 5.

Plaintiff does not dispute that this case could have been brought in the Southern District of New York, given that BI Science similarly directs its "Geosurf" service to customers and residents of New York, although Defendant only advertises half as many cities in New York compared to Texas as proxy locations.  Ex. E of Amended Complaint (Dkt. 28-5).  However, the Southern District of New York is not "clearly more convenient" than the Eastern District of Texas and this motion should be denied.  *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).

### 1.   The Private Factors Disfavor Transfer

The private factors to be weighed in considering transfer are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The private factors disfavor transfer.

### a.   *The Relevant Sources of Proof Are In Israel*

To the extent that evidence needs to be collected on site, the relevant sources of proof are in Israel for both parties.  As admitted by BI Science, "[t]he individuals referenced and identified in Plaintiff's Complaint ***all*** live and work in Israel, including Kfir Moyal, Assaf Toval, Alon Ghelber, Samuel Levy, and Vadim Feldman…"  Second Motion to Dismiss/Transfer at 12-13 (emphasis in original). At most, BI Science asserts that the purported "New York office has access to relevant documentation, such as documents regarding sales and marketing activity" without

asserting that any documents are actually stored at this purported shared space.[7] Id. At 11. Obviously, electronically stored documents can be accessed anywhere and certainly more conveniently at an actual office as opposed to a shared space such as a desk.  Consistent with the default protective order, Plaintiff anticipates source code being stored at the offices of outside counsel.  Consequently, this factor does not favor transfer.

      *b.   The Availability of Compulsory Process To Secure The Attendance of Witnesses Is Neutral*

While not addressed in Defendant's motion, neither District has an advantage in the availability of compulsory process to secure the attendance of witnesses.  This factor is neutral.

      *c.   Cost and Convenience For Witnesses Is Neutral.*

As previously addressed in the Opposition, Defendant mistakenly relies upon *Uniloc USA, Inc. v. Apple, Inc.* where the Court transferred an action to the Northern District of California stating "the Court finds that the significant number of both party and non-party witnesses in California have shown that the convenience of the witnesses weighs strongly in favor of transfer." Ex. B to Second Motion to Dismiss/Transfer (Dkt. 36-3) at 21.   In contrast, as admitted by Defendant, "[t]he individuals referenced and identified in Plaintiff's Complaint ***all*** live and work

---

[7] Where the Second Motion to Dismiss is ambiguous in referring to accessibility, the Second Moyal Declaration states "[s]ome sales and marketing documents are located in BI Science's New York office."  Second Moyal Declaration at 10.  Given the inconsistencies in Mr. Moyal's declarations, little weight should be given to this declaration absent an opportunity for the venue discovery requested in Luminati's pending motion for venue discovery (Dkt. 22), which includes a request for a limited deposition of Mr. Moyal.  Despite the opening of discovery with yesterday's scheduling conference, this motion is still relevant as Plaintiff should not be forced to conduct a deposition of declarant Mr. Moyal as a matter of right under FRCP 30(a)(1) to secure limited venue discovery, only to require Plaintiff to later seek leave of the Court to depose Mr. Moyal under FRCP 30(a)(2) on the substantive issues of the case.

in Israel, including Kfir Moyal, Assaf Toval, Alon Ghelber, Samuel Levy, and Vadim Feldman…"
Second Motion to Dismiss/Transfer at 12-13 (emphasis in original).  Any relative difference in
international travel time between Israel and Texas or New York is marginal. This factor does not
favor transfer.

> ### d.  All Other Practical Considerations, Including Judicial Economy, Strongly Disfavor Transfer

Defendant admits that "judicial economy" is a consideration to be considered under other
practical considerations, but ignores the fact that a case involving the same Asserted Patents is
already pending before this Court in *Luminati Networks Ltd. v. UAB Tesonet*, case no. 2:18-cv-
299-JRG.  With a claim construction hearing and jury selection already scheduled for July 24,
2019 and February 3, 2020, judicial economy favors keeping the action in Texas.  "Where multiple
and parallel lawsuits in two different jurisdictions are contemplated, judicial economy weighs
heavily in the Court's transfer analysis."  *ConCam Int., Inc. v. Mobotix Corp.*, 2:13-cv-798, slip
op. at 7 (E.D. Tex. Aug. 26, 2014) (citing *In re Volkswagen*, 566 F.3d at 1351). These cases will
present common issues of law and fact, and judicial economy favors the avoidance of parallel
litigation in multiple courts disfavoring transfer.

> ## 2. The Public Factors Also Disfavor Transfer

The public factors to be weighed in considering transfer are: (1) the administrative
difficulties flowing from court congestion; (2) the local interest in having localized interest decided
at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the
avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *In re
Volkswagen AG*, 371 F.3d at 203.  The public factors also disfavor transfer.

> ### a.  The Administrative Difficulties Flowing From Court Congestion Strongly Disfavor Transfer

Defendant admits that the average time to trial in the Southern District of New York is 29.4 months or 10 months longer than the average time to trial in the Eastern District of Texas of 19.1 months.  Second Motion to Dismiss/Transfer at 15.  Clearly, this factor disfavors transfer.

### b.  The Local Interest in Having Localized Interests Decided at Home

Both Districts have the same interest in having this case decided locally as the case involves Defendant's infringing residential proxy service, which directs Internet requests through proxies located in both Districts.  Defendant's bogus argument that the Southern District of New York has an interest in this dispute because "[a]s alleged by Luminati, this suit calls into question the work and reputation of BIScience employees conducting business in the Southern District of New York" (Second Motion to Dismiss/Transfer at 14) is completely false as BI Science also admits that "[t]he individuals referenced and identified in Plaintiff's Complaint *all* live and work in Israel, including Kfir Moyal, Assaf Toval, Alon Ghelber, Samuel Levy, and Vadim Feldman…" (id. At 12-13, emphasis in original).

### c.  The Remaining Public Interest Factors

The remaining factors do not favor transfer either as the Eastern District of Texas has extensive experience with patent law cases.  These factors are at least neutral.

## V.    CONCLUSION

Luminati respectfully requests that the motions to dismiss and transfer be denied. However, to the extent that the Court entertains either motion, Luminati also requests a ruling on its pending motion for venue discovery, including (a) documentation showing Defendant's control over the purported office in New York and relationship with any purported employees residing in New York; (b) a deposition of Mr. Moyal limited to jurisdictional discovery and separate from the normal deposition anticipated during normal discovery under FRCP 30(a)(1); (c) documentation

showing Defendant's correspondence with entities located in Texas regarding "Geosurf"; and (d)

documentation and/or other written discovery showing the volume and number of Internet requests

initiated from or routed through Texas as part of the Geosurf service by month and year.

Dated:  March 19, 2019

By: */s/ Ronald Wielkopolski*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702
(510) 944-0190
Email: sunnyc@ruyakcherian.com
Email:  bobh@ruyakcherian.com

Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Email: ronw@ruyakcherian.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served this 19th day of March, 2019, with a copy of this document via electronic mail.

*/s/ Ronald Wielkopolski*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is being filed under seal pursuant to the Unopposed Motion for Leave to File Under Seal that is being filed concurrently with this Response.

*/s/ Ronald Wielkopolski*