**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **LUMINATI NETWORKS LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:18-CV-00483-JRG** |
| | § | |
| **BISCIENCE INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant BIScience Inc.'s ("BIScience") Motion to Dismiss, and in the Alternative, Motion to Transfer Venue (the "First Motion to Dismiss"). (Dkt. No. 15.) Additionally, before the Court is BIScience's Second Motion to Dismiss, and in the Alternative, Motion to Transfer Venue (the "Second Motion to Dismiss") (Dkt. No. 36), as well as Plaintiff Luminati Networks Ltd.'s ("Luminati") Motion to Strike Portions of Defendant's Second Motion to Dismiss (the "Motion to Strike") (Dkt. No. 40). Finally, before the Court is Luminati's Motion for Early Venue Discovery. (Dkt. No. 22.)

Having considered these motions and for the reasons set forth herein, the Court finds that Luminati's Motion to Strike should be and hereby is **DENIED**. The Court further finds that BIScience's First Motion to Dismiss should be and hereby is **DENIED AS MOOT**. BIScience's Second Motion to Dismiss should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. BIScience's Second Motion to Dismiss is **GRANTED** as to Luminati's claim for tortious interference with employment agreements, but is otherwise **DENIED**. Also, Luminati's Motion for Early Venue Discovery is **DENIED AS MOOT**.

## Background

Luminati filed its first Complaint (the "Original Complaint") against BIScience alleging direct and indirect infringement of U.S. Patent Nos. 9,241,044 (the "'044 Patent") and 9,742,866 (the "'866 Patent") (collectively, the "Asserted Patents"), as well as tortious interference with Luminati's employment agreements and misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"). (Dkt. No. 1.) BIScience then filed its First Motion to Dismiss directed at the Original Complaint arguing that this Court lacked personal jurisdiction over BIScience; that, if the Court did have jurisdiction, the case should nonetheless be transferred; and that the Original Complaint failed to state claims for violation of the DTSA or indirect infringement of the Asserted Patents. (Dkt. No. 15.) Luminati opposed the First Motion to Dismiss and moved for early venue discovery. (Dkt. No. 22.)

While briefing on the First Motion to Dismiss was ongoing, Luminati filed its First Amended Complaint.[1] (Dkt. No. 28.) The First Amended Complaint adds additional claims for false advertising under the Lanham Act and tortious interference with current and prospective business relationships. (*Id.* ¶¶ 69–78.) The First Amended Complaint also alleges new facts relevant to this Court's personal jurisdiction over BIScience. (*E.g. id.* ¶ 5.) These facts also bear on whether a transfer of venue is appropriate. BIScience took the position that the First Amended Complaint mooted the First Motion to Dismiss and filed its Second Motion to Dismiss. (Dkt. No. 36.) Luminati took the position that the First Motion to Dismiss was not moot in its entirety and

---

[1] The Court notes that the First Amended Complaint was filed 22 days after the First Motion to Dismiss (*compare* Dkt. No. 15 (filed Jan. 28, 2019), *with* Dkt. No. 28 (filed Feb. 19, 2019)), and thus outside of the window in which Luminati could amend as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). The Court is not aware of any written consent given by BIScience for this amendment. *Id.* 15(a)(2). However, in the interest of justice, and to the extent not cured by the subsequent Docket Control Order (Dkt. No. 59), the Court *sua sponte* and *ex post* grants leave for this amendment. *Id.*

moved to strike the portions of the Second Motion to Dismiss that Luminati argued were duplicative of the First Motion to Dismiss. (Dkt. No. 40.) The Second Motion to Dismiss asserts the same bases for dismissal or transfer as the First Motion to Dismiss, except BIScience drops its Rule 12(b)(6) defense as to Luminati's claim for indirect infringement and adds a Rule 12(b)(6) defense as to Luminati's Lanham Act claim. (*Compare* Dkt. No. 15, *with* Dkt. No. 36.)

## Luminati's Motion to Strike

The Court finds that the First Amended Complaint mooted the First Motion to Dismiss directed at the Original Complaint. BIScience properly directed its Second Motion to Dismiss at the First Amended Complaint. Accordingly, BIScience's First Motion to Dismiss is **DENIED AS MOOT** and Luminati's Motion to Strike is **DENIED**.

### I.     Legal Standard

"Generally, an amended pleading supersedes the original for all purposes." *Nolen v. Lufkin Indus., Inc.*, 466 F. App'x 895, 898 (Fed. Cir. 2012); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect . . . ."). "A motion to dismiss that attacks the superseded complaint may be denied as moot." *New World Int'l, Inc. v. Ford Global Techs., LLC*, No. 3:16-CV-1112-M, 2017 WL 1078525, at *5 (N.D. Tex. Mar. 22, 2017); *see also WorldVentures Holdings, LLC v. Mavie*, No. 4:18-CV-393, 2018 WL 6523306, at *16 (E.D. Tex. Dec. 12, 2018). However, where a motion to dismiss attacks the original complaint for deficiencies that persist in the amended complaint, the court has discretion to apply the original motion to dismiss to the amended complaint rather than deny the motion as moot. *New World*, 2017 WL 1078525, at *5; *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2019) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the

new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

## II.    Discussion

The Court finds that the proper course is to deny the First Motion to Dismiss as mooted by the First Amended Complaint.

Luminati argues that its First Amended Complaint did not necessarily moot the First Motion to Dismiss and, as a result, the Second Motion to Dismiss is a duplicative motion that represents an abusive litigation tactic. (Dkt. No. 40, at 5–6.) While Luminati is correct that other courts have found motions to dismiss and motions to transfer not mooted by amended complaints, these courts recognized that it was an act of their "discretion" to consider such motions to the extent "such a motion remains applicable." *WowWee Grp. Ltd. v. Wallace*, CV-12-2298-MWF(VBKx), 2012 WL 13013022, at *2 (C.D. Cal. June 27, 2012). Indeed, it is within the Court's discretion to consider a motion directed to a superseded pleading where the motion remains applicable to the amended pleading—that is, where the amended pleading has not addressed the defects raised in the motion. However, it is equally within the discretion of the Court to deny such motion where it is not applicable. The Court finds that the latter situation is present here. This decision is largely facilitated by BIScience's filing of its Second Motion to Dismiss.

The purpose of interpreting a motion directed at a superseded complaint as one directed at the amended complaint is to save time and resources in situations where the motion is fairly applicable to amended complaint, not to unfairly tie the hands of the movant in situations where it is not. The plaintiff should not be allowed to amend its complaint in response to a motion and then require the movant to rest on its outdated briefing.

Luminati argues that Rule 12(b)(2) motions are distinguishable from Rule 12(b)(6) motions or other motions on the pleadings and thus cases finding such motions moot are inapposite. (Dkt.

No. 57, at 2–3.) Luminati provides no basis for this supposed distinction. *See, e.g.*, *New World*, 2017 WL 1078525, at *5 (denying as moot a motion to dismiss for lack of personal jurisdiction and improper venue directed towards a superseded complaint). Though discovery is available in determining a Rule 12(b)(2) motion, the Court also relies on the facts pled in the complaint, just as it does in a Rule 12(b)(6) motion. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) ("[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true . . . ."). The First Amended Complaint, in addition to adding new causes of action, alleges new facts, including new facts alleged in support of this Court's jurisdiction. (*See* Dkt. No. 28 ¶ 5.) The plaintiff cannot shift the playing field during the course of briefing on a motion and reasonably expect that the defendant will not be given an opportunity to respond with a new and properly directed motion.

Luminati also argues that the Second Motion to Dismiss is barred by Rule 12(g). (Dkt. No. 40, at 7–8.) It is true that Rule 12(g) would prevent BIScience from raising an argument in its Second Motion to Dismiss that was available to it but not asserted in its First Motion to Dismiss. Fed. R. Civ. P. 12(g)(2). However, Luminati identifies no such arguments. On the contrary, Luminati affirmatively states that "BIScience's Second Motion to Dismiss is based on the same grounds as the First Motion to Dismiss." (Dkt. No. 40, at 9; *see also id.* at 1–2.)

Finally, Luminati's argument that the Second Motion to Dismiss effectively circumvents this Court's local rules regarding briefing schedules and page limits is unfounded. (*Id.* at 8–9.) BIScience timely responded to Luminati's First Amended Complaint with a new motion directed at the First Amended Complaint. Fed. R. Civ. P. 12(a)–(b), 15(a). BIScience briefed this motion within the prescribed page limits and without seeking to incorporate by reference arguments made in its First Motion to Dismiss.

Luminati's First Amended Complaint superseded the Original Complaint and added allegations to address defects asserted by the First Motion to Dismiss. Accordingly, the Court denies the First Motion to Dismiss as moot and considers instead the Second Motion to Dismiss. Luminati's Motion to Strike is denied.

## BIScience's Second Motion to Dismiss

Turning to the Second Motion to Dismiss, the Court finds that it has specific personal jurisdiction or supplemental personal jurisdiction over all of Luminati's claims. However, the Court declines to exercise supplemental jurisdiction over the claim for tortious interference with employment agreements. Accordingly, the tortious interference with employment agreements claim is **DISMISSED WITHOUT PREJUDICE**. The Court further finds that transfer of venue is not warranted and that Luminati has stated claims for violations of the DTSA and the Lanham Act. Therefore, the remainder of BIScience's Second Motion to Dismiss is **DENIED**.

I.      **Motion to Dismiss for Lack of Jurisdiction**

The Court finds that it has specific personal jurisdiction over Luminati's claims for patent infringement and false advertising. Additionally, the Court has supplemental jurisdiction over the remainder of Luminati's claims. However, the Court declines to exercise supplemental jurisdiction over Luminati's claim for tortious interference with employment agreements, as determination of that claim is best left to the judicial authority of the State of Israel.

A.  **Legal Standard**

Federal Circuit law governs personal jurisdiction where "a patent question exists." *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id.* "Because the Texas long-arm statute extends to

the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *accord Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) ("California and federal due process limitations are coextensive, and thus the inquiry collapses into whether jurisdiction comports with due process.") (internal quotation marks omitted).

For due process to be satisfied, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "A court must inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361–62 (Fed. Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Upon a showing of purposeful minimum contacts, the defendant bears the burden to prove unreasonableness. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Where a court has personal jurisdiction over the patent claims asserted, the court also has supplemental personal jurisdiction over "non-patent claims to the extent they form part of the 'same case or controversy' as the patent claims." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008). 28 U.S.C. § 1367 "confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the 'same case or controversy' requirement is satisfied." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003).

### B. Discussion

The Court finds that it has personal jurisdiction over BIScience as to Luminati's claims of patent infringement. BIScience has sold its allegedly infringing GeoSurf service to at least 52 customers in Texas. (Dkt. No. 36-1 ¶ 11.) Additionally, BIScience's service allows customers all over the world to utilize residential proxy devices in ten Texas cities—Arlington, Austin, Crowley, Dallas, El Paso, Fort Worth, Houston, Katy, San Antonio, and Spring—and BIScience advertises as such. (Dkt. No. 28-5, at 2–3.) Those proxy service activities are "purposefully directed" at Texas, and Luminati's claims for patent infringement allege "injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472. Accordingly, specific personal jurisdiction is proper over these claims.

*Blue Spike, LLC v. Texas Instruments, Inc.*, upon which BIScience relies (Dkt. No. 53, at 3–4), is distinguishable. No. 6:12-cv-499, 2014 WL 11829323 (E.D. Tex. Mar. 31, 2014). In *Blue Spike*, the plaintiff attempted to establish jurisdiction by arguing that "[defendant's] partners—and therefore [defendant] itself operates pervasively throughout Texas." *Id.* at *3. The plaintiff also argued that the defendant's website included a "partner locator" that directed customers to partners in Texas. *Id.* at *2. The court found these arguments unpersuasive, noting that "[t]he Court's focus is on [defendant's] actions, not third-party customers." The court held that the plaintiff had not established that the defendant's partner's contacts with Texas related to the claims in that case. *Id.* at *3.

By contrast, in the instant case, BIScience itself, not a third-party, has purposefully directed activities toward Texas. These contacts relate directly to the claims at issue. BIScience is accused, *inter alia*, of directly and indirectly infringing method claims in the Asserted Patents. (Dkt. No. 28 ¶¶ 39–40, 53–54.) BIScience allegedly does this by allowing its customers to request content via selected residential proxy devices, including many located in Texas. (*See id.* ¶ 49.) BIScience is

also accused of implementing these residential proxies. (*Id.* ¶ 24, 39, 53.) The ability to direct internet traffic through proxies situated in various locations, including Texas, is a key advertised feature of BIScience's service:

> A proxy will also give you access to a set of proxy servers located worldwide, which will help you solve the location obstacle easily: Just select your preferred location, whether it's the United States or Madagascar, and surf in total anonymity and freedom.

(Dkt. No. 28-4, at 5; *see also* Dkt. No. 28-3, at 2 ("Location is key. One of the reasons to use a proxy, is to appear as if you were surfing from a different place.").) Far from being unrelated, BIScience's encouragement of customers to use proxies, including those located in Texas, is foundational to Luminati's claims of patent infringement. Specific personal jurisdiction over these claims is therefore appropriate.

BIScience allegedly relied upon false advertising to sell these same proxy services. (Dkt. No. 28 ¶ 20.) Therefore, the Court has personal jurisdiction over BIScience with regard to Luminati's Lanham Act claim as well.

The Court likewise finds that it may exercise supplemental personal jurisdiction over Luminati's claims for tortious interference with employment agreements, misappropriation of trade secrets, and tortious interference with current and prospective business relationships. The factual underpinnings of whether BIScience misappropriated trade secrets by interfering with Luminati employment and confidentiality agreements bear directly on Luminati's claim for patent infringement—particularly whether such infringement was willful. *Droplets, Inc. v. Adobe Sys., Inc.*, No. 2:06-CV-307, 2008 WL 11446843, at *4 (E.D. Tex. Aug. 29, 2008); *see also Performance Pulsation Control, Inc. v. Sigma Drilling Techs.*, LLC, No. 4:17-CV-00450, 2017 WL 5569897, at *4 (E.D. Tex. Nov. 20, 2017) (finding that claims for copyright infringement and trade secret misappropriation arose from the same operative facts). Moreover, Luminati's claims

for patent infringement may be a necessary predicate to a claim for tortious interference with business relations under Texas law, which requires that "the defendant's conduct [be] independently tortious or unlawful." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). These claims "arise out of 'a common nucleus of operative fact'" and thus form the "same case or controversy" for purposes of § 1367. *Silent Drive*, 326 F.3d at 1206 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Although the Court has supplemental jurisdiction over these claims, its exercise of this jurisdiction is discretionary. 28 U.S.C. § 1367(c). The Court declines to exercise jurisdiction over Plaintiff's claim for tortious interference with employment agreements. As to this claim, Luminati alleges that BIScience hired former employees of Luminati for the purpose of obtaining Luminati's trade secrets, in violation of those former employees' employment agreements, which contained both non-compete and confidentiality provisions. (Dkt. No. 28 ¶¶ 15–17, 59–60.) While Luminati does not allege where these events took place, BIScience CEO Kfir Moyal declared, and Luminati did not dispute, that they occurred exclusively in Israel. (Dkt. No. 36-1 ¶ 13; *see, e.g.,* Dkt. No. 44, at 5–7.) Accordingly, the Court is persuaded that Israeli law would apply to Luminati's claim for tortious interference with employment agreements, and that any evidence of such is likely centered in the State of Israel.

A federal court exercising supplemental jurisdiction must apply the choice-of-law rules of the state in which it sits. *Janvey v. Brown*, 767 F.3d 430, 435 (5th Cir. 2014). Texas has adopted the Restatement (Second) of Conflict of Laws' "most significant relationship" test to decide choice of law issues. *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). Section 145 of the Restatement sets out the following factors for determining which forum's laws should apply to tort claims:

(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the . . . place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971). Most if not all of these factors counsel in favor of this dispute—between two Israeli companies, regarding contracts executed in Israel, and involving employees based in Israel—being decided under Israeli law. (*See, e.g.*, Dkt. No. 36-1 ¶ 13.)

Having determined that Israeli law would likely apply to this action, the underlying conduct of which occurred entirely in Israel, the Court finds that resolution of this dispute is properly left to the court system in Israel. "[C]omity and the principle of avoiding unreasonable interference with the authority of other sovereigns dictate in this case that the district court decline the exercise [of] supplemental jurisdiction under § 1367(c)." *Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007). The Court therefore declines to exercise supplemental jurisdiction over Luminati's claim for tortious interference with employment agreements.

## II. Motion to Transfer Venue

Turning to BIScience's alternative motion to transfer venue pursuant to § 1404(a), the Court concludes BIScience has failed to demonstrate that the Southern District of New York is clearly more convenient than Luminati's chosen venue in the Eastern District of Texas.

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing by the movant "that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *In re Volkswagen*

*of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). In making this determination the court considers certain public and private interest factors. *Id.*

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*; *Volkswagen*, 545 F.3d at 315. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Genentech*, 566 F.3d at 1342; *Volkswagen*, 545 F.3d at 315. Motions to transfer venue are to be decided based on the situation that existed when the suit was filed. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

## B.  Discussion

BIScience, as a foreign corporation, is subject to suit in any judicial district for venue purposes. 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018). Accordingly, while venue is proper before this Court, this action also could have been brought in the Southern District of New York. However, BIScience has failed to show that the Southern District of New York is a clearly more convenient forum.

As a preliminary matter, the Court addresses Luminati's allegations that the multiple declarations of Mr. Moyal, are deceptive and improper attempts to bolster BIScience's venue arguments.[2] (*E.g.*, Dkt. No. 73, at 1.) The Court disagrees with Luminati on both points. The Court

---

[2] Mr. Moyal submitted three declarations in support of BIScience's motions to dismiss. The first was submitted in support of the First Motion to Dismiss. (Dkt. No. 15-2.) The second was submitted in support of the Second Motion to Dismiss, and repeated much of the same information as the first declaration. (Dkt. No. 36-1.) The third declaration, filed along with BIScience's reply

accepts Mr. Moyal's explanation that BIScience's New York office address as stated in his first declaration contained a typographical error. (Dkt. No. 36-1 ¶ 4.) Nor does the Court fault BIScience for properly responding to Luminati's First Amended Complaint, which bolstered Luminati's venue arguments, by filing a Second Motion to Dismiss addressed to the new complaint that bolstered BIScience's own arguments in favor of venue in New York.[3]

However, the Court disagrees with BIScience that its presence in Manhattan is significant enough to tip the venue scales in its favor. BIScience has provided little information about the office it maintained at the time this action was filed, but what little information is available— including the membership agreement BIScience submitted as to its subsequently acquired space— indicates that this "office" was simply a single desk in a shared office space. (Dkt. No. 36-1 ¶ 4– 6; 53-2.) The Court now turns to a specific analysis of the private and public interest factors.

### 1. Private Interest Factors

<u>Access to Sources of Proof.</u> BIScience argues that New York is a more convenient forum because its "New York office has *access* to relevant documentation." (Dkt. No. 36, at 11 (emphasis added).) Specifically, BIScience argues that relevant documents "can be securely accessed remotely and maintained in the New York office." (*Id.*) BIScience does not explain why this would be relatively easier than accessing documents remotely from anywhere else in the world, such as its home office in Israel or its counsel's offices in Tyler, Texas. Indeed, both of these locations

---

in support of the Second Motion to Dismiss, alerted the Court that BIScience had moved offices in New York (Dkt. No. 53-1), a possibility Mr. Moyal had already raised in his second declaration (Dkt. No. 36-1 ¶ 6).

[3] BIScience's Second Motion to Dismiss elaborated upon the arguments already made in its First Motion to Dismiss. As discussed above, the Court finds that BIScience did not improperly advance new arguments in violation of Rule 12(g).

would be a more convenient place to "securely access" documents than a desk in a shared office in Manhattan. The Court finds this factor is neutral.

Availability of Compulsory Process. Most of the relevant witnesses appear to be within the control of the parties, and those that are not reside in Israel. Neither party has identified potentially relevant witnesses that would be susceptible to compulsory process in one venue but not the other. This factor is neutral.

Cost of Attendance of Willing Witnesses. All of the relevant witnesses identified by the parties reside in Israel. While the Court recognizes the inconvenience of overseas travel, these "witnesses will be inconvenienced with international travel regardless whether this case is transferred." *Accuhale LLC v. AstraZeneca LP*, No. 6:11-cv-707-LED, 2013 WL 12322594, at *4 (E.D. Tex. Mar. 27, 2013). Thus, "these witnesses are discounted for the purpose of transfer analysis." *Id.*; *accord Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 Civ. 740(WHP), 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999) (stating that witnesses traveling from Finland were no more inconvenienced by having to travel to Indiana than they would be traveling to New York); *Cento Grp., S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1061–62 (S.D.N.Y. 1993) (European plaintiff was no more inconvenienced by litigating in California than in New York); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 484 (D.N.J. 1993) (plaintiff's witnesses from Japan were no more inconvenienced by testifying in Minnesota than in New York). This factor is also neutral.

Other Practical Problems. "Where multiple and parallel lawsuits in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis." *ComCam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-cv-798-JRG, 2014 WL 4229711, at *4. A related case currently pending before this Court, *Luminati Networks Ltd. v. UAB Tesonet*, No. 2:18-cv-299-JRG, also alleges infringement of the Asserted Patents. These cases "will present common

issues of law and fact, and judicial economy favors the avoidance of parallel litigation in multiple courts." *ComCam*, 2014 WL 4229711, at *4. This factor weighs against transfer.

## 2. Public Interest Factors

Administrative Difficulties Flowing from Court Congestion. The parties agree that that the average time to trial in the Southern District of New York is 29.4 months,10 months longer than the average time to trial in the Eastern District of Texas, which is 19.1 months. (Dkt. No. 36, at 15; Dkt. No. 44, at 23.) The congestion faced by the Southern District of New York, resulting in trial times more than 50% longer than in the Eastern District of Texas, weighs against transfer.

Local Interest. BISciences argues that this suit "calls into question the work and reputation of BIScience employees conducting business in the Southern District of New York," but BIScience has not identified these employees. (Dkt. No. 36, at 14.) There is no indication, either from the First Amended Complaint or BIScience's Second Motion to Dismiss, that the conduct of any consultant or employee in New York has been implicated by this case. Moreover, evidence that an Israeli company rents what appears to be a single desk in a shared office space in Manhattan does not create a local interest in this case being resolved in New York. Accordingly, the Court finds that this factor is neutral.

Remaining Factors. The Southern District of New York and Eastern District of Texas are both familiar with the federal law that will govern most of the claims in this case. The parties have not alerted the Court to any applications of state or foreign law that would bear upon either courts' relative familiarity with the governing law or any conflict of law issues. The Court finds that these factors are also neutral.

In summary, the Court finds that two of the relevant factors weigh against transfer, six are neutral, and none weigh in favor of transfer. The Court concludes that BIScience has failed to demonstrate that the Southern District of New York is a clearly more convenient forum.

Accordingly, the motion to transfer is denied. Consequently, Luminati's motion for venue discovery is denied as moot.

## III.    Motion to Dismiss for Failure to State a Claim

Having determined that the Court has personal jurisdiction over BIScience and that venue is proper in this district, the Court turns to BIScience's motion to dismiss for failure to state a claim. The Court finds that Luminati has stated a claim for trade secret misappropriation under the DTSA and a claim for false advertising under the Lanham Act.

### A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" where the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. To be legally sufficient, the complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id*. The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255–57. "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). If it is apparent from the face of the complaint that an

insurmountable bar to relief exists, the court must dismiss the claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## B. Discussion

### 1. Trade Secret Misappropriation

BIScience argues that Luminati has failed to state a claim for misappropriation that is actionable under the DTSA because "Luminati fails to allege any conduct occurring in the U.S. relating to the alleged misappropriation," as required under the statute. (Dkt. No. 36, at 16.) Luminati responds that "the sale of [BIScience's] competing 'Geosurf' residential proxy service using [Luminati's] trade secrets causing harm to Luminati in the United States was clearly in furtherance of its misappropriation of Luminati's trade secrets," and thus such a claim is actionable under the DTSA. (Dkt. No. 44, at 6.)

The DTSA "applies to conduct occurring outside the United States if . . . an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2).[4] The statute does not define what constitutes "an act in furtherance of the offense." The parties have not identified any case law interpreting this language in the context of the DTSA, nor has the Court found any such case law. However, this language is not foreign to the common law but is regularly used in the area of federal conspiracy law. *See, e.g.*, *Yates v. United States*, 354 U.S. 298, 334 (1957) ("[T]he overt act must be found . . . to have been in furtherance of a conspiracy . . . ."); *Findlay v. McAllister*, 113 U.S. 104, 114 (1885) ("[T]o sustain the action it must be shown not only that there was a conspiracy, but that there were tortious acts in furtherance of it . . . .").

---

[4] The DTSA also applies to extraterritorial conduct if the offender is a U.S. Citizen, permanent resident, or an entity incorporated in the United States. 18 U.S.C. § 1837(1). It is undisputed that BIScience is an Israeli corporation, and therefore not subject to the DTSA via this provision. (*See* Dkt. No. 28 ¶ 2.)

"[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts . . . the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952). As a result, the Court looks to the established common law meaning of "in furtherance of" when interpreting the extraterritoriality provision of the DTSA. 18 U.S.C. § 1837(2).

In *Yates*, the Supreme Court explained what it means for an overt act to be "in furtherance of" a conspiracy:

> It is not necessary that an overt act be the substantive crime charged in the indictment as the object of the conspiracy. Nor, indeed, need such an act, taken by itself, even be criminal in character. The function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.

354 U.S. at 334. Applied to the DTSA, *Yates* makes clear that the act in furtherance of the offense of trade secret misappropriation need not be the offense itself or any element of the offense, but it must "manifest that the [offense] is at work" and is not simply "a project in the minds of the" offenders or a "fully completed operation." *Id.* Put another way, an act that occurs before the operation is underway or after it is fully completed is not an act "in furtherance of" the offense.

A civil claim for misappropriation of trade secrets under the DTSA requires: "(1) a trade secret; (2) misappropriation; and (3) use in interstate commerce." *N. Am. Deer Registry, Inc. v. DNA Sols., Inc.*, No. 4:17-CV-00062, 2017 WL 2120015, at *6 (E.D. Tex. May 16, 2017); *see also* 18 U.S.C. § 1836(b)(1). As relevant here, misappropriation is satisfied if disclosure or use of the secret is made without express or implied consent by a person who (1) used improper means to obtain the secret, or (2) at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was improperly obtained or acquired under circumstances giving rise to a duty to maintain its secrecy. 18 U.S.C. § 1839(5)(B).

Both sides have submitted evidence in support of their respective positions that acts "in furtherance of" misappropriation did or did not happen in the United States. BIScience's Second Motion to Dismiss includes a declaration from Mr. Moyal that all of the alleged occurrences supporting Luminati's misappropriation claim "took place between people in Israel. None of the allegations or alleged facts took place in Texas or anywhere in the United States." (Dkt. No. 36-1 ¶ 13.) Luminati responds with exhibits demonstrating that the former Luminati employees who possessed the alleged trade secrets attended conferences in Las Vegas. (Dkt. No. 44-4; Dkt. No. 44-5.) The Court disregards this evidence for purposes of resolving a motion to dismiss under Rule 12(b)(6) and considers only the allegations in the complaint, the documents attached or incorporated therein, and facts subject to judicial notice. *Willard*, 336 F.3d at 379.

The First Amended Complaint alleges that "Luminati's former employees employed Luminati's confidential trade secrets on behalf of [BIScience] in furtherance of the competing 'Geosurf' residential proxy service." (Dkt. No. 28 ¶ 16.) Luminati further alleges that "Luminati lost Texas and United States customers for its residential proxy service and associated revenues to [BIScience's] competing Geosurf service." However, "causing harm to Luminati in the United States" via lost customers is not enough to state a claim actionable under the DTSA. (Dkt. No. 44, at 6.)

Though damages caused as a result of misappropriation are relevant to a plaintiff's remedy, they do not constitute part of the offense itself. *Id.* § 1836(b)(3)(B); *see also id.* §§ 1836(b)(1), 1839(5). Accordingly, damages that occurred in the United States, standing alone, would not be acts "in furtherance of" misappropriation but rather would be the consequence of a "fully completed operation." *Yates*, 354 U.S. at 334.

However, Luminati also alleges that, by "using . . . [Luminati's] trade secrets, [BIScience] has committed acts in the State of Texas and the United States." (*Id.* ¶ 5.) The Court finds that this allegation is sufficient to draw a reasonable inference that BIScience used Luminati's trade secrets in the United States to sell its GeoSurf service, or at least committed acts in furtherance of such sales in the United States. Accordingly, Luminati has plausibly stated a claim actionable under the DTSA.

### 2. False Advertising

BIScience also argues that Luminati has failed to state a claim for false advertising under the Lanham Act because Luminati has not identified any false statements made by BIScience in commercial advertising. (Dkt. No. 36, at 17–18.) Section 43(a)(1)(B) of the Lanham Act provides in relevant part:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

The Fifth Circuit has held that the elements for a false advertising claim under the Lanham Act are:

(1) a false or misleading statement of fact about a product;

(2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;

(3) the deception is material, in that it is likely to influence the consumer's purchasing decision;

(4) the product is in interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

BIScience argues that Luminati's allegations fail to clearly identify any false statements made by BIScience. (Dkt. No. 36, at 17–18.) To the contrary, Luminati attached two blog posts published on BIScience's website that each state, "Some proxy providers look great and fancy until you try to integrate them. Some—such as Luminati—are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution." (Dkt. No. 28-3, at 3; Dkt. No. 28-4, at 7.) Luminati has alleged that these statements are false because "Luminati's residential proxy service does not require installation of Luminati's proxy manager." (Dkt. No. 28 ¶ 20.) Thus, Luminati has sufficiently alleged a false statement of fact about its products.

Additionally, BIScience disputes whether a "blog post on its website . . . constitutes false advertising." (Dkt. No. 36, at 18.) The Fifth Circuit has held that in order for representations to constitute "commercial advertising or promotion" under § 43(a)(1)(B) of the Lanham Act, they must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996). BIScience's blog posts meet these criteria.

The blog posts are commercial speech by a company that is in commercial competition with Luminati. They are also made for the purpose of influencing customers to use BIScience's GeoSurf service. Shortly after the allegedly false statements at issue, the blog posts continue: "In short, stay away from these proxies. Instead, go for easy-integration proxies that support whatever

your needs may be. **GeoSurf**, for instance, takes less than 5 minutes to integrate . . . ." (Dkt. No. 28-3, at 3 (emphasis in original); *see also* Dkt. No. 28-4, at 7.)

Finally, while company blog posts may not be traditional ads, they are a quintessential type of informal promotion. Luminati has alleged that BIScience has purchased advertisements on platforms such as Google that direct potential customers to BIScience's website—where these blog posts appear—when they search for terms like "luminati." (Dkt. No. 28 ¶ 20.) Thus, Luminati has alleged that these blog posts are disseminated sufficiently to the relevant purchasing public.

In sum, the Court finds that these allegedly false statements constitute advertising for purposes of the Lanham Act. Accordingly, Luminati has stated a claim for false advertising.

## Conclusion

For the reasons set forth herein, Luminati's Motion to Strike (Dkt. No. 40) is **DENIED**, and BIScience's First Motion to Dismiss (Dkt. No. 15) is **DENIED-AS-MOOT**. BIScience's Second Motion to Dismiss (Dkt. No. 36) is **DENIED-IN-PART** and **GRANTED-IN-PART**, as follows: BIScience's Second Motion to Dismiss is **GRANTED** in so far as it seeks dismissal of Luminati's claim for tortious interference with employment agreements; however, the remainder of BIScience's Second Motion to Dismiss, including the motion to transfer venue, is **DENIED**. Resultingly, Luminati's Motion for Early Venue Discovery (Dkt. No. 22) is **DENIED-AS-MOOT**.

**So ORDERED and SIGNED this 13th day of May, 2019.**

_____

RODNEY   GILSTRAP
UNITED STATES DISTRICT JUDGE