# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

LUMINATI NETWORKS LTD.

          Plaintiff,

              v.

BI SCIENCE INC.,

          Defendants.

Case No.  2:18-CV-00483-JRG

JURY TRIAL DEMANDED

**PLAINTIFF'S 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS OF
<u>FALSE ADVERTISING AND MONOPOLIZATION</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................1

II.   BACKGROUND .........................................................................................................2

III.  LEGAL STANDARD FOR 12(B)(6) MOTIONS TO DISMISS AND *NOERR-PENNINGTON* DOCTRINE ...................................................................................4

   A.   Dismissal of Complaint for Failure to State a Claim under Fed. R. Civ. Pro. 12(b)(6). .......4

   B.   The Noerr-Pennington Doctrine Provides Immunity And Is A Basis for 12(b)(6) Dismissal of Claims ........................................................................................5

   C.   Sham Litigation Is a Very Limited Exception to Noerr-Pennington That Does Not Apply Heres................................................................................................7

IV.   ARGUMENT ..............................................................................................................8

   A.   Defendant Did Not Properly Plead False Advertising Or Grounds That Could Survive Dismissal Pursuant to the Noerr-Pennington Doctrine. ........................8

   B.   Defendant's Antitrust Claim is Barred by Noerr-Pennington Doctrine ............................10

   C.   Defendant's Antitrust Claim also does not Satisfy the Twombly pleading requirements ..14

V.    CONCLUSION ........................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Apani Southwest, Inc. v. Coca-Cola Enters.*, 300 F.3d 620 (5th Cir. 2002) .................................. 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 5, 9

*Bell Atl. Corp. v. Twombly*. 550 U.S. 544 (2007) ............................................... 14, 15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) .......................... 17

*C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340 (Fed. Cir. 1998) ..................................... 8, 12

*City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991) ......................... 6

*Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983) ........................... 6, 10

*Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525 (9th Cir 1991) .... 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank,* 776 F.3d 1342 (Fed. Cir. 2014) 12

*Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963 (W.D. Tenn. 2004) ............................. 17

*Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451 (1992) ................................. 16

*Geddie v. Seaton*, No. 3:06-CV-0895-R, 2006 U.S. Dist. LEXIS 55106 (N.D. Tex. Aug. 8, 2006) ............................................................................................................. 15

*GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712 (N.D. Tex. 2010) ................... 7

*Greenwood Utils. Comm'n v. Miss. Power Co.*, 751 F.2d 1484 (5th Cir. 1985) ........................... 5

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992) ............................................... 4

*In re IBP Confidential Bus. Documents Litigation*, 755 F.2d 1300 (8th Cir. 1985) ..................... 6

*Indus. Models v. SNF, Inc.*, 716 Fed. Appx. 949 (Fed. Cir. 2017) ........................................... 5, 11

*Indus. Models v. SNF, Inc.*, No. 4:15-CV-689-A, 2015 U.S. Dist. LEXIS 127296 (N.D. Tex Sep. 23, 2015) ................................................................................................................. 5

*Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362 (5th Cir. 1994) ........................... 5

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) ........................................ 4

*Love Terminal Partners, L.P. v. City of Dallas, Tex.*, 527 F.Supp.2d 538 (N.D. Tex. 2007) ........ 5

*Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717 (5th Cir. 2013) ..................................... 5

*Pizza Hut Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489 (5th Cir. 2000) ....................................... 8, 9

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993) ... 7, 11, 13, 14

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412 (5th Cir. 2010).................... 15

*R.D. Imports Ryno Indus., Inc. v. Mazda Distribs. (Gulf), Inc.*, 807 F .2d 1222 (5th Cir. 1987) .. 15

*RPC, Inc. v. Prudhomme*, No. 6:06cv152, 2007 U.S. Dist. LEXIS 3946 (E.D. Tex. Jan. 19, 2007) ................................................................................................................................... 7, 13

*Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F.Supp.2d 889 (D. Minn. 2012)............ 6, 7

*Sliding Door Co. v. KLS Doors*, No. EDCV 13-00196 JGB (DTBx), 2013 U.S. Dist. LEXIS 71304 (C.D. Cal. May 1, 2013) ................................................................................... 7, 10, 13

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) .......................................................... 16

*Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 U.S. Dist. LEXIS 79068 (E.D. Tex.  Mar. 9, 2018) ............................................................................................ 8

*Total Benefits Servs., Inc. v. Grp. Ins. Admin., Inc.*, 875 F. Supp. 1228 (E.D. La. 1995) ............ 15

*Tyco Healthcare Group LP v. Mut. Pharm. Co.*, 762 F.3d 1338 (Fed. Cir. 2014)................... 8, 12

*United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956) ....................................... 15

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)................................................................. 16

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075 (5th Cir. 1988) .. 5, 6, 7

*Virtue v. Creamery Package Mfg.*, 227 U.S. 8 (1913).................................................................... 8

*Waggoner v. Denbury Onshore, L.L.C*, 612 Fed.Appx. 734 (5th Cir. 2015) ................................ 17

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 2, 4

## I.  INTRODUCTION

Plaintiff Luminati Networks Ltd. ("Plaintiff" or "Luminati")[1] files this Fed. R. Civ. P. 12(b)(6) motion to dismiss the non-patent counterclaims in Defendant BI Science Inc.'s ("Defendant" or "BI Science") Counter-complaint ("Counter-complaint," 85), both of which run afoul of the *Noerr-Pennington* doctrine.  Defendant cannot assert that Plaintiff's complaint or amended complaint gives rise to an antitrust or false advertising claim.

With regard to its antitrust claims, a patent holder is entitled by its patent rights to prohibit others from practicing their patented invention. Under the *Noerr-Pennington* doctrine, a petitioner may enforce its patent rights without being subject to an antitrust claim. The only exception is sham litigation, which BI Science conceded is not the case when it failed to include the patent claims in its motion to dismiss. Recognizing this, Defendant tries to imply (but not expressly plead because it has no supporting facts in support) that Plaintiff secured its patent rights through fraud. As a species of fraud, Defendant may not plead through implication or inference—it must plead facts with particularity that show its claims to be plausible on their face.  Defendant has not, and in fact cannot, plead an exception to the *Noerr-Pennington* doctrine.  Thus, its antitrust counterclaim is barred.

Similarly, Plaintiff cannot be held liable for false advertising based on allegations in the complaint under the *Noerr-Pennington* Doctrine.  Defendant's reliance on a third-party article that appears to quote Defendant and cite to allegations in the complaint in this action cannot support a counterclaim for false advertising against Plaintiff.

---

[1] For reasons unclear to Luminati, Defendant also names Hola Networks Ltd. ("Hola") as a named defendant to the Counter-complaint, but as alleged in the amended complaint (Dkt. 28 at ¶ 9), Hola is merely the previous name for Luminati.  Hola does not exist as a separate entity.

1

Plaintiff's suit falls under the protection of the *Noerr-Pennington* doctrine.  Accordingly, Plaintiff requests dismissal of the antitrust and false advertising counterclaims under Fed. R. Civ. P. 12(b)(6).

## II. BACKGROUND

Plaintiff filed a complaint (Dkt. 1) and amended complaint (Amended Complaint, Dkt. 28) against Defendant asserting claims of infringement of the Asserted Patents (U.S. Patent Nos. 9,241,044 ("'044 Patent") and 9,742,866 ("'866 Patent"), misappropriation of trade secrets, false advertising, tortious interference with current and prospective business relationships and tortious interference with Luminati's employment agreements, all of which relate to Defendant's residential proxy service sold in competition with Plaintiff's residential proxy service.

Defendant filed a motion to dismiss the complaint (Dkt. 15) asserting failure to state a claim under Fed. R. Civ. P. 12(b)(6) with regard to the indirect patent infringement claims, misappropriation of trade secret claims and false advertising claims, *but subsequently dropped* the challenge to the indirect patent infringement claims from Defendant's motion to dismiss the amended complaint (Dkt. 36).  The Court denied Defendant's motion to dismiss as to all claims except for the claim of tortious interference with Luminati's employment agreements ("Order," Dkt. 82).

Now, Defendant has filed its Answer and Counter-complaint (Dkt. 85) seeking a declaratory judgment of non-infringement and invalidity with regard to the Asserted Patents as well as counterclaims of false advertising under the Lanham Act, 15 U.S.C. § 1125(a) and monopolization/attempt to monopolize under 15 U.S.C. § 2.

In support of its false advertising claim, BI Science cites a single example of a March 12, 2018 article in the Israeli publication "TheMarker," attached as Exhibit A to the Counter-

2

complaint, which purportedly contains "numerous falsehoods and damaging statements about BI Science and its representatives," *none of which* are identified in the Counter-complaint. Counter-complaint at ¶ 130.   The article cites to the lawsuit and attributes quotes to what appears to be BI Science and iAngels,[2] a third-party investor share-holder who is alleged to have made its investment in Luminati conditional on due diligence performed by Kfir Moyal, founder of BI Science (2009) Ltd. Amended Complaint at 12-13.   The article includes no referenced quotations or citations to Plaintiff.

BI Science also alleges monopolization under 15 U.S.C. § 2 based on the same residential proxy service that is the subject of the patent infringement claims.   Counter-complaint at ¶¶ 137, 143.  Specifically, BI Science alleges as follows:

(1) Luminati obtained the Asserted Patents knowing it to be unpatentable over prior art. *Id*. at  ¶ 143.  In support of this argument, BI Science identifies a single prior art publication, U.S. Pat. Pub. US 2011/0087733 A1 (*id*. at ¶ 144-145), but neglects to disclose that this publication resulted in issuance of U.S. Patent No. 8,560,604, which was disclosed to the USPTO during examination of both Asserted Patents and is listed among the references cited on the cover pages of both patents.  BI Science does not allege that Luminati omitted to disclose any prior art to the USPTO or otherwise made any fraudulent statements to the USPTO during the prosecution of the Asserted Patents. In addition, BI Science also asserts that the complaint is sham litigation based on BI Science's assertions that the patents are invalid.  Counter-complaint at ¶ 147.

---

[2] Exhibit A appears to be a machine translation of a article containing numerous misspellings and mistranslations, but "BCINS," "BACINS" and "Bi.aii.siins" appear to be mistranslations of "BI Science" based upon the context of the quotations.  Ex. A at 4.

3

(2) BI Science also alleges this to be sham litigation based on Luminati's misappropriation of trade secrets claim. Counter-complaint at ¶ 148.  BI Science previously argued for dismissal of the misappropriation of trade secret claim under 12(b)(6), which was denied. Order at 17-20.

(3) BI Science also alleges this to be sham litigation based on Luminati's false advertising claims against both BI Science in this suit and UAB Teso Ltd. in the suit of Luminati Networks Ltd. v. UAB Tesonet.  Counter-complaint at ¶ 151.  This argument is also based on allegations in the complaints.  BI Science previously argued for dismissal of the false advertising claim under 12(b)(6), which was denied. Order at 20-22.

(4) Finally, BI Science also appears to base its antitrust claim on its representation of settlement negotiations under FRE 408.  Counter-complaint at ¶ 150. BI Science does not disclose that BI Science initiated the negotiations and proposed the referenced settlement.

## III.    LEGAL STANDARD FOR 12(B)(6) MOTIONS TO DISMISS AND *NOERR-PENNINGTON* DOCTRINE

### A.  *Dismissal of Complaint for Failure to State a Claim under Fed. R. Civ. Pro. 12(b)(6).*

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Motions to dismiss for failure to state a claim are governed by regional circuit law.  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir. 2017). Pleadings must show specific, well-pleaded facts, not merely conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

"To survive a motion to dismiss for failure to state a claim, the facts as pleaded must allow the court to infer that the plaintiff's right to relief is plausible." *Indus. Models v. SNF, Inc.*, 716

Fed. Appx. 949, 955 (Fed. Cir. 2017), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss the claim if, taking Plaintiff's well-pleaded allegations as true and resolving all reasonable inferences in its favor, Plaintiff fails to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, dismissal is appropriate under Rule 12(b)(6) "when a successful affirmative defense appears on the face of the pleadings." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (citation omitted)); *see also Indus. Models v. SNF, Inc.*, No. 4:15-CV-689-A, 2015 U.S. Dist. LEXIS 127296, at *5-7 (N.D. Tex Sep. 23, 2015)(dismissing anti-claims claims under *Noerr-Pennington* Doctrine applicable of finding Plaintiff's sham litigation allegations to be conclusory).

B.   *The Noerr-Pennington Doctrine Provides Immunity And Is A Basis for 12(b)(6) Dismissal of Claims*

A court may properly dismiss an action under Rule 12(b)(6) if "it is apparent from the face of plaintiff's complaint that defendants are entitled to *Noerr-Pennington* immunity." *Love Terminal Partners, L.P. v. City of Dallas, Tex.*, 527 F.Supp.2d 538, 550 (N.D. Tex. 2007).  The *Noerr-Pennington* "doctrine allows individuals or businesses to petition the government, free of the threat of antitrust liability, for action that may have anticompetitive consequences" even if the petition was motivated by anticompetitive intent. *Greenwood Utils. Comm'n v. Miss. Power Co.*, 751 F.2d 1484, 1497 (5th Cir. 1985); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).

5

This immunity is grounded both in the First Amendment's guarantee of the right to petition government as well as the proper scope of the antitrust laws. *See City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 379 (1991).

The doctrine extends to publication and threats to litigate, such as cease-and-desist letters, even though such actions do not entail petitioning the government. *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983); *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F.Supp.2d 889, 896-900 (D. Minn. 2012) ("[T]he *Noerr-Pennington* doctrine immunizes pre-suit demand letters …"). The Fifth Circuit has explained:

> Given that petitioning immunity protects joint litigation, it would be absurd to hold that [the *Noerr-Pennington* doctrine] does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.

*Coastal States Mktg., Inc.*, 694 F.2d at 1367; *Select Comfort Corp.*, 838 F.Supp.2d at 896-900 ("Because the right to petition means more than simply the right to communicate directly with the government, protection under the doctrine necessarily includes those activities reasonably and normally attendant to effective petitioning."); *In re IBP Confidential Bus. Documents Litigation*, 755 F.2d 1300, 1310 (8th Cir. 1985) ("The right to petition means more than simply the right to communicate directly with the government. It necessarily includes those activities reasonably and normally attendant to effective petitioning.").

Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, it also "protect[s] first amendment petitioning of the government from claims brought under federal and state laws …." *Video Int'l Prod., Inc.*, 858 F.2d at 1084. For example, the doctrine extends to tortious interference claims, and efforts to protect intellectual property rights such as claims for

6

false advertising and misappropriation of trade secrets. *See Id.* at 1084-85; *Select Comfort Corp.*, 838 F.Supp.2d at 896; *GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 742 (N.D. Tex. 2010) (Fitzwater, J.); *Sliding Door Co. v. KLS Doors*, No. EDCV 13-00196 JGB (DTBx), 2013 U.S. Dist. LEXIS 71304, at *17-20 (C.D. Cal. May 1, 2013) (dismissing claims for false advertising under the *Noerr-Pennington* doctrine); *and RPC, Inc. v. Prudhomme*, No. 6:06-cv-152, 2007 U.S. Dist. LEXIS 3946, at * 12 (E.D. Tex. Jan. 19, 2007) (finding *Noerr-Pennington* doctrine to apply in suit involving claims of trade secret misappropriation).

C. *Sham Litigation Is a Very Limited Exception to Noerr-Pennington That Does Not Apply Heres*

Sham litigation is an exception to the immunity provided by the *Noerr-Pennington* doctrine. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993). The finding of a sham litigation has two requirements. "First, **the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits**. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." *Id.* at 60 (emphasis added). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor,' through the use [of] the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon." *Id.* at 60-61 (internal citations removed). "Of course, even a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating both the objective and subjective components of a sham must still prove a substantive antitrust violation." *Id.* at 61.

7

"Given the presumption of validity and the burden on the patent challenger to prove invalidity by clear and convincing evidence, it will be a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation." *Tyco Healthcare Group LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014). "The law recognizes a presumption that the assertion of a duly granted patent is made in good faith, see *Virtue v. Creamery Package Mfg.*, 227 U.S. 8, 37-38, (1913); this presumption is overcome only by affirmative evidence of bad faith." *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998).

## IV. ARGUMENT

The *Noerr-Pennington* doctrine protects Luminati from BI Science's false advertising and antitrust claims, and BI Science does not plead facts sufficient to allow the court to infer that the plaintiff's right to relief is plausible.

### A. Defendant Did Not Properly Plead False Advertising Or Grounds That Could Survive Dismissal Pursuant to the Noerr-Pennington Doctrine.

"The Fifth Circuit has held that the elements for a false advertising claim under the Lanham Act are: (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue." *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 U.S. Dist. LEXIS 79068, at *30 (E.D. Tex.  Mar. 9, 2018) (citing *Pizza Hut Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)). "The failure to prove the existence of any

8

element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut, Inc. v. Papa John's Int'l*, 227 F.3d 489, (5th Cir 2000).

BI Science's counterclaim of false advertising falls far short of meeting its pleading requirements, as its allegations are based on one example which does not identify a single "purported false or misleading statement," much less provide sufficient factual support to support a plausible right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.")

> 130. BIScience asserts that Plaintiff has engaged in false advertising against BIScience, under 15 U.S.C. 1125(a) by making false advertisements to BIScience's customers and the public. As one, non-limiting, example upon information and belief on or about March 12, 2018, Luminati communicated with members of the media in Israel and caused an article to appear in the Israeli publication "TheMarker," which contained numerous falsehoods and damaging statements about BIScience and its representatives. See Exhibit A."

> 131. Based on the above facts and conduct, BIScience is informed and believes, and thus avers, that Plaintiff has made and continues to make allegations of patent infringement in bad faith because Plaintiff knows, or should know, after a reasonable inquiry and due diligence that these allegations are unfounded, not supported, and wholly improper.

BI Science identifies an article in a publication of "TheMarker" as containing false or misleading statements, but does not identify any specific misleading or false statement.[3] As BI

---

[3] Defendant cites to the date of the article as March 12, 2018, but Plaintiff believes that Defendant mistakenly switched the month and the day with the correct date of publication actually on December 3, 2018. This is consistent with the context of the article which discusses the November complaint as being filed two weeks before. Dkt. 85-1 at 2. In addition, Defendant appears to also refer to this publication as "Technation," which appears to be the section of the TheMarker in which the article appeared rather than a separate publication.

Science has identified no false or misleading statement made by Luminati, BI Science has not satisfied the pleading standards for false advertising and its claim must be dismissed.

In addition, as discussed above, while the "TheMarker" article quotes Defendant BI Science and third-party iAngels, it does not include any quotations from Luminati or any employee or representative of Luminati. The article merely cites to the publicly available complaint itself. "In a lawsuit filed two weeks ago at the Texas District Court, Israeli start-up Hola is suing Israeli company BI Science for patent infringement and illegal use of Hula's internal information. According to the lawsuit…" Dkt. 85-1 at 2.

To the extent that BI Science bases its false advertising claim on allegations made in the complaint or other pleadings in this litigation, Luminati is protected from such a claim under the *Noerr-Pennington* doctrine. *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983). Luminati has a right to file a complaint to enforce its patent rights and protect its intellectual property without risk of being subject to a false advertising claim based upon the allegations in that complaint. *Sliding Door Co. v. KLS Doors*, No. EDCV 13-00196JGB (DTBx), 2013 U.S. Dist. LEXIS 71304, at *17-20 (C.D. Cal. May 1, 2013) (dismissing claims for false advertising based on post-litigation emails to purchasers and potential purchasers notifying them of the lawsuit as communications related to the litigation and protected under the *Noerr-Pennington* doctrine). The mere publication of allegations from the complaint cannot serve as the basis for a false advertising claim short of pleading sham litigation.

B. *Defendant's Antitrust Claim is Barred by Noerr-Pennington Doctrine*

Defendant's counterclaim of monopolization or attempt to monopolize under 15 U.S.C. § 2 is clearly directed toward Plaintiff's Asserted Patents. Without any basis for how BI Science defines the relevant market as "a service of providing residential proxies (the service of

10

commercially providing a communications facility that operates through a plurality of intermediary devices having IP addresses dynamically assigned to those devices by Internet Service Providers (ISPs) ('Relevant Market')," BI Science clearly identifies this Relevant Market as coextensive with the Asserted Patents. Counter-complaint at ¶¶ 137 and 143 ("Luminati has sought and obtained U.S. and foreign patents … and asserted those patents in demands, publicity, and lawsuits in a manner intended to intimidate competitors and eliminate lawful competition in the Relevant Market."

"Those who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Investors, Inc..*, 508 U.S. 49, 56. The *Noerr-Pennington* doctrine protects Luminati's right to enforce its patents through the courts without threat of antitrust counterclaims. *Indus. Models v. SNF Inc.*, 716. Appx. 949, 955 (5th Cir. 2017). This doctrine can be the basis for dismissing such a counterclaim as part of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) where, as in this case, Defendant has fallen short of pleading allegations sufficient to support a claim of sham litigation. *Id*. at 955.

To overcome the *Noerr-Pennington* doctrine, BI Science must prove that the litigation is a sham, meaning (1) **the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits** and (2) the lawsuit must be subjectively motivated to conceal "'an attempt to interfere directly with the business relationships of a competitor,' through the use [of] the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon." *Prof'l Real Estate Investors, Inc..*, 508 U.S. 49, 60-61.

In this case, BI Science has done no more than make the conclusory allegation that Luminati "knows" the Asserted Patents to be invalid based on a prior art publication of U.S. Pat. Pub. US 2011/0087733, without providing any information regarding the purported ground for

11

invalidity or the basis for why Luminati would "know" the Asserted Patents to be invalid over this reference. Counter-complaint at ¶¶ 143-145. While not mentioned in the Counter-complaint, the purported prior art patent publication resulted in an instituted U.S. Patent No. 8,560,604, which was disclosed to the examiner during patent prosecution and is listed as a cited reference on the cover page of both Asserted Patents. BI Science does not allege, because it cannot, that Luminati omitted to disclose this reference during prosecution, made any misrepresentations to the USPTO or otherwise engaged in any inequitable conduct that could show that Luminati attempted to conceal this reference or has reason to believe it would invalidate the Asserted Patents.

Instead, BI Science points to a single prior art publication as invalidating without disclosing the purported ground for invalidity or that the resulting patent was before the examiner. The Asserted Patents are entitled to a presumption of validity and it is "a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation." *Tyco Healthcare Group LP v. Mut. Pharm. Co.*, 762 F.3d 1338, (Fed. Cir. 2014). Courts have applied the *Noerr-Pennington* doctrine even when the relevant patents claims have been found unpatentable under 35 U.S.C. 101 at the motion to dismiss stage. *Content Extraction & Transmission LLC v. Wells Fargo Bank,* 776 F.3d 1342, 1350 (Fed. Cir. 2014)("although we conclude the claims of CET's asserted patents are invalid under 101, we decline to find CET's infringement suits against Wells Fargo and PNC to be objectively baseless at the time they were filed.") Plaintiff is also entitled to a presumption that assertion of the duly granted Asserted Patents was brought in good faith. *C.R. Bard, Inc.*, 157 F.3d 1340, 1369.

BI Science simply makes the conclusory allegation that "Luminati has pursued sham and objectively baseless patent litigation based on said invalid patents against BI Science, Teso, and

12

IP Ninja, knowing or having good reason to know the patents to be invalid, for the purpose of eliminating lawful competition in the Relevant Market." Counter-complaint at ¶ 147. Conclusory statements are insufficient to meet the *Twombly* pleading standard and Plaintiff cannot plausibly allege that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc.* 508 U.S. 49, 60. Consequently, the present patent infringement action is not a sham litigation and plaintiff is protected from Defendant's antitrust Counter-complaint under the *Noerr-Pennington* doctrine.

Understanding that its allegations fall short of plausibly pleading the patent action is sham litigation, Defendant asserts additional allegations based on Plaintiff's misappropriation of trade secrets claim and Defendant's false advertising claim.[4] Counter-complaint at ¶¶ 148, 151-152. However, these other allegations cannot render the patent infringement suit a sham litigation, and regardless these claims are also protected by the *Noerr-Pennington* doctrine. *RPC, Inc. v. Prudhomme*, No. 6:06-cv-152, 2007 U.S. Dist. LEXIS 3946, at * 12 (E.D. Tex. Jan. 19, 2007) (finding *Noerr-Pennington* doctrine to apply in suit involving claims of trade secret misappropriation); *Sliding Door Co. v. KLS Doors*, No. EDCV 13-00196 JGB (DTBx), 2013 U.S. Dist. LEXIS 71304, at *17-20 (C.D. Cal. May 1, 2013) (dismissing claims for false advertising based on post-litigation emails to purchasers and potential purchasers notifying them of the lawsuit as communications related to the litigation and protected under the *Noerr-Pennington* doctrine). As discussed above, the *Noerr-Pennington* doctrine protects Plaintiff's right to seek relief through

---

[4] Defendant previously moved to dismiss the misappropriation of trade secrets claim under Fed. R. Civ. Pro. 12(b)(6) (Dkt. 36), but was denied (Dkt. 82), but is now asserting that this claim is a sham.

13

the courts, and Defendant cannot use the allegations in the complaint to serve as the basis for antitrust liability.

Finally, Defendant also alleges that "Luminati has also attempted to license its patents to BIScience on terms including contractual restrictions that seek to exclude competition beyond the scope of any reasonable construction of Luminati's patent claims." Counter-complaint at ¶ 147. While this allegation is factually misleading, as **BI Science** instigated settlement negotiations subject to Fed. R. Evid. 408 and proposed a global settlement of the action, this allegation is also irrelevant under the *Noerr-Pennington* doctrine. *Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528 (9th Cir 1991) ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and distinct activity which might form the basis for antitrust liability.")

For the above reasons, following the *Noerr-Pennington* doctrine, Defendant has not and cannot plead facts sufficient for the court to infer that plaintiff has a plausible right to relief for its monopolization and attempt to monopolize claims. Consequently, Defendant's antitrust claim should be dismissed.

*C. Defendant's Antitrust Claim also does not Satisfy the Twombly pleading requirements*

In addition to being barred by the *Noerr-Pennington* doctrine, Defendant's counterclaim of monopoly/attempted monopolization also does not meet the pleading requirements set forth in *Bell Atl. Corp. v. Twombly*. 550 U.S. 544 (2007); *Prof'l Real Estate Investors, Inc.*, 508 U.S. 49, 61 ("[E]even a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating both the objective and subjective components of a sham must still prove a substantive antitrust violation."). Defendant does not plead facts sufficient to allege a (a) relevant market, (b) market

14

power, or (c) an antitrust injury.  All the allegations are conclusory and do not include " enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

"In considering what is the relevant market for determining the control of price and competition, no more definite rule can be declared than commodities reasonably interchangeable by consumers for the same purposes make up that 'part of the trade or commerce,' monopolization of which may be illegal." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Accordingly, the Court must determine whether Plaintiff has sufficiently pleaded a market where the goods at issue are "reasonably interchangeable"; a market definition meets this standard when the consumers view the goods at issue as "substitutes for other goods." *R.D. Imports Ryno Indus., Inc. v. Mazda Distribs. (Gulf), Inc.*, 807 F .2d 1222, 1225 (5th Cir. 1987); *see also Total Benefits Servs., Inc. v. Grp. Ins. Admin., Inc.*, 875 F. Supp. 1228, 1235-36 (E.D. La. 1995) ("Products that consumers view as substitutes for other products can be said to be in competition with each other.").  "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417-18 (5th Cir. 2010) (quoting *Apani Southwest, Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 628 (5th Cir. 2002)).  Ultimately, "courts analyzing whether a plaintiff has met its burden should consider both the extent to which the seller's product is interchangeable in use and the degree of cross-elasticity of demand between the product itself and substitutes for it." *Geddie v. Seaton*, No. 3:06-CV-0895-R, 2006 U.S. Dist. LEXIS 55106, at *19 (N.D. Tex. Aug. 8, 2006) (Buchmeyer, J.)) (citations and internal quotation marks omitted).

Defendant simply alleges that "a market exists in the U.S. and internationally for the service of providing residential proxies (the service of commercially providing a communications facility that operates through a plurality of intermediary devices having IP addresses dynamically assigned to those devices by Internet Service Providers (ISPs)." Counter-complaint at ¶ 137. Rather than plead facts addressing substitutes for these services and cross-elasticity of demand, Defendant simply draws a line defining "a market" to coincide with services covered by Plaintiff's Asserted Patents. Counter-complaint at ¶ 143. BI Science does not meet its pleading requirements to allege a relevant market.

To state a claim for monopolization, BI Science must allege "(1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 481 (1992). Monopoly power is "the power to control prices or exclude competition." *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966). Thus, "to determine whether there is a dangerous probability of monopolization," courts "consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

Defendant's allegations do not properly establish sufficient power within the market on the part of Luminati to successfully demonstrate that it had the capacity to unlawfully establish or attempt to establish a monopoly under Section 2. *See Eastman Kodak Co., Inc.*, 504 U.S. 451 at 481 (noting that to successfully plead a monopolization claim, a plaintiff must plead that the alleged monopolizer possesses actual power within that market). BI Science does not allege the size of the market, the strength of Luminati's competitors, or Luminati's ability to control prices

16

or exclude competition.  Instead, BI Science merely makes the conclusory statement that "[o]n information and belief, Luminati currently possesses a dominant position in the Relevant Market. Luminati describes itself on its web site as 'World's Largest Proxy Service.'" Counter-complaint at ¶ 140.  However, such allegations fall far short of pleading "monopoly power." *See Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 974-75 (W.D. Tenn. 2004) (holding that an allegations of market share of "largest," "#1," and "#2" are insufficient "too vague" to allege monopoly power).  Consequently, BI Science does not meet its pleading requirements to allege a monopoly.

BI Science has also failed to allege facts to support their conclusory assertion that they suffered an "antitrust injury." Antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations... would be likely to cause.'" *Waggoner v. Denbury Onshore, L.L.C*, 612 Fed.Appx. 734, 737 (5th Cir. 2015) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). BI Science does not allege antitrust injury. Instead, BI Science alleges that it has suffered damages including "damages directly incurred as a result of defending against baseless litigation, lost profits resulting from having to compete lawfully against Luminati's and Hola's[5] unlawful methods of building their network as herein alleged; and damage to its goodwill and commercial reputation as a result of Luminati's other predatory practices including unfair advertising, publicizing its baseless patent claims to wrongfully portray BIScience as an infringer, and commercial disparagement." Counter-complaint at ¶ 153.

---

[5] As noted in footnote 1 above, Hola Networks Ltd. ("Hola") is merely the previous name for Luminati as disclosed in the amended complaint (Dkt. 28 at ¶ 9). The inclusion of Hola in the Counter-complaint appears to be an error.

17

In addition to being barred from asserting antitrust claims under the *Noerr-Pennington* doctrine, BI Science has also fallen short of meeting its pleading requirements under Twombly. Consequently, the antitrust counterclaim should be dismissed under this alternative ground as well.

## V.  CONCLUSION

Consistent with the *Noerr-Pennington* doctrine, Luminati respectfully requests that the Court grant this motion to dismiss Defendant's counterclaims for false advertising and monopolization/attempt to monopolize.

Dated:  June 19, 2019

By: */s/ Ronald Wielkopolski*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702
(510) 944-0190
Email: sunnyc@ruyakcherian.com
Email:  bobh@ruyakcherian.com

Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Email: ronw@ruyakcherian.com

Attorneys for Plaintiff

18