**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **LUMINATI NETWORKS LTD.** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 2:18-cv-483-JRG** |
| | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **BISCIENCE INC.** | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **HOLA NETWORKS LTD.,** | § | |
| | § | |
| **Additional Defendant on** | § | |
| **Counterclaim.** | § | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S 12(B)(6) MOTION TO DISMISS
COUNTERCLAIMS OF FALSE ADVERTISING AND MONOPOLIZATION**

# **TABLE OF CONTENTS**

I.       INTRODUCTION ................................................................................................. 1

    A.   Background .................................................................................................. 1

    B.   Legal Standard .......................................................................................... 1

II.      ARGUMENT ....................................................................................................... 2

    A.   The *Noerr- Pennington* Defense Does Not Warrant Dismissal of BIScience's Counterclaims. ........................................................................................... 2

    B.   BIScience's False Advertising Counterclaim Should Not Be Dismissed.................... 4

    C.   BIScience's Monopolization Counterclaim Should Not Be Dismissed. ..................... 8

        (a)  Defendant has Adequately Pleaded the Relevant Market ....................... 9

        (b)  Defendant Overlooks the Substance of the Allegations ................................... 10

        (c)  Defendant Has Adequately Pleaded Market Power ........................................... 12

        (d)  BIScience Has Sufficiently Pleaded an Antitrust Injury................................ 12

III.    CONCLUSION ................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Cases**

*Acoustic Sys., Inc. v. Wenger Corp.*,
  207 F.3d 287 (5th Cir. 2000) ................................................................. 2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 2

*Bayou Fleet, Inc. v. Alexander*,
  234 F.3d 852 (5th Cir. 2000) ................................................................. 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 2

*Bell v. Dow Chemical Co.*,
  847 F.2d 1179 (5th Cir.1988) .............................................................. 10

*Clark v. Amoco Prod. Co.*,
  794 F.2d 967 (5th Cir. 1986) ................................................................. 3

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) .............................................................. 10

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ............................................................................... 6

*Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*,
  No. 6:11-cv–00317, 2013 WL 12040726 (E.D. Tex. May 17, 2013) ..................................... 3, 8

*Fisher v. Halliburton*,
  667 F.3d 602 (5th Cir. 2012) ................................................................. 8

*Great W. Directories v. Southwestern Bell Tel. Co.*,
  63 F.3d 1378 (5th Cir.1995) ................................................................ 13

*Handgards, Inc. v. Ethicon, Inc.*,
  601 F.2d 986 (9th Cir. 1979) ........................................................... 11, 13

*Hershey v. Energy Transfer Partners, L.P.*,
  610 F.3d 239 (5th Cir. 2010) ................................................................. 2

*In re Pool Products Distribution Market Antitrust Litigation*,
  940 F.Supp.2d 367 (E.D. La. 2013) ....................................................... 10

*Jaso v. The Coca Cola Co.*,
    435 Fed.Appx. 346 (5th Cir. 2011) ...................................................................... 3

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) ......................................................................... 2

*Miller v. BAC Home Loans Servicing, L.P.*,
    726 F.3d 717 (5th Cir. 2013) ............................................................................ 3

*Morrone Co. v. Barbour*,
    241 F. Supp. 2d 683 (S.D. Miss. 2002) ............................................................ 3

*Pension Advisory Group, Ltd. v. Country Life Ins. Co.*,
    771 F.Supp. 2d 680 (S.D. Tex. 2011) ............................................................... 6

*Pizza Hut, Inc. v. Papa John's Intern., Inc.*,
    227 F.3d 489 (5th Cir. 2000) ........................................................................... 4

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ........................................................................................... 6

*River Capital Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*,
    No. 4:10–cv–471, 2011 WL 831282 (E.D. Tex. Feb. 7, 2011) ......................... 3

*Sliding Door Co. v. KLS Doors*,
    No. EDCV 13-00196JGB (DTBx), 2013 U.S. Dist. LEXIS 71304 (C.D. Cal.
    May 1, 2013) .............................................................................................. 5, 6

*Source Network Sales & Marketing, LLC v. Ningbo Desa Electrical Mfrg. Co., Ltd.*,
    No. 3:14-cv-1108, 2015 WL 2341063 (May 15, 2015) ................................... 3

*Surgical Care Center of Hammond, L.C. v. Hospital Service Dist. No. 1 of Tangipahoa Parish*,
    309 F.3d 836 (5th Cir. 2002) ........................................................................... 9

*U.S. v. Philip Morris USA, Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009) ........................................................................ 6

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377, 76 S.Ct. 994 L.Ed. 1264 (1956) ............................................... 12

*Walker Process Equip. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965) ....................................................................................... 11

*We, Inc. v. City of Philadelphia Dept. of Licenses and Inspections*,
    983 F. Supp. 637 (E.D. Pa. 1997) .................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1

Defendant BIScience (2009) Ltd. (which Plaintiff alleges is also known as BIScience Inc.) (hereinafter referred to as "BIScience") hereby files this response to Plaintiff Luminati Networks Ltd.'s ("Luminati") 12(b)(6) Motion to Dismiss Counterclaims of False Advertising and Monopolization.

## I.    INTRODUCTION

### A.    <u>Background</u>

Plaintiff's Motion to Dismiss BIScience's counterclaims for false advertising and monopolization is an improper attempt to have those counterclaims dismissed on the merits, rather than on the appropriate Rule 12(b)(6) standard—whether BIScience has stated a plausible claim for relief. BIScience has set forth sufficient facts to plausibly state claims against Plaintiff for false advertising and monopolization/attempt to monopolize. The *Noerr-Pennington* doctrine, upon which Plaintiff completely bases its motion, is fundamentally a First Amendment protection, protecting the right to petition the government. Plaintiff's reliance on this doctrine is misplaced when it seeks to extend this protection to shield acts and mischief in the marketplace to suppress competition, which go far beyond, and have no relation to, seeking governmental redress. In addition, whether Plaintiff's conduct qualifies for free speech protection inherently raises factual issues and is not appropriate to be asserted at this stage, and further, BIScience is not required to negate an affirmative defense such as this in its pleadings.

For these reasons and as more fully explained below, Plaintiff Luminati's 12(b)(6) Motion to Dismiss Counterclaims of False Advertising and Monopolization should be denied.

### B.    <u>Legal Standard</u>

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) (internal quotations omitted); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff meets this requirement if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Here, the counterclaims at issue are sufficiently pleaded and include facts relating to each claim which, when accepted as true, show that the claims are plausible on its face. *Bell Atl. Corp.*, 550 U.S. 554, 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").  Plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679.  The plausibility standard is not a probability requirement.  *Id*. at 678.

## II.    ARGUMENT

### A.    The *Noerr- Pennington* Defense Does Not Warrant Dismissal of BIScience's Counterclaims.

Plaintiff is attempting to use the *Noerr-Pennington* doctrine both as a shield and a sword in its motion to dismiss.  Because Plaintiff moved to dismiss this case in a 12(b)(6) motion, essentially Plaintiff is contending that BIScience was required to plead against the *Noerr-Pennington* defense and/or affirmatively plead the sham litigation exception to that defense.  The *Noerr–Pennington* doctrine should be asserted as an affirmative defense.  *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000); *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 295 (5th Cir. 2000) (the *Noerr–Pennington* doctrine "provides only a defense to liability, not an immunity from suit."). In order to dismiss a claim by a Rule 12(b)(6) motion on the basis of the

*Noerr-Pennington doctrine*, the applicability of the defense would have to appear on the face of the pleadings. *Source Network Sales & Marketing, LLC v. Ningbo Desa Electrical Mfrg. Co., Ltd.*, No. 3:14-cv-1108, 2015 WL 2341063,*11 (May 15, 2015); *see also Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("[A] claim may ... be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.").

A plaintiff "is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense." *River Capital Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*, No. 4:10–cv–471, 2011 WL 831282, at *9 (E.D. Tex. Feb. 7, 2011), *adopted*, 2011 WL 831186 (E.D. Tex. Mar. 3, 2011); *Jaso v. The Coca Cola Co.*, 435 Fed.Appx. 346, 351 (5th Cir. 2011) (per curiam) (unpublished opinion) ("A plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense.").

The *Noerr–Pennington* defense is usually properly analyzed considering evidence outside of the pleadings and as such, is not appropriate for a Rule 12(b)(6) motion. *Morrone Co. v. Barbour*, 241 F. Supp. 2d 683, 688 (S.D. Miss. 2002) (denying motion to dismiss based on *Noerr–Pennington*); *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11–cv–00317, 2013 WL 12040726, at *5 (E.D. Tex. May 17, 2013) (Court held that "resolution of the applicability of *Noerr–Pennington* doctrine inappropriate for a 12(b)(6) determination"), *adopted*, 2013 WL 12044954 (E.D. Tex. July 30, 2013).

Here, BIScience was not required to negate an affirmative defense such as *Noerr-Pennington* in its pleadings. Additionally, a Rule 12(b)(6) determination is inappropriate here because there are plausible allegations that are well outside of any protection available under *Noerr-Pennington.*

Even if the Court were to determine that *Noerr-Pennington* applied at this stage in the litigation, the "sham" litigation exception described below would be applicable. Furthermore, it is not just aggressive (and sham) litigation tactics that are at issue here: the counterclaims also allege measures to suppress competition by leveraging on consumer fraud, in business deals, and in the media, which the present motion fails to address.

**B.    BIScience's False Advertising Counterclaim Should Not Be Dismissed.**

A claim for false advertising requires the following elements: "(1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue." *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

Plaintiff contends that BIScience did not identify any false or misleading statement. This is simply not true. Not only did BIScience identify the statements, it attached an actual article as an example of some of the false and damaging statements about BIScience and its representatives. *See* Dkt. No. 85, Ex. A. As BIScience alleged, this article was merely one, non-limiting example. In the article, Exhibit A, it references Plaintiff's lawsuit. Petitioning the courts for relief in a lawsuit is protected, if the proceedings are not a sham. The allegations here of infringement are a sham, but there is an additional issue. Even if the infringement claims here constituted a legitimate grievance in court (which BIScience disputes), going separately out-of-court to the trade press with the most inflammatory and dubious assertions of the pleadings, falsely casting the Defendant and its principals as thieves, goes well beyond even a broadly-construed right to petition the government. *We, Inc. v. City of Philadelphia Dept. of Licenses and Inspections*, 983 F. Supp. 637,

639 (E.D. Pa. 1997) (declining to extend the protection of *Noerr-Pennington* to conduct that "went beyond merely complaining or petitioning the government").

BIScience has alleged that "upon information and belief on or about March 12, 2018, Luminati communicated with members of the media in Israel and caused an article to appear in the Israeli publication "TheMarker"…" Dkt. No. 85 ¶130. The false statements in the article which came from Plaintiff include accusations that iAngels (referring to Shelly Hod-Moyal who is identified in the article as founder of iAngels) allowed her husband (Kfir Moyal, co-founder of BIScience) access to (now Luminati's) full internal information, which includes the company's intellectual property and patent applications. The article also states that Moyal was one of the founders of a digital advertising company which recently collapsed, which is also false. In BIScience's counterclaims, there are also allegations that "Luminati has aggressively publicized its sham legal actions in the financial press with false, misleading, and baseless inflammatory statements in order to damage its competitors including BIScience…". Dkt. No. 85 ¶152. These all are examples of the false and misleading statements made by Plaintiff gratuitously outside of court, as pleaded by BIScience in its counterclaim.

Plaintiff also claims that to the extent the allegations from the complaint serve as the basis for the false advertising claim, Luminati is protected by the *Noerr-Pennington* doctrine. *See* Dkt. No. 88, p.10. Plaintiff relies on *Sliding Door Co. v. KLS Doors*, No. EDCV 13-00196JGB (DTBx), 2013 U.S. Dist. LEXIS 71304, at *17-20 (C.D. Cal. May 1, 2013). *Sliding Door* is inapposite. There, the plaintiff sent an email solicitation directly to the defendant's customers regarding its pending litigation accusing the defendant of infringement, and providing a link to plaintiff's online catalog and several images illustrating plaintiff's product line. But in reaching its decision, the court in *Sliding Door* expressly relied on the fact that the subject email also stated that the plaintiff

"would also pursue its intellectual property rights as to 'those who purchase any infringing product,'" – reflecting an interest in protecting the speaker's (plaintiff's) governmentally-granted rights vis-à-vis the recipients of the speech in question (the customers).  There is no such interest at stake here.  Here, the speaker made statements in a legal pleading it could never get away with outside of court, and then sought to bootstrap the protection for the in-court assertions by urging the trade press to repeat the same assertions in the media.  Unlike the plaintiff in *Sliding Door*, the Plaintiff here had no interest related to its legal rights that it was protecting through its out-of-court activities.  Unlike the email at issue in *Sliding Door*, the publicity that Plaintiff was seeking, and obtained, here, was purely to disadvantage a competitor and did not in any way further any effort, direct or indirect, to seek redress from the government.

Furthermore, an important exception to the *Noerr-Pennington* doctrine is "sham" litigation.  The *Noerr-Pennington* doctrine does not apply to activity that is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."  *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961).  Further, the *Noerr-Pennington* doctrine does not provide immunity for deliberately false or misleading statements.  *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F.Supp. 2d 680, 699 (S.D. Tex. 2011) (quoting *U.S. v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009)).

In order to allege "sham" litigation, the party must show that the lawsuit is (1) objectively baseless, such that "no reasonable litigant could expect success on the merits" and (2) "conceals an attempt to interfere directly with the business relationships of a competitor."  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  Here, BIScience has

plausibly alleged the sham litigation exception. The following are excerpts from BIScience's counterclaims alleging that Plaintiff is engaged in sham litigation.

> 147. Luminati has pursued sham and objectively baseless patent litigation based on said invalid patents against BIScience, Teso, and IP Ninja, knowing or having good reason to know the patents to be invalid, for the purpose of eliminating lawful competition in the Relevant Market.

> 148. Luminati has also asserted sham and baseless claims of misappropriation against BIScience, failing to identify what it claims is its trade secrets and knowing that it never provided confidential information to BIScience and had already published without restriction the details of its residential proxy service, prior to any dealings with BIScience.

> 149. Luminati failed to make a proper pre-suit investigation prior to such litigation, to determine whether the companies it targeted actually practiced all limitations of its asserted patent claims. Such failure reflects that its actions were filed for an improper purpose. Its litigation seeks not only to deter competition within the claims of its invalid patents, but broadly beyond any reasonable interpretation of the patent claims (even assuming they were valid), disregarding such limitations as there are in its issued claims to improperly attempt to exclude others from practicing *any* form of managed intermediated proxy deployment.

> 151. Luminati has engaged in false advertising against competitors, naming them in false allegations. These competitors include without limitation at least BIScience, and Teso, both of which have counterclaimed to this effect against Luminati. As with Luminati's sham patent acquisition and assertion, its campaign of false advertising has been pursued the purpose of eliminating lawful competition in the Relevant Market.

> 152. Luminati has aggressively publicized its sham legal actions in the financial press with false, misleading, and baseless inflammatory statements in order to damage its competitors including BI Science, for example, the Israeli publications TheMarker and Technation. Luminati has put false and defamatory allegations in its pleadings, where it has limited privilege, but abused this privilege by publishing the same statements extrajudicially, again in an effort to sully and suppress its lawful competitors.

Dkt. No. 85 ¶¶ 147-149, 151-152. BIScience has plausibly alleged facts, which must be taken as true, to support its claim that Plaintiff has engaged in sham litigation, which is an exception to the *Noerr-Pennington* doctrine. As further addressed below, these are not mere conclusory assertions

of sham litigation, but are supported by facts, which if taken as true (as they must be at this stage), make the allegation of sham litigation plausible. For these reasons, BIScience's counterclaim for false advertising should not be dismissed, and Plaintiff is not entitled to immunity under the *Noerr-Pennington* doctrine.

### C.    BIScience's Monopolization Counterclaim Should Not Be Dismissed.

Plaintiff again contends that under the *Noerr-Pennington* doctrine, BIScience cannot plead facts sufficient for the court to infer that plaintiff has a plausible right to relief for its monopolization and attempt to monopolize claims. *See* Dkt. No. 88, p.14. In *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*; No. 6:11-cv-317, 2013 WL 12040726 (E.D. Tex. May 27, 2013)[1], the Court dealt with a similar issue and held that the resolution of the applicability of the *Noerr-Pennington* doctrine was inappropriate for a 12(b)(6) determination and more appropriate for a Rule 12(c) or Rule 56 motion for summary judgment. *Id.* at *5 ("Eon's request to resolve the applicability of *Noerr–Pennington* is more appropriately brought as a motion pursuant to Federal Rule of Civil Procedure 12(c) or as a Rule 56 motion for summary judgment. *See also, Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) ("Unless the complaint itself establishes the applicability of a[n] [affirmative] defense—in which case the issue may properly be the subject of a Rule 12(b)(6) motion—a defendant should ordinarily raise [the defense] in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment.")).

The same reasoning should apply in this case. The applicability of the *Noerr-Pennington* doctrine is not ripe for determination at this stage in the litigation. This is true especially since BIScience is not required to plead to negate an affirmative defense. Therefore, the *Noerr-Pennington* doctrine does not warrant dismissal of this counterclaim. Even if the Court were to

---

[1] Report and Recommendation adopted by 2013 WL 12044954 (E.D. Tex. July 30, 2013).

8

determine that the *Noerr-Pennington* doctrine did apply, BIScience has plausibly alleged the sham litigation exception as previously explained.

Additionally, this counterclaim meets the *Twombly* standard in that it states a plausible claim for monopolization or attempted monopolization. In order to state a claim for attempted monopolization, the party must state sufficient facts to plausibly show that the other party (1) engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize the relevant market, and (3) a dangerous probability of achieving monopoly power in the relevant market. *Surgical Care Center of Hammond, L.C. v. Hospital Service Dist. No. 1 of Tangipahoa Parish*, 309 F.3d 836, 839 (5th Cir. 2002).

Here, Plaintiff complains that Defendant has not pleaded facts sufficient to allege (1) a relevant market, (b) market power, or (3) an antitrust injury. *See* Dkt. No. 88, p.14-15. This is not true.

(a)    Defendant has Adequately Pleaded the Relevant Market

BIScience has sufficiently pleaded a relevant market:

137. At the times relevant hereto a market has existed in the U.S. and internationally for the service of providing residential proxies (the service of commercially providing a communications facility that operates through a plurality of intermediary devices having IP addresses dynamically assigned to those devices by Internet Service Providers (ISPs) ("Relevant Market").

*See* Dkt. No. 85, p.18. This pleading alleges that a market exists for "residential proxies." This allegation must be taken as true at this stage, and indeed may be readily confirmed by a simple online search for "residential proxies," which reflects that residential proxies are standardized commodities and that the parties in this case and in the other cases brought in this District by Plaintiff compete head-to-head against each other on price on a global scale to provide this product in volume, to this market.    Considering the type of service at issue, this definition of the relevant

9

market adequately describes both the service and its geographical scope, and the surrounding allegations make clear that the parties and others that Plaintiff has sued compete with each other on price to sell this service.

The dismissal of an antitrust claim at the motion to dismiss stage for failure to plead the relevant market adequately should not be done lightly because market definition is a fact-intensive inquiry. *In re Pool Products Distribution Market Antitrust Litigation*, 940 F.Supp.2d 367, 378 (E.D. La. 2013) *citing E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 443 (4th Cir. 2011) ("Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market"). The definition of the relevant market is ordinarily a fact question left to the jury. *Bell v. Dow Chemical Co.,* 847 F.2d 1179, 1184 (5th Cir.1988).

       (b)    <u>Defendant Overlooks the Substance of the Allegations</u>

Plaintiff's blanket assertion of *Noerr-Pennington* and exclusive reliance on that theory overlooks the gravamen of what has been charged.

The counterclaims allege that the asserted patents are invalid, not over technical defects in wording or garden-variety prior art, but over Plaintiff's own prior published patent applications that long ago disclosed what Plaintiff later tried to claim in its currently asserted patents. It alleges that Plaintiff filed a comprehensive patent application, seeking to patent what was its business model circa 2009 of providing an "accelerating" Internet service. Dkt. 85 ¶¶ 144-45. When that business model failed, Plaintiff decided to repurpose its "accelerators" as residential proxies. However, the technical disclosure for their use are residential proxies was already in Plaintiff's earlier patent application and through that publication (the '733 publication referenced in the counterclaim) was already in the public domain. Plaintiff knew this but sought a patent on the

10

previously published methodology anyway.  Plaintiff asserts in its motion that the patent examiner took this all into account.  Dkt. No. 88 at 12.  But what the examiner did or did not consider goes to the *weight* of the evidence, not to the plausibility of the assertion that Plaintiff knew full well that it was seeking a patent to which it was not entitled, which if true clearly (and certainly plausibly) makes this a sham patent assertion.  This is not proper ground for dismissal under Rule 12(b)(6).  Plaintiff also conflates fraudulent procurement with fraudulent assertion.  Acquiring a patent fraudulently is one thing.  *See Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965).  The counterclaims also allege that Plaintiff has brought and maintained a lawsuit knowing its patents to be invalid and not infringed, which is a separate basis for liability that Plaintiff fails to adequately address.  *See Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 990 (9th Cir. 1979) (enforcing a patent with actual knowledge that it is invalid satisfies the sham litigation exception of *Noerr-Pennington*).

The counterclaims also alleges that the asserted patents are not infringed, and the Plaintiff knows full well that Defendant assigns proxies to customers in a manner different than what is claimed (Dkt. No. 85, ¶ 149), and thus is not infringing, yet Plaintiff has asserted these patents anyway (a complete sham in denial of known facts), to suppress competition.

Plaintiff's motion most conspicuously disregards the allegation that Plaintiff acquired its current dominant market position as a result of consumer fraud – by tricking consumers with supposedly "free" VPN services (for which there is ordinarily a hefty monthly charge) to unwittingly serve as the "residential proxies" (and donate their own Internet bandwidth for free, for any and all unrestricted purposes), for which Plaintiff turns around, re-channels, and charges business customers many hundreds of dollars a month. Dkt. No. 85, ¶ 142.  This is not the type of conduct that is shielded by *Noerr-Pennington* (or anything else).

Similarly, Plaintiff's motion completely fails to address the allegation (Dkt. No. 85, ¶ 150) that, outside of and prior to any litigation, Plaintiff had sought (in writing) to impose license terms for the asserted patents that would contractually project exclusivity beyond the bounds of the patent claims. This brazenly anticompetitive conduct has nothing to do with petitioning the government and cannot be shielded by a blanket invocation of *Noerr-Pennington*.

       (c)     <u>Defendant Has Adequately Pleaded Market Power</u>

BIScience has alleged that Plaintiff monopolized or attempted to monopolize the relevant market in violation of 15 U.S.C. §2. *See* Dkt. No. 85, pp. 18-19. Market power is the power to control price or exclude competition. *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). It is widely known (and alleged) that Plaintiff is the market leader, and moreover, it is also widely recognized (as the search above will readily reveal) that Plaintiff maintains the highest price for this commodity. It can maximize both market share *and* price only because it has market power. To any extent it may fall short of having that power, it is certainly plausible, given the allegations which must be regarded as true, that there is a dangerous probability that it will succeed in acquiring such power.

       (d)     <u>BIScience Has Sufficiently Pleaded an Antitrust Injury</u>

Again, the focus for a Rule 12(b)(6) motion is whether the party stated a plausible claim for relief. BIScience has alleged that Plaintiff engaged in anti-competitive conduct with intent to monopolize. *See* Dkt. No. 85, pp. 18-21. It claims that Plaintiff has exercised its power through a number of distinct avenues to eliminate lawful competition, including alleging infringement more broadly than the claims permit to drive out competitors; asserting patents Plaintiff knows to be invalid over its own prior published patent applications; false advertising and disparaging competitors in the trade press; bringing sham trade secret claims for information that the Plaintiff

itself had long let into the public domain, and seeking licensing deals to preclude competition beyond the scope of the licensed patents.  Being squeezed out of the market by such predatory conduct is the very type of injury that the antitrust laws were intended to protect against, the essence of an antitrust injury.  And as a result, BIScience incurred damages, including but not limited to: defending against baseless litigation, lost profits from Plaintiff's unlawful methods, damage to its goodwill and commercial reputation.  Dkt. No. 85 at ¶153.  These allegations of damages are sufficiently pleaded and are plausible antitrust injuries.  *See Great W. Directories v. Southwestern Bell Tel. Co.,* 63 F.3d 1378, 1387–88 (5th Cir.1995) (holding that loss of profits caused by exclusionary conduct by a competitor is sufficient for antitrust injury), *superseded in part on other grounds,* 74 F.3d 613, *cert. dismissed,* 518 U.S. 1048, 117 S.Ct. 26, 135 L.Ed.2d 1120 (1996).  *See also Handgards*, 601 F.2d at 997 ("In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong.").  For these reasons, BIScience has sufficiently pleaded an antitrust injury.

Because BIScience has stated a plausible claim of monopolization or attempt to monopolize, these claims should not be dismissed.

III.    <u>CONCLUSION</u>

For all of these reasons, Defendant BIScience respectfully requests that the Court deny Plaintiff Luminati Networks Ltd.'s 12(b)(6) Motion to Dismiss Counterclaims of False Advertising and Monopolization, Dkt. No. 88.

Dated:  July 12, 2019                           Respectfully submitted,


                                   By:    */s/ Eric H. Findlay*
                                          Eric H. Findlay (TX Bar No. 00789886)
                                          Brian Craft (TX Bar No. 04972020)
                                          Debby Gunter (TX Bar No. 24012752)
                                          FINDLAY CRAFT, P.C.
                                          102 North College Avenue, Suite 900
                                          Tyler, Texas 75702
                                          Tel: (903) 534-1100
                                          Fax: (903) 534-1137
                                          Email: efindlay@findlaycraft.com
                                          Email: bcraft@findlaycraft.com
                                          Email: dgunter@findlaycraft.com

                                          ***ATTORNEYS FOR DEFENDANT
                                          BISCIENCE***


                        **CERTIFICATE OF SERVICE**

        I hereby certify that on July 12, 2019, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system.  This document will be served on counsel in

accordance with the Federal Rules of Civil Procedure.

                                   */s/  Eric H. Findlay*
                                   Eric H. Findlay


                                          14