## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| LUMINATI NETWORKS LTD. | |
| Plaintiff, | Case No.  2:18-CV-00483-JRG |
| v. | JURY TRIAL DEMANDED |
| BI SCIENCE INC., | |
| Defendants. | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTERLAIMS OF FALSE ADVERTISING AND MONOPOLIZATION

Luminati's motion to dismiss is properly based on the appropriate 12(b)(6) standard – whether Defendant has stated a plausible claim for relief, which Defendant has not done. Defendant is incorrect that Luminati's motion to dismiss is based on the merits of the counterclaims. On their face, these counterclaims cannot be saved. First, the *Noerr-Pennington* Doctrine precludes Defendant's false advertising and monopolization counterclaims. Second, on their face, the counterclaims do not allow for the possibility of this litigation being a sham. Third, neither counterclaim has been plead with sufficient facts. Luminati respectfully requests that the Court dismiss Defendant's false advertising and antitrust counterclaims.

## I. The *Noerr-Pennington* Doctrine precludes Defendant's counterclaims.

A court may properly dismiss under Rule 12(b)(6) if "it is apparent from the face of [the] complaint that defendants are entitled to *Noerr-Pennington* immunity." *Love Terminal Partners, L.P. v. City of Dallas, Tex.*, 527 F.Supp.2d 538, 550 (N.D. Tex. 2007), *see also Indus. Models, Inc. v. SNF, Inc.*, 716 F. App'x 949 at 956 (Fed. Cir. 2017).[1] As described in Luminati's Motion to Dismiss, Luminati's patent litigation activities are entitled to *Noerr-Pennington* protection. *See* Mot. at 5-7, 10-14. Defendant argues that the sham exception applies and that it was not required to plead facts sufficient to support the sham exception. Opp. at 2-4. These arguments are

---

[1] Defendant's reliance on *Morrone Co. v. Barbour*, 241 F. Supp. 2d 683, 688 (S.D. Miss. 2002) and *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11–cv–00317, 2013 WL 12040726, at *5 (E.D. Tex. May 17, 2013) to argue that *Noerr-Pennington* is not appropriate for a Rule 12(b)(6) Motion (Opp. at 3) is contrary to the clear guidance from *Indus. Models, Inc.*, 716 Fed. Appx. 949, *954-955, where the Federal Circuit affirmed dismissal on such grounds according to the law of the Fifth Circuit. Additionally, both cases required significant fact inquiries that are not necessary here. *See, e.g., Morrone* at 690 (holding that determination of whether the sham exception applied required analysis of both the merits of Plaintiff's original action "and of its subjective motivation in bringing that action" and such information was only available from evidence outside of the pleadings and its attachments.) Here, there are no previous cases where Luminati was found to have brought litigation for infringement of the asserted patents in bad faith, and Luminati is asserting duly issued patents against infringing products. An intense fact inquiry is not warranted or necessary here to show that this case is not sham litigation.

2

inapplicable though, because it is apparent from the face of the complaint that *Noerr-Pennington* applies and the sham defense is not available.

"A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result, but does so *through improper means. . . .* A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Love Terminal Partners,* 527 F.Supp 2d at 552 n.7 (emphasis in original)(citations and internal quotation marks omitted). Luminati's actions are genuinely aimed at procuring a favorable outcome to its litigation. Indeed, Defendant's counterclaims are based solely on Luminati's decision to enforce its patents and actions related to its choice to litigate its claims. Thus, on the face of the counterclaims, "all acts alleged are either litigation or attendant acts related to the litigation, such that *Noerr-Pennington* immunity applies." *Indus. Models,* 716 F. App'x at 956. Defendant has alleged nothing to the contrary nor has it provided any indication that this lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993).

Defendant's allegations that this litigation is a sham plainly fail because Defendant has not plead any facts to suggest that Luminati obtained its patents through fraud on the U.S. Patent Office. Additionally, Defendant has not refuted Luminati's core allegations that BiScience's CEO accessed Luminati's confidential information and hired Luminati's former employees who also had access to Luminati's confidential information. (Dkt. 28 at 4-7). And finally, for the reasons discussed below, Defendant's false advertising claim fails because it is based on allegations from the complaint, Defendant's own statements, or third-party statements - not statements from

Luminati. Thus, on the face of the allegations, there is no basis to assert that this litigation is a sham.[2]

Thus, the *Noerr-Pennington* doctrine clearly precludes Defendant's false advertising and antitrust counterclaims. They should be dismissed.

## II.   Defendant's False Advertising Counterclaims Fails.

Defendant failed to rebut Plaintiff's contentions that Defendant has not identified any published false statements **attributed to Luminati**. As discussed in the Motion, Exhibit A only quotes BiScience and third parties. Mot. at 8-10. Thus, it appears from Exhibit A, that only BiScience and third parties participated in the creation of this article. There are no quotes from Luminati, and Defendant failed to plead any other examples of Luminati's alleged false advertising. While not plead in its countercomplaint, Defendant now appears to identify allegations from the complaint that it disputes and statements made by the third-party author of the article as the basis for its false advertising claim. Opp. At 5. For the reasons stated in the Motion, this article cannot provide Defendant with a false advertising claim against Plaintiff. Mot. 8-10. Defendant has not identified any other false statements, much less plead them in its countercomplaint.

Defendant even plainly admits that "[p]etitioning the courts for relief in a lawsuit is protected [under *Noerr-Pennington*], if the proceedings are not a sham." Opp. at 4. For the reasons discussed throughout, there is no basis for alleging that this litigation is a sham. Thus, an article that describes the allegations in this litigation cannot serve as the basis for a false advertising claim. Moreover, in arguing that Luminati's alleged comments to the press are beyond *Noerr-Pennington*

---

[2] Should the Court determine that Defendant was required to plead facts sufficient to support an allegation that this litigation is a sham, as Luminati contends it should, based on the same failures, Defendant has not sufficiently pleaded that this case is a sham.

protection, Defendant relies on *We, Inc. v. City of Philadelphia Dept. of Licensing and Inspections,* 983 F. Supp. 637, 639 (E.D. Pa. 1997), but it does not provide support for Defendant's claims. In fact, that case holds that "mobiliz[ing] public opinion about a serious violation of the law" is covered under the *Noerr-Pennington* doctrine. Moreover, in *We*, the behavior that "went beyond merely complaining or petitioning the government" was that the defendants themselves were personally involved in carrying out the orders issued to the plaintiffs' business and physically participated in evicting the patrons. *Id.* There is no such activity here. Defendant's false advertising claims are based on publicly available allegations in the complaint and its own statements to the press[3][4].

### III. Defendant's Monopolization Counterclaim Fails on its Face.

#### A. Patent Law Permits Luminati to Exclude Others from Making and Using Infringing Products.

Defendant has not and cannot adequately plead its monopolization counterclaim. It must be dismissed. Defendant states, "Defendant Overlooks the Substance of the Allegations." Opp.at 10. While Defendant likely meant to charge Luminati with such an oversite, it is indeed Defendant who has overlooked the substance of its allegations. At the heart of this inquiry is Luminati's patent infringement allegations, which are not prohibited under the antitrust laws. "Patentees must be permitted to test the validity of their patents in court through actions against alleged infringers.

---

[3] Defendant also appears to accuse Luminati of making false claims in the Complaint or Amended Complaint that "it could never get away with outside of court." This is equally unfounded and appears to imply that miscellaneous articles carry more weight than court filings. Luminati disagrees with Defendant's statement entirely.

[4] In addition, Defendant baselessly argues that Luminati has less an interest in its patent rights than the patent owner in *Sliding Door*. Opp. at 5-6. Luminati has a strong interest in its patent complaints being publicly accessible to put similar infringers on notice that Luminati does enforce its patent rights.

Their status as alleged possessors of a legal monopoly does not cause them to be pariahs before the law." *Handguards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 995 (9th Cir. 1979)(citations omitted).

Nonetheless, Defendant complains that it is being "squeezed out of the market." But prohibiting others from making, using, and selling infringing products is Luminati's right under the patent laws of the United States. *See* 37 USC § 271. Thus, Defendant's claims of attempted monopolization fall flat. Defendant also complains that Luminati is seeking licensing deals that go beyond the scope of the patents, but as Luminati explained in its opening motion (Mot. at 14), it was Defendant who sought to undertake a global settlement.[5] Moreover, those discussions were pursuant to FRE 408 and incidental to the prosecution of this lawsuit. They are irrelevant under the *Noerr-Pennington* doctrine. *See Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528 (9th Cir 1991).

### B. Defendant did not adequately plead relevant market or market power.

Instead of pleading facts to support a "relevant market," Defendant has merely plead the existence of a market coextensive with the accused products without pleading any facts regarding the interchangeability and cross-elasticity of this market. Opp. at 9. The Fifth Circuit has been clear that failure to allege a proper relevant market requires dismissal: "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiffs favor, the relevant market is legally insufficient, and a motion to dismiss may be granted." *Apani SouthWest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002); *Queen City*

---

[5] To the extent that Defendant is now arguing that some other pre-litigation "writing" is the basis for this allegation (Opp. at 12), Defendant did not plead any such allegations (Dkt. 85, Countercomplaint at ¶ 150) and Plaintiff is not aware of any support for such an allegation.

*Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (affirming the district court's dismissal of an antitrust claim for failure to plead a relevant market because the definition of the proposed market was too narrow.); Mot. At 15.

As to market power, Defendant fails to make the detailed factual allegations concerning the existence of market power needed to state a claim for a violation of the Sherman Antitrust Act. Instead of factual allegations, Defendant makes conclusory statements in its opposition that "Plaintiff is the market leader" or that Luminati has the highest prices.  Opp. at 12.  Such statements are woefully short of the detail necessary to show that Luminati has market power in the relevant market.

The usual way of showing market power is to allege the market share of the alleged monopolist.  "A market share in excess of 70 percent generally establishes a prima facie case of monopoly power at least with evidence of substantial barriers to entry and evidence that existing competitors could not expand output."  ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS (7th Ed. 2012) p. 231 (collecting cases).  Defendant makes no allegations about the percent of market share controlled by Luminati.  Of course, indirect or circumstantial evidence can also be used to show market power, but Defendant has not made any such factual allegations. For example, factual allegations of barriers to entry can be made showing that there are conditions that inhibit other firms from entering the market. *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1190-91 (5th Cir.1985) (ease of entry, among other things, precludes finding of market power).  "Allegations of significant barriers to entry in addition to a predominant market share fortify the inference of monopoly power because impediments to entry allow the dominant firm to raise prices without attracting competitors to undercut them." *In re Educational Testing Service Praxis Principles of Learning and Teaching: 'Grades 7-12 Litigation*, 429 F.Supp.2d 752,

756 (E.D. La. 2005); *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir.1995) (ease of entry will result in undercutting monopoly prices).

In evaluating barriers to entry, courts consider evidence regarding the frequency, magnitude and success of entry. *Tops Mkts. Quality Mkts.*, 142 F.3d 90, 99 (2d Cir. 1998). Taking up Defendant's invitation to make a "simple online search for 'residential proxies'" shows that there are dozens of competitors in this market. Defendant, moreover, has not identified any barrier to entry for the provision of "residential proxies."

Based on the definition of relevant market provided by Defendant, there would not appear to be any significant barriers to entry because the communications facility can be non-facilities based, i.e., there is no need to build a new telecom infrastructure, and the Internet Service Providers control and assign the IP addresses. Evidence of market structure can also be used to show market power such as economies of scale and scope, relative size and strength of competitors, elasticity of consumer demand and other factors. *United States v. Dentsply Int'l*, 399 F.3d 181, 187 (3d Cir. 2005). Defendant has not submitted any factual allegations concerning market structure. In sum, Defendant has failed to state a plausible claim that Luminati has market power in the relevant market.

However, even if Defendant adequately plead the relevant market or market power, which it has not for the reasons stated in above and in its Motion, (Mot. at 14-17). Luminati is within its rights to prevent others from infringing its patent in the relevant market.

**C. Defendant has not adequately plead antitrust injury.**

Defendant has also failed to adequately show it has suffered an antitrust injury. For the reasons stated above, Defendant's arguments regarding its alleged injuries, such as being

"squeezed out of the market" are irrelevant to a patent inquiry, particularly where there is no evidence of any unlawful activities by Luminati.

Also, Defendant's cases, *Great Directories* and *Handguards* are not applicable here. *Great Directories* is not a patent case and thus fails to take into account the right to exclude others that the patent laws grant to Luminati. In *Handguards,* the antitrust claim was based on previous patent lawsuits that a jury found to have been brought in bad faith. *Id.* at 995 ("Rather, this case involves simply the commencement and maintenance of related infringement actions in what the jury found to be bad faith.")  No jury has found that Luminati brought this case in bad faith. Indeed, the *Handguards* case held that "the jury should be instructed that a patentee's infringement suit is presumptively in good faith and that this presumption can be rebutted only by clear and convincing evidence. *Id. at 29.*  Therefore, according to Defendant's cited case law, Luminati is entitled to a presumption of good faith in filing this lawsuit, and Defendant has not adequately shown that there is any reason to doubt that.

Defendants have also not suffered damage for "defending against a baseless litigation." First, as stated above, there has been no determination that Luminati brought this case in bad faith and no reason to deviate from the presumption of good faith. Additionally, Defendants have not charged Luminati with fraud on the Patent Office in obtaining the asserted patents, because it cannot it. Mot. at 3, 11-13. Instead, BI Science appears to try to argue that this litigation is baseless or a sham because Luminati allegedly knows its patents to be invalid, despite the lack of asserting fraud on the Patent Office, and despite the presumption of validity. Opp. at 10-11. This is critical because other courts have held in similar cases that "if defendants have failed to sufficiently allege that the patents were obtained through deceit or fraud, then they cannot possibly establish that [the plaintiff] initiated this litigation knowing that their patents were invalid. *Vaughan Co. v. Global*

9

*Bio-Fuels Tech., LLC*, 2013 U.S. Dist. LEXIS 152068, *22-23 (N.D.N.Y. Nov. 15, 2012) (granting request to dismiss *Handguards* antitrust claims without leave to amend).

Given that it cannot argue that Plaintiff secured the patent through fraud, Defendant also argues "fraudulent assertion" (Opp. at 11) by claiming that Plaintiff alleged patent infringement in "bad faith," because Plaintiff "knows, or should know, after a reasonable inquiry and due diligence that these [patent infringement] allegations are unfounded, not supported, and wholly improper" without making any allegations supporting fraud. Mot. At 9; Countercomplaint at ¶ 131. As stated in the Motion, Plaintiff is entitled to the presumption that assertion of the duly granted Asserted Patents was brought in good faith and Defendant's allegation that such litigation is a sham are conclusory statements insufficient to satisfy the *Twombly* standard. Mot. At 12-13. Defendant argues that "Defendant knows full well that Defendant assigns proxies to customers in a manner different than what is claimed, and thus not infringing" (Opp. At 11), but such arguments are clearly baseless both because (a) claim construction is just starting in this case, and (b) Plaintiff had no access to Defendant's source code before the litigation and is still reviewing Defendant's source code, some of which has yet to be produced. There is no basis for Defendant to allege that Luminati brought this case in anything other than good faith.

Defendant also fails to address the concept of antitrust injury; much less plead sufficient facts to show a plausible claim of antitrust injury. "Antitrust laws were enacted for the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). To pursue claims under the Sherman Act, a party must allege antitrust injury – a loss stemming from a competition-reducing aspect of another party's behavior. To show antitrust injury, there must be factual allegations showing harm to other competitors, not just itself. *Location Services, LLC v. Digital Recognition Network, Inc.*, 4:18-CV-744-A, (N.D. Tex. November 5, 2018) (ROSS, Tex.

Case Law) ("In this regard, the court agrees that plaintiff has not pleaded harm to other competitors, but only to itself, which is insufficient."). The Fifth Circuit has excluded threats of deceased competition as a basis for showing antitrust injury; there must be facts showing competitors were harmed. *Anago, Inc. Tecnol Medical Prods., Inc.,* 976 F.2d 248, 249 (5th Cir. 1992). (Fifth Circuit "has narrowly interpreted the meaning of antitrust injury.")

Defendant does not include the detailed factual allegations showing harm to competitors needed to show antitrust injury. Instead, it simply presents a list of harm it has allegedly suffered which fails to state a claim for violation of the Sherman Act.

Thus, Defendants here cannot possibly establish that Luminati brought this case knowing the asserted patents to be invalid; they are not, and Luminati did not bring this case in bad faith[6]. Defendant has suffered no antitrust injury and has failed to include critical facts in its allegations to even allow such a claim to proceed.

Defendant has not sufficiently plead an antitrust claim and cannot do so based on the facts of this case.

### IV. Conclusion

For the reasons discussed herein, Luminati respectfully requests that the Court dismiss Defendant's counterclaims.

Dated: June 19, 2019

By: */s/ Ronald Wielkopolski*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.

---

[6] Defendant also appears to attempt to include a hodge-podge of other accusations meant to besmirch Luminati, like consumer fraud, miscellaneous attempts to allegedly suppress competition, and non-infringement that are neither sufficiently plead nor do they support the antitrust counterclaim. Notably, Defendant has not plead any unfair competition counterclaims.

Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702
(510) 944-0190
Email: sunnyc@ruyakcherian.com
Email:  bobh@ruyakcherian.com

Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Email: ronw@ruyakcherian.com

Attorneys for Plaintiff