IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LUMINATI NETWORKS LTD._<br><br>        Plaintiff,<br><br>   v.<br><br>BI SCIENCE INC.,<br><br>        Defendants. | Case No. 2:18-CV-00483-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTERLAIMS
OF FALSE ADVERTISING AND MONOPOLIZATION**

Luminati respectfully requests that this Court dismiss Defendant's counterclaims of false advertising and monopolization because (1) the *Noerr-Pennington* Doctrine precludes these claims; (2) on their face, the counterclaims do not allow for the possibility of this litigation being a sham; and (3) neither counterclaim has been pled with sufficient facts.

## I. The *Noerr-Pennington* Doctrine precludes Defendant's counterclaims.

Dismissal is proper under Rule 12(b)(6) if "it is apparent from the face of [the] complaint that defendants are entitled to *Noerr-Pennington* immunity." *Love Terminal Partners, L.P. v. City of Dall.*, 527 F. Supp. 2d 538, 550 (N.D. Tex. 2007), *see also Indus. Models v. SNF, Inc.*, 716 F. App'x 949, 956 (Fed. Cir. 2017).[1] Luminati's patent litigation activities are entitled to *Noerr-Pennington* protection, and the rare sham defense does not apply. (*See* Mot. at 5-7, 10-14). It is plain from the face of Defendant's allegations that this litigation is not a sham.

"A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all . . ." *Love Terminal Partners*, 527 F. Supp. 2d at 552 n.7 (citations omitted). Defendant's counterclaims are based solely on Luminati's patent litigation. Thus, "all acts alleged are either litigation or attendant acts related to the litigation, such that *Noerr-Pennington* immunity applies." *Indus. Models*, 716 F. App'x at 956. Defendant has pled no facts showing that this lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993).

Indeed, Defendant has pled no facts showing fraud on the U.S. Patent Office, has not refuted Luminati's core allegations that Defendant's CEO and the former Luminati employees

---

[1] Ignoring clear guidance from *Indus. Models*, 716 F. App'x at 954-955, Defendant relies on *Morrone Co. v. Barbour* and *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.* Additionally, unlike this case, those cases required significant fact inquiries. *See, e.g., Morrone* at 690.

1

Defendant hired accessed Luminati's confidential information (Dkt. 28 at 4-7), and bases its false advertising claim on statements taken from the complaint, Defendant's own statements, or third-party statements - not statements from Luminati. On the face of the allegations, there is no basis to assert that this litigation is a sham.

## II. Defendant's False Advertising Counterclaim Fails.

Defendant has not identified any published false statements **attributed to Luminati**. Defendant appears to base its claim on third-party statements and the allegations in the complaint. (Opp. at 5). However, Defendant admits "[p]etitioning the courts for relief in a lawsuit is protected [under *Noerr-Pennington*], if the proceedings are not a sham." (Opp. at 4). This litigation is not a sham and thus, an article describing this litigation's allegations cannot be the basis for a false advertising claim. (Mot. 8-10). Moreover, Defendant improperly relies on *WE, Inc. v. City of Phila. Dep't of Licenses & Inspections,* 983 F. Supp. 637, 639 (E.D. Pa. 1997) to claim that statements in the article are beyond *Noerr-Pennington* protection. However, that case holds that *Noerr-Pennington* protects "mobiliz[ing] public opinion about a serious violation of the law." *Id*. (citations omitted). Additionally, in *WE,* the behavior that "went beyond merely complaining or petitioning the government" was that the defendants themselves were personally involved in carrying out the orders issued to the plaintiffs' business and physically participated in evicting the patrons. *Id.* There is no such activity here.[2] This counterclaim fails.

## III. Defendant's Monopolization Counterclaim Fails on its Face.
### A. Patent Law Permits Luminati to Exclude Others from Making and Using Infringing Products.
Defendant has not and cannot adequately plead its monopolization counterclaim. Antitrust law does not prohibit Luminati's enforcement of its patents. "Patentees

---

[2] Defendant is incorrect in its assessment of the applicability of *Sliding Door*. (Opp. at 5-6). Luminati's patent enforcement is clearly related to its legal rights, like in *Sliding Door*.

2

must be permitted to test the validity of their patents in court through actions against alleged infringers. Their status as alleged possessors of a legal monopoly does not cause them to be pariahs before the law." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 (9th Cir. 1979) (citations omitted). Indeed, prohibiting others from making, using, and selling infringing products is Luminati's right under U.S. patent law. *See* 35 USC § 271. Defendant's claims fall flat.[3]

**B.    Defendant did not adequately plead relevant market or market power.** Instead of pleading facts to support a "relevant market," Defendant merely pled the existence of a market coextensive with the accused products without pleading any facts regarding the interchangeability and cross-elasticity of this market. (Opp. at 9). In the Fifth Circuit, failure to allege a proper relevant market requires dismissal. *Apani Sw., Inc. v. Coca-Cola Enters*, 300 F.3d 620, 628 (5th Cir. 2002); (Mot. at 15).

As to market power, Defendant fails to make the detailed factual allegations concerning the existence of market power needed to state a claim for a violation of the Sherman Antitrust Act. Defendant entirely failed to allege Luminati's market share, which is a common way of showing market power. ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS (7th Ed. 2012) p. 231 (collecting cases). Defendant has also not made any factual allegations showing indirect or circumstantial evidence of such market power. For example, factual allegations of barriers to entry can be made showing that there are conditions that inhibit other firms from entering the market. *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1190-91 (5th Cir.1985) (ease of entry, among other things, precludes finding of market power). Defendant, moreover, has not identified any barrier to entry for the provision of "residential proxies." Instead, Defendant makes

---

[3] For example, Defendant has plead no facts, and Plaintiff is aware of none, regarding any purported pre-litigation written licensing proposal newly argued in its Opposition. Opp. at 12.

3

conclusory statements that "Plaintiff is the market leader" or that Luminati has the highest prices. (Opp. at 12). Such statements are woefully short of the detail necessary to show that Luminati has market power in the relevant market. Evidence of market structure can also be used to show market power such as economies of scale and scope, relative size and strength of competitors, elasticity of consumer demand and other factors. *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005). Defendant has submitted no factual allegations concerning market structure, thus failing to state a plausible claim that Luminati has market power in the relevant market.

        **C.**    **Defendant has not adequately plead antitrust injury.** Defendant has failed to adequately show it suffered an antitrust injury. Defendant's alleged injuries, such as being "squeezed out of the market" are irrelevant to a patent inquiry.

        Also, *Great Directories* and *Handgards* do not support Defendant. *Great Directories* is not a patent case and fails to take into account a patent owner's right to exclude others. *Handgards* centered on previous patent lawsuits that were found to have been brought in bad faith. 601 F.2d at 995. No jury has found that Luminati brought this case in bad faith. Indeed, the *Handgards* case held that "the jury should be instructed that a patentee's infringement suit is presumptively in good faith and that this presumption can be rebutted only by clear and convincing evidence." *Id*. at 996. Luminati is entitled to a presumption of good faith in filing this lawsuit, and Defendant has not adequately shown that there is any reason to doubt that.

        Defendant has also not suffered damage for "defending against a baseless litigation." *Prof'l Real Estate*, 508 U.S. at 60-61. There is no reason to deviate from the presumption that Luminati brought this case in good faith. Additionally, Defendant has not charged Luminati with fraud on the Patent Office in obtaining the asserted patents, because it cannot prove? it. (Mot. at 3, 11-13). Nonetheless, Defendant argues that this is a sham litigation because Luminati allegedly knows its

patents to be invalid. In a similar case, the court held that "if defendants have failed to sufficiently allege that the patents were obtained through deceit or fraud, then they cannot possibly establish that [the plaintiff] initiated this litigation knowing that their patents were invalid. *Vaughan Co. v. Glob. Bio-Fuels Tech., LLC*, No. 1:12-CV-1292, 2013 U.S. Dist. LEXIS 152068, at *22-23 (N.D.N.Y. Oct. 23, 2013) (dismissing *Handgards* antitrust claims without leave to amend).

Defendant also argues "fraudulent assertion" claiming that Luminati brought this case in "bad faith" without any facts to support a claim for fraud. Defendant claims that Luminati "knows full well that Defendant assigns proxies to customers in a manner different than what is claimed, and thus not infringing." (Opp. At 11). Defendant has provided no facts to show how Luminati would know this, particularly given that Luminati had no pre-litigation access to Defendant's source code. Defendant's allegations are without factual support.

Defendant fails to address the concept of antitrust injury; much less plead sufficient facts to show a plausible claim of antitrust injury. Antitrust laws were enacted for "the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). To pursue claims under the Sherman Act, a party must allege antitrust injury – a loss stemming from a competition-reducing aspect of another party's behavior. There must be facts showing competitors were harmed. *Anago, Inc. v. Tecnol Med. Prods.*, 976 F.2d 248, 249 (5th Cir. 1992). (Fifth Circuit "has narrowly interpreted the meaning of antitrust injury.") Defendant includes no detailed factual allegations showing the harm to competitors needed to show antitrust injury. Instead, it simply presents a list of harm it has allegedly suffered which fails to state a claim for violation of the Sherman Act. Defendant has not sufficiently pled an antitrust claim.

**IV. Conclusion.** For the reasons discussed herein, Luminati respectfully requests that the Court dismiss Defendant's counterclaims.

5

Dated: July 24, 2019

By: */s/ Ronald Wielkopolski*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94702
(510) 944-0190
Email: sunnyc@ruyakcherian.com
Email: bobh@ruyakcherian.com

Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Email: ronw@ruyakcherian.com

Attorneys for Plaintiff