IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:18-cv-483-JRG |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| BISCIENCE INC. | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S SUR-REPLY TO PLAINTIFF'S MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS OF
FALSE ADVERTISING AND MONOPOLIZATION**

Defendant (hereinafter referred to as "BIScience") hereby files this sur-reply in opposition to Plaintiff Luminati Networks Ltd.'s ("Luminati") 12(b)(6) Motion to Dismiss Counterclaims of False Advertising and Monopolization.

**I.    The *Noerr-Pennington* Doctrine Does Not Foreclose Defendant's Counterclaims.**

The *Noerr–Pennington* defense is not appropriate for resolution on a Rule 12(b)(6) motion. *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11–cv–00317, 2013 WL 12040726, at *5 (E.D. Tex. May 17, 2013), *adopted*, 2013 WL 12044954 (E.D. Tex. July 30, 2013). Additionally, there are plausible allegations that are well outside of any protection available under *Noerr-Pennington*. Luminati's motion claims to be directed at the pleadings – whether Defendant has properly *alleged*, for example, sham litigation – but improperly seeks to dismiss the allegations by arguing its side of the merits.

Plaintiff mis-states the basis for BIScience's claim. The counterclaim is not (as stated in Plaintiff's Reply Brief, p.1) based on fraudulent *procurement* of patents (*see Walker Process*

*Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965)). Rather, the allegations concern fraudulent *assertion* of patents (*see Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979), as well as trade secrets. Plaintiff's arguments as to the lack of allegations of fraudulent procurement are therefore completely misplaced. As to fraudulent assertion, BIScience has pleaded that the patents that Plaintiff has asserted, which were first filed in 2013, are invalid, by reason, *inter alia*, of being anticipated (as well as obvious) over an earlier published patent application that the Plaintiff itself had filed in 2009, which was published more than a year before the application for the asserted patents, rendering those patents invalid. This prior public disclosure by the Plaintiff also negates any trade secrecy of all information therein. The fact that the Patent Examiner may have overlooked the significance of Plaintiff's prior patent application does not purge the Plaintiff from its own knowledge of the invalidating facts, thereby freeing Plaintiff to go after competitors with patent and trade secret claims it knows to be baseless.

**II.     BIScience's False Advertising Claim Has Been Adequately Pleaded.**

Plaintiff rehashes the same argument raised in its Motion to Dismiss that the false advertising claim is only based on the Complaint. As explained in the Response, that is not the case. The counterclaims allege "Luminati communicated with members of the media in Israel and *caused* an article [complained of] to appear" in a specified publication. Dkt. No. 85, ¶ 130. This is a sufficient allegation of Luminati's responsibility for the alleged false advertising. Luminati seeks to immunize its media campaign against BIScience under the rubric of "mobiliz[ing] public opinion about a serious violation of the law." Dkt. No. 97 at 2. This quote, however, comes from a case, *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159 (3rd Cir. 1988), that the cited authority (*WE, Inc. v. City of Phila.*) expressly *distinguished*. In *Brownsville*, the action in question was to "stimulate public interest" "to bring a [nursing home's] noncompliance

with applicable regulations to the attention of the appropriate authorities." The basis on which the *WE* court distinguished *Brownsville* was that the conduct in question in *WE*, unlike that in *Brownsville*, reflected "no petitioning element." Neither did the action challenged here, of going to the trade press to tar a competitor with the unfounded allegations of one's own lawsuit, have any role in petitioning the government. Nor does Luminati even purport to argue to the contrary.[1]

### III.    BIScience's Monopolization Claim Has Been Adequately Pleaded.

*Handgards* specifically holds a monopolization claim may be based on the bad faith assertion of a patent. BIScience does not disagree that "[p]atentees must be permitted to test the validity of their patents in court through actions against alleged infringers." 601 F.2d at 993. However, the next sentence in *Handgards* states an exception, and expressly condemns "infringement actions initiated and conducted in bad faith." *Id.*  Luminati cannot get around this bedrock principle by selective quotation.

The allegation of the improper license proposal, seeking to condition a license on acceptance of a larger restriction beyond the scope of the patents, is not "newly raised" as asserted in footnote 3 on page 3 of Luminati's Reply. *See* Dkt. No. 85, ¶ 150. This is a serious independent allegation of seeking to extend the patent monopoly beyond its granted scope, which is classic misuse and monopolization. Luminati erroneously denies the very existence of this allegation, rather than address the substance of it, and the failure to do so is critical.

With regard to relevant market, the counterclaims (Dkt. No. 85, ¶¶ 137-38) identify a class of product, and not one particular product or one particular provider's product, as the relevant product market, and identifies four specific companies (including Plaintiff) that compete with each

---

[1] Luminati's attempt to defend its citation of *Sliding Door* also fails. In *Sliding Door*, the communication in question went to people that the patent owner there asserted were also infringing. There is no corresponding analog here. The case is inapposite.

other to sell this type of product. These allegations, taken together, are sufficient allegations of interchangeability and elasticity of demand. Contrary to Plaintiff's assertions, the alleged relevant market is not "co-extensive" with the asserted patents. Indeed, one of the allegations of monopolization is that Plaintiff is asserting its patents as if they *were* coextensive with the market for residential proxies, whereas in fact they are narrower, incorporating specific additional limitations on how a curated set of proxies are brokered and managed. The patent claims do not cover *any and all* residential proxies. The allegation is that Luminati is asserting patents it knows to have these significant limitations, more broadly than the patents themselves warrant, to suppress the remaining competition in a field it already dominates. Plaintiff simply fails to address this allegation on its terms.

With regard to market dominance, what has been alleged is that Luminati is the largest player in its field and that it is aggressively seeking to eliminate competition by filing and prosecuting sham patent litigation, pursuing false media campaigns, deals to leverage its patents beyond their actual scope, and at the same time has been able to maintain both its leading market share *and* the highest prices in this industry. The allegation that Plaintiff has a dominant market position in the alleged relevant market, and proclaims itself to be the largest player (Dkt. No. 85, ¶ 140), is equivalent to alleging that it has the largest market share of the relevant market. The further allegations are that it is abusing that position and has a dangerous probability of acquiring monopoly power in this market. These are plausible and sufficient allegations.

With regard to antitrust injury, Plaintiff argues that allegations of "being 'squeezed out of the market' are irrelevant to a patent inquiry" (Dkt. No. 97 at 4). Being "squeezed out of the market" as a competitor by alleged unlawful exclusionary conduct is the essence of an antitrust injury. Plaintiff's arguments about presumptions, burdens of proof, and jury instructions are issues

that are relevant to trial, not pleading. They go to adjudicating the merits, and are entirely misplaced on a motion to dismiss.[2]

Luminati protests that it couldn't have known that Defendant operated differently than as claimed because it had no pre-litigation access to Defendants' source code. It is a heavy lift, which Plaintiff does not meet, to say the allegations of Plaintiff's knowledge are implausible simply because Plaintiff did not have source code. The asserted patent claims on their face require, for example, "receiving the [proxy] identifier from the [provider's] server" ('044 patent, claim 81(c)). Anyone can sign up for the accused infringing service and test directly whether this occurs (it does not). Luminati could not argue that this type of testing requires access to source code. Luminati's failure to know the answer to this question reflects a lack of pre-suit investigation.

BIScience agrees that not every patent case should transform into an antitrust litigation. But this case stands out as one where the Plaintiff has proceeded against its competitors in disregard of its own self-created patent bars, without an adequate investigation of infringement, and in conjunction with exclusionary conduct going far beyond the exercise of its legally granted rights. This is one of those cases, therefore, in which antitrust counterclaims are appropriate. Dismissal of those claims is not warranted under applicable legal standards.

---

[2] Additionally, the cost incurred in defending against the bad faith assertion of a patent is most definitely an antitrust injury. *Handgards*, 601 F.2d at 997 ("In a suit alleging antitrust injury based upon a bad faith prosecution theory, it is obvious that the costs incurred in defense of a prior infringement suit are an injury which 'flows' from the antitrust wrong."). As far as *Prof'l Real Estate* is concerned, it is sufficiently alleged here that (1) the infringement allegations are objectively baseless, and (2) the accused patent assertions would interfere directly with competing businesses. *Prof'l Real Estate*, 508 U.S. at 61.

Dated: August 1, 2019                  Respectfully submitted,

*/s/ Eric H. Findlay*
Eric H. Findlay (State Bar No. 00789886)
Brian Craft (State Bar No. 04972020)
Debby Gunter (State Bar No. 24012752)
Findlay Craft, P.C.
102 N. College Ave, Ste 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
bcraft@findlaycraft.com
dgunter@findlaycraft.com

***COUNSEL FOR DEFENDANT BISCIENCE***

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. This document will be served on Defendant in accordance with the Federal Rules of Civil Procedure.

*/s/ Eric H. Findlay*
Eric H. Findlay