# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| LUMINATI NETWORKS LTD.<br><br>       Plaintiff,<br><br>  v.<br><br>BISCIENCE INC.,<br><br>      Defendants. | Case No.  2:18-CV-483-JRG<br><br>Judge Rodney Gilstrap |

## LUMINATI'S OPENING CLAIM CONSTRUCTION BRIEF
## <u>(LOCAL PATENT RULE 4-5(a))</u>

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

    A.  The Patents-in-Suit ................................................................................ 1

    B.  The Asserted Claims .............................................................................. 2

III.  LEGAL STANDARDS FOR CLAIM CONSTRUCTION ........................... 4

IV.  LEVEL OF ONE OR ORDINARY SKILL IN THE ART .......................... 7

V.  DISPUTED TERMS FOR CLAIM CONSTRUCTION ................................ 8

    A.  Whether the Preamble is Limiting for '044 Patent Claims 81 & 108 ...................... 8

    B.  "First Device," "First Server," "Second Device," "Second Server" (Indefiniteness of '044 Patent Claims 81 & 108) ........................ 8

      1.  Claim 81 & 108 Indefiniteness ........................................................ 8

      2.  Claim term meaning ........................................................................ 13

    C.  "First Content Identifier" ..................................................................... 13

    D.  "identified in the Internet by a first identifier," "identified in the Internet by a third identifier," and "identified in the Internet by a second identifier" ............. 16

    E.  "receiving the second identifier from the first server" and "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier" ................................. 18

    F.  "multitasking or multiprocessing" ....................................................... 19

    G.  "proximity to the second server" ......................................................... 19

    H.  "sending the second identifier to the first server," "receiving a second request from the first device, the second request includes the first content identifier and the third identifier," and "in response to receiving the first content, sending the first content to the first device using the first identifier" .............................. 20

    I.  Whether the preamble of '866 patent claim 15 is limiting ....................... 21

    J.  "First server" ('866 Patent) and "identified in the Internet by a second identifier" ('866 Patent) ......................................................... 22

    K.  "A group of multiple devices" .............................................................. 23

    L.  "Partitioning the content into a plurality of content slices" .................. 24

    M.  "Each content slice containing at least part of the content" and "each content slice … identified using a content slice identifier" .......................... 25

    N.  "A plurality of content slices … and for each of the content slices" ......... 26

    O.  "Selecting a device from the group" and "sending over the Internet a first request to the selected device using the group device identifier of the selected device" .... 27

**P.** **"The first request including the content slice identifier and the second identifier"** ....................................................................................................... 28

**Q.** **"The partitioning is based webpages level"** ............................................... 28

**R.** **"All of the parts of the content are included in all of the content slices"** ............... 29

**S.** **"Part of the content is included in two or more content slices"** ............................... 29

**VI.** **CONCLUSION** ...................................................................................... 30

## TABLE OF AUTHORITIES

*Cases*

*3-D Matrix, Inc. v. Menicon Co*., Civil Action No. 14-cv-10205-IT, 2016 U.S. Dist. LEXIS 3096 (D. Mass. Jan. 11, 2016) ........................................................................................................ 12

*Aloft Media, LLC v. Microsoft Corp*., No. 6:08-CV-50, 2009 U.S. Dist. LEXIS 24124 (E.D. Tex. Mar. 24, 2009) ................................................................................................... 14, 17, 21

*Am. Med. Sys., Inc. v. Biolitec, Inc*., 618 F.3d 1354 (Fed. Cir. 2010) .......................................... 17

*Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-CV-689-JRG, 2014 U.S. Dist. LEXIS 45526 (E.D. Tex. Apr. 2, 2014) ................................................................................. 5

*Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004) ...................... 12

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341 (Fed. Cir. 2001) ........................................................................................................................ 5

*Cheetah Omni LLC v. Alcatel-Lucent Inc.,* 939 F. Supp. 2d 649 (E.D. Tex. April 11, 2013) ........ 6

*Danco, Inc. v. Fluidmaster, Inc*., No. 5:16-cv-73-JRG-CMC, 2017 U.S. Dist. LEXIS 155936 (E.D. Tex. Sep. 22, 2017) ................................................................................................ 7

*GE Lighting Sols., LLC v. AgiLight, Inc.,* 750 F.3d 1304 (Fed. Cir. 2014) ................................. 15

*Gilead Scis. v. Mylan Inc*., No. 1:14CV99, 2015 U.S. Dist. LEXIS 44558 (N.D.W. Va. Apr. 6, 2015) ............................................................................................................................. 12

*Huawei Techs. Co. v. T-Mobile US, Inc*., No. 2:16-CV-00057-JRG-RSP, 2017 U.S. Dist. LEXIS 96097 (E.D. Tex. June 21, 2017) ........................................................................... 5

*In re Johnson,* 558 F.2d 1008 (C.C.P.A. 1977) ........................................................................... 26

*In re Miller*, 441 F .2d 689 (C.C.P.A. 1971)............................................................................... 26

*Markman v. Westview Instr., Inc*., 517 U.S. 370 (1996)................................................................ 4

*Marrin v. Griffin*, 599 F.3d 1290 (Fed. Cir. 2010) ..................................................................... 22

*MBO Labs., Inc. v. Becton, Dickinson & Co*., 474 F.3d 1323 (Fed. Cir. 2007) ............................ 7

*Mentor H/S, Inc. v. Medical Device Alliance, Inc*., 244 F.3d 1365 (Fed. Cir. 2001) .................... 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) ............................................. 12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351 (Fed. Cir. 2008) ................ 5

*On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133 (Fed. Cir. 2004)......................... 7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................... 5, 6, 7

*Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ........................ 6

*Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017 (Fed. Cir. 1987) ............................... 6

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.* 279 F.3d 1357 (Fed. Cir. 2002) .. 11, 13

*Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316 (Fed. Cir. 2008) .................................... 8

*Teva Pharmaceuticals USA v. Sandoz*, 135 S.Ct. 831 (2015) ........................................................ 4

*TomTom Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015)............................................................ 22

*Traxxas LP v. Hobby Prods. Int'l,* No. 2:14-CV-945-JRG-RSP, 2015 U.S. Dist. LEXIS 114148 (E.D. Tex. Aug. 28, 2015)......................................................................................................... 12

*Trs. of Columbia Univ. in City of New York v. Symantec Corp*., 811 F.3d 1359 (Fed. Cir. 2016)17

*VirnetX, Inc. v. Cisco Sys., Inc*., 767 F.3d 1308 (Fed Cir. 2014).................................................. 7

*Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576 (Fed. Cir. 1996) ..................................... 6, 7

*X One, Inc. v. Uber Techs., Inc*., No. 16-CV-06050-LHK, 2017 U.S. Dist. LEXIS 132746 (N.D. Cal. Aug. 18, 2017) ................................................................................................................. 5

## I.     INTRODUCTION

The Court has already construed the key terms of the U.S. Patent Nos. 9,241,044 (the "'044 patent," Exhibit A) and 9,742,866 (the "'866 patent," Exhibit B) (collectively the "Patents-in-Suit" or "asserted patents") recently in another case *Luminati Networks Ltd. v. Tesonet Ltd.,* Case No. 2:18-cv-299-JRG at Dkt. 121 ("*Tesonet* Lawsuit") (as adopted in Dkt. 192) ("*Tesonet* Claim Construction Order," Exhibit C).  As a result, unless compelling arguments are made to deviate from these findings, Luminati understands and expects that the Court will adopt the same findings in this matter.  One exception is that Luminati believes the evidence here—including positions taken by Defendant BI Science (2009) Ltd. ("Defendant" or "BI Science") in this case—clearly supports a finding that '044 patent claim 108 is not indefinite despite a contrary ruling in the *Tesonet* Lawsuit (if not changed in that case, Luminati intends to appeal that finding).

Beyond that, there are certain terms that have been identified in this case that were not briefed previously in the *Tesonet* Litigation.  However, these terms as used simply hold their plain and ordinary meaning. Defendant's proposals are either incorrect or unnecessary, attempting to deviate from the plain meaning of the claim terms by replacing them with lists or otherwise attempting to read embodiments into the claims, when the terms are easily understood by applying plain and ordinary meaning.  Defendant has also asserted indefiniteness as to the '866 patent claim 15, but the Patent Office issued the claims because they were definite, and Defendant's argument is baseless.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Patents-in-Suit

The two Patents-in-Suit are directed to methods for fetching content over the Internet. They are divisionals sharing the same inventors, specification and title: "System and Method for

Improving Internet Communication by Using Intermediate Nodes." The first divisional application was filed on August 26, 2014 and both patents claim priority to August 28, 2013.

A problem in the art was the fact that certain websites with public information nevertheless create technological roadblocks to obtaining that information from certain requesting devices, such as the routine practice of competitors seeking publicly available pricing information. To overcome these artificial hindrances to information voluntarily made public to others, the residential proxy service of the claims sends requests through one or more of a large group residential proxy devices, such as individual cell phone devices. As the proxy devices belong to real people who otherwise send such requests to target web servers as customers, the target will allow the queries and not artificially block them. Additional dependent claims of the inventions divide requests among a pool of residential proxy devices and select proxy devices, for example, based upon past activities, timing and geographic location, all of which makes it much harder for the target server to identify requests from a proxy device that originated from a competitor.

### B.    The Asserted Claims

In the present action, Luminati asserts infringement of independent claims 81 and 108 and dependent claims 82-107 of the '044 patent, and independent claim 15 and dependent claims 16-28 of the '866 patent.

Representative independent claim 81 of the '044 patent claims as follows (with terms that are the subject of this claim construction proceeding underlined):

81. A method for fetching over the Internet a first content, identified by a <u>first content identifier</u>, by a <u>first device</u>, <u>identified in the Internet by a first identifier</u>, from a <u>second server</u> <u>identified in the Internet by a third identifier</u> via a <u>second device</u> <u>identified in the Internet by a second identifier</u>, using a <u>first server</u>, the method comprising the steps of:
(a) sending the first identifier to the <u>first server</u>;
(b) sending a first request to the <u>first server</u>;
(c) <u>receiving the second identifier from the first server</u>;

(d) <u>sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier</u>; and
(e) receiving the first content from the <u>second device</u>.

Dependent claim 82 adds to claim 81 the step of "(f) sending the <u>first content identifier</u> to the <u>second server</u> using the third identifier."  Dependent claims 86, 88, 91, and 107 add the limitations of "wherein step[s] … is simultaneous with steps/ is executed concurrently with steps / are executed concurrently with steps / are executed concurrently with steps … using <u>multitasking or multiprocessing</u>" to claims 85, 87, 89, and 101 respectively. Dependent claim 87 adds limitations regarding a second proxy device to the steps of independent claim 81, and claim 89 adds limitations regarding a group of proxy device to the steps of independent claim 81. Dependent claim 97 adds the limitations of "wherein the second device is selected based on the physical geographical <u>proximity to the second server</u>" to claim 89.  Dependent claim 101 adds the limitation of the first device also serving as a proxy device for a third device to the steps of independent claim 81.

Representative independent claim 108 of the '044 patent claims as follows:

108. A method for fetching over the Internet a first content, identified by a <u>first content identifier</u>, by a <u>first device</u>, <u>identified in the Internet by a first identifier</u>, from a <u>second server</u> <u>identified in the Internet by a third identifier</u> via a <u>second device</u> <u>identified in the Internet by a second identifier</u>, using a <u>first server</u>, the method comprising the steps of:
(a) <u>sending the second identifier to the first server</u>;
(b) <u>receiving a second request from the first device, the second request includes the first content identifier and the third identifier</u>;
(c) in response to receiving the second request, sending the first content identifier to the <u>second server</u> using the third identifier;
(d) receiving the first content from the <u>second server</u>; and
(e) <u>in response to receiving the first content, sending the first content to the first device using the first identifier</u>.

Representative independent claim 15 of the '866 patent claims as follows:

15. A method for fetching a content over the Internet from a <u>first server</u> <u>identified in the Internet by a second identifier</u> via <u>a group of multiple devices</u>, each identified in the Internet by an associated group device identifier, the method comprising the

3

step of <u>partitioning the content into a plurality of content slices</u>, <u>each content slice containing at least part of the content</u>, and <u>identified using a content slice identifier</u>, <u>and for each of the content slices</u>, comprising the steps of:

(a) <u>selecting a device from the group</u>;

(b) <u>sending over the Internet a first request to the selected device using the group device identifier of the selected device</u>, <u>the first request including the content slice identifier and the second identifier</u>;

(c) in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and

wherein the method further comprising the step of constructing the content from the received plurality of content slices,

and wherein each of the devices in the group is a client device.

Dependent claim 18 adds the limitation of "wherein the content is a website content comprising multiple webpages, and <u>the partitioning is based webpages level</u>" to claim 15. Dependent claim 19 adds the limitation of "wherein <u>all of the parts of the content are included in all of the content slices</u>" to claim 15. Dependent claim 22 adds the limitation of "wherein <u>part of the content is included in two or more content slices</u>" to claim 15.

## III.    LEGAL STANDARDS FOR CLAIM CONSTRUCTION

The proper construction of any disputed terms within a patent claim is exclusively within the province of the court. *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 372 (1996).  Although the ultimate issue of claim construction is a question of law, claim construction may contain evidentiary underpinnings; thereby involving questions of fact. *Teva Pharmaceuticals USA v. Sandoz*, 135 S.Ct. 831, 838 (2015).

A threshold issue is to determine whether a claim term even needs to be construed. "[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  Claim terms that form key disputes between the parties require construction. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521

4

F.3d 1351, 1360 (Fed. Cir. 2008).  However, simple, understandable terms, as with a number of terms Defendants have placed in dispute, do not require construction.  *See Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) (declining to construed "melting") (cited in *O2 Micro*, 521 F.3d at 1362); *Mentor H/S, Inc. v. Medical Device Alliance, Inc*., 244 F.3d 1365, 1380 (Fed. Cir. 2001) (declining to construe "irrigating" and "frictional heat") (cited in *O2 Micro*, 521 F.3d at 1360).

Another consideration is whether adopting a particular claim construction would be helpful to the jury.  *See, e.g., Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-CV-689-JRG, 2014 U.S. Dist. LEXIS 45526, at *76-77 (E.D. Tex. Apr. 2, 2014) (denying request to construe term when court was not convinced that the proposed construction was "more helpful to the jury as opposed to the plain meaning"); *Huawei Techs. Co. v. T-Mobile US, Inc*., No. 2:16-CV-00057-JRG-RSP, 2017 U.S. Dist. LEXIS 96097, at *33 (E.D. Tex. June 21, 2017) (decision to construe claim term was based in part on whether the construction would be "helpful to the jury").  Further, when there are competing proposals, it is appropriate for the Court to consider which "would be more clear and helpful to the jury." *X One, Inc. v. Uber Techs., Inc*., No. 16-CV-06050-LHK, 2017 U.S. Dist. LEXIS 132746, at *46 (N.D. Cal. Aug. 18, 2017).

If a term requires construction, the claim terms themselves are very important, especially if clear without reference to other material.  "Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. As such, "the claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim …." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  The words of a claim "are generally given their ordinary and customary

meaning," as would be understood by a "person of ordinary skill in the art in question" at the time of the filing of the patent application in question. *Phillips*, 415 F.3d at 1312-13.

Different claim terms may result in different meanings or may in context result in similar meanings, and "there is nothing improper about construing two different terms in similar manners." *Cheetah Omni LLC v. Alcatel-Lucent Inc.,* 939 F. Supp. 2d 649, 668 (E.D. Tex. April 11, 2013). Applicants can use different terms to define the exact same subject matter, so two claims with different terminology can cover the same scope. *Id.* Additionally, claims may use different phrases but nonetheless result in the same scope. *See, e.g., Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987).

For claim construction courts will look to intrinsic evidence (claim language, specification, and prosecution history), and, if helpful and needed, extrinsic evidence (dictionaries, treatises, experts, and the like). *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319.

With respect to the written description, i.e., the patent specification, it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Phillips*, 415 F.3d at 1317. "[W]e cannot look at the ordinary meaning of [a] term … in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Id*. at 1313.

However, it is not appropriate to import embodiments into the claims. "[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. It is also

improper to import specific depictions of the invention from the figures into the claims. *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007).

Finally, extrinsic evidence "may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319. It "cannot be used to alter a claim construction dictated by a proper analysis of the intrinsic evidence." *On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1139 (Fed. Cir. 2004); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1317 (Fed Cir. 2014). Courts may not use dictionaries or other extrinsic evidence in a way that is inconsistent with the usage in the patent and describing the invention. For example, "[c]laim constructions that read out a preferred embodiment are rarely, if ever, correct." *Danco, Inc. v. Fluidmaster, Inc.*, No. 5:16-cv-73-JRG-CMC, 2017 U.S. Dist. LEXIS 155936, at *17 (E.D. Tex. Sep. 22, 2017) (citing *Vitronics*, 90 F.3d at 1583-84).

## IV.    LEVEL OF ONE OR ORDINARY SKILL IN THE ART

Consistent with Plaintiff's P.R. 4-3 disclosures, with regard to the Patents-in-Suit, "a person of ordinary skill in the art ("POSA") would be an individual who, as of August 28, 2013, the filing date of the provisional application, had a Master's Degree or higher in the field of Electrical Engineering, Computer Engineering, or Computer Science or as of that time had a Bachelor's Degree in the same fields and two or more years of experience in Internet communications." Rhyne Declaration, Exhibit D at ¶ 4. As of this brief, Defendant has not disclosed what it considers to be the level of one or ordinary skill in the art in its P.R. 4-3 disclosures.

## V.    DISPUTED TERMS FOR CLAIM CONSTRUCTION

### A.    Whether the Preamble is Limiting for '044 Patent Claims 81 & 108

Luminati understands that the Court previously held the preamble of these claims limiting. Exhibit C at 15 and 58. Here, the preamble in claims 81 and 108 is identical and sets the stage for the method including terms that serve as antecedent bases.  To this extent, Luminati does not dispute applying the *Tesonet* Claim Construction Order that the preamble is limiting to the extent the terms set out the network structure used by the claimed methods.

### B.    "First Device," "First Server," "Second Device," "Second Server" (Indefiniteness of '044 Patent Claims 81 & 108)

#### 1.    Claim 81 & 108 Indefiniteness

Defendant has argued that the claim is indefinite, but in its Local Patent Rule 4-2 disclosure BI Science provided no explanation whatsoever of why.  They simply stated, "Indefinite under 35 U.S.C. § 112."  This is wholly inadequate to overcome the presumption of definiteness and validity to which Luminati is entitled.[1]  "[I]t is a long-standing rule of patent law that, because an issued patent is by statute presumed valid, a challenger has the burden of persuasion to show by clear and convincing evidence that the contrary is true." *Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1329 (Fed. Cir. 2008).  In contrast, Luminati submitted a detailed expert declaration from Dr. Rhyne setting out support for why '044 patent claims 1 and 108 are definite.  This testimony is undisputed.  Additionally, as to '044 patent claim 81, this Court has previously ruled that the

---

[1] Defendant has provided no disclosure whatsoever on the basis of their indefiniteness arguments nor identified any expert witness or disclosed any opinions of such expert witness as required under P.R. 4-2 and 4-3.  At this point Luminati believes Defendant does not intend to provide expert testimony, but if it does so in its opposition brief or thereafter, such testimony would be too late and should be stricken.  The Rule 4-3 disclosures were due on September 6, 2019, and the close of claim construction discovery was October 1, 2019.  Having not submitted any expert testimony, and with opening briefs now due, it is too late for Defendant to rely on any expert testimony to rebut the testimony of Dr. Rhyne that Luminati timely submitted.

claim is definite.  Ex. C, at 52-56.  The basis for that ruling continues to apply equally here.  In the event that Defendant makes some substantive argument for indefiniteness in its brief or produces new evidence that is not stricken, Luminati reserves the right to respond to it at that time.

With regard to '044 patent claim 108, Defendant's proposal is equally deficient.  However, in the *Tesonet* Lawsuit the Court found this claim indefinite.  That ruling has not been incorporated into a final, non-appealable ruling or judgment, and Luminati has preserved its appellate rights in that case.  The evidence is different in this case because the defendants in the *Tesonet* Lawsuit did not originally allege that claim 108 was indefinite, so Dr. Rhyne did not address it separately in his declaration.  In this case, where the issue was timely raised, it is addressed by Dr. Rhyne's declaration.  Additionally, Luminati believes a mistake was made in the reading of claim 108 for the reasons set out in its objections in that case.  See Ex. D at ¶¶ 13-17.

The preamble of claims 81 and 108 identify each of the first and second devices, and first and second servers, as well as the role they play in the fetching of content.

> 81. A method for fetching over the Internet a first content, identified by a first content identifier, <u>by a first device</u>, identified in the Internet by a first identifier, <u>from a second server</u> identified in the Internet by a third identifier <u>via a second device</u> identified in the Internet by a second identifier, <u>using a first server</u>, the method comprising the steps of:

A POSA would understand the above terms to be definite because the claim language informs a POSA how these elements interrelate to each other.  Exhibit D at ¶¶ 6-19.  In Dr. Rhyne's opinion claims 81 and 108 "are not indefinite because they clearly inform a POSA of their scope – including the terms identified above – with reasonable certainty when those claims are read in view of the common specification, the prosecution history of the '044 patent, the language of the claims that include these terms themselves, and the knowledge of a POSA, those intrinsic sources providing clear notice of the boundaries of those claims."  *Id*. at ¶ 8.  "[I]n claim 81 the claim language informs a POSA how the claimed first device relates to the other elements of that claim

as the claimed method is performed, and in claim 108 the claim language informs a POSA how the second device relates to the other elements of that claim as the claimed method is performed." *Id*. at ¶ 9.

The way the '044 patent claims were drafted, the preambles in all three independent claims (1, 81, and 108) are identical with the purpose of setting out the overall structure of the network in which the claimed methods are performed. However, the claimed methods do not require steps to be performed each of the above components of the network. *Id*. at ¶ 15. As the Court previously noted, the method of claim 81 can be performed by the "first device." Ex. C at 54.

In contrast, it is clear from the context that the focus of claim 108 shifts so that it can be performed by the "second device." Exhibit D at ¶ 15. The Court's ruling in the *Tesonet* Lawsuit was based on the fact that the preamble discusses fetching of content by a first device. Exhibit C at 56-58. In fact, the preamble discussing the overall network that fetches content by a first device "via a second device," and the method as set forth in the body of the claim is clearly directed to the actions that can be performed related to fetching "**via a second device**." Dr. Rhyne set out in detail how the claim is supported in this way. Exhibit D at ¶¶ 8-19.[2]

Dr. Rhyne testified that given the exemplary embodiments, such as the embodiments depicted in exhibit 11a, a POSA would understand claim 108 to disclose fetching via a second

---

[2] The fact that the preamble refers to fetching by the first device does not render the claim indefinite. While the preamble of claim 108 may include the network structure, the method of the claim is, and must be, the method as set forth in the recited steps of the body of the claims. So, for example, in *Uniloc USA Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1309 (Fed. Cir. 2011), the fact that the preamble recited actions to be performed by components not expressly required in the body of the claim did not add those actions as limitations to the claim. Furthermore, claims should be read to preserve their validity if possible. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.* 279 F.3d 1357, 1367 (Fed. Cir. 2002) (holding that generally, a claim should be construed to maintain validity, if possible). Here, there is clear support for reading claim 108 to preserve its validity, supported by the claims in light of the specification and supporting expert testimony.

device where each of the claimed steps can be performed by the second device labeled "Tunnel #2" as follows: (a) The second device (*e.g.*, "Tunnel #2" 33b) sends an identifier to identify itself to the first server (*e.g.*, "Acceleration Server" 32) (*e.g.*, second device registers with the first server); (b) The second device receives a second



**FIG. 11a**

request from the first device (*e.g.*, "Client #1" 31a) (identified in this claim to clarify the overall process and where in that process this method occurs), and that request includes two identifiers: (i) the first content identifier (what content is sought, such as the web page), and  (ii) the "third identifier" that identifies the second server, or target server (the server that holds the content) (*e.g.*, "Data Server #1" 22a);  (c)  In response to the request for content, the tunnel devices use the information about where the target (second) server is and asks the target server for the content;  (d) The second device receives the content from the target server; and (e) The second device sends the content back to the first device. *Id.* ¶ 14.  Dr. Rhyne also set forth how the same conclusion would be reached by a POSA in light of Figure 5b and its related text looking at the tunnel device. *Id.,* ¶ 15.  *See also* 044' Pat., Figs. 5-16, col. 81:32-83:18, 83:43-65, 84:12-18, 86:15-42, 88:46-89:49, and 106:32-40. Therefore, the Court should find that, like claim 81, claim 108 is definite.

Because a finding of indefiniteness renders a patent claim invalid, the burden of proof is

on the defendant, who must prove invalidity by clear and convincing evidence. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2130 n. 10 (2014); *Traxxas LP v. Hobby Prods. Int'l*, No. 2:14-CV-945-JRG-RSP, 2015 U.S. Dist. LEXIS 114148, at *8 (E.D. Tex. Aug. 28, 2015) ("The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim.") (citation omitted).

When a party asserts "indefiniteness" but the argument is not centered on the inability to construe claim terms, it is appropriate to decline ruling on the issue at the *Markman* stage.  *See, e.g., 3-D Matrix, Inc. v. Menicon Co*., Civil Action No. 14-cv-10205-IT, 2016 U.S. Dist. LEXIS 3096, at *41-42 (D. Mass. Jan. 11, 2016) (declining to rule on indefiniteness at the claim construction stage because the argument did not center on the meaning of the words in the claim). "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004).

Furthermore, a finding of indefiniteness during claim construction is disfavored. *Gilead Scis. v. Mylan Inc*., No. 1:14CV99, 2015 U.S. Dist. LEXIS 44558, at *5-8 (N.D.W. Va. Apr. 6, 2015) ("Generally, 'the weight of the jurisprudence disfavors indefiniteness determinations at the *Markman* stage of patent litigation."). Instead, courts construe terms to have definite meaning if at all possible. This is in part due to the claim construction principle that claims will be construed in a manner to maintain their validity if possible. Thus, if there are two possible reasonable constructions, and one would invalidate the claim, but the other would maintain the claim's validity, the Court should choose the latter. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.* 279 F.3d 1357, 1367 (Fed. Cir. 2002) (holding that generally, a claim should be construed to maintain validity, if possible).

### 2.    Claim term meaning

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Claim Construction Order |
|---|---|---|---|
| First Device ('044 pat., cl. 81 & 108) | Plain and ordinary meaning | A device, separate from the second device, the first server, and the second server, that receives the internet content from the second device. | Plain and ordinary meaning |
| Second Device ('044 pat., cl. 81 & 108) | Plain and ordinary meaning | A device, separate from the first device, the first server, and the second server, that is communicatively positioned between the first device and the second server. | Plain and ordinary meaning |
| First Server ('044 pat., cl. 81 & 108) | Plain and ordinary meaning | A server, separate from the first device, the second device, and the second server. | Plain and ordinary meaning |
| Second Server ('044 pat., cl. 81 & 108) | Plain and ordinary meaning | A server, separate from the first device, the second device, and the first server, from which the internet content is fetched. | Plain and ordinary meaning |

This Court has already ruled that these terms hold their plain and ordinary meaning, and for the reasons stated in the *Tesonet* Claim Construction Order, Luminati asks that it issue the same ruling. (Ex. C, at 56.)  Here, Defendant has made different proposals than the defendants in the *Tesonet* Lawsuit, but the proposal are long, unnecessary, and unhelpful.  They also create the potential of a later dispute over "construing the construction" as to what is meant by "separate." Geographic separation is not required to practice the claims.  In addition, as discussed below, it is unclear what is meant by "internet content" in Defendant's constructions of "first device" and "second server."  The Court's prior construction is correct.

### C.    "First Content Identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| First Content Identifier

Claim 81, 82, 87, 89, 101, 108 ['044] | Plain and ordinary meaning | Identification of the internet content that is to be fetched. |

Courts have previously held that there is no reason to construe the term "identifier." Because "the plain and ordinary meaning of the term 'identifier' is easily understood, no construction of this term is necessary." *Aloft Media, LLC v. Microsoft Corp.*, No. 6:08-CV-50, 2009 U.S. Dist. LEXIS 24124, at *19 (E.D. Tex. Mar. 24, 2009). Further, the '044 patent expressly states that content may be "identified by a URL (or any other identifier type)." Exhibit A at 141:47-49. The patent specifies that a "content identifier" may be, for example "related metadata or any other identifiers." *Id.* at 95:16-17. Thus, in the '044 patent as to content, the word "identifier" is used broadly. *See id.* at 54:7-8, 171:31-32.

Defendant's proposal that "content" be changed to mean "internet content" is incorrect. It is unclear what is meant by the term "internet content" as it is not a term of art and it is unclear what would or would not constitute "internet content." Is a video file "internet content"? Is a computer program "internet content"? Defendant's recasting of the term "content" as "internet content" is without support and confusing.

Further, whatever restriction Defendant intends to add to the actual claim term "content" with the word "internet," there is no such restriction in the '044 patent. On the contrary, the '044 patent makes clear that, for example, "the first content includes, consists of, or comprises, a part or whole of files, text, numbers, audio, voice, multimedia, video, images, music, or computer program." *See* Exhibit A at 172:5-12. It also states, "The content may be composed of bits, nibbles, bytes, characters, words, or strings, and the partitioning may be based on bit, nibble, byte, multi-byte, number, character, word, or string level, or may be composed of files, or programs, and the partitioning may be based on file or program level. Alternatively or in addition, the content may be a website content comprising multiple webpages…." (Exhibit A at 56:30-36)

Since the content is not defined as "internet content," the identifier of the content cannot be limited in that manner, either.   This Court previously held that "content" simply means "digital data" and therefore is not restricted to "internet content."  Exhibit C at 24.

Defendant's proposal also falls into the trap of reading an embodiment into the claims, which runs afoul of a basic tenant of claim construction.  *See GE Lighting Sols., LLC v. AgiLight, Inc.,* 750 F.3d 1304, 1309 (Fed. Cir. 2014). The fact that the terms "content" and "identifier" are used broadly is confirmed throughout the specification.  *See, e.g.,* Exhibit A, Fig. 15; 5:2-47; 8:12-29; 12:28-49; 19:49-20:36; 46:30-43; 47:37-44; 51:19-56:29 56:59-57:36; 58:20-30; 61:65-62:63; 63:43-56; 73:41-47; 95:25-96:3; 102:45-59; 107:34-47; 110:33-111:10; 124:26-57; 170:40-42; 171:31-32; 172:5-12.  Extrinsic evidence further supports that "content" does not mean "internet content" and that "identifier" is a broad term also not limited to Internet-based identification.  *See, e.g.,* https://www.itu.int/net/ITU-R/asp/terminology-definition.asp?lang=en&rlink=%7b46309866-F797-45BC-81E9-2B6B2DAC1F32%7d  (Exhibit E,    LUM_BSI-00016935)    &    https://www.itu.int/net/ITU-R/asp/terminology-definition.asp?lang=en&rlink=%7b0A3C5266-56D4-4ED8-9076-A4345192D7EB%7d (content) (Exhibit    F,    LUM_BSI-00016936);    https://www.itu.int/net/ITU-R/asp/terminology-definition.asp?lang=en&rlink=%7b5C58FBE6-BE32-4E31-81CE-676FCB191E2B%7d  (Exhibit G,    LUM_BSI-00016917)    &    https://www.itu.int/net/ITU-R/asp/terminology-definition.asp?lang=en&rlink=%7bA842D85F-D255-4218-98D1-D8AD272C9067%7d (identifier) (Exhibit H, LUM_BSI-00016959).

**D.** **"identified in the Internet by a first identifier," "identified in the Internet by a third identifier," and "identified in the Internet by a second identifier"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "identified in the Internet by a first identifier"<br><br>Claim 81, 108 ['044] | Plain and ordinary meaning | Identified by a first identifier that is different than the third identifier, although there may be some overlap. |
| "identified in the Internet by a third identifier" | Plain and ordinary meaning | Identified by a first identifier that is different than the third identifier, although there may be some overlap |
| "identified in the Internet by a second identifier" | Plain and ordinary meaning | Identified by information that includes an address of the second device |

Defendant's construction is unnecessary and confusing. According to Defendant, it must be different except it can in part be the same. In reality, the phrase means exactly what it says, that the devices and servers are identified by identifiers. There is no need to compare it to other identifiers. The claims themselves state the first identifier is for the first device ("a first device, identified in the Internet by a first identifier"), the second identifier is for the second device ("a second device identified in the Internet by a second identifier") and the third identifier is for the second server ("a second server identified in the Internet by a third identifier"). There is no need for additional clarification.

Furthermore, the term "identifier" must identify the second device, but that term does not state that it must be identified by an address. For example, a second device can have an identifier that is an internal code associated with the device but not an address, and that can in turn correspond to an address in a different table or database. The term "identifier" is broadly used in the '044 patent, and "the plain and ordinary meaning of the term 'identifier' is easily understood, no construction of this term is necessary." *Aloft,* at *19. The specification clearly uses the term "identifier" to include but not be limited to an address. That is why the specification has statements

16

such as the identifier "*may* be an IP address" (emphasis added) instead of defining identifier as an IP address. *See, e.g.,* Exhibit A, 54:7-22. Defendant's limitation also contradicts the usage of the term in the claims, such as dependent '044 patent claim 44, which expressly states that "each of the identifiers is an IP address *or a URL*." *Id.,* 171:31-32 (emphasis added). That would be impossible if the term "identifier" was restricted to an address and excluded URLs.

Furthermore, the fact that dependent claim 44 adds the further limitation of "IP address" to "identifier" means that claim differentiation also operates against limiting the term "identifier" in the independent claim to IP addresses, because that would render the additional limitation meaningless. *See Trs. of Columbia Univ. in City of New York v. Symantec Corp*., 811 F.3d 1359, 1370 (Fed. Cir. 2016); *Am. Med. Sys., Inc. v. Biolitec, Inc*., 618 F.3d 1354, 1360 (Fed. Cir. 2010). The intrinsic record very clearly uses the term without restricting it to IP addresses. *See, e.g.,* Exhibit A, 58:20-30; 61:65-62:33; 63:4-13; 73:41-47; 95:25-96:3; 102:45-59; 110:33-111:10; 124:26-38; 170:40-42; 171:31-32; Exhibit B, 55:31-32; 83:54-59).

Also, the term "identifier" is used to describe identification that is not based on an address, including a "content identifier." The specification also uses the word "identifier" to denote a URI. Exhibit A at 20:3-4. It refers to an "identifier field" within the Internet Message Control Protocol that is not an IP address. *Id.,* 39:23-24. It refers to an "identifier" "in ping packets" that is not an IP address. *Id.,* 40:21. It specifically states that the identifier may be "an HTTP header." *Id.,* 61:64-65. It refers to an identifier as simply metadata related to content. *Id.,* 95:16-17. The inventors of the asserted patents clearly knew what an IP address was, and had they intended to limit the identifier to an IP address, they would have simply used the term "IP address" in the claims as they did often throughout the specification. The term is not limited in the manner proposed by Defendant.

**E.    "receiving the second identifier from the first server" and "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "receiving the second identifier from the first server"  Claim 81, 108 ['044] | Plain and ordinary meaning | Receiving, by the first device from the first server, identification of the second device that includes an address of the second device. |
| "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier" | Plain and ordinary meaning | Sending, by the first device to the second device, using the address of the second device that was received from the first server, a request for the internet content which is to be fetched that includes both (1) identification of the internet content that is to be fetched and also (2) the address of the second server, although there may be some overlap |

Defendant's proposed constructions include and build on the errors of the constructions proposed in Section D above. The second identifier does not need to be an address, so there is no basis to find that the "receiving" or "sending" language requires receiving or sending an address. There is no restriction that "content" be "internet content" so that compounds the error. The "sending" limitation proposal is also needlessly complicated and will cause jury confusion including for example in the use of "may be some overlap" language.

Additionally, the method is supported by the first device but can also be a series of steps taken by a device that acts as an agent for or on behalf of the first device and the claim does not state that the first device must itself perform the steps.

These phrases simply set out the steps to be performed and are clear on their face without additional construction. There is also extensive intrinsic support that contradicts Defendant's attempted restrictions. Exhibit A, Fig. 15; 5:2-47; 8:12-29; 12:28-49; 19:49-20:36; 46:30-43;

47:37-44; 51:19-56:29 56:59-57:36; 58:20-30; 61:65-62:63; 63:43-56; 64:48-65:5; 73:41-47; 95:25-96:3; 102:45-59; 107:34-47; 110:33-111:10; 124:26-57; 170:40-42; 171:31-32; 172:5-12; 173:19-31;                    174:58-175:6;              *see*              *also* www.electropedia.org/iev/iev.nsf/display?openform&ievref=732-01-12    (defining    "server") (Exhibit I, LUM_BSI-00017053).

### F.    "multitasking or multiprocessing"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal | Court's Prior Order |
|---|---|---|---|
| "using multitasking or multiprocessing" Claim 86, 88, 91, 107 ['044] | Performing multiple tasks in overlapping time periods using common processing resources | No construction | Performing multiple tasks in overlapping time periods using common processing resources |

In the *Tesonet* lawsuit the parties agreed on the construction of this term and the Court entered it. Exhibit C at 8. Defendant has provided no opposition to entering the same construction in this case but also has not agreed or provided any other construction. The construction provided by Plaintiff is supported by the specification. Exhibit A at 24:60-25:4. It is also supported by extrinsic evidence. *See* http://www.electropedia.org/iev/iev.nsf/display?openform&ievref=171-05-69 (multitasking: "concurrent or interleaved execution of two or more tasks on a single computer") (Exhibit J, LUM_BSI-00017076); https://www.merriam-webster.com/dictionary/multitasking (multitasking: "the concurrent performance of several jobs by a computer.") (Exhibit K, LUM_BSI-00017077-17078).

### G.    "proximity to the second server"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal | Court's Prior Order |
|---|---|---|---|
| "the physical geographical proximity to the second server" Claim 97 ['044] | distance from second server based on geographical location | No construction | distance from second server based on geographical location |

In the *Tesonet* Lawsuit the parties agreed on the construction of this term and the Court entered it. Exhibit C at 8. Defendant has provided no opposition to entering the same construction in this case but also has not agreed or provided any other construction. The construction provided by Plaintiff is supported by the specification. Exhibit A at 53:55-59; 90:43-91:15. It is also supported by extrinsic evidence. *See* https://www.dictionary.com/browse/proximity?s=t (proximity: "nearness in place, time, order, occurrence, or relation.") (Exhibit L, LUM_BSI-00017122-17126).

**H.    "sending the second identifier to the first server," "receiving a second request from the first device, the second request includes the first content identifier and the third identifier," and "in response to receiving the first content, sending the first content to the first device using the first identifier"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "sending the second identifier to the first server" Claim 108 ['044] | Plain and ordinary meaning<br><br>Alternatively, "sending, from the second device, the second identifier to the first server" | Sending, by the second device to the first server, identification of the second device that includes an address of the second device. |
| receiving a second request from the first device, the second request includes the first content identifier and the third identifier Claim 108 ['044] | Plain and ordinary meaning<br><br>Alternatively, "receiving, by the second device, a second request from the first device, the second request includes the first content identifier and the third identifier" | Receiving, by the second device from the first device, a request for the internet content that includes both (1) identification of the internet content that is to be fetched and also (2) the address of the second server. |
| in response to receiving the first content, sending the first content to the first device using the first identifier Claim 108 ['044] | Plain and ordinary meaning<br><br>Alternatively, "in response to receiving the first content, the second device sending the first content to the first device using the first identifier" | After the second device receives the internet content, the second device forwards the internet content to the first device using an address of the first device. |

As discussed above, there is no requirement that the identifier of the second device be an address. The term "identifier" has been held not to require construction. *Aloft*, at *19. It not limited to an address. It can, for example, be a non-address identifier that is used by the system to

identify the second device.  The system may use other means such as storage of the address of the second device in a table to address the second device.  The '044 patent states, "Each of the identifiers herein may be an IP address (in IPv4 or IPv6 form) or a URL." Exhibit A at 54:7-8.  It further clarifies that an IP address is only one possible type of identifier.  *See id.*, 95:50; 110:58. Defendant has added the phrase "that includes the address of the second device," an additional limitation not found in the claim and not required by the term "identifier."  Therefore, this proposed construction is incorrect.

Defendant's proposed construction of "after" instead of "in response to" is also incorrect. "After" merely imposes a temporal relationship, where "in response to" clearly establishes a causal relationship that is missing from Defendant's proposed construction.  To the extent Defendant indicates that the second device performs the method, Luminati agrees that is correct.  As a result, if the Court finds that agreed upon portion of the claim helpful, Luminati has provided in the alternative a construction that uses the exact language of the claim but, like Defendant, indicates that the step is performed by the second device.  Luminati asks that the Court give consideration to the fact that in this case the parties agree that these steps are performed by the second device in assessing the indefiniteness argument.  The parties agree that a POSA understands these steps to be performed by the second device; thus, there is nothing indefinite about this claim.

### I.       Whether the preamble of '866 patent claim 15 is limiting

Luminati's position regarding '866 patent claim 15 is the same as for the '044 patent claims 81 and 108: the preamble may be limiting to the extent it sets forth the components of the residential proxy network and particularly to the extent those components introduced in the preamble act as antecedent bases for the terms in the body of the claim.  However, the method set forth in claim 15 is limited to the set of steps set forth in the body of the claims.  "That [a] phrase

in the preamble . . . provides a necessary structure for [the] claim . . . does not necessarily convert the entire preamble into a limitation, particularly one that only states the intended use of the invention." *TomTom Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015); *see also id.* ("It was therefore error for the district court to use an antecedent basis rationale to justify converting this independent part of the preamble into a new claim limitation."); *Marrin v. Griffin*, 599 F.3d 1290, 1294-95 (Fed. Cir. 2010) ("[T]he mere fact that a structural term in the preamble is part of the claim does not mean that the preamble's statement of purpose or other description is also part of the claim.").

### J.    "First server" ('866 Patent) and "identified in the Internet by a second identifier" ('866 Patent)

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "first server"<br>Claim 15 ['866] | Plain and ordinary meaning | A server, separate from the first device, the second device, and the group of multiple devices, from which the internet content is fetched |
| "identified in the Internet by a second identifier"<br>Claim 15 ['866] | Plain and ordinary meaning | Identified by information that includes an address of the first server |

Defendant does not propose to define "server" and the word "first" in patents simply indicates that it is a first instance of a server in the claim (typically to distinguish from other instances such as "second server," "third server," etc.). As a result, there is no need to construe the term "first server." In contrast, Defendant's construction has the same errors as other constructions it has proposed. It redefines the term "content" as "internet content" with no support or explanation for what "internet content" is or why content would be so limited, and it creates an potential later dispute about the term "separate" that is not required. Clearly the first server is not the same as the first device, but there is no geographical separation requirement.

Also, the proposed claim construction adds superfluous language that is unnecessarily complicated. The preamble of the claim itself states, "A method for fetching a content over the Internet from a first server…." Defendant's proposed construction would be "A method for fetching a content over the Internet from a [a server, separate from the first device, the second device, and the group of multiple devices, from which the internet content is fetched] …." The requirement that content is fetched from the first server is **not** a requirement of the term "first server" – it is set forth by other language in the preamble. In addition, Defendant's proposed construction creates further confusion by referencing "the second device," which is a claim term that appears in the '044 Patent claims, but not the '866 Patent claims.

Also, Defendant's construction of "identified in the Internet by a second identifier" incorporates the same errors discussed in Section D above. The second identifier does not need to be an address for the same reasons discussed above. The proposed construction is needlessly complicated. For example, it is unclear what Defendant means when it says "identified by information that includes…" Is Defendant proposing that identifier must include information beyond what is necessary to identify the first server? The Court should find that these limitations have their plain and ordinary meaning.

### K.    "A group of multiple devices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "a group of multiple devices" Claim 15 ['866] | Plain and ordinary meaning | A plurality of devices that are able to fetch the internet content from the first server and which does not include the first device and the second server |

This term "a group of multiple devices" is easily understood and used in its plain and ordinary sense. Defendant's proposal does not purport to define "devices" and the rest of the proposal is not helpful and includes errors. Substituting in place of the plain English word

"multiple" the patent legalese "plurality" is in no way helpful and would only potentially confuse the jury for no reason. Further, the definition contains the same errors as previously discussed: it substitutes the term "internet content" in place of "content" and adds requirements that may be set forth in other language in the claim but is not required of the term "a group of multiple devices." In addition, Defendant's proposed construction creates further confusion by referencing "the second device" and "second server" which are claim terms that appear in the '044 Patent claims, but not the '866 Patent claims. That term means exactly what it says.

**L.     "Partitioning the content into a plurality of content slices"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal | *Tesonet* Claim Construction Order |
|---|---|---|---|
| "partitioning the content into a plurality of content slices" Claim 15, 16-18, 23-24 ['866] | Plain and ordinary meaning (not indefinite) | Indefinite under 35 U.S.C. §112- "partitioning the content" Alternatively: Dividing, by a group of multiple devices that is fetching internet content, the internet content to be fetched into a plurality (more than just one) of portions, although the portions can have overlapping content. | splitting the content into content slices (the resulting content slices may be overlapping or non-overlapping) |

As discussed above, claims are presumed definite. Defendant has presented no argument or evidence supporting the notion that this phrase is indefinite. Defendants are able to propose a meaning, so they do not think the term itself is incapable of being understood. This Court previously found that the phrase has definite meaning in the *Tesonet* Claim Construction Order. Exhibit C at 45. Luminati believes the words themselves communicate clearly what is intended, which is that content is partitioned into content slices. The slices may be distinct, for example, taking website content that consists of three webpages and partitioning it into three content slices

where each one is one webpage. That is an express example in the '866 patent. Exhibit B at 53:43-48. A content can be partitioned in overlapping parts, so for example, a set of 15 search results from a website can be partitioned into the first 10 results and the last 10 results, where there is an overlap of the middle five results. *See id.* And it can be completely overlapping, so that the entire content is fetched through different group devices to provide intended redundancy and overcome potential errors in transmission. *See id.* at 62:26-29 ("All parts of the content may be included in all of the content slices, and two or more, or all of the content slices, may be having the same size. Two or more of the content slices may include the same information."); 63:62-63 ("Two or more content parts may be identical and may contain the same data."); 168:48-50 ("The terms 'chunk' and 'slice' are used interchangeably herein to include, but not limited to, a part of, or the entire of, a content."); and claim 19 at 174:25-24 ("The method according to claim 15, wherein all of the parts of the content are included in all of the content slices"). That is not unclear or indefinite. To the extent Defendant argues that the breadth of the term makes it indefinite, confusing breadth for indefiniteness is an error of law that cannot support a finding of indefiniteness. *See, e.g., In re Miller*, 441 F .2d 689, 693 (C.C.P.A. 1971); *see also See In re Johnson,* 558 F.2d 1008, 1016 n. 17 (C.C.P.A. 1977) (breadth is not indefiniteness).

Additionally, while Defendant decided not to submit any analysis or expert testimony to support its blanket conclusory argument of indefiniteness, Lumianti has submitted an analysis from Dr. Rhyne as to why the claim and this term are not indefinite. Exhibit D, ¶¶ 20-25.

### M. "Each content slice containing at least part of the content" and "each content slice … identified using a content slice identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "each content slice containing at least part of the content" | Plain and ordinary meaning | Each portion contains at least part of the internet content |

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Claim 15, 19-22, 25-28 ['866] | | |
| "each content slice … identified using a content slice identifier" Claim 15 ['866] | Plain and ordinary meaning | Each portion is identified uniquely relative to the other portions |

These phrases are easily understood and as used carry their plain and ordinary meaning.  In contrast, Defendant has replaced "content slice" with the word "portion" without explanation ("content slice" is discussed extensively throughout the patent and can assist a jury to understand its own meaning, whereas "portion" is not), and Defendant has again replaced "content" with the term "internet content" that improperly limits the term in an unjustified way an in a way that is not meaningful given that "internet content" is not a term of art used in the patent.  Defendant also inserts the word "uniquely" despite that not being a requirement of the term "identifier."  As discussed above, the specification is clear that content slices can be identical, in which case there is no reason for two identical content slices to have unique identifiers relative to each other.

## N.    "A plurality of content slices … and for each of the content slices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "a plurality of content slices … and for each of the content slices" Claim 15 ['866] | Plain and ordinary meaning | Performing the following steps for each of the plurality of content slices (portions), rather than just a single time for the entirety of the fetched internet content |

Defendant's proposal now uses both the term "content slices" and the word "portions," and again replaces "content" with "internet content," thus adding confusion. It also incorrectly limits the claim to performing each step separately for each content slice.  The claim language itself states that the steps are performed for each content slice but does not require that each of the steps be repeated for each content slice.  For example, step (a) is "selecting a device from the group."  If

that device is used for more than one content slice, the selection step could be performed once but apply to each content slice, and then the request for a particular content slice in step (b) may be performed separately for each content slice to the selected group device. In that way, step (a) has been performed for each content slice but not repeated separately for each content slice. Defendant's proposal is unduly limiting in a way that the claim does not require. Instead, the Court should find that this limitation has its plain and ordinary meaning.

O. **"Selecting a device from the group" and "sending over the Internet a first request to the selected device using the group device identifier of the selected device"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "selecting a device from the group" Claim 15 ['866] | Plain and ordinary meaning | Selecting, by some node other than the first server and one of the group of multiple devices, a device within the group of multiple devices |
| "sending over the Internet a first request to the selected device using the group device identifier of the selected device" Claim 15 ['866] | Plain and ordinary meaning | Sending, by some node other than the first server and one of the group of multiple devices, to the selected device, a request to fetch the internet content device within the group of multiple devices and that uses the selected device's unique identification |

The "selecting" method step states "selecting a device from the group." That limitation does not exclude the devices in the group of multiple devices from selecting. This construction is incorrect because it is known that "each of the group devices, may consist of, comprise, or be part of, any network element." Exhibit B at 71:45-47. Thus, it does not exclude the network elements as proposed by Defendant. Defendant's proposal is both overly limiting and incorrect.

Defendant's proposal for the "sending" phrase is incorrect for the same reasons and has other flaws as well. It replaces "content" with "internet content." It also adds a requirement not found in the limitation of using "the selected device's unique identification" when the phrase does

not require that.  These phrases should be given their plain and ordinary meaning.  The Court should find that these terms have their plain and ordinary meaning.

### P.    "The first request including the content slice identifier and the second identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
| --- | --- | --- |
| "the first request including the content slice identifier and the second identifier" Claim 15 ['866] | Plain and ordinary meaning | The request for fetching the internet content, that is sent to the selected device, includes (1) the content slice identifier and (2) information that includes the address of the first server |

Defendant's proposal has the same problems as discussed above: (1) it replaces "content" with "internet content," and (2) it adds an "address" requirement that is not part of this claim limitation.  As noted in the preamble, the "second identifier" an identifier for the "first server" (the target server).  The patent notes that it may be IP address or a URL address or another type of identifier.  There is no requirement that it be an address of the first server.  This term should be construed as plain and ordinary meaning.

### Q.    "The partitioning is based webpages level"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
| --- | --- | --- |
| "the partitioning is based webpages level" Claim 18 ['866] | Plain and ordinary meaning | Each of the plurality (more than just one) of portions of the fetched internet content corresponds to one or more webpages |

The specification states that the partition can be based on a web pages level that that each slice "may include one (or few) webpages."  Exhibit B at 53:44-48; *see also id.* at 57:65-67.  The phrase carries its plain and ordinary meaning.  Defendant's proposal adds a "plurality" requirement that is not part of this language, defines that new requirement parenthetically, then adds the term "portions" that is not used in the claim, again replaces "content" with "internet content." Substantively, it also ignores that partitioning can result in obtaining the same content more than once rather than obtaining different content, and the dependent claims also allow for the entirety

of the content to be contained in each content slice. Defendant's proposal improperly ignores and precludes options that are expressly allowed and in certain cases required by the '866 patent.

### R.    "All of the parts of the content are included in all of the content slices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "all of the parts of the content are included in all of the content slices" Claim 19 ['866] | Plain and ordinary meaning (not indefinite) | Indefinite under 35 U.S.C. §112 |

Again, Defendant fails to provide any explanation or support for its argument that this term is indefinite despite it being their burden to do so. Dr. Rhyne provided testimony explaining that the phrase is definite and that a POSA would understand the term as having its plain and ordinary meaning: "a POSA would further understand that this phrase requires that the totality of the content (all of the parts of the content) is to be included in that totality of all the content slices (all the content slices)." Exhibit D at ¶ 26 (also noting that "the totality of the content can be duplicated so that each content slice includes that totality of content, and that in such a case all the parts of the content would be included in each content slice and as a result all the parts of the content are included in all the content slices"); *see also* Exhibit B at 168:48-50 ("The terms 'chunk' and 'slice' are used interchangeably herein to include, but not limited to, a part of, or the entire of, a content."); claim 19 at 174:25-24 ("The method according to claim 15, wherein all of the parts of the content are included in all of the content slices").

### S.    "Part of the content is included in two or more content slices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "part of the content is included in two or more content slices" Claim 15 ['866] | two or more content slices including at least an overlapping part of the content | At least two of the plurality (more than just one) of portions of the fetched internet content have overlapping content |

The parties' competing proposals have similarities, but Luminati's proposal is the correct one because it does not unnecessarily change the actual words of the claim from "two or more" to "at least two of the plurality (more than just one)," does not change the well-defined and easily understood term "content slices" to "portions," and does not change the term "content" to "content slices."   For example, Defendant's proposed construction confusingly refers to "overlapping content," instead of the correct "overlapping part of the content."

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter its proposed constructions as set forth above, and find that none of the claims is indefinite.

Dated: October 15, 2019                      Respectfully submitted,

By: */s/Robert Harkins*___

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Robert Ruyak
Corrine Saylor Davis
Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702

Attorneys for Plaintiff
Luminati Networks Ltd.