# **EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LUMINATI NETWORKS LTD., <br><br> Plaintiff, <br><br> v. <br><br> BISCIENCE INC., <br><br> Defendant. | Case No.  2:18-CV-483-JRG <br><br> Judge Rodney Gilstrap |

**DECLARATION OF DR. VERNON THOMAS RHYNE JR. IN SUPPORT OF PLAINTIFF LUMINATI NETWORK LTD.'S CLAIM CONSTRUCTIONS**

I, Dr. Thomas Rhyne, declare as follows:

1.　My full name is Vernon Thomas Rhyne, III.  I am a former professor of Electrical Engineering at Texas A&M University and an Adjunct Faculty Member at the Department of Electrical and Computer Engineering at Carnegie-Mellon University and at the University of Texas at Austin.  I am currently active as a part-time engineering consultant.

2.　I hold degrees from Mississippi State University (B.S.E.E., Special Honors, 1962), the University of Virginia (M.E.E., 1964), and the Georgia Institute of Technology (Ph.D., Electrical Engineering, 1967).  I have been a registered Professional Engineer in the State of Texas since 1969 and a Registered Patent Agent since 1999.  A copy of my CV is attached as Exhibit 1.

3.　If called upon to do so, I could and would testify truthfully as follows:

4.　Based on my experience in the art and my study of the Internet communication systems disclosed in the Asserted Patents (U.S. Patents Nos. 9,241,044 and 9,742,866, which, as divisionals, share a common specification), in my opinion a person of ordinary skill in the art a (a

"POSA" hereafter) would be an individual who, as of August 28, 2013, the filing date of the Provisional Application, had a Master's Degree or higher in the field of Electrical Engineering, Computer Engineering, or Computer Science or as of that time had a Bachelor's Degree in the same fields and two or more years of experience in Internet communications.

5. I understand that a patent claim is invalid if it is indefinite. I further understand that in order to satisfy the definiteness requirement, a claim must inform a POSA of the claimed invention's scope with reasonable certainty when the claim is read in view of the patent's specification and prosecution history.

6. I also understand that the defendant in the instant litigation contends that the following claim terms as used in claims 81 (and its dependent claims 83-86) and claim 108 of the '044 patent are indefinite: (i) "first device," (ii) "second device," (iii) "first server," and (iv) "second server." For reference, claim 81 of the '044 patent reads as:

> *81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of: (a) sending the first identifier to the first server; (b) sending a first request to the first server; (c) receiving the second identifier from the first server; (d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and (e) receiving the first content from the second device.*

7. Further, claim 108 of the '044 patent has the same preamble and reads as:

> *108. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of: (a) sending the second identifier to the first server; (b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier; (c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier; (d) receiving the first content from the second server; and (e) in response to receiving the first content, sending the first content to the first device using the first identifier.*

8. Based upon Defendant's invalidity contentions, I understand that Defendant contends that terms (i) through (iv) are indefinite because Defendant asserts that a POSA would have to speculate as to whether or how the first device, the first server, the second device, and the second server interrelate in accordance with the steps set forth in the above-listed claims. As I explain below, however, I disagree. Rather, in my opinion the Asserted Claims identified above are not indefinite because they clearly inform a POSA of their scope – including the terms identified above – with reasonable certainty when those claims are read in view of the common specification, the prosecution history of the '044 patent, the language of the claims that include these terms themselves, and the knowledge of a POSA, those intrinsic sources providing clear notice of the boundaries of those claims.

9. As I noted above, the preamble of claim 81 and that of claim 108 of the '044 patent each recites "[a] method for fetching over the Internet a first content, identified by a first content

3

identifier, <u>by a first device</u>, identified in the Internet by a first identifier, <u>from a second server</u> identified in the Internet by a third identifier <u>via a second device</u> identified in the Internet by a second identifier, <u>using a first server.</u>" Thus, in claim 81 the claim language informs a POSA how the claimed first device relates to the other elements of that claim as the claimed method is performed, and in claim 108 the claim language informs a POSA how the second device relates to the other elements of that claim as the claimed method is performed. The claim language clearly distinguishes between the claimed "first device," the "second device," the "first server," and the "second server," and sets forth the steps of the claimed method of each claim in a manner that unambiguously identifies the elements that are the called out in each of those steps.

10. In addition to the claim language itself, in my opinion a POSA would be informed by Figs. 5-16 and the associated text from the common specification including, but not limited to, 81:32-83:18, 83:43-65, 84:12-18, 86:15-42, 88:46-89:49, and 106:32-40 (using the column and line numbers of the '044 specification) in order to understand the relationship between the cited first device and other elements of claims 81 and 108 and the claims which depend from them.

11. As one example, Fig. 11a shows transmission of information in an overall exemplary system:

4



FIG. 11a

12. Given this exemplary embodiment, in my opinion a POSA would follow the steps of claim 81 from the perspective of the "first device" which in Fig. 11a is "Client #1" (No. 31a), those steps being:

(a) The first device (*e.g.*, "Client #1" 31a) sends the first identifier (*e.g.*, its own identity) to the first server (*e.g.*, "Acceleration Server" 32);

(b) The first device (*e.g.*, "Client #1" 31a) sends a first request to the first server (*e.g.*, "Acceleration Server" 32);

(c) The first device (*e.g.*, "Client #1" 31a) receives the second identifier (*e.g.*, identifying the second device) from the first server (*e.g.*, "Acceleration Server" 32);

(d) The first device (*e.g.*, Client #1 - 31a) sends a second request (*e.g.*, "Content Request") to the second device (*e.g.*, "Tunnel #1" 33b) using the second identifier

5

where the second request includes the first content identifier (*e.g.*, what content is sought) and the third identifier (*e.g.*, the IP address or other identifier of Data Server #1 or the target server 22a); and,

(e) The first device (*e.g.*, "Client #1" 31a) receives the first content (*e.g.*, the sought content shown as "Send Content" to 31a) from the second device (*e.g.*, "Tunnel #1" 33b).

13. Claim 108 focuses on a different part of the fetching in the same system, specifically fetching "via a second device" which in Fig. 11a is "Tunnel #2" (No. 33b):



FIG. 11a

14. Given the above exemplary embodiment, in my opinion a POSA would understand claim 108 to disclose fetching via a second device where each claim steps can be performed by the second device labeled "Tunnel #2" as follows:

6

(a) The second device (*e.g.*, "Tunnel #2" 33b) sends an identifier to identify itself to the first server (*e.g.*, "Acceleration Server" 32) (*e.g.*, second device registers with the first server);

(b) The second device receives a second request received from the first device (*e.g.*, "Client #1" 31a) (identified in this claim to clarify the overall process and where in that process this method occurs), and that request includes two identifiers: (i) the first content identifier (what content is sought, such as the web page), and (ii) the "third identifier" that identifies the second server, or target server (the server that holds the content) (*e.g.*, "Data Server #1" 22a);

(c) In response to the request for content, the tunnel devices use the information about where the target (second) server is and asks the target server for the content;

(d) The second device receives the content from the target server; and

(e) The second device sends the content back to the first device.

15. As another example, Fig. 5b of the common specification is shown below. In this embodiment, the ACCELERATION SERVER is the "first server," the DATA SERVER is the "second server," the CLIENT DEVICE can serve as the "first device," and the TUNNEL DEVICE can serve as the "second device." Given this exemplary embodiment, I believe that a POSA would readily align all the steps of claim 81 as being performed by the CLIENT DEVICE and all the steps of claim 108 as being performed by the TUNNEL DEVICE.



FIG. 5b

16. Specifically, it is my opinion that a POSA would readily understand that the lettered steps in claim 81 align with the numbers of the actions related to the CLIENT DEVICE in Fig. 5b as follows: Claim 81 step (a) occurs at 53a; Claim 81 step (b) occurs at 53b; Claim 81 step (c) occurs at 53c; Claim 81 step (d) occurs at 56g; and Claim 81 step (e) occurs at 53e.

17. In my further opinion, a POSA would also understand that the lettered steps in claim 108 align with the numbers of actions related to the TUNNEL DEVICE in Fig. 5b as follows: Claim 108 step (a) occurs at 54a; Claim 108 step (b) occurs at 54c; Claim 108 step (c) occurs at 56h; Claim 108 step (d) occurs at 56i; and Claim 108 step (e) occurs at 56j.

18. Further, in my opinion the additional indefiniteness arguments submitted by Defendant in its P.R. 3-3 disclosures regarding "first device" are not clear in and of themselves. I

8

understand that in those disclosures Defendant has provided alternative constructions for the terms "first device," "second device," "first server," and "second server", thereby clearly indicating that Defendant believes these terms have meaning and hence are not indefinite. Even so, in my opinion these four terms do not require construction and therefore should simply receive their plain and ordinary meaning. These terms would be commonly known to a POSA, and, given the claims and the supporting specification, in my opinion a POSA would not have to speculate as to the nature of the "first device" or how it relates to the claimed steps.

19. With regard to the term "from a second server," the plain language of the preamble of the two claims identified above makes clear that the first content is "fetched … from a second server … via a second device." Consistent with my previous references to the preamble, figures, and specification of the '044 patent, in my opinion a POSA would understand that the claims having this term do not require a specific method for the fetching of the first content from the second server. Rather, in my opinion a POSA would understand that the second device requests and receives the first content from the second server. Consequently, in my opinion a POSA would not have to speculate about the terms "from a second server" or "via a second device."

20. Based upon Defendant's invalidity contentions, in addition to the claims of the '044 patent, Defendant has also asserted indefiniteness of claim 15 of the '866 patent related to the term: "partitioning the content into a plurality of content slices." I understand that Defendant contends that this term as used in the '866 patent allegedly is indefinite because the common specification allegedly does not describe how the "partitioning" is done with respect to the claimed methods or what device does the partitioning, and that Defendant also asserts that the common specification does not describe how to construct variable-content slices which may or may not contain

9

duplicative or overlapping content and which may or may not be sequentially partitioned. I disagree.

21. First, Defendant does not assert that the above-cited phrases are uncommon, or that a POSA would not understand the meaning of "partitioning" or "constructing" content. Instead, Defendant argues that the terms are used broadly. But, it is my opinion that to a POSA, a claim is not indefinite simply because one of its terms it is broad. Rather, I believe that a POSA would understand what "partitioning" is and what "constructing" is and reasonably be able to understand claim 15 of the '866 patent and its scope.

22. Furthermore, in addition to the language of claim 15 itself, in my opinion a POSA would be informed, for example, by Fig. 23 and associated text including, but not limited to, 103:58-104:62, 104:47-66, 111:58-67, and 117:11-22 of the '866 specification, so as to give him or her an understanding of the terms "partitioning the content" and "constructing the content." For example, Figure 23a (copied below) shows the fetching of chunks from selected agents #1, #2, and #3 before the assembling of the chunks at a client device:



FIG. 23a

23. Also, in my opinion a POSA would not understand the preamble of claim 15 of the '866 Patent to be limiting, and would further understand that "a first request including a content slice identifier" would necessitate that the requested content had already been partitioned into content slices. For example, as explained at 103:58-67 of the '866 patent:

*The content stored in a data server, such as the data server #1 22a, which may be requested by a client device such as the client device #1 201a, may be partitioned into multiple parts or `slices`. Any number of slices may be used. The slicing may be in a bit, nibble (4-bits), byte (8-bits), word (multiple bytes), character, string, or file level.*

24. Similarly, in my opinion a POSA would understand the term "constructing the content" to be consistent with the plain and ordinary meaning of reconstructing the original content from the "chunks" of content that had been received. *See*, for example, 104:54-62:

11

> *In one example, the content is a website or a webpage, or may be identified as a URL, and consists of, or comprises, non-overlapping and equally-sized parts, referred to as chunks. For example, multiple chunks may be combined to reconstruct the original content, such as website or content. A chunk size may be 16 KB (Kilo-Bytes), and in the case the content to be partitioned is not an exact multiple of 16 KB, the `last` chunk will padded and filled with `space` characters (or any other no content data).*

25. Thus, as I explained above, it is my opinion that a POSA would not have to speculate as to the terms "partitioning the content" or "constructing the content."

26. It also appears from Defendant's preliminary claim construction disclosure contention that Defendant also asserts that the phrase "all of the parts of the content are included in all of the content slices" renders claim 19 of the '866 patent indefinite. However, this was not included in Defendant's invalidity contentions, and there is no allegation or discussion of why Defendant may believe that the phrase to be indefinite. Regardless, in my opinion a POSA would understand that there is a set of content slices that constitutes the totality, that is, all the content slices. I also believe that a POSA would further understand that all of the parts of the content constitute a totality of that content. I also believe that a POSA would further understand that this phrase requires that the totality of the content (all of the parts of the content) is to be included in that totality of all the content slices (all the content slices). Additionally, I note that the '866 patent discloses that the totality of the content can be duplicated so that each content slice includes that totality of content, and that in such a case all the parts of the content would be included in each content slice and as a result all the parts of the content are included in all the content slices. See e.g. 168:48-50 ("The terms 'chunk' and 'slice' are used interchangeably herein to include, but not

12

limited to, a part of, or the entire of, a content."); claim 19 at 174:25-24 ("The method according to claim 15, wherein all of the parts of the content are included in all of the content slices").

27.   In sum, therefore, it is my opinion that a POSA would not find the claim terms addressed to be indefinite because they inform a POSA of the scope of the claims with reasonable certainty when read in view of the common specification and the prosecution histories.  In other words, it is my opinion that the specification and claims, in light of the knowledge of a POSA provide clear notice of the boundaries of the claim limitations.

28.   This Declaration is based upon my current knowledge of the opinions that have been submitted by Defendants in their P.R. 3-3 disclosures.  However, I reserve the right to supplement this Declaration should I become aware of any additional opinions to be submitted on behalf of Defendant.

This declaration is made under penalty of perjury under the laws of the United States of America and the States of Texas that the foregoing is true and correct. Executed on September 6, 2019.

*V. Thomas Rhyne*
V. Thomas Rhyne, Ph.D., P.E., R.P.A.