## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **LUMINATI NETWORKS LTD.** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 2:18-cv-483-JRG** |
| | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **BISCIENCE INC.** | § | |
| | § | |
| **Defendant.** | § | |

### DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.    The Preamble is Limiting for Claims 81 and 108 of the '044 Patent ...................................... 1

II.   Claims 81 and 108 of the '044 Patent are Indefinite ............................................................. 3

III.  '044 Claim Terms ................................................................................................................... 6

    A. "First Device," "First Server," "Second Device," "Second Server"...................................... 6

    B. "First Content Identifier" ...................................................................................................... 8

    C. "identified in the Internet by a first identifier," "identified in the Internet by a third identifier," and "identified in the Internet by a second identifier" ........................................ 9

    D. "receiving the second identifier from the first server," "sending the second identifier to the first server," "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier," "receiving a second request from the first device, the second request includes the first content identifier and the third identifier," and "in response to receiving the first content, sending the first content to the first device using the first identifier" ............................................................ 11

    E. "multitasking or multiprocessing" and "proximity to the second server"............................ 14

IV.   The Preamble for Claim 15 of the '866 Patent is Limiting ................................................. 14

V.    Claim 15 of the '866 Patent is Indefinite ........................................................................... 17

VI.   '866 Claim Terms ................................................................................................................. 18

    A. "first server" and "a group of multiple devices".................................................................. 18

    B. "identified in the Internet by a second identifier" ............................................................... 19

    C. "partitioning the content into a plurality of content slices" ................................................. 19

    D. "each content slice containing at least part of the content" and "each content slice … identified using a content slice identifier" ......................................................................... 23

    E. "a plurality of content slices … and for each of the content slices"..................................... 23

    F. "selecting a device from the group" and "sending over the Internet a first request to the selected device using the group device identifier of the selected device"........................... 25

    G. "the first request including the content slice identifier and the second identifier" .............. 26

H. "the partitioning is based webpages level" ........................................................... 26

I. "all of the parts of the content are included in all of the content slices" .............................. 27

J. "part of the content is included in two or more content slices" ........................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898, 910, 134 S. Ct. 2120 (2014)............................................................ 3

*Phillips v. AWH Corp., et al*,
415 F.3d 1303 (Fed. Cir. 2005)............................................................ 10

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999)............................................................ 1

*Rowe v. Dror*,
112 F.3d 473, 42 USPQ2d 1550 (Fed. Cir. 1997) ................................. 1

*Sanofi–Aventis Deutschland GmbH v. Genentech, Inc.*,
473 Fed.Appx. 885 (Fed. Cir. 2012)............................................................ 10

*Standard Oil Co. v. Am. Cyanamid Co.*,
774 F.2d 448 (Fed. Cir. 1985)............................................................ 10

**Statutes**

35 U.S.C. §112............................................................ 5, 19, 27

Defendant BIScience (2009) Ltd. (which Plaintiff alleges is also known as BIScience Inc.) (hereinafter referred to as "BIScience") files this Responsive Claim Construction Brief to Luminati's Opening Claim Construction Brief (Dkt. No. 109).

## I.    The Preamble is Limiting for Claims 81 and 108 of the '044 Patent

This Court previously held that the preambles in Claims 81 and 108 of the '044 Patent are limiting in the Claim Construction Memorandum and Order from the *Luminati Networks Ltd. v. Tesonet Ltd.*, Case No. 2:18-cv-299-JRG at Dkt. 121 ("*Tesonet* Case") (as adopted in Dkt. 192) ("*Tesonet* Claim Construction Order").  An examination of the '044 Patent Claims 81 and 108 reveals that nowhere within the body of either Claim is there any requirement that any of the multiple devices and servers be separated across the internet.  Absent the preamble being fully limiting, Luminati is potentially free to argue that the Claims 81 and 108 of the '044 Patent could read on a local area network (LAN) confined within a single room, controlled by a single person, and that has no external connectivity to the internet.  Such an interpretation of the Claims entirely negates the purported inventive concept and stated purpose of the '044 Patent, which is to overcome denial of internet traffic by masking the source of the request.

In its Claim Construction Memorandum and Order (Case 2:18-cv-299-JRG, Dkt. No. 121) in the *Tesonet* matter, the Court cited *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed. Cir. 1997) for the proposition:

> In general, a preamble limits the invention if it recites essential structure or steps, or if it is "necessary to give life, meaning, and vitality" to the claim. *Pitney Bowes[, Inc. v. Hewlett-Packard Co.*], 182 F.3d [1298,] 1305 [(Fed. Cir. 1999)]. Conversely, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention."

However, absent the preamble, the '044 Patent Claim 81 reads merely as:

(a) sending the first identifier to the first server;
(b) sending a first request to the first server;

1

(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) receiving the first content from the second device.

The body of Claim 81 makes no mention that the content is fetched from across the internet or even requires connection to the internet.

A similar situation exists for Claim 108 of the '044 Patent. Absent the preamble, Claim 108 reads merely as:

(a) sending the second identifier to the first server;
(b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;
(c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;
(d) receiving the first content from the second server; and
(e) in response to receiving the first content, sending the first content to the first device using the first identifier.

Nothing in the claim alone precludes the possibility that all components (*i.e.*, the two recited components, the first server and the second server, plus at least one implied other device) are all locally connected, without any connection to the internet at all.

Some annotations to '044 Patent Claim 81 illustrate this excessively wide-ranging ambiguity:

(a) *[any device, for any reason]* sending the first identifier to the first server;
(b) *[any device, even different than in (a)]* sending a first request to the first server;
(c) *[any device, even different than in (a) or (b)]* receiving the second identifier from the first server;
(d) *[any device, even different than in (a), (b), or (c)]* sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) *[any device, even different than in (a), (b), (c), or (d)]* receiving the first content *[from local storage, rather than from the internet]* from the second device *[which can be directly connected to any of the above-mentioned devices, as local storage]*.

Nothing within the Claim body precludes interpretation according to the annotations. The same exercise for '044 Patent Claim 108 provides the same result. BIScience, therefore, maintains

2

that the preambles of '044 Patent Claims 81 and 108 be fully limiting, <u>without qualification</u> – including that the content must be fetched from across the internet, and that the components identified within the preambles be separated across the internet. [1]

## II.    Claims 81 and 108 of the '044 Patent are Indefinite

In its Opening Claim Construction Brief, Luminati states that "positions taken by Defendant BIScience . . . clearly supports a finding that '044 Patent Claim 108 is not indefinite." Luminati's Opening Claim Construction Brief, p.1.  To the contrary, consistent with the Patent Rules and local practice BIScience has identified phrases that are indefinite, but has appropriately proposed contingent constructions in the alternative.

For the '044 Patent Claim 81, BIScience has shown above that the Claim could potentially be read to include a scenario in which, rather than fetching content over the internet, a stand-alone server merely fetches content from its own local storage.  However, the Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120, 2129 (2014).  The excessively wide-ranging ambiguity regarding which device(s) send and receive and whether it is local content or internet content (*i.e.*, content fetched from across the internet) fails to inform those skilled in the art about the scope of the invention with reasonable certainty.

---

[1] Luminati reveals its intent to jettison any limitation of fetching content from across the internet (despite the preamble) with its statement "**whatever restriction Defendant intends to add** to the actual claim term "content" **with the word "internet," there is no such restriction** in the '044 patent."  Luminati's Opening Claim Construction Brief, p.14.  It is the limited concession by Luminati regarding arrangement of the components of the Claims, plus Luminati's manifest desire to read the claim without requiring any internet traffic, that necessitates BIScience proposing the phrase "internet content" in the claim terms, as identified herein.

In an attempt to save the Claims, Luminati has submitted a declaration by its expert, Dr. Rhyne.  Paragraph 9 of the Declaration of Dr. Vernon Thomas Rhyne Jr. In Support Of Plaintiff Luminati Network Ltd.'s Claim Constructions ("Dr. Rhyne Declaration") states:

> **The claim language** clearly distinguishes between the claimed "first device," the "second device," the "first server," and the "second server," and sets forth the steps of the claimed method of each claim in a manner that **unambiguously identifies the elements that are the called out in each of those steps.**  (emphasis added)

But as identified in the above annotations to the '044 Patent Claim 81, no device or server is identified as performing any of the steps, *except* within the preamble ("**A method** for fetching over the Internet a first content, identified by a first content identifier, **by a first device**"). The preamble, if limiting, does indicate that it is the first device that performs all of the steps.  Dr. Rhyne acknowledges this and, in so doing, contradicts his statement that the claims "unambiguously identif[y] the elements" when he references the preamble, conceding that all steps of '044 Patent Claim 81 *are performed by the first device, and only by the first device*.[2]  Dr. Rhyne Declaration, ¶12.

Further, for '044 Patent Claim 108, Dr. Rhyne's logic fails completely.  Dr. Rhyne admits that claim 81, which has a preamble that reads "A method … by a first device" is performed by a first device.  This works for claim 81, but not for claim 108, which has the same preamble. Applying Dr. Rhyne's logic for trying to save '044 Patent Claim 81, Dr. Rhyne's position then becomes that '044 Patent Claim 108 should be read as:

> A method … by a first device ….
> (a) sending the second identifier to the first server;
> (b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;
> (c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;
> (d) receiving the first content from the second server; and
> (e) in response to receiving the first content, sending the first content to the first

---

[2] The "first device" is referenced only within the preamble of claim 81.

4

device using the first identifier.

Although the Court found in the *Tesonet* Claim Construction Order that relying upon the preamble to be limiting saved '044 Patent Claim 81 from indefiniteness, such reliance provides no value for Claim 108.  This is because preamble for both Claims introduces a method performed "by a first device," but in Claim 108, none of the recited steps is performed by the first device. The preamble introduces a method performed "by a first device," but in '044 Patent Claim 108, not a single one of the recited steps is performed by the first device.  Instead, *by looking outside the claim language – both outside the steps and outside the preamble*, Dr. Rhyne infers that the steps of the Claim might be referencing the second device. Not a single word within '044 Patent Claim 108 restricts even a single step to being performed by the second device.  Dr. Rhyne is apparently aware of this, as he has failed to identify a single word within '044 Patent Claim 108 that limits which device performs the steps of the Claim.  Dr. Rhyne's statement that the "The claim language … unambiguously identifies the elements that are the called out in each of those steps" is therefore simply untrue for '044 Patent Claim 108 – even when the preamble is limiting.[3]

Therefore, Claim 108 is indefinite under 35 U.S.C. §112, as the Court has previously found.  Additionally, BIScience concurs with the Court's reasoning regarding indefiniteness of '044 Patent Claim 108, as provided in the *Tesonet* Claim Construction Order and incorporates that reasoning herein.

---

[3] Additionally, BIScience notes that Dr. Rhyne's declaration proposes what Luminati would decry as "impermissibly importing limitations from the specification" if suggested by BIScience. Dr. Rhyne proposes limiting both '044 Patent Claims 81 and 108 based upon exemplary embodiments – instead of merely the claim language itself.  Specifically, the Declaration states "Given this exemplary embodiment, in my opinion a POSA would follow the steps of claim 81 from the perspective of the "first device" which in Fig. 11a is 'Client #1' (No. 31a)" and "Given the above exemplary embodiment, in my opinion a POSA would understand claim 108 to disclose fetching via a second device where each claim steps can be performed by the second device labeled 'Tunnel #2' …."  Rhyne Declaration, ¶¶ 12 and 14.

### III.    '044 Claim Terms

#### A. "First Device," "First Server," "Second Device," "Second Server"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| first device ('044 pat., cl. 81, 108) | Plain and ordinary meaning | A device, separate from the second device, the first server, and the second server, that receives the internet content from the second device | Plain and ordinary meaning |
| second device ('044 pat., cl. 81, 108) | Plain and ordinary meaning | A device, separate from the first device, the first server, and the second server, that is communicatively positioned between the first device and the second server | Plain and ordinary meaning |
| first server ('044 pat., cl. 81, 108) | Plain and ordinary meaning | A device, separate from the second device, the first server, and the second server, that receives the internet content from the second device | Plain and ordinary meaning |
| second server ('044 pat., cl. 81, 108) | Plain and ordinary meaning | A server, separate from the first device, the second device, and the second server | Plain and ordinary meaning |

There are four primary differences between Luminati's and BIScience's proposed constructions.  Whereas Luminati proposes no specific limitations, other than "plain and ordinary meaning" BIScience's proposed constructions include necessary clarifications regarding:

1. The arrangement of the four components, consistent with the preambles;
2. The message flow (communication) among some of the components, consistent with the preambles;
3. The content is "internet content" that is fetched from across the internet; and
4. The four components are separate components.

For differences #1 and #2, BIScience's position is supported by the Court's earlier ruling that the preambles are limiting.  For difference #3, the term "internet content" is self-defining and straightforward: content fetched from across the internet.  With Luminati's limited concession regarding the limitation of the preambles, which does not appear to extend to the content being fetched over the internet, it is possible for Luminati to attempt to read the claims on a purely

6

locally-connected system that fetches data from local storage, without any requirement that there be any internet traffic or even any connection to the internet at all. Such a stretch would read the purported invention entirely out of the claims. Therefore, "internet content" is a proper term, to help focus the true meaning of the claims.

For difference #4, BIScience notes that Luninati has admitted that at least some of the components "[are] not the same" on page 22 of Luminati's Opening Claim Construction Brief. However, Luminati stops short of admitting that the components cannot all be locally connected, or even that any of the other devices cannot be the same.

Further, Luminati attempts to conflate BIScience's position by surreptitiously introducing "geographical" into BIScience's proposed construction and arguing against this misrepresented position. Specifically, Luminati states "there is no geographical separation requirement" on page 22 of Luminati's Opening Claim Construction Brief. BIScience is not proposing "geographical separation". Rather, BIScience is proposing that the limitations of the preambles, which recite four separate components, not be frustrated by Luminati attempting to point to a single component as being two or more of the four separately recited components within the preamble.

If Luminati could point to a single device or component as being two or more of the "first device," "first server," "second device," and "second server," the purported invention, which is to overcome denial of internet traffic by masking the source of the request, would be purged from the claims. This is because pointing to two or more recited devices as parts of a common physical device precludes the need for internet traffic between those two or more recited devices. Without more within the claim language to limit the steps to being performed across the internet, the clarification of the "first device," "first server," "second device," and "second server" as separate is thus proper.

### B. "First Content Identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| first content identifier ('044 pat., cl. 81, 82, 87, 89, 101, 108) | Plain and ordinary meaning | Identification of the internet content that is to be fetched | "*First*" content identifier not construed |

The primary differences between Luminati's and BIScience's proposed construction is that BIScience's proposal clarifies that the content is internet content, which is clearly interpreted as content fetched from across the internet. Luminati's proposed construction is designed to permit Luminati to accuse systems that only fetch local content from local storage devices, consistent with their statement "**whatever restriction Defendant intends to add** to the actual claim term "content" **with the word "internet," there is no such restriction** in the '044 patent" on page 14 of Luminati's Opening Claim Construction Brief.

Luminati points to the *Tesonet* Claim Construction Order in which the Court declined to provide a limiting construction for the generic term "content identifier" and misleadingly suggests that the Court's reasoning in that dispute is applicable here. First, the Court indicated that the separate construction was unnecessary in *Tesonet* because the preamble was limiting – whereas here, Luminati is not conceding to the preamble being entirely limiting, but only concedes that it is limiting for some aspects of the claim.

Additionally, Luminati statement of no "internet" restriction, referenced above on page 14 of their Opening Claim Construction Brief, is effectively a preview of Luminati's attempt to read out of the claims that the content is fetched from across the internet. The prior dispute, in *Tesonet*, centered on whether the content necessarily must include certain information (such as a URL). *See Tesonet* Claim Construction Order, p.24. Here, the dispute is whether the content must be

8

fetched from across the internet, or whether the claim can be read on a stand-alone system that does not include any internet traffic.

Luminati's argument that "Defendant's proposal also falls into the trap of reading an embodiment into the claims, which runs afoul of a basic tenant of claim construction" is simply incorrect. The identification that the content is fetched over the internet is in the Claims themselves. Specifically, the preamble of both Claims 81 and 108 states "fetching **over the Internet** a first content."

### C. "identified in the Internet by a first identifier," "identified in the Internet by a third identifier," and "identified in the Internet by a second identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| identified in the Internet by a first identifier ('044 pat., cl. 81, 108) | Plain and ordinary meaning | Identified by a first identifier that is different than the third identifier, although there may be some overlap | Not construed |
| identified in the Internet by a third identifier ('044 pat., cl. 81, 108) | Plain and ordinary meaning | Identified by a first identifier that is different than the third identifier, although there may be some overlap | Not construed |
| identified in the Internet by a second identifier ('044 pat., cl. 81, 108) | Plain and ordinary meaning | Identified by information that includes an address of the second device | Not construed |

The primary difference between Luminati's and BIScience's proposed constructions is whether the any of the separately-recited identifiers can be the same identifier. Without such a clarification, Luminati may feel free to change the limitation "the second request includes the first content identifier and the third identifier," which clearly requires two identifiers, to something that requires only a single identifier.

Such an interpretation would delete a limitation of the claims in the *very clause* that the USPTO Examiner cited as the reasons for allowance.  The Notice of Allowance for the '044 Patent, issued by the USPTO on September 11, 2015, stated:

> The following is an examiner's statement of reasons for allowance:
> The prior art of record fails to teach or fairly suggest a first device sending a second request to a second device using a second identifier, **the second request including a first content identifier and a third identifier**, in the specific manner and combinations recited in claims 1,81, and 108. *See* Exhibit A.

It is important to note that this clause *was the only one* identified by the USPTO Examiner as having any difference over the prior art.  Permitting Luminati to now change this critical clause, by eliminating one of the two identifiers, would be improper. The prosecution history includes "all express representations made by or on behalf of the applicant to the examiner to induce a patent grant, or ...to reissue a patent... includ[ing] amendments to the claims and arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985); *see also Sanofi–Aventis Deutschland GmbH v. Genentech, Inc.*, 473 Fed. Appx. 885, 888 (Fed. Cir. 2012) ("We have held that an otherwise broadly defined term can be narrowed during prosecution through arguments made to distinguish prior art.") (citing *Phillips v. AWH Corp., et al*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("The prosecution history... consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent.") ).  BIScience's proposed constructions are flexible to permit overlap (*i.e.*, common content) between the first and third identifiers, but keep within the inventive concept, as identified by the PTO Examiner, as there being a requirement that two identifiers, not just a single identifier, be included.

The other important difference is whether the second identifier, which must be "identified in the Internet" is identified by an address.  This construction is proposed by BIScience for

consistency in limiting the Claims to require internet traffic. Luminati does not indicate that the specification enables any other identification, apart from an address, but instead attempts to expand the teachings of the '044 Patent by introducing new alternatives on page 16 of Luminati's Opening Claim Construction Brief. This improper, post-allowance attempt to expand the alleged teachings of the '044 patent, beyond the limitation that resulted in allowance of the '044 patent, for example, by eliminating one of two recited identifiers and also removing the requirement that the identifier enables "identif[ication] in the Internet," should be rejected.

**D. "receiving the second identifier from the first server," "sending the second identifier to the first server," "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier," "receiving a second request from the first device, the second request includes the first content identifier and the third identifier," and "in response to receiving the first content, sending the first content to the first device using the first identifier"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| receiving the second identifier from the first server ('044 pat., cl. 81) | Plain and ordinary meaning | Receiving, by the first device from the first server, identification of the second device that includes an address of the second device | Not construed |
| sending the second identifier to the first server ('044 pat., cl. 108) | Plain and ordinary meaning<br><br>Alternatively:<br>sending, from the second device, the second identifier to the first server | Indefinite,<br><br>Alternatively:<br>sending, by the second device to the first server, identification of the second device that includes an address of the second device. | Not construed |
| sending a second request to the second device using the second identifier, the second request includes the | Plain and ordinary meaning | Sending, by the first device to the second device, using the address of the second device that was received from the first server, a request for the internet content which is to be fetched that includes both (1) identification of the internet | Not construed |

| first content identifier and the third identifier ('044 pat., cl. 81) | | content that is to be fetched and also (2) the address of the second server, although there may be some overlap | |
|---|---|---|---|
| receiving a second request from the first device, the second request includes the first content identifier and the third identifier ('044 pat., cl. 108) | Plain and ordinary meaning<br><br>Alternatively:<br>receiving, by the second device, a second request from the first device, the second request includes the first content identifier and the third identifier | Indefinite<br><br>Alternatively:<br>receiving, by the second device from the first device, a request for the internet content that includes both (1) identification of the internet content that is to be fetched and also (2) the address of the second server | Not construed |
| in response to receiving the first content, sending the first content to the first device using the first identifier ('044 pat., cl. 108) | Plain and ordinary meaning<br><br>Alternatively:<br>in response to receiving the first content, the second device sending the first content to the first device using the first identifier | Indefinite.<br><br>Alternatively:<br>after the second device receives the internet content, the second device forwards the internet content to the first device using an address of the first device | Not construed |

Luminati's inconsistent positions between their proposed treatment of '044 Patent Claims 81 and 108 is driven by their attempts to preserve the validity of '044 Patent Claim 108. Luminati acquiesces to construction of clauses in '044 Patent Claim 108, even while arguing against construing directly equivalent clauses in '044 Patent Claim 81. That is Luminati is willing to accept construing "sending" and "receiving" to be clarified by "by the second device" in Claim 108, but yet is unwilling to accept construing "sending" and "receiving" to be clarified by "by the first device" in Claim 81. Luminati offers no rational basis for this glaring inconsistency in its positions.

Luminati's statement that "Luminati asks that the Court give consideration to the fact that

in this case the parties agree that these steps are performed by the second device in assessing the indefiniteness argument" fundamentally and unfairly misrepresents BIScience's position regarding '044 Patent Claim 108. BIScience does not agree "that these steps are performed by the second device in assessing the indefiniteness argument." Rather, BIScience proposes contingent constructions only in the alternative should the Court find that the claim is not indefinite.

The differences between Luminati's and BIScience's proposed constructions are largely cumulative of prior differences. If the Court adopts BIScience's above-argued proposed constructions, then these constructions follow. For example, "receiving by the first device" and "sending, by the first device" clarify that it is the first device that is performing the steps of '044 Patent Claim 81. The Court has already adopted this interpretation of the Claim in the *Tesonet* Claim Construction Order, when finding that the preamble is limiting and noting that the preamble specifies that the method is performed "by a first device." *See* page 58 of the *Tesonet* Claim Construction Order, and also page 59, where the Court compares the preamble of Claim 108 to the body of Claim 108, characterizing the preamble as limiting the performance of the method to "by a first device." Specifically, on page 59, the Court states: "As to 'by a first device,' the claim explicitly recites 'receiving a second request from the first device' and 'sending the first content to the first device.'" Adoption here follows naturally.

The need for including "an address of the second device" was argued above, along with "internet content," and the requirement of sending two identifiers (rather than just a single identifier). The clarification of "after the second device receives the internet content, the second device forwards the internet content to the first device using an address of the first device" ensures that the Claim will be interpreted with the proper interaction among the components (devices).

13

Paragraph 14 of Dr. Rhyne's Declaration supports the temporal relationship proposed by BIScience, by incorporating Fig. 11a into the Claim and listing step "e" (the second device sends the content back to the first device) after step "d" (the second device receives identification of the content sought from the target server). Specifically, Dr. Rhyne states:

> Given this exemplary embodiment, in my opinion a POSA would follow the steps of claim 81 from the perspective of the "first device" which in Fig. 11a is "Client #1" (No. 31a), those steps being:
> (a) The first device (e.g., "Client #1" 31a) sends the first identifier (e.g., its own identity) to the first server (e.g., "Acceleration Server" 32);
> (b) The first device (e.g., "Client #1" 31a) sends a first request to the first server (e.g., "Acceleration Server" 32);
> (c) The first device (e.g., "Client #1" 31a) receives the second identifier (e.g., identifying the second device) from the first server (e.g., "Acceleration Server" 32);
> **(d) The first device** (e.g., Client #1 - 31a) **sends a second request** (e.g., "Content Request") **to the second device** (e.g., "Tunnel #1" 33b) **using the second identifier** where the second request includes the first content identifier (e.g., **what content is sought**) and the third identifier (e.g., the IP address or other identifier of Data Server #1 or the target server 22a); and,
> **(e) The first device (e.g., "Client #1" 31a) receives the first content** (e.g., the sought content shown as "Send Content" to 31a) **from the second device** (e.g., "Tunnel #1" 33b).

BIScience additionally notes that Luminati admits on page 21 of Luminati's Opening Claim Construction Brief that "'in response to' clearly establishes a causal relationship," but without limiting that admission to any particular appearance of the phrase "in response to" within any of the Claims.

### E. "multitasking or multiprocessing" and "proximity to the second server"

To ease the burden on the Court, BIScience is not challenging Luminati's proposed constructions. However, BIScience does not concede that Luminati's proposed constructions are proper.

## IV. The Preamble for Claim 15 of the '866 Patent is Limiting

BIScience maintains that the preamble for Claim 15 of the '866 Patent should be fully limiting for reasons similar to Claim 81 of the '044 Patent: Without the entirety of the preamble,

Luminati is free to attempt stretching the claim to the extent that the purported invention entirely disappears.

Luminati's fails to even identify the preamble of Claim 15 of the '866 patent in their Opening Claim Construction Brief.  This is significant because the formatting of the claim creates confusion regarding where the preamble stops and where the body of the claim starts. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Based on the Court identifying the preamble as stopping with the phrase "the method comprising the step of," the preamble of '866 Patent Claim 15 recites:

> A method for fetching a content over the Internet from a first server identified in the Internet by a second identifier via a group of multiple devices, each identified in the Internet by an associated group device identifier, **the method comprising the step of** (emphasis added)



However, using the language appearing in the preamble, and beginning the body of the claim following the phrase "the method comprising step of" produces a significantly narrower claim, with additional limitations (shown in bold):

> **partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:**
> (a) selecting a device from the group;
> (b) sending over the Internet a first request to the selected device using the group device identifier of the selected device, the first request including the content slice identifier and the second identifier;
> (c) in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and
> wherein the method further comprising the step of constructing the content from the received plurality of content slices,
> and wherein each of the devices in the group is a client device.

Luminati has obfuscated the question of whether "partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of: [the remaining Claim text]" is within the preamble, by specifically failing to identify the preamble in their Opening Claim Construction Brief, despite indicating in their most recent ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

    ████████████████████████████████████████████████████

████████████████████ :

    ████████████████████████████████████████████████
    ████████████████████████████████████████████████
    ████████████████████████████████████████████████
    ████████████████████████████████████████████████

Interestingly, Luminati contradicts its expert, Dr. Rhyne.  In paragraph 23 of Dr. Rhyne's Declaration, he states the following (emphasis added): "Also, in my opinion a POSA would **not understand the preamble** of claim 15 of the '866 Patent **to be limiting**."  Recognizing that its expert is incorrect, Luminati admits that the preamble "may be limiting" to some extent, on page 21 of Luminati's Opening Claim Construction Brief.  However, this admission is too vague to impart any meaning.  A simpler and easier solution is for the preamble to be limiting, without any added confusion or vague disclaimer, and for the preamble to end with the phrase "the method comprising step of."  Further supporting BIScience's position that the preambles be fully limiting, without qualification, is the fact that Luminati agrees that terms within the preambles require construction.

## V.      Claim 15 of the '866 Patent is Indefinite

Claim 15 of the '866 Patent fails to inform those skilled in the art about the scope of the invention with reasonable certainty.  Looking at only the Claim body recited above, even the more limiting version, indicates an absence of meaningful limitations regarding which components or devices perform which steps.  Also absent from the Claim body is any meaning, goal, or significance of the steps, permitting wide-ranging variations in their interpretation regarding the actors.

For example, which device performs the step of "partitioning the content into a plurality of content slices?"  Which device performs the step of "selecting a device from the group?"  Is the device that performs the step of "sending over the Internet a first request to the selected device …" also the same device that is referenced by "in response to receiving the sent first request by the selected device?"  Dr. Rhyne simply does not address which device performs the partitioning.

Whereas, for '044 Patent Claim 108, Dr. Rhyne took great care to identify which device

17

performed which step, in order to attempt to preserve validity for that Claim, in stark contrast, for '866 Patent Claim 15, Dr. Rhyne simply makes no attempt. The fact that even Luminati's expert is unable –or unwilling– to identify which device identified within the preamble performs each of the steps of '866 Patent Claim 15 is revealing. Either Luminati itself cannot determine what the patent teaches, or else the teachings of the '866 Patent are inconvenient for Luminati's infringement theory. However, because Luminati failed to clarify which device performs each of the steps of Claim 15, for example the step "partitioning the content into a plurality of content slices," the Court should find the Claim invalid for failing to inform those skilled in the art about the scope of the invention with reasonable certainty.

## VI.  '866 Claim Terms

### A. "first server" and "a group of multiple devices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| first server ('866 pat., cl. 15) | Plain and ordinary meaning | A server, separate from the first device, the second device, and the group of multiple devices, from which the internet content is fetched | Not construed |
| a group of multiple devices ('866 pat., cl. 15) | Plain and ordinary meaning | A plurality of devices that are able to fetch the internet content from the first server and which does not include the first device and the second server | Not construed |

The primary difference between Luminati's and BIScience's proposed constructions is whether Luminati is free to include the first server, the first device, and the second server within the group of multiple devices. Such a reading of the Claim would read the purported invention entirely out of the claims. Therefore, the Court should clarify that the first server is not within the group of multiple devices.

The additional clarifications regarding "separate" from the first device, and the group of

18

devices not including the first device and the second server are to preserve the arrangement described within the preamble.

### B. "identified in the Internet by a second identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| identified in the Internet by a second identifier ('866 pat., cl. 15) | Plain and ordinary meaning | Identified by information that includes an address of the first server | Not construed |

This claim term dispute follows directly from the dispute for '044 Patent Claims 81 and 108 regarding whether the phrase "identified in the Internet by a second identifier." The Court should construe this phrase consistently with the corresponding phrase in '044 Patent Claims 81 and 108.

### C. "partitioning the content into a plurality of content slices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| partitioning the content into a plurality of content slices ('866 pat., cl. 15) | Plain and ordinary meaning | Indefinite<br><br>Alternatively: dividing, among a group of multiple devices that is fetching internet content, the internet content to be fetched into a plurality (more than just one) of portions, although the portions can have overlapping content | Splitting the content into content slices (the resulting content slices may be overlapping or non-overlapping |

This claim term is indefinite under 35 U.S.C. §112, however – without admitting to validity or definiteness – BIScience provides a contingent proposed construction. The primary difference between Luminati's and BIScience's proposed construction is that BIScience identifies

the only device (as enabled by the specification) that performs the partitioning step of the Claim. Luminati prefers to leave this phrase indefinite as to which device performs the step, so that the Claim fails to inform those skilled in the art about the scope of the invention with reasonable certainty.  Therefore, if the Court does not find Claim 15 of the '866 Patent indefinite under 35 U.S.C. §112, the Court should adopt BIScience's proposed construction and thereby identify which device performs the recited step.

The identity of the device or devices that perform the "partitioning" is significant to the purported invention.  Any allegation that "partitioning" could be performed by the target server (from which the content is fetched), when the target server packetizes the data for transmission, is an unreasonable broadening of the claims by rendering significant limitations into admitted prior art.  See, for example, Fig. 2a of the '866 Patent which is labeled as "Prior Art," and its description, which admits that packetizing data is "prior art" at 4:6.



**FIG. 2a (Prior Art)**

Dr. Rhyne correctly points to Figs. 23 and 23a, and admits that these should inform "an understanding of the terms 'partitioning the content' and 'constructing the content'" in paragraph 15 of Dr. Rhyne's Declaration.  However, the patent teaches one –and only one– concept of partitioning: partitioning is dividing (or splitting) the content to be fetched *prior to requesting it*, and is performed by the requesting device or devices.  For example, 109:39-44 of the '866

specification identifies that it is the client device (i.e., the user's device) that defines the partitioning: "In the case the list received at the client device #1 201a include multiple agents, **the client device #1 201a may select one, two, three, or any other number of agent devices from the list, in a 'Select Agents' step 231f** in the flowcharts 230 and 230a."  The partitioning is then carried out by the group of devices acting as proxies to actually fetch the content.  The '866 Patent's specification introduces a single alternative in 114:48-54, that the acceleration server performs the partitioning:

> Alternatively or in addition, the peer devices may be selected by the acceleration server 202.  Similarly, the agent devices to be used may be selected by a client device (such as the client device #1 201a) in the 'Select Agents' step 231fin the flowchart 230, or may be selected by the acceleration server 202 in the 'Prepare List' 251e in the flowchart 250.

> Figs. 23 and 23a are reproduced below, annotated with the only steps identifiable within the teaching of specification of the '866 Patent as "partitioning."



FIG. 23

FIG. 23a

Additionally, Fig. 10 of the '866 Patent has a step labeled "Content Partition 101b" which is also described in 94:63-67 as being performed prior to fetching the content: "The content is partitioned into slices in a 'Content Partition' step 101b shown in the flowchart 100. In one example, each of the slices is allocated to a different tunnel device, and fetched via that tunnel device as explained herein."

No other concept of partitioning – other than for the purpose of using separate proxies to fetch separate portions of the content – is taught anywhere within the '866 Patent. Permitting Luminati to muddle the definition, so that "partitioning" can be read on the target server

packetizing data for transmission is wholly unsupported by the '866 Patent, and effectively erases the relevant claim limitations by transforming an important limitation into the well-known admitted prior art of data packets.

**D. "each content slice containing at least part of the content" and "each content slice … identified using a content slice identifier"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| each content slice containing at least part of the content ('866 pat., cl. 15) | Plain and ordinary meaning | Each portion contains at least part of the internet content | Not construed |
| each content slice … identified using a content slice identifier ('866 pat., cl. 15) | Plain and ordinary meaning | Each portion is identified uniquely relative to the other portions | Not construed |

The primary difference between Luminati's and BIScience's proposed constructions is derived from the earlier-described dispute over "internet content" (for '044 Patent Claims 81 and 108). That is, BIScience seeks to ensure that '866 Patent Claim 15 requires that the content be fetched over the internet. Additionally, BIScience provides a clarification of the only enabled goal of the '044 Patent Claim 15, which is recited within the Claim as "constructing the content from the received plurality of content slices."

**E. "a plurality of content slices … and for each of the content slices"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| a plurality of content slices … and for each of the content slices | Plain and ordinary meaning | Performing the following steps for each of the plurality of content slices (portions), rather than just a single time for the | Not construed |

23

| ('866 pat., cl. 15) | | entirety of the fetched internet content | |
|---|---|---|---|

The primary purpose of BIScience's proposed construction is to clarify that the claim preamble does not include phrases that should instead be considered Claim limitations:

> partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:

Luminati, by failing to concede that the preamble of '866 Patent Claim 15 is fully limiting, and further by failing to identify which portion of '866 Patent Claim 15 that Luminati admits is within the preamble, has created ambiguity as to whether Luminati interprets Claim 15 to include "partitioning the content into a plurality of content slices." If the Claim body does include the limitations described above, then it is clear that each of the steps following the phrase "comprising the steps of" is necessarily performed "for each of the content slices" (which the claim also makes clear is a "plurality of content slices"). Luminati points to step (a) as having once been accomplished, not requiring duplication. Specifically, on page 26 of Luminati's Opening Claim Construction Brief, Luminati states "The claim language itself states that the steps are performed for each content slice but does not require that each of the steps be repeated for each content slice. For example, step (a) is "selecting a device from the group." However, this is contradicted by the clear language of the Claim:

> … partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and **for each of the content slices**, comprising the steps of:
> **(a) selecting a device** from the group; …

Although it is convenient for Luminati to attempt changing the clear language of the claim via a claim construction order, the clear meaning of the claim is that a device is selected for fetching each of the content slices. Referencing Fig. 23a shown above, the meaning becomes

clear: for three slices, three devices are selected.  This interpretation makes perfect sense in view of, and additionally supports the concept that, the partitioning is defined prior to fetching the content from the target server.

### F. "selecting a device from the group" and "sending over the Internet a first request to the selected device using the group device identifier of the selected device"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| selecting a device from the group ('866 pat., cl. 15) | Plain and ordinary meaning | Selecting, by some node other than the first server and one of the group of multiple devices, a device within the group of multiple devices | Not construed |
| sending over the Internet a first request to the selected device using the group device identifier of the selected device ('866 pat., cl. 15) | Plain and ordinary meaning | Sending, by some node other than the first server and one of the group of multiple devices, to the selected device, a request to fetch the internet content device within the group of multiple devices and that uses the selected device's unique identification | Not construed |

The primary difference between Luminati's and BIScience's proposed constructions is within the recurring dispute, identified multiple times above, as to whether any of the steps recited within the Claims can be performed by any device, without limitation.  The clarification "internet content" was argued above.

Luminati states on page 27 of its Opening Claim Construction Brief "That limitation does not exclude the devices in the group of multiple devices from selecting."  However, in Dr. Rhyne's Declaration, Dr. Rhyne points to Fig. 23a and its description within the specification of the '866 Patent for interpreting the limitations of Claim 15.  See paragraph 22 of Dr. Rhynes declaration, stating "Furthermore, in addition to the language of claim 15 itself, in my opinion a POSA would be informed, for example, by Fig. 23 and associated text."  Following Dr. Rhyne's example of

looking to Fig. 23a, we note that only a single operation is enabled regarding the claimed operation:  That it is the client device that selects a device from the group.  *See* the '866 Patent 109:33-44.  Again, Luminati attempts to expand the teaching of the specification with claim construction arguments.  Pointing to an ambiguous statement that the group devices may be part of any network element does not change the limited teaching within the specification.  No other operation, apart from the client device performing the selection, is disclosed or enabled by the specification.

### G. "the first request including the content slice identifier and the second identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| the first request including the content slice identifier and the second identifier ('866 pat., cl. 15) | Plain and ordinary meaning | The request for fetching the internet content, that is sent to the selected device, includes (1) the content slice identifier and (2) information that includes the address of the first server | Not construed |

BIScience's proposed construction clarifies that the content is fetched from across the internet.  The "address of" argument was presented above and need not be repeated here.  For the reasons given above, the Court should adopt BIScience's proposed construction.

### H. "the partitioning is based webpages level"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| the partitioning is based webpages level ('866 pat., cl. 18) | Plain and ordinary meaning | Each of the plurality (more than just one) of portions of the fetched internet content corresponds to one or more webpages | Not construed |

BIScience's proposed construction clarifies that there is a plurality of partitions and that the content is fetched from across the internet.  Both arguments were previously presented above

26

and need not be repeated here.  For the reasons given above, the Court should adopt BIScience's proposed construction.

### I. "all of the parts of the content are included in all of the content slices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| all of the parts of the content are included in all of the content slices ('866 pat., cl. 19) | Plain and ordinary meaning | Indefinite | Not construed |

The phrase "all of the parts of the content are included in all of the content slices" is indefinite under 35 U.S.C. §112.  The phrase does not appear within the specification, except for some paragraphs that happen to be direct copies of the claim language, without any explanation.  Although Luminati purports to have a definition of this phrase within the Dr. Rhyne's Declaration, even that definition is ambiguous.

A simple question demonstrates the ambiguity, and no answer is provided either within the '866 Patent itself, or within Dr. Rhyne's declaration:  Does "all of the parts of the content" refer to identification of the content parts (*e.g.*, a table of contents or index) or the entirety of the actual content itself?  If the Court cannot resolve this question by looking within the patent, then the Court should find this phrase indefinite under 35 U.S.C. §112.

### J. "part of the content is included in two or more content slices"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal (if not indefinite) | *Tesonet* Construction |
|---|---|---|---|
| part of the content is included in two or more content slices | Two or more content slices including [include?] at least an overlapping part of the content | At least two of the plurality (more than just one) of portions of the fetched internet content have overlapping content | Not construed |

| ('866 pat., cl. 22) | | | |
| --- | --- | --- | --- |

Luminati and BIScience propose similar, but different constructions. BIScience's construction is superior because it clarifies that the content slices comprise content that had been fetched over the internet. The Court should therefore accept BIScience's proposed construction.

Dated: November 4, 2019          By:        */s/ Eric H. Findlay*
Eric H. Findlay (TX Bar No. 00789886)
Brian Craft (TX Bar No. 04972020)
Debby Gunter (TX Bar No. 24012752)
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, Texas 75702
Tel: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com
dgunter@findlaycraft.com

*ATTORNEYS FOR BISCIENCE DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2019 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Eric H. Findlay*
Eric H. Findlay

28