# Luminati Networks Ltd.
# Claim Construction Presentation

## U.S. Patent No. 9,241,044; 9,742,866

November 26, 2019

Luminati Networks Ltd. v. BI Science Inc.
Case 2:18-cv-00483-JRG

1

# CLAIM TERMS NO LONGER IN DISPUTE

# Claim Terms No Longer In Dispute

1.   Term F - "multitasking or multiprocessing"

   -   In *Tesonet* lawsuit, Court construed as "performing multiple tasks in overlapping time periods using common processing resources" based on agreement of the parties (Dkt. 121, at 8)

   -   In Opposition brief, BI Science withdrew its dispute

2.   Term G – "proximity to the second server"

   -   In *Tesonet* lawsuit, Court construed as "distance from second server based on physical geographical location" based on agreement of the parties (Dkt. 121, at 8)

   -   In Opposition brief, BI Science withdrew its dispute

3.   Whether preamble of '866 Patent Claim 15 is Limiting

   -   In briefing, Luminati clarified that it does not dispute – preamble is limiting

# PATENT BACKGROUND

# Overview of Patents-in-Suit

- **Two Patents with the Same Specification and Priority Date (8/26/2013)**

- **Patents are Divisionals from Same Original Application with the Same Inventors**

  – **U.S. Patent No. 9,241,044 ('044 Patent)**

    • Independent claims 81 & 108

    • Dependent claims 82-107

  – **U.S. Patent No. 9,742,866 ('866 Patent)**

    • Independent claim 15

    • Dependent claims 16-28



# Asserted Patents Are the Subject of a Prior Order

- Both sides cite to the Court's claim construction order in <u>Luminati Networks Ltd. v. UAB Tesonet, et al</u>., E.D. Tex. Case No. 2:18-cv-299-JRG (Dkt. 121) (Ex. C to Mot., Dkt. 109-5 in this matter)

- Where the parties differ from that order:

- Luminati has focused primarily on one dispute regarding indefiniteness of '044 patent claim 108

- Defendant BI Science makes several proposals that differ from the prior claim construction order without explaining why the Court should take a different position

6

# The '044 Patent



(12) **United States Patent**
Shribman et al.

(10) **Patent No.:**  **US 9,241,044 B2**
(45) **Date of Patent:**  **Jan. 19, 2016**

(54) **SYSTEM AND METHOD FOR IMPROVING INTERNET COMMUNICATION BY USING INTERMEDIATE NODES**

(60) Provisional application No. 61/870,815, filed on Aug. 28, 2013.

(57) **ABSTRACT**

A method for fetching a content from a web server to a client device is disclosed, using tunnel devices serving as intermediate devices. The client device access an acceleration server to receive a list of available tunnel devices. The requested content is partitioned into slices, and the client device sends a request for the slices to the available tunnel devices. The tunnel devices in turn fetch the slices from the data server, and send the slices to the client device, where the content is reconstructed from the received slices. A client device may also serve as a tunnel device, serving as an intermediate device to other client devices. Similarly, a tunnel device may also serve as a client device for fetching content from a data server. The selection of tunnel devices to be used by a client device may be in the acceleration server, in the client device, or in both. The partition into slices may be overlapping or non-overlapping, and the same slice (or the whole content) may be fetched via multiple tunnel devices.

**'044 Patent directed to <u>using intermediate tunnel devices to request content</u> from target servers over the Internet**

7

# The '866 Patent



(12) **United States Patent**
Shribman et al.

(10) Patent No.: **US 9,742,866 B2**
(45) Date of Patent: *Aug. 22, 2017

(54) **SYSTEM AND METHOD FOR IMPROVING INTERNET COMMUNICATION BY USING INTERMEDIATE NODES**

**Related U.S. Application Data**

(62) Division of application No. 14/468,836, filed on Aug. 26, 2014, now Pat. No. 9,241,044.

(Continued)

(57) ABSTRACT

A method for fetching a content from a web server to a client device is disclosed, using tunnel devices serving as intermediate devices. The client device access an acceleration server to receive a list of available tunnel devices. The requested content is partitioned into slices, and the client device sends a request for the slices to the available tunnel devices. The tunnel devices in turn fetch the slices from the data server, and send the slices to the client device, where the content is reconstructed from the received slices. A client device may also serve as a tunnel device, serving as an intermediate device to other client devices. Similarly, a tunnel device may also serve as a client device for fetching content from a data server. The selection of tunnel devices to be used by a client device may be in the acceleration server, in the client device, or in both. The partition into slices may be overlapping or non-overlapping, and the same slice (or the whole content) may be fetched via multiple tunnel devices.

**'866 Patent directed to _partitioning of content into content slices_ for use with intermediate devices**

8

# Example: User in Seattle, WA requests content from Craigslist server in Texas



# Example: Craigslist server will block user outside of Texas



10

**Example: User sends the request via proxy device 2, located in Marshall, Texas and Craigslist server sends response to proxy device 2 as both are located in Texas.**



1   **Client #1**
Seattle, WA

2   **Tunnel #1**
Marshall, TX

3   craigslist
Texas server

# Example: Proxy device 2 sends the requested content back to the user in Seattle, WA. Geographic restrictions are circumvented by the use of local proxy devices.



**1** Client #1
Seattle, WA

**2** Tunnel #1
Marshall, TX

**3** craigslist
Texas server

12

# The '866 Patent – Content Partitioning

- Content can also be partitioned into multiple content slices

The content requested by the client device may be partitioned into multiple parts or 'slices'. Any number of slices may be used. The slicing may be in a bit, nibble (4-bits), byte (8-bits), word (multiple bytes), character, string, or a file level. The partition may be into equal length parts, or may use different length slicing. The content may be composed of inherent or identifiable parts or segments, and the partition may make use of these parts. The content may be a website content composed of multiple webpages, and each slice may include one (or few) webpages. Further, the partition may be sequential or non-sequential in the content. The partitioning may be non-overlapping or overlapping.

52:19-30

13

# Content, Content Slices, and Partitioning Have Broad Meanings in the Patents

- As used in the specifications, "content" is not limited to a picture or file or even a word

- A "content slice" can include <u>any part or all</u> of the content

  - Having content slices containing the same content (see '866 cl. 19) might be desirable for redundancy purposes

- "Partitioning" can, for example, divide content into chunks or use chunks already identified in the content

  - In computing, a partition is a section, but the entire content can be one section (https://techterms.com/definition/partition)

- For example:

  - Websites are usually made of multiple web pages – the entire site can be the content

  - A content slice may be one or more of the web pages

  - Partitioning can divide the site into pages, or divide the pages into parts, or partition by using information about sections of pages or entire pages already embedded in the website

14

# The '866 Patent – Content Partitioning Can Use Multiple Proxies / Tunnels

- In this example (Fig. 10), three tunnels are used to fetch different partitioned content slices

- The content can then be constructed from the content slices



FIG. 10

15

# Example: Content partitioned into content slices and sent through multiple proxy devices

**This is a graphical representation of Fig. 10 from the last slide:**
A single content is broken into three parts through three tunnels and all three parts are then received at Client #1



# CLAIM TERMS NOT INDEFINITE
# '044 Pat. Claims 81 & 108

## (Also construing "first device," "first server," "second device," "second server)

## Claim Construction Disputes A & B

# Defendant Failed to Disclose Bases for Indefiniteness under Patent Rule 4-2

- To the right is Defendants <u>entire</u> indefiniteness 4-2 disclosure for the '044 patent

- Defendant's 4-2 disclosure only argues terms are "Indefinite under 35 U.S.C. § 112" – No basis, testimony, or argument

- Defendant did NOT assert in 4-2 disclosure that any claim as a whole is indefinite – only that specific terms are indefinite

- Since this is <u>only</u> basis for indefiniteness, unless the terms themselves lack meaning, the claims should be found definite

| 3 | "first device" | Indefinite under 35 U.S.C. §112<br><br>Alternatively:<br>A device, separate from the second device, the first server, and the second server, that receives the internet content from the second device. | 81, 108 |
|---|---|---|---|
| 4 | "second device" | Indefinite under 35 U.S.C. §112<br><br>Alternatively:<br>A device, separate from the first device, the first server, and the second server, that is communicatively positioned between the first device and the second server. | 81, 108 |
| 5 | "first server" | Indefinite under 35 U.S.C. §112<br><br>Alternatively:<br>A server, separate from the first device, the second device, and the second server. | 81, 108 |
| 6 | "second server" | Indefinite under 35 U.S.C. §112<br><br>Alternatively:<br>A server, separate from the first device, the second device, and the first server, from which the internet content is fetched. | 81, 108 |

18

## "by a first device," "from a second server," "via a second device," "using a first server"

- '044 Pat. Claims 81 & 108 preambles (same preamble in both) – "A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server"

- Luminati submitted expert testimony from Dr. Rhyne that a POSA would understand each of these terms (Rhyne Dec., ¶ 18)

- Defendants submitted no expert testimony

- In prior lawsuit, Court already provided claim constructions for each of these terms, finding that they have definite meaning and that they are readily understood and should receive their plain and ordinary meaning

- Finding any of these terms indefinite would contradict prior order as to these terms

19

# "by a first device," "from a second server," "via a second device," "using a first server"

- In prior lawsuit, Court already provided claim constructions for each of these terms, finding that they have definite meaning and that they are readily understood and should receive their plain and ordinary meaning

- Finding any of these terms indefinite would contradict prior order as to these terms

> The Court accordingly hereby construes **"by a first device," "from a second server," "via a second device,"** and **"using a first server"** to have their **plain and ordinary meaning** (apart from the constructions of any constituent terms that are addressed separately by the Court).

- *Luminati Ltd. v. UAB Tesonet*, Dkt. 121, at 56

20

# Terms should receive their plain meaning

- Defendant provides no good reason to change the Court's construction

- Defendant's proposal unnecessarily adds clutter to simple terms – will not assist the jury

# Preamble/Method Steps Indefiniteness Argument

- In prior order, Court held claim 81 definite but found claim 108 indefinite for reasons not asserted by Defendant BI Science in its 4-2 disclosure
  - Basis was that preamble in the claims set state that the "first device" performs the method but the steps of claim 108 appear to require the second device to perform the steps

- If the Court is inclined to follow its prior ruling on claim 108 despite no such argument here, Luminati asks the Court to reconsider that ruling
  - Procedural setting different here – Defendant did not even ask for ruling that the claim as a whole is indefinite
  - In prior lawsuit, Defendants originally did not ask for indefiniteness of claim 108 and added that argument after the close of expert testimony and after Luminati's opening brief
  - Defendants asserted that the issue was "the same," but clearly based on different rulings the Court felt otherwise
  - In this case Luminati provided expert testimony and clear explanation as to claim 108

22

- Claims 81 &108 use the **<u>identical</u>** preamble that generally requires fetching involving four components -- the fetching is "by a first device … via a second device"

  - "A method for <u>**fetching over the Internet a first content**</u>, identified by a first content identifier, <u>**by a first device**</u>, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier <u>**via a second device**</u> identified in the Internet by a second identifier, using a first server"

- The two claims address the two aspects of fetching – claim 81 is directed to "fetching… by a first device" but claim 108 is directed to "fetching … via a second device"
  - The "fetching … via a second device" is part of the overall fetching by the first device but it is the part that is done via the second device – in context the claim make sense

- Testimony submitted from Dr. Rhyne shows how the two claims in light of the specification clearly define the tasks in a definite way

# '044 Patent – Claims 81 & 108 Comparison and Interaction

## Claim 81:  fetching ... by a first device

**81.** A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:

(a) sending the first identifier to the first server;

(b) sending a first request to the first server;

(c) receiving the second identifier from the first server;

(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and

(e) receiving the first content from the second device.

## Claim 108:  fetching .. via a second device

**108.** A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:

(a) sending the second identifier to the first server;

(b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;

(c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;

(d) receiving the first content from the second server; and

(e) in response to receiving the first content, sending the first content to the first device using the first identifier.





# Driving Analogy

- "A method for **<u>fetching over the Internet a first content</u>**, identified by a first content identifier, **<u>by a first device</u>**, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier **<u>via a second device</u>** identified in the Internet by a second identifier, using a first server"

- Like a method for getting a package by driving from Marshall (like the first device), via Tyler (like the second device), to Dallas (like the second server), communicating with a dispatch center (like the first server)

- Claim 81 steps: (a)-(b) notify dispatch of trip, (c) discover from dispatch that Tyler is a waypoint on the trip, (d) leave Marshall toward Tyler with directions to Dallas to get a package, (c) return to Marshall from Tyler

- Claim 108 steps: (a) notify dispatch that Tyler is an available waypoint, (b) arrive in Tyler from Marhsall with directions to Dallas and instructions to get a package, (c) leave Tyler toward Dallas to get package, (d) return to Tyler from Dallas with package, (e) leave Tyler toward Marshall with package

- Same overall travel method, but the two claims focus on steps related to different components of that method

25

# Dr. Rhyne's Testimony Supports – No Conflicting Expert Testimony

## Claim 81 (Rhyne Dec., ¶¶ 11-12)



## Claim 108 (Rhyne Dec., ¶¶ 13-14)



26

# Dr. Rhyne's Testimony Supports – Claims 81 & 108 Align with Fig. 5b

## Claim 81 (Rhyne Dec., ¶¶ 15-16)



**FIG. 5b**

Claim 81 steps: (a) 53a, (b) 53b, (c) 53c, (d) 56g, (e) 53e

## Claim 108 (Rhyne Dec., ¶¶ 15 & 17)



**FIG. 5b**

Claim 108 steps: (a) 54a, (b) 54c, (c) 56h, (d) 56i, (e) 56j

*See also '044 pat., 81:32-83:18, 83:43-65, 84:12-18, 86:15-42, 88:46-89:49, and 106:32-40*

# Claims 81 & 108 Are Definite

- Claim terms are **presumed definite as a matter of law** – to overcome the burden Defendants would need to prove indefiniteness by **clear and convincing evidence**
  - *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 n.10 (2014)

- Question is whether "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus,* at 910.

- Test expressly directs the court to view the claim "in light of the specification"
  - *See also Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360 (Fed. Cir. 2015) (reversing district court for failing to properly take into consideration specification that provided guidance to a POSA as to the meaning of a patent claim)

- Undisputed expert testimony from Dr. Rhyne is that, in light of the specification, a POSA would be reasonably certain of the scope of claims 81 & 108

28

# Claims Presumed Definite

- Patent examiner concluded that the claim terms are not indefinite by issuing the patent

- Claims should be construed to preserve their validity if possible
  - *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008)

- "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee."
  - *Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004)
  - This principle still applies post-*Nautilus. In re Maxim Integrated Prods., Inc.*, 2014 U.S. Dist. LEXIS 100448, at *49 (W.D. Pa. July 23, 2014)

- "[I]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, the claim is sufficiently clear to avoid invalidity on indefiniteness grounds."
  - *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, 2017 U.S. Dist. LEXIS 183344, at *7 (D.N.J. Nov. 6, 2017) (citing Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) (internal quotations omitted)

29

# DISPUTED CLAIM TERM MEANINGS

30

# Claim Terms In Dispute Using Letter Headings from Luminati Briefs

| Letter | Patent | List of Disputed Claim Terms In Claim Order | Slide Nos. |
|--------|--------|---------------------------------------------|------------|
| C | '044 | "first content identifier" | 32-33 |
| D | '044 | "identified in the Internet by the first identifier," "identified in the Internet by a third identifier," and "identified in the Internet by a second identifier" | 34-38 |
| E | '044 | "receiving the second identifier from the first server" and "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier" | 39-41 |
| H | '044 | "sending the second identifier to the first server," "receiving a second request from the first device, the second request includes the first content identifier and the third identifier," and "in response to receiving the first content, sending the first content to the first device using the first identifier" | 42-44 |
| J | '866 | "first server" and "identified in the Internet by a second Identifier" | 45-47 |
| K | '866 | "a group of multiple devices" | 48 |
| L | '866 | "partitioning the content into a plurality of content slices" | 49-56 |
| M | '866 | "each content slice containing at least part of the content" and "each content slice … identified using a content slice identifier" | 57-58 |
| N | '866 | "a plurality of content slices … and for each of the content slices" | 59 |
| O | '866 | "selecting a device from the group" and "sending over the Internet a first request to the selected device using the group device identifier of the selected device" | 60-61 |
| P | '866 | "the first request including the content slice identifier and the second identifier" | 62 |
| Q | '866 | "the partitioning is based on webpages level" | 63 |
| R | '866 | "all of the parts of the content are included in all of the content slices" | 64-66 |
| S | '866 | "part of the content is included in two or more content slices" | 67 |

31

# C. First content identifier ['044 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| First Content Identifier<br><br>Claim 81, 82, 87, 89, 101, 108 ['044] | Plain and ordinary meaning | Identification of the internet content that is to be fetched. |

- What is "internet content"?  Not a term of art and not discussed in patent

  - "The content may be composed of bits, nibbles, bytes, characters, words, or strings, and the partitioning may be based on bit, nibble, byte, multi-byte, number, character, word, or string level, or may be composed of files, or programs, and the partitioning may be based on file or program level. Alternatively or in addition, the content may be a website content comprising multiple webpages…" ('044 Pat., col. 56:30-36)

  - Website is only one of many examples

- Defendant's proposal incorrectly adds words and imports other limitations

  - Whether content is to be fetched depends on other parts of the claim, it is not inherently part of the word "content"

- Does not make sense to replace "identifier" with "identification"

32

# Defendants' Proposal Are Overly Narrow and/or Read Embodiments into Claims

- "Content Identifier" is a broad concept, not just identification of internet content to be fetched

ing information over the Internet **113**. The data server #1 **22a** may store a content that is identified by a URL (or by any other identifier type). Further copies of the content may be

'044 Pat., 141:47-49

- Because "the plain and ordinary meaning of the term 'identifier' is easily understood, no construction of this term is necessary." *Aloft Media, LLC v. Microsoft Corp.*, No. 6:08-CV-50, 2009 U.S. Dist. LEXIS 24124, at *19 (E.D. Tex. Mar. 24, 2009).

33

D. "identified in the Internet by the first identifier," "identified in the Internet by a third identifier," and "identified in the Internet by a second identifier" ['044 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "identified in the Internet by a first identifier"<br><br>Claim 81, 108 ['044] | Plain and ordinary meaning | Identified by a first identifier that is different than the third identifier, although there may be some overlap. |
| "identified in the Internet by a third identifier" | Plain and ordinary meaning | Identified by a first identifier that is different than the third identifier, although there may be some overlap |
| "identified in the Internet by a second identifier" | Plain and ordinary meaning | Identified by information that includes an address of the second device |

34

- Because "the plain and ordinary meaning of the term 'identifier' is easily understood, no construction of this term is necessary." *Aloft Media, LLC v. Microsoft Corp*., No. 6:08-CV-50, 2009 U.S. Dist. LEXIS 24124, at *19 (E.D. Tex. Mar. 24, 2009).

- Defendant's proposal is confusing - must be different but can be overlapping

- Identifier need only identify the device/server/content

- Multiple identifiers can be coded in one request

  - A request can, for example, be a long URL that may include for example, an identifier of the second server, an identifier of the content sought from the second server, an identifier of the second device and/or parameters to apply to find the second device, etc.

  - It is possible that the same identifier can identify multiple devices simultaneously. For example, a session ID might correspond with addresses of multiple devices and/or servers from a prior session. The claim language does not preclude this.

- Defendant's prosecution history argument is incorrect

  - Defendant recites that the examiner noted that prior art did not disclose sending both a "first content identifier" (content identifier) and a "third identifier" (web server identifier) to a second device

  - That is NOT the same as differentiating the "first identifier" from the "third identifier" (which is Defendant's proposal)

  - The "first identifier" identifies the first device, whereas the "first content identifier" identifies the sought content

  - Defendant did not make any proposal regarding these terms that involve the "first content identifier," so their briefed argument is irrelevant

36

- Defendant changes position on "second identifier," arguing it must include "an address"

- That is not required – claim only requires an identifier, not an address

  - Specification clearly does not limit the term to an address. See, e.g., '044 pat., 58:20-30; 61:65-62:33; 63:4-13; 73:41-47; 95:25-96:3; 102:45-59; 110:33-111:10; 124:26-38; 170:40-42; 171:31-32 (all also in '866 pat.); '866 pat., 55:31-32; 83:54-59.

- "Address" is only one type of identifier

- Claim 44 (dependent on claim 15) recites that "each of the identifiers" (including the second identifier) can be a URL, not just the IP address

- Claim 44 adds that "each of the identifiers may be an IP address or a URL" –– under claim differentiation, addition of "address" to claim 44 means claim 15 "identifier" is not limited to an address

  - *See Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016); *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1360 (Fed. Cir. 2010)

37

- Identifier vs. address – house analogy

- A person (e.g., Adley Winkelpiece) owns a house

- The house will have an address  (e.g., 111 Main Street)

- That address is one way to identify it in the world, but not the only way

  - The house can also be identified as "Adley Winkelpiece's house"

  - It can also be identified by GPS coordinates

  - If you just visited the house, it can be identified by telling you to go back to the house you just visited

- Similarly, a device in the Internet can be identified in many different ways, not just by an address

E. "receiving the second identifier from the first server" and "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier" ['044 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "receiving the second identifier from the first server"<br><br>Claim 81, 108 ['044] | Plain and ordinary meaning | Receiving, by the first device from the first server, identification of the second device that includes an address of the second device. |
| "sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier" | Plain and ordinary meaning | Sending, by the first device to the second device, using the address of the second device that was received from the first server, a request for the internet content which is to be fetched that includes both (1) identification of the internet content that is to be fetched and also (2) the address of the second server, although there may be some overlap |

39

- Because "the plain and ordinary meaning of the term 'identifier' is easily understood, no construction of this term is necessary." *Aloft Media, LLC v. Microsoft Corp.*, No. 6:08-CV-50, 2009 U.S. Dist. LEXIS 24124, at *19 (E.D. Tex. Mar. 24, 2009).

- Defendant's proposal is confusing - says must be different but can be overlapping – no support for this position

- Identifier need only identify the particular device/server

- In this field, it is common to code multiple identifiers in one request

  - A request may, for example, be a long URL that may include for example, an identifier of the second server, an identifier of the content sought from the second server, an identifier of the second device and/or parameters to apply to find the second device, etc.

  - The same identifier may identify multiple devices simultaneously.  For example, a session ID might be used in conjunction with a look-up table to find the requestor and tunnel devices used with a prior request.  The claim language does not preclude this.

40

- Defendant's proposal for the "sending a second request" language reads many additional requirements into the claim that are not part of it

- Requires "using the address of the second device that was received by the first server" that is not required

  - Claim 81 never requires sending an identifier of the second device to the first server (that is only required in claim 108)

  - No '044 patent claim requires the first server to receive anything

  - No '044 patent claim requires sending or receiving an "address"

- Requires "internet content which is to be fetched" – not in the claims. Claims only refer to "content"

41

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "sending the second identifier to the first server" Claim 108 ['044] | Plain and ordinary meaning<br><br>Alternatively, "sending, from the second device, the second identifier to the first server" | Sending, by the second device to the first server, identification of the second device that includes an address of the second device. |
| receiving a second request from the first device, the second request includes the first content identifier and the third identifier Claim 108 ['044] | Plain and ordinary meaning<br><br>Alternatively, "receiving, by the second device, a second request from the first device, the second request includes the first content identifier and the third identifier" | Receiving, by the second device from the first device, a request for the internet content that includes both (1) identification of the internet content that is to be fetched and also (2) the address of the second server. |
| in response to receiving the first content, sending the first content to the first device using the first identifier Claim 108 ['044] | Plain and ordinary meaning<br><br>Alternatively, "in response to receiving the first content, the second device sending the first content to the first device using the first identifier" | After the second device receives the internet content, the second device forwards the internet content to the first device using an address of the first device. |

Case 2:19-cv-00397-JRG   Document 85-1   Filed 09/24/20   Page 44 of 80 PageID #:

- Because "the plain and ordinary meaning of the term 'identifier' is easily understood, no construction of this term is necessary." *Aloft Media, LLC v. Microsoft Corp.*, No. 6:08-CV-50, 2009 U.S. Dist. LEXIS 24124, at *19 (E.D. Tex. Mar. 24, 2009).

- These claim terms are clear on their own should receive plain and ordinary meaning

- Luminati proposed alternatives if the Court feels it important to specify the role of the second device

  - This further confirms that claim 108 is definite

- Luminati's proposed alternative constructions are much simpler and clearer than Defendant's

43

Case 2:16-cv-00693-JRG-RSP   Document 103-1   Filed 01/05/18   Page 45 of 80 PageID #: ____

- Defendant repeats problems from other claim positions

  - Adds "address" requirement regarding the second device that is not in the claim

  - Repeats the erroneous redefinition of "content" to "internet content that is to be fetched"

  - Incorrectly changes "in response to" to "after" without explanation, even though the terms have different meanings

  - Adds "address" requirement regarding the first device that is not in the claim

# J. "first server" and "identified in the Internet by a second Identifier" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "first server" Claim 15 ['866] | Plain and ordinary meaning | A server, separate from the first device, the second device, and the group of multiple devices, from which the internet content is fetched |
| "identified in the Internet by a second identifier" Claim 15 ['866] | Plain and ordinary meaning | Identified by information that includes an address of the first server |

45

# J. "first server" ['866 Patent]

- "First server" repeats problems of other attempts to add restrictions ("internet content is fetched")

- The term "first server" does not itself require that content be fetched from it

- Also, the "first server" in this claim is the source of content (for example, a web server).  It is possible that a client for one request can itself be the source of content for a different request.

  - '866 patent discloses a flexible system where a device can act in different roles at different times (*see, e.g.*, '866 pat., 95:17-36, 125:33-60)

# J. "identified in the Internet by a second Identifier" ['866 Patent]

- "Identified in the Internet by a second identifier" is not limited to "an address" – same issue as discussed above regarding the '044 patent

- Otherwise Defendant's proposal just repeats the language of the claim term, so there is no reason to adopt it

- Could should give the term its plain and ordinary meaning

47

# K. "a group of multiple devices" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "a group of multiple devices"<br>Claim 15 ['866] | Plain and ordinary meaning | A plurality of devices that are able to fetch the internet content from the first server and which does not include the first device and the second server |

- "Group of multiple devices" means just that – Defendant attempt to repeat other claim limitations in this definition, but the term itself does not require the other limitations

- Includes erroneous redefinition of "content" to "internet content" – same problem discussed regarding '044 patent

48

# L.  "partitioning the content into a plurality of content slices" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal | *Tesonet* Claim Construction Order |
|---|---|---|---|
| "partitioning the content into a plurality of content slices" Claim 15, 16-18, 23-24 ['866] | Plain and ordinary meaning (not indefinite) | Indefinite under 35 U.S.C. §112- "partitioning the content"<br><br>Alternatively:<br><br>Dividing, by a group of multiple devices that is fetching internet content, the internet content to be fetched into a plurality (more than just one) of portions, although the portions can have overlapping content. | splitting the content into content slices (the resulting content slices may be overlapping or non-overlapping) |

49

# Claim Term Presumed Definite

- Claim terms are **presumed definite as a matter of law** – to overcome the burden Defendants would need to prove indefiniteness by **clear and convincing evidence**
  - *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 n.10 (2014)

- Undisputed expert testimony from Dr. Rhyne is that the term "partitioning the content into a plurality of content slices" is definite to a POSA (Rhyne Dec., ¶¶ 20-25)

- This Court already found that the term has a meaning as a matter of law when it construed the same term in the *Tesonet* case

50

# Claims Presumed Definite

- Patent examiner concluded that the claim terms are not indefinite by issuing the patent

- Claims should be construed to preserve their validity if possible
  - *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008)

- "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee."
  - *Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004)
  - This principle still applies post-*Nautilus. In re Maxim Integrated Prods., Inc.*, 2014 U.S. Dist. LEXIS 100448, at *49 (W.D. Pa. July 23, 2014)

- "[I]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, the claim is sufficiently clear to avoid invalidity on indefiniteness grounds."
  - *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, 2017 U.S. Dist. LEXIS 183344, at *7 (D.N.J. Nov. 6, 2017) (citing Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) (internal quotations omitted)

51

# Much of Defendant's Indefiniteness Argument Irrelevant in Light of Preamble Limitation

- Defendant argues that there is confusion if the preamble is not limiting, but then argues the preamble is limiting

- No dispute

- Thus, any argument based on an alleged inconsistency is moot

- There was no inconsistency – Claim 15 set forth the step of partitioning content into content slices and taking steps (a) – (e) regarding those content slices

- Defendant's argument that Dr. Rhyne doesn't specify which device take which steps is incorrect – he opines that the same device performs the entire method

- Defendant presented no contrary testimony

52

# "partitioning the content" is not Indefinite

- The term **"partitioning the content"** has meaning to a POSA

  - Rhyne Dec., ¶¶ 20-25

- **"Partitioning the content"** has its plain and ordinary meaning to take content and partition it.  An example is shown in Fig. 23a where content is partitioned as "chunks"

  - Rhyne Dec., ¶ 22; '866 Pat., 103:58-104:62, 104:47-66, 111:58-67, and 117:11-22



FIG. 23a

53

# "Partitioning the content"

- Defendants' proposal is wrong: patent does not require that the "group of devices" divide content.  It allows the user to partition content, for example, by requesting different parts of the content

  - Defendant confuses "fetching" with "partitioning" – in Figs. 23 & 23a shown in Defendant's brief, the content was already partitioned before making requests to the agents, which is how the user's device knows which content chunk to request via which agent

- The specification makes clear that the partition may use parts already identified in websites, pages, files, etc.

> level. The partition may be into equal length parts, or may use different length slicing. The content may be composed of inherent or identifiable parts or segments, and the partition may make use of these parts. The content may be a website content composed of multiple webpages, and each slice may include one (or few) webpages. Further, the partition may be sequential or non-sequential in the content. The partitioning may be non-overlapping or overlapping.

'866, col. 53:41-48

54

# "Partitioning the content"

- Defendant fails to explain what is wrong with the Court's construction

- Luminati believes the term requires no construction and a jury can understand it – requests **plain and ordinary meaning**

- The patent clarifies that the slices may include all of the content

  - "All the parts of the content may be included in all of the content slices. All of the content slices may be having a same size." ('866 pat., col. 57:67-58:2)

  - "In one example, <u>the same content </u>(from the same data server #**1 22** *a*) <u>**is requested**</u> by the client device #**1 31** *a*, <u>**from all the selected tunnel devices**</u>. In such a case, the same content is requested and fetched in the 'Content Fetch' flowcharts. In the example of three tunnel devices shown in a flowchart **100**, the same content may be defined to be requested (and later fetched) in the 'Content Fetch Tunnel #**1**' step **65** *a*, the 'Content Fetch Tunnel #**2**' step **65** *b*, and the 'Content Fetch Tunnel #**3**' step **65** *c*. Such configuration may be advantageous, for example, in the case where one or multiple data paths are unstable or unreliable, or provide intermittent connection. In the case wherein multiple redundant tunnels and data paths are used, there is a higher probability to fetch the required content, even if one or more of the data paths are problematic or non-functioning." ('866 pat., 89:61-90:8)

55

- The Court recognized this in its Claim Construction Order in the *Tesonet* case (Dkt. 121 (Ex. C), at 41):

> All the components of the first content may be included in all of the content parts. The method may further comprise the step of the first device reconstructing the first content from the received multiple content parts. Part of, or all of, the content parts may be having the same size, that may be 8 KB, 16 KB, 32 KB, or 64 KB. Two or more content parts may be identical and may contain the same data.
>
> '866 Patent at 53:36–48 & 63:56–63. Further, the specification refers to "content *slices*" even when "[*a*]*ll the parts* of the content may be included in *all* of the content slices," and "[t]he terms 'chunk' and 'slice' are interchangeably used herein to include, but not limited to, a part of, *or the entire of*, a content." *Id.* at 57:67–58:1 & 168:48–50 (emphasis added); *see id.* at 57:60–58:24; *see also id.* at 69:25–26 ("Two of, or all of, the slices may be the same.").
>
> At the July 31, 2019 hearing, Defendant was amenable to replacing "a part of the content" with "some or all of the content."

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "each content slice containing at least part of the content" Claim 15, 19-22, 25-28 ['866] | Plain and ordinary meaning | Each portion contains at least part of the internet content |
| "each content slice ... identified using a content slice identifier" Claim 15 ['866] | Plain and ordinary meaning | Each portion is identified uniquely relative to the other portions |

- "Internet content" is incorrect (same reasons as for term C)

- No reason to replace "content slice" with "portion"

- No reason to change "containing" to "contains"

- Defendant's "identified uniquely" addition is not required by the claim

- Content slice may be identical to another content slice

> 32 KB, or 64 KB. Two or more content parts may be identical and may contain the same data. A same portion of the first content may be included in two or more content parts. The content parts may be a result of a sequential, or

'866 pat., 63:62-65

> associated with the received slice identifiers. Two of, or all of, the slices may have the same the same size. Two of, or all of, the slices may be the same. The partitioning may be

'866 pat., 69:24-26

- See also '866 pat., 89-:61-90:8 (may request the identical content for redundancy to overcome connectivity issues); Dkt. 121 (Ex. C), at 41 (noting that the patent expressly states "the slices may be the same")

58

# N. "a plurality of content slices … and for each of the content slices" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "a plurality of content slices … and for each of the content slices"<br>Claim 15 ['866] | Plain and ordinary meaning | Performing the following steps for each of the plurality of content slices (portions), rather than just a single time for the entirety of the fetched internet content |

- Defendant's proposal adds confusion

- Adds requirement that only portions of content can be requested, which is wrong

  - As discussed under the M terms ("each content slice containing at least part of the content" and "each content slice … identified using a content slice identifier"), the content slices can include all the content and can be identical to each other

59

# O. "selecting a device from the group" and "sending over the Internet a first request to the selected device using the group device identifier of the selected device" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "selecting a device from the group" Claim 15 ['866] | Plain and ordinary meaning | Selecting, by some node other than the first server and one of the group of multiple devices, a device within the group of multiple devices |
| "sending over the Internet a first request to the selected device using the group device identifier of the selected device" Claim 15 ['866] | Plain and ordinary meaning | Sending, by some node other than the first server and one of the group of multiple devices, to the selected device, a request to fetch the internet content device within the group of multiple devices and that uses the selected device's unique identification |

60

# O. "selecting a device from the group" and "sending over the Internet a first request to the selected device using the group device identifier of the selected device" ['866 Patent]

- Defendant's proposal: "selecting, by some node other than the first server and one of the group of multiple devices" – not part of the limitation

- Use of word "node" not in claim and confusing

- '866 is flexible and client for one request can be a group device for a different request

    - '866 patent discloses a flexible system where a device can act in different roles (*see, e.g.,* '866 pat., 95:17-36, 125:33-60)

    - "[A]ll the devices in a system may be client/tunnel devices, capable of assuming both roles of client and tunnel devices" ('866 pat., 95:34-36)

- Incorrectly redefines "content" as "internet content"

- Incorrectly adds "unique identification"

- Adds other language that is not in the claim

- The terms should receive their **plain and ordinary meaning**

**P. "the first request including the content slice identifier and the second identifier" ['866 Patent]**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "the first request including the content slice identifier and the second identifier" Claim 15 ['866] | Plain and ordinary meaning | The request for fetching the internet content, that is sent to the selected device, includes (1) the content slice identifier and (2) information that includes the address of the first server |

- Same problems as discussed before, including:

  - Unnecessarily repeating requirements from other parts of the claim

  - Redefining "content" as "internet content"

  - Requiring an address instead of an identifier

# Q. "the partitioning is based on webpages level" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "the partitioning is based webpages level" Claim 18 ['866] | Plain and ordinary meaning | Each of the plurality (more than just one) of portions of the fetched internet content corresponds to one or more webpages |

- There can be just one portion if the client requests all the content from multiple group devices (see argument under Term L "portioning the content")

- Incorrectly adds requirement of "fetched internet content" that is not part of this term

- The language of the claim term itself is clearer than Defendant's proposal

63

# R. "all of the parts of the content are included in all of the content slices" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "all of the parts of the content are included in all of the content slices" Claim 19 ['866] | Plain and ordinary meaning (not indefinite) | Indefinite under 35 U.S.C. §112 |

- Claim terms are **presumed definite as a matter of law** – to overcome the burden Defendants would need to prove indefiniteness by **clear and convincing evidence**
  - *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 n.10 (2014)

64

# R. "all of the parts of the content are included in all of the content slices" ['866 Patent]

- Undisputed expert testimony from Dr. Rhyne is that the term "partitioning the content into a plurality of content slices" is definite to a POSA (Rhyne Dec., ¶ 26)

- Defendant asserts that Dr. Rhyne's definition is ambiguous, but it is not

- Defendant asks if content includes an "table of contents or index" of the content – content is the content itself

  - However, in case Defendant plans to later argue that search results are just an "index," that is wrong – the text and link data in search results is content that can be requested and obtained

  - A web page that a search result links to by search results is also content, but different content

# Claims Presumed Definite

- Patent examiner concluded that the claim terms are not indefinite by issuing the patent

- Claims should be construed to preserve their validity if possible
  - *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008)

- "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee."
  - *Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004)
  - This principle still applies post-*Nautilus. In re Maxim Integrated Prods., Inc.*, 2014 U.S. Dist. LEXIS 100448, at *49 (W.D. Pa. July 23, 2014)

- "[I]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, the claim is sufficiently clear to avoid invalidity on indefiniteness grounds."
  - *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, 2017 U.S. Dist. LEXIS 183344, at *7 (D.N.J. Nov. 6, 2017) (citing Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) (internal quotations omitted)

66

# S. "part of the content is included in two or more content slices" ['866 Patent]

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "part of the content is included in two or more content slices" Claim 15 ['866] | two or more content slices including at least an overlapping part of the content | At least two of the plurality (more than just one) of portions of the fetched internet content have overlapping content |

- Defendant replaces "content slices" with "portions" when the content slices can include the totality of content (see argument regarding Term L ("partitioning the content") above)

- Incorrectly redefines "content" as "fetched internet content" – a content slice is a content slice even before it is fetched, and there is no reason to redefine "content" as "internet content"

67

# Summary

- Defendants cannot meet their burden of proving by clear and convincing evidence that claim terms are indefinite

- Most of the claim terms Defendant asks to have construed have plain and ordinary meaning and require no further construction

  - Defendants' proposals attempt to rewrite the claims and add terms that are incorrect or not required (for example, repeatedly replacing "content" with "internet content")

  - Defendants improperly read the specification or embodiments into the claims

68

THE END

# ADDITIONAL MATERIALS FROM THE SUBMITTED TUTORIAL IF THEY MAY ASSIST THE COURT

Case 2:18-cv-00299  Document 1-1  Filed 07/19/18  Page 139 of 227 PageID #: 155





FIG. 2 (Prior Art)

The Internet is a global system of interconnected computer networks that use the standardized Internet Protocol Suite (TCP/IP), including Transmission Control Protocol (TCP) and the Internet Protocol (IP), to serve billions of users worldwide.

1:24-28

71

# IP Addresses and Communications Over The internet

- Every Device/Server on the Internet has an IP Address, which is a string of 4 numbers separated by periods.

- While websites are frequently remembered by their uniform resource identifier ("URL"), each URL is associated with a server with its own IP address.

- This IP address also has certain information that can be used to geolocate the device/server with that IP address.

- For example, the URL of www.target.com has a server with an IP address of 161.225.130.163 corresponding to a location in Minneapolis, MN.

## IP Lookup Result

 Share The Result

| | |
|---|---|
| **Permalink** | https://www.ip2location.com/161.225.130.163 |
| ☑ **IP Address** | 161.225.130.163 |
| ☑ **Country** | 🇺🇸 United States [US] ❶ |
| ☐ **Region** | Minnesota |
| ☐ **City** | Minneapolis |
| ☐ **Coordinates of City** | 44.972600, -93.285900 (44°58'21"N  93°17'9"W) |
| ☐ **ISP** | Target Corporation |
| ☐ **Local Time** | 12 Jun, 2019 11:45 AM (UTC -05:00) |
| ☐ **Domain** | target.com |
| ☐ **Net Speed** | (COMP) Company/T1 |
| ☐ **IDD & Area Code** | (1) 612/651 |
| ☐ **ZIP Code** | 55403 |

https://www.ip2location.com/demo/72.21.215.90

# Requests and Responses Transmitted Over Internet Using IP Packets

- Communications over the Internet use IP packets.

- IP packets include an IP Header and Payload

- The IP header includes the IP addresses of the Sending and Receiving device / server.

- The Payload contains the data being transmitted, such as a request for content or content



Fig. 2A

73

# Requests Over the Internet

- A Requestor requests content by sending a request containing both its IP address as well as the IP address of the receiving Target server to the Target Server.

- Normally, the Target server receives the request and sends the requested content back to the IP address of the Requestor.

The Internet Protocol (IP) is the principal communications protocol used for relaying datagrams (packets) across a network using the Internet Protocol Suite. Responsible for routing packets across network boundaries, it is the primary protocol that establishes the Internet. IP is the primary protocol in the Internet Layer of the Internet Protocol Suite and has the task of delivering datagrams from the source host to the destination host based on their addresses. For this purpose, IP defines addressing methods and structures for datagram encapsulation. Internet Protocol Version 4 (IPv4) is the domi-

3:18-27



**FIG. 11c**

U.S. Patent    Jan. 19, 2016    Sheet 23 of 134    US 9,241,044 B2

# Problem: The Data Server Can Block Requests Based Upon the Requestor.

- If the data server does not want to send the requested content, it can simply block the content from being sent to the requestor.

- This could happen when, for example, the requestor is identified as a competitor.

- In one hypothetical example to the right, a client requestor at www.sears.com is requesting content from a target server at www.target.com.

- Because the target server can identify the request as coming from its competitor, the target server blocks the request.



FIG. 11c

75

# Solution: The Requestor Can Use a Proxy to Conceal Its Identity.

- To solve this problem, the requestor can send the request to a proxy device (tunnel), which can then send the request to the target server.

- The target server only identifies the request as coming from the proxy device, such as a cell phone owned by a real person.

- The target server does not know that the request originated with a competitor providing the requestor with anonymity.

- Consequently, the content which otherwise would have been blocked is sent to the requestor via the proxy device.



FIG. 11a

76

Case 2:18-cv-00483-JRG   Document 127-1   Filed 12/01/19   Page 77 of 79 PageID #: 4254

# Solution: The Requestor Can Use a Proxy to Conceal Its Identity.

- In the example to the right, a client at www.sears.com is requesting content from a server at www.target.com, using a proxy device owned by a real person (Ms. X) at IP address XX.XX.XX.XX located in Washington, DC.

- Because, the Target server identifies Ms. X as a potential customer, the requested content is sent Ms. X's device, which is then sent from Ms.X's device to client Sears.



**FIG. 11a**

77

# How can a Client Identify an available proxy (tunnel) device?

A system may comprise multiple data servers and multiple client and tunnel devices, each data server may be storing a respective content that may be fetched by the client device via the Internet. The tunnel devices may be used as intermediate devices (or nodes). ==Upon initializing of the client and tunnel devices (such as upon powering up or upon launching the applicable software application), they sign-in with an acceleration server, which stores an identification (such as IP address) of each of the client and tunnel devices.== A client device, which may be requesting a content from a data server, first communicates with the acceleration server to receive a list of the available tunnel devices. The client device may then select one (or more) tunnel device, and then executes a pre-connection process with the selected tunnel device. Upon determining the need for a content to be fetched from the data server, the client device sends a request to the tunnel device, which in turn fetches the required content from the data server, and sends the fetched content to the client device. Each of the devices (client or tunnel) and each of the servers (acceleration or data) may be identified in the Internet using an IP address that may be in an IPv4 or IPv6 form. Alternatively or in addition to using an intermediary device such as the tunnel device (or multiple tunnel devices), the client device may directly access and fetch content from the data server, without using any intermediate device such as a tunnel device. A device may be both a client device and a tunnel device, and the roles may be assumed one at a time, or may be employed in parallel using multitasking or multiprocessing.

- A client device can identify an available and suitable proxy (tunnel) device by first logging onto an acceleration server.

- The acceleration server "stores an identification (such as IP address) of each of the client and tunnel devices."



'044 Patent at 51:19-46

'866 Patent at 52:33-61

**FIG. 5**

78

# Problem #2 – A Data server may block a request based on other criteria

- In addition to blocking a request based on the identity of the requestor, a target data server may also block requests based upon other criteria.

- Such criteria may include the geographic location or geographic proximity of the requestor.

- A data server designed to receive requests from within a geographic area, may block requests that are deemed to fall outside that area.

- For example, www.craigslist.com, has a plurality of pages designed to service to distinct cities.

- The following slides show a second example demonstrating the use of intermediate proxy residential devices to overcome geographic restrictions using a map of the United States as a real-world example of Figures 11a and 11c above.