IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § § | |
| v. | § § | Case No. 2:18-CV-00483-JRG |
| BI SCIENCE INC. | § § § | |

**PLAINTIFF LUMINATI'S OPPOSED MOTION TO**
**COMPEL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

*Three months* after Luminati served its First Set of Interrogatories Nos. 1-35 ("Interrogatories"), BI Science (2009) Ltd.'s (a/k/a BI Science Inc. "Defendant" or "BI Science") answers remain mostly non-responsive, providing inaccurate, misleading, incomplete, or no substantive response at all to most of the interrogatories. Defendant's continued withholding of this discovery prejudices Plaintiff by for example depriving Luminati of the means to seek relevant discovery from third parties with the close of fact discovery fast approaching.

In response to Plaintiff's deficiency letter served on December 9, 2019 ("Deficiency Letter," Exhibit A), Defendant were unable to meet and confer until December 30, 2019, during which counsel promised supplemental interrogatory responses by January 6, 2020 but the promised supplemental responses were minimal and continue to conceal basic information including the identities of their clients.[1] As the parties are clearly at an impasse, Luminati requests an order from the Court requiring that Defendant immediately provide substantive responses to these interrogatories that are verified by Defendant within a week of the Court's order, and all additional relief that the Court may deem appropriate.

## I. BACKGROUND

This action involves claims of patent infringement, trade secret misappropriation, false advertising, and tortious interference with current and prospective business relationships, and counterclaims of non-infringement, invalidity (including obviousness), and false advertising.

Luminati served its Interrogatories on October 7, 2019. Following BI Science's unverified November 6, 2019 objections and responses, Luminati served its Deficiency Letter on December 9, 2019 pursuant to paragraph 9(a) of the Discovery Order. The Deficiency Letter detailed deficiencies including the identification of inaccurate, misleading and/or incomplete

---

[1] Since the filing of Plaintiff's motion to compel documents (Dkt. 120) on November 14, 2019, BI Science has produced few additional documents, most if not all of which are invoices that are inexplicably redacted to conceal the identities of Defendant's customers and/or suppliers.

interrogatory responses (ROG Nos. 2, 3, 4, 5, 6, and 7) and responses for which no substantive response was provided at all (ROG Nos. 8, 13-21, 23-25, and 27-30).

Despite Luminati immediately requesting a meet and confer to address the issues that same week, opposing counsel provided a vague assurance on December 13, 2019 that they were "working with the client to supplement the answers as soon as practical," but were unable to meet and confer until December 30, 2019, three weeks after service of the deficiency letter, during which Defendant promised to supplement its interrogatory responses by January 6, 2020. On that date, almost three months after the initial interrogatory requests, BI Science served minimal unverified supplemental responses that modified the original responses to interrogatories 8, 12, 15, 17-19, 21, 23-25, and 27-30 without addressing the bulk of the identified deficiencies.

## II.   INTERORGATORY RESPONSE DEFICIENCIES

### A.   *Financials & Identities of Customers*

BI Science continues to conceal the identities of its customers and other basic financial information despite being clearly relevant to Plaintiff's claims of patent infringement, tortious interference, false advertising, and trade secret misappropriation as well as damages.

- ROG No. 2: For each service or product identified in your response to Interrogatory No. 1 above, <u>identify all customers of each Residential Proxy Service</u> by month, or closest regular invoicing time period, for the Relevant Time Period and agreements between those customers and Defendant.

- ROG No. 3: For each service or product identified in your response to Interrogatory No. 1 above, provide all relevant sales, revenue, profit and cost information related to the service or product, including volume of traffic in gigabytes, revenue, cost and profit information related (directly or indirectly) to the Accused Instrumentalities within the United States <u>based upon Residential Service Proxy customers located in the United States</u> and <u>Residential Service Proxy customers who initiate requests through the service from the United States by month</u>, or closest regular invoicing time period, for the Relevant Time Period.

- ROG No. 4: For each service or product identified in your response to Interrogatory

2

- No. 1 above, provide all relevant sales, revenue, profit and cost information related to the service or product, including volume of traffic in gigabytes, revenue, cost and profit information related (directly or indirectly) to the Accused Instrumentalities within the United States <u>based upon the use of Residential Service proxy devices located in the United States</u> by month, or closest regular invoicing time period, for the Relevant Time Period.

- ROG No. 24: For each Former Luminati Employee hired by Defendant during the Relevant Time Period, including Alon Ghelber, Samuel Levy, and Vadim Feldman, <u>identify those Defendant customers for whom the Former Luminati Employee has communicated with since starting employment with Defendant</u>.

- ROG No. 28: For each of the Accused Instrumentalities, provide for each month, quarter or Defendant's equivalent billing cycle during the Relevant Time Period the the volume of traffic through the Accused Instrumentalities in the United States including the volume of requests from Defendant's clients originating in the United States and the volume of traffic directed through Defendant's servers located in the United States, the revenue generated by this activity, the costs associated with this activity, and the profit associated with this activity.

- ROG No. 29: For each of the Accused Instrumentalities, provide for each month, quarter or Defendant's equivalent billing cycle during the Relevant Time Period the volume of traffic through the Accused Instrumentalities in the United States including the volume of requests directed through residential proxy devices located in the United States, the revenue generated by this activity, the costs associated with this activity, and the profit associated with this activity.

Despite the clear relevance of the identities of Defendant's customers, BI Science identified a single spreadsheet in response to ROG No. 2, in which each customer is only identified by an internal "Customer ID" number, and Defendant identified no agreements between BI Science and its customers. In response to ROG Nos. 3-4, BI Science identified three spreadsheets that conceal the identities of its customers through the use of an internal Customer ID and further fail to identify the sales attributable to customers in the United States (ROG No. 3) and proxy devices in the United States (ROG No. 4), which is clearly relevant to damages. BI Science relies upon the same three spreadsheets in response to ROG No. 28, which fail to distinguish the volume of traffic in the United States, and provides no substantive response at all to ROG No. 29, this information again being relevant to damages. Despite the entry of a

3

protective order, BI Science improperly added an objection in its supplement to ROG No. 24 that "Defendant contends that this interrogatory is overly broad so as to include all of Defendant's customer names which Defendant has asserted previously is not relevant, and <u>the Parties are engaged in businesses where anonymity is paramount</u>." (emphasis added). Withholding the above information deprives Luminati of both the discovery as well as the ability to seek the relevant discovery from the concealed third parties.

Defendant is also baselessly withholding discovery regarding its data center proxy service. This discovery is at the very least relevant to patent damages including lost profits, and secondary considerations of non-obviousness.

- ROG No. 13: Identify all documents that describe the advantages of Residential Proxy Services as compared to data center services and other alternatives.

- ROG No. 14: For each service or product identified in your response to Interrogatory No. 1 above, provide all relevant sales, revenue, profit and cost information related to the service or product, including volume of traffic in gigabytes, revenue, cost and profit information related (directly or indirectly) to your data center IP business within the United States based upon data center IP customers located in the United States and data center IP customers who initiate requests through the service from the United States by month, or closest regular invoicing time period, for the Relevant Time Period.

- ROG No. 15: For each service or product identified in your response to Interrogatory No. 1 above, provide all relevant sales, revenue, profit and cost information related to the service or product, including volume of traffic in gigabytes, revenue, cost and profit information related (directly or indirectly) to your data center IP business within the United States based upon the use of data center IPs located in the United States by month, or closest regular invoicing time period, for the Relevant Time Period.

With regard to ROG NO. 13, BI Science asserts that it has no responsive documents to identify, but this cannot be true because Luminati identified the information sought by this interrogatory on Defendant's own website. See Exhibit A at 2. In response to ROG Nos. 14-15, BI Science rested on its objection that the request is overly broad, despite this request for financials regarding any alleged non-infringing alternatives mirroring the information requested

4

for the Accused Instrumentalities in ROG Nos. 3-4. Bi Science's objection is baseless.

     B.    *Technical Documents*

BI Science similarly provided incomplete responses to interrogatory nos. 5-7:

- ROG No. 5: For each service or product identified in your response to Interrogatory No. 1 above, identify all servers used to implement Defendant's Residential Proxy Service including the Accused Instrumentalities, whether or not owned by Defendant or a third party, such as for example the authentication of client and proxy devices, including the gateway used by GeoSurf, <u>by location, including city, state and country</u> by month, or closest regular invoicing time period, for the Relevant Time Period.

- ROG No. 6: For each server identified in response to Interrogatory No. 5, identify the party who owns the server, all agreements between Defendant and the server owner, and all financial transactions between Defendant and the server owner.

- ROG No. 7: Identify all domain names and/or IP addresses for public and/or external servers that have been and are used for the Residential Proxy Service including by domain name, IP address and owner, as well as any agreements between the owner(s) of these domain names and Defendant during the Relevant Time Period.

In response to ROG No. 5, BI Science identified a spreadsheet that provides URLs for Gateway servers without providing any location information or indicating whether the Accused Instrumentalities include other servers. In response to ROG No. 6, BI Science identified a number of invoices naming third parties without identifying the party who owns these servers or identifying any agreements between BI Science and the server owners. Similarly, in response to ROG No. 7, BI Science identified spreadsheets that don't identify the owners or any of the agreements between the owners and BI Science. Withholding this information deprives Luminati of the ability to seek relevant discovery from the concealed third parties concerning both the location of and costs associated with the servers of the Accused Instrumentalities.

     C.    *Communications Referencing Plaintiff, the Asserted Patents or this Litigation and Communications with Competitors, Resellers, and Distributors of the Accused Instrumentalities*

BI Science similarly provided incomplete or no substantive responses to the following:

5

- ROG No. 16: Identify all communications between Defendant and third parties referencing Plaintiff, the Asserted Patents, or this litigation including but not limited to the identity of the third party and the date and subject matter of the communication.

- ROG No. 17: Identify all communications between Defendant and third parties involved in Residential Proxy Services including competitors offering residential proxy services suppliers providing residential IP proxies for use in Residential Proxy Services including but not limited to UAB Tesonet Ltd., UAB Teso Ltd., UAB Metacluster Ltd., IP Ninja Ltd., including but not limited to the identity of the third party and the date and subject matter of the communication.

- ROG No. 18: Identify all Defendant advertisements referencing Plaintiff, the Asserted Patents, or this litigation during the Relevant Time Period.

- ROG No. 20: Identify all communications between Defendant and third parties involved in the sale of Defendant's Residential Proxy Service, including resellers and distributors, including but not limited to the identity of the third-party and the date and subject matter of the communication during the Relevant Time Period.

- ROG No. 30: For each of the Accused Instrumentalities, identify all marketing material regarding that service or product, including advertisements, publicly available websites and blog posts regarding the Accused Instrumentalities, and communications directed toward current or potential customers regarding the Accused Instrumentalities, including marketing material comparing these products with Defendants' other services including its data center proxy service during the Relevant Time Period.

BI Science provided no substantive response to ROG No. 16 and merely identified third parties from whom Defendant requested a quote to supply residential proxies without indicating which third parties became Defendants' suppliers. Withholding this information deprives Luminati of the ability to seek relevant discovery from the concealed third parties. With regard to ROG Nos. 18 and 30 (which incorporated the response to ROG No. 18), BI Science identified only one blog entry referencing Luminati, despite Lumianti attaching a different blog entry from BI Science's website referencing Luminati as an exhibit to its amended complaint (Dkt. 28-3). With regard to ROG No. 20, BI Science refused to identify any such communications despite the obvious relevance in identifying communications between Defendant and its resellers and distributors of the Accused Instrumentalities.

### D.     *Trade Secret Misappropriation and Tortious Interference*

On January 7, 2020, BI Science served an <u>unverified</u> supplement to its interrogatory responses asserting that Defendant has no documents responsive to the following interrogatories:

- ROG No. 23: Identify all Luminati documents and documents containing information derived from Luminati during the Relevant Time Period in Defendant's possession, custody or control that originated from any Luminati current or former employee including Alon Ghelber, Samuel Levy, and Vadim Feldman ("Former Luminati Employees").

- ROG No. 25: Identify all Luminati documents and documents containing information derived from Luminati during the Relevant Time Period in Defendant's possession, custody or control that originated from any Luminati investor or employee of investor including iAngels Crowd Ltd. and Shelly Hod Moyal.

Also, BI Science's supplemental response to ROG No. 27 is misleading and incomplete.

- ROG No. 27: Identify all details regarding Kfir Moyal's investigation or due diligence of Hola Networks Ltd. ("Hola") in 2015, including identification of the Hola materials accessed by Mr. Moyal and the employees at Hola that Mr. Moyal communicated with.

BI Science's response that "Kfir Moyal was introduced to Ofer Vilenski to explore potential strategic partnerships after iAngels decided to invest in Hola" and "[i]n May of 2015, Mr. Moyal met with Ofer Vilenski…" is inconsistent with the fact that iAngels' agreement with Hola was not executed until July 15, 2015. Also, the specific response that "No technical aspects were discussed or presented at the meeting" and "no documents were sent to Mr. Moyal before or after the meeting" avoids stating whether Mr. Moyal discussed, reviewed or took other documents, such as financials, during the meeting or accessed Hola materials through iAngels.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff Luminati respectfully requests the above relief including Plaintiff's fees and costs associated with the filing of this motion, and any other sanctions as appropriate.

7

Dated: January 8, 2020

Respectfully submitted,

By: /s/ Korula T. Cherian
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702

Attorneys for Plaintiff
Luminati Networks Ltd.

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that the counsels for the parties have complied with Local Rule CV-7(h).  Counsel participating include: Sunny Cherian, Ron Wielkopolski and Calvin Capshaw on behalf of Plaintiff; Eric Findlay and Debby Gunter on behalf of Defendant.

The meet and confer process regarding the motion to compel began with a written letter from Plaintiff on December 9, 2019, and has continued since that time.  The meet and confers have consisted of a telephonic conference on December 30, 2019 and subsequent emails between the parties.  Having exchanged positions, Defendant agreed to produce supplemental interrogatory responses during the meet and confer only to produce supplemental interrogatory responses on January 6, 2019 that largely failed to address the issues raised in the December 9, 2019 deficiency letter.  Given the continued disputes, the parties have been unable to come to an agreement and are at an impasse. Defendant opposes this motion.

*/s/ Korula T. Cherian*