# RUYAK CHERIAN LLP

1700 K St. NW, Suite 810
Washington, DC 20006
Office: 202.838.1568
Mobile: 907.952.4866

**Ronald R. Wielkopolski**

December 9, 2019

VIA EMAIL

| | |
|---|---|
| **Eric H. Findlay** | **Ronald Abramson** |
| **Brian Craft** | **Michael Lewis** |
| **Debby Gunter** | Liston Abramson LLP |
| Findlay Craft, P.C. | 405 Lexington Avenue, 46th Floor |
| 102 N. College Ave, Ste 900 | New York, New York 10174 |
| Tyler, Texas 75702 | (212)257-1630 |
| (903)534-1100 office | ron.abramson@listonabramson.com |
| (903)534-1137 fax | michael.lewis@listonabramson.com |
| efindlay@findlaycraft.com | |
| bcraft@findlaycraft.com | |
| dgunter@findlaycraft.com | |

**Counsel for Defendant BI Science (2009) Ltd., aka BI Science Inc.,**

RE: *Luminati Networks Ltd. v. BI Science Inc.*, Case No. 2:18-CV-0483-JRG
<u>Deficiencies in Responses to Plaintiff's First Set of Interrogatories</u>

Dear Counsel:

Pursuant to paragraph 9(a) of the Discovery Order, this letter serves to notify BI Science of a number of deficiencies in its November 6, 2019 responses to Luminati's First Set of Interrogatories (Nos. 1-35). Under the local rules, the parties are required to promptly meet and confer, so please let us know when you can discuss this week. If this is not resolved and the deficiencies cured promptly, we will need to file a motion to compel.

As with BI Science's document production, already the subject of a current motion to compel, BI Science's interrogatory responses are insufficient as they are inaccurate, nonresponsive and/or incomplete. BI Science has no excuse to withhold the most basic discovery, including for example, identification of its customers, partners and suppliers related to the Accused Instrumentalities, financials related to the same and non-infringing data center proxy alternatives, communications with third parties regarding Plaintff and the Asserted Patents and information that BI Science acquired from Plaintiff.

*Interrogatories for Which Defendant Provided No Substantive Response*

Defendant provided no substantive response for the following interrogatories: 8, 13-21, 23-25, and 27-30. With regard to ROG No. 8, Defendant has no basis to assert that this interrogatory is "vague, ambiguous, and not relevant" as identification of the software development kits

("SDKs") and applications, including third party SDKs and applications, used to add proxy devices to the Accused Instrumentalities during the Relevant Time Period is clearly relevant to Plaintiff's infringement claims as are the agreements and invoices between Defendant and these third parties during the Relevant Time Period.

With regard to ROG No. 13, Defendant wrongly asserts that it has no responsive documents to identify describing the advantages of Residential Proxy Services to data center services when Defendant's own website includes such information. See e.g. https://www.geosurf.com/resources/faq/#ac_15875_collapse11

> **What is the different between static IPs and residentials IPs?**
>
> Static IPs are IP addresses that do not change, they are data-center IPs which can easily get blocked if not used correctly . Residential IPs are based on real users, P2P network, making them undetectable and almost impossible to block.

With regard to ROG Nos. 14-15, Defendant provides no information regarding its data center proxy sales, revenue, profit, costs and traffic volume despite the requested financial being the same as requested for the Accused Instrumentalities (ROG Nos. 3-4) which is clearly relevant to damages and non-obviousness as data center proxy services are a non-infringing alternative.[1]

With regard to ROG Nos. 16, 17, 18, 19, and 20, despite Plaintiff's patent infringement, false advertising and tortious interference claims, Defendant refuses to identify
- communications between Defendant and third parties referencing "Plaintiff, the Asserted Patents, or this litigation" (ROG No. 16)
- "communications between Defendant and third parties involved in Residential proxy Services" including competitors and "suppliers providing residential IP proxies for use in Residential Proxy Services" (ROG No. 17)
- "Defendant advertisements referencing Plaintiff, the Asserted Patents, or this litigation during the Relevant Time Period" (ROG No. 18)
- "communications between Defendant and third-party application stores … referencing Residential Proxy Service or software/firmware/application products utilized by Defendant's Residential Proxy Service" (ROG No. 19), and
- "communications between Defendant and third parties involved in the sale of Defendant's Residential Proxy Service" (ROG No. 20).

With regard to ROG Nos. 21, 23, 24, and 25, despite being clearly relevant to at least Plaintiff's trade secret and tortious interference claims, Defendant refuses to identify:
- "current and former Luminati employees that Defendant has contacted and/or communicated with during the Relevant Time Period" (ROG No. 21),

---

[1] With regard to BISCI_001358-1359, in response to interrogatories regarding residential proxies and data center proxies, Defendant directs Luminati to the same documents that appear to show traffic without any indication of whether the traffic is for data center proxies or residential proxies.

- "Luminati documents and documents containing information derived from Luminati during the Relevant Time Period in Defendant's possession, custody or control that originated from any Luminati current or former employee including Alon Ghelber, Samuel Levy, and Vadim Feldman ("Former Luminati Employees")" (ROG No. 23),
- "those Defendant customers for whom the Former Luminati Employees [] communicated with since starting employment with Defendant" (ROG No. 24), and
- "all Luminati documents and documents containing information derived from Luminati during the Relevant Time Period in Defendant's possession, custody or control that originated from any Luminati investor or employee of investor including iAngels Crowd Ltd. and Shelly Hod Moyal" (ROG No. 25).

With regard to ROG No. 27, Defendant refuses to identify "all details regarding Kfir Moyal's investigation or due diligence of Hola Networks Ltd. ("Hola") in 2015, including identification of the Hola materials accessed by Mr. Moyal and the employees at Hola that Mr. Moyal communicated with," despite Plaintiff's trade secret claim.

With regard to ROG No. 28, Defendant refuses to provide the volume of traffic for the Relevant Time Period through the Accused Instrumentalities in the U.S. including volume of requests from Defendant's clients originating in the United States and volume of traffic directed through Defendant's U.S. based servers, and the revenues, costs and profit associated with this activity. Defendant also refuses to provide the same information regarding traffic through U.S. based residential proxies. See ROG No. 29.

With regard to ROG Nos. 30, BI Science refused to identify "marketing material regarding [the Accused Instrumentalities], including advertisements, publicly available websites and blog posts regarding the Accused Instrumentalities, and communications directed toward current or potential customers regarding the Accused Instrumentalities, including marketing material comparing these products with Defendants' other services including its data center proxy service during the Relevant Time Period" despite being relevant to Plaintiff's infringement, false advertising and tortious interference claims, and Defendant's own invalidity claim.

*Interrogatory Responses that are Inaccurate, Misleading and/or Incomplete*

Defendant provided inaccurate, misleading and/or incomplete responses for the following interrogatories: 2, 3, 4, 5, 6, and 7. Specifically, for example with regard to ROG No. 2, Defendant objected to identifying the customers of the Accused Instrumentalities and the agreements between Defendant and these customers during the Relevant time Period and instead, identified no such agreements and merely identified its customers by an undisclosed internal number concealing its customers, despite this discovery being clearly relevant to Luminati's claims including its claim of tortious interference with its customers and prospective customers. With regard to ROG Nos. 3-4, Defendant similarly concealed its customers in response to interrogatories 3 and 4, and further refused to identify the sales attributable to customers in the United States (ROG No. 3) and proxy devices in the United States (ROG No. 4).

December 9, 2019
Page 4

    With regard to ROG No. 5, Defendant similarly objected to identifying the servers used to implement residential proxy services as "overly broad, vague and ambiguous" and provided no information regarding location of the servers by country, city and state, including the Gateway server and servers authenticating the proxy and customer devices despite their clear relevance to patent infringement. See ROG No. 5. Defendant improperly withholds this discovery despite appearing to assert that it "does not provide[] or contribute[] to the arrangement of devices and servers" identified in the Accused Instrumentalities. See ROG No. 9. Defendant also improperly objected to identifying all financial transactions with the server owners despite being relevant to its costs related to the Accused Instrumentalities. See ROG No. 6. Defendant also identifies no agreements between the owners of the IP addresses for the servers used for the residential proxy service in response to ROG No. 7 despite being relevant to at least Plaintiff's infringement claim and damages.

Regards,

*[signature]*

Ron Wielkopolski