```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE EASTERN DISTRICT OF TEXAS

 3                          MARSHALL DIVISION

 4   LUMINATI NETWORKS LTD.        )(

 5                                 )(     CIVIL ACTION NO.

 6                                 )(     2:18-CV-483-JRG

 7   VS.                           )(     MARSHALL, TEXAS

 8                                 )(

 9   BI SCIENCE INC.               )(     NOVEMBER 26, 2019

10                                 )(     1:30 P.M.

11                     CLAIM CONSTRUCTION HEARING

12              BEFORE THE HONORABLE JUDGE ROY S. PAYNE

13                   UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16   FOR THE PLAINTIFF: (See Attorney Attendance Sheet docketed
                           in minutes of this hearing.)
17

18   FOR THE DEFENDANTS:(See Attorney Attendance Sheet docketed
                           in minutes of this hearing.)
19

20   COURT REPORTER:    Shelly Holmes, CSR, TCRR
                        Official Reporter
21                      United States District Court
                        Eastern District of Texas
22                      Marshall Division
                        100 E. Houston Street
23                      Marshall, Texas  75670
                        (903) 923-7464
24
     (Proceedings recorded by mechanical stenography, transcript
25   produced on a CAT system.)
```

1

I N D E X

2

3  November 26, 2019

4                                                        Page

5      Appearances                                       1

6      Hearing                                           3

7      Court Reporter's Certificate                     37

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

01:29:13  1          COURT SECURITY OFFICER:  All rise.

01:29:15  2          THE COURT:  Good afternoon.  Please be seated.

01:29:17  3          For the record, we're here for the claim

01:29:23  4  construction hearing in Luminati versus BI Science, which

01:29:29  5  is Case No. 2:18-483 on our docket.

01:29:33  6          Would counsel state their appearances for the

01:29:36  7  record?

01:29:36  8          MR. CAPSHAW:  Your Honor, Calvin Capshaw and

01:29:39  9  Mr. Bob Harkins, who'll be doing most of the argument

01:29:42  10  today, for Luminati.  And we're ready to proceed.

01:29:44  11          THE COURT:  All right.  Thank you, Mr. Capshaw.

01:29:46  12          MR. FINDLAY:  Good afternoon, Your Honor.  Eric

01:29:47  13  Findlay and Mr. Kelce Wilson here for BI Science.  And I

01:29:50  14  will probably being doing most of the argument, but if I

01:29:53  15  mess something up, Mr. Wilson will step in and fix it, I'm

01:29:57  16  sure, Your Honor.  Thank you, Your Honor.

01:29:59  17          THE COURT:  All right.  Thank you, Mr. Findlay.

01:30:01  18          Let me also say for the record that earlier this

01:30:04  19  afternoon, we distributed to counsel for both sides a set

01:30:08  20  of preliminary constructions of the disputed terms.

01:30:15  21          The purpose of issuing those preliminary

01:30:18  22  constructions is not to prevent either side from taking

01:30:22  23  whatever positions they feel are appropriate on these

01:30:26  24  terms.  Rather, the intent is to let the parties know where

01:30:31  25  the Court is after the initial review of the briefs and the

01:30:37  1  record so that you can focus your arguments where you think

01:30:41  2  the Court may have most missed the mark.

01:30:44  3         I reserve the right to alter these constructions

01:30:49  4  and not uncommonly do adjust the preliminary constructions

01:30:53  5  based on the arguments received at this hearing.  So I hope

01:30:58  6  you'll take them in that spirit.

01:31:00  7         I am happy to take up the terms in any order that

01:31:06  8  counsel think is most productive and group them if counsel

01:31:13  9  think that would be helpful.  And I will leave that up to

01:31:21  10  counsel and turn it over first to counsel for Plaintiff.

01:31:24  11         Mr. Capshaw?

01:31:25  12         MR. CAPSHAW:  Your Honor, I briefly wanted to

01:31:27  13  mention to the Court, the parties had conferred after

01:31:30  14  receiving your preliminary rulings and agreed on an order

01:31:34  15  and agreed on the terms that we think the Court might like

01:31:38  16  to hear about.  Mr. Findlay sort of -- has written

01:31:43  17  something up and have an agreement on it.

01:31:46  18         And, Eric --

01:31:46  19         MR. FINDLAY:  Sure.  Be happy to.

01:31:47  20         MR. CAPSHAW:  -- excuse me, Mr. Findlay, if you

01:31:48  21  would...

01:31:49  22         MR. FINDLAY:  Yes.  I think we've -- would thank

01:31:52  23  the Court for the preliminary constructions on behalf of

01:31:54  24  both parties.  I think it has greatly limited and

01:31:58  25  streamlined what we need to present -- what either side

01:32:01  1   believes we need to present today.  And if I get something

01:32:03  2   wrong, gentlemen, correct me.

01:32:03  3           Basically, we're just going to be talking about

01:32:06  4   four things, Your Honor.  First, the Plaintiff will go on

01:32:07  5   the indefiniteness of Claim 108.  I think they want to

01:32:14  6   speak to that.  We'll, of course, respond.

01:32:15  7           Then I think Plaintiffs want to address Your

01:32:18  8   Honor's note that in the -- in the number of the

01:32:20  9   constructions that separately recited elements in the

01:32:23  10  claims refer to distinct components and speak to that.

01:32:26  11  We'll respond.

01:32:27  12          And then in Your Honor's preliminary construction,

01:32:31  13  M1 was partitioning.  We would like to be heard on that.

01:32:37  14  And so we would propose that we go first on that issue, and

01:32:41  15  then Plaintiff will respond.

01:32:43  16          And then I think Plaintiff wants to make a couple

01:32:46  17  of comments perhaps on R and S in your preliminary, which

01:32:50  18  is on Page 4.  I think they are going to say they're happy

01:32:53  19  to stand on the briefs.

01:32:55  20          We reserve the right to maybe make a few comments,

01:32:58  21  but I think we are fine with Your Honor's constructions on

01:33:00  22  those and probably will just indicate as such.

01:33:04  23          THE COURT:  All right.

01:33:05  24          MR. FINDLAY:  Gentlemen, did I get that --

01:33:07  25          MR. CAPSHAW:  Yes.

01:33:08  1            THE COURT:  Thank you, Mr. Findlay --

01:33:09  2            MR. CAPSHAW:  Yes, Your Honor, that's correct.

01:33:11  3            THE COURT:  -- and Mr. Capshaw.

01:33:16  4            All right.  Good afternoon, Mr. Harkins.

01:33:18  5            MR. HARKINS:  Thank you, Your Honor.

01:33:46  6            So as Mr. Findlay correctly pointed out, the --

01:33:49  7  the first issue that we're here to talk about is the '044

01:33:53  8  patent, Claim 108, indefiniteness, and that's captured in

01:33:58  9  the preliminary constructions at B2, F2, F4, and F5.

01:34:04  10           And I do have some background slides that have

01:34:10  11  been submitted that I believe Your Honor may be familiar

01:34:14  12  with because of the -- there was a prior claim construction

01:34:16  13  on the same patents in a different case.

01:34:20  14           But just to -- as quickly -- as a reminder,

01:34:29  15  there -- there is this -- and it has been submitted in the

01:34:31  16  matter and is -- there have been a considerable amount of

01:34:34  17  terms where the Court went through and conducted an

01:34:37  18  analysis in this case involving Tesonet, which is noted at

01:34:41  19  Slide 6 that we submitted as Exhibit C to our motion, which

01:34:44  20  is Docket 109. -- -5 in this matter.

01:34:49  21           And so I think most of that has been resolved,

01:34:52  22  except there -- is not being reargued at this point, except

01:34:55  23  for this Claim 108 of the '044 patent.

01:34:58  24           The '044 patent is directed to using intermediate

01:35:04  25  tunnel devices to request content from target servers over

01:35:09  1  the Internet.  We note that in Slide 7.

01:35:10  2         Whereas the '866, which is going to the

01:35:13  3  partitioning term that you're going to hear from the other

01:35:15  4  side is -- is part of the '866 patent.  That is at Slide 8,

01:35:19  5  mainly directed to partitioning content into content

01:35:22  6  slices.

01:35:22  7         As just a quick reminder, the '044 patent, in

01:35:28  8  particular -- an example of this is trying to obtain

01:35:31  9  content you're -- if you're located in Seattle, Washington,

01:35:34  10 you're trying to get it from Craigslist in our Texas server

01:35:38  11 at Slide 9.

01:35:39  12        At Slide 10, we show they might block you for

01:35:39  13 geographic or other reasons.

01:35:43  14        If you still want to get that content, on Slide

01:35:47  15 11, you can use a more localized tunnel device, and that's

01:35:52  16 really what this patent is directed to is finding those

01:35:56  17 proxies or tunnel devices and using those.

01:35:59  18        And when you do that, we've learned that you can,

01:36:03  19 in fact, get the content that you're trying to obtain, and

01:36:06  20 then you can get it back to you.

01:36:08  21        And then Slide 13, just notes about how content

01:36:13  22 can be partitioned into slices.  And it can be done many

01:36:20  23 different ways.  It may be composed of inherent or

01:36:22  24 identifiable parts or segments, and the partition may make

01:36:24  25 use of these parts.  And -- and that's part of what's been

01:36:27  1  quoted at Column 52, Lines 19 through 30.

01:36:37  2          Okay.  I'm going to skip Slide 14.  I think we

01:36:40  3  don't need it in light of this.

01:36:42  4          I do want to note at Slide 15, that Figure 10

01:36:45  5  presents an example of partitioning that I think is going

01:36:47  6  to come up later in the discussion, but you can see in

01:36:50  7  Slide 10 that what happens in this slide is that the

01:36:51  8  content is partitioned.  And then after the content is

01:36:55  9  partitioned at 101b, then connections are established to

01:36:59  10  these tunnel or group devices.  And it can be obtained that

01:37:04  11  way.  And then when they're sent back, they can be

01:37:08  12  reconstructed.

01:37:08  13          So in light of that, we're going to the

01:37:12  14  indefiniteness argument.  We think the record is a little

01:37:14  15  different in this case than it was in the last case, and

01:37:17  16  that it actually -- that -- that while we understand that

01:37:22  17  the Court reached a conclusion about indefiniteness of 108,

01:37:26  18  that the record in this case supports a finding that there

01:37:29  19  is no indefiniteness of 108.

01:37:31  20          We don't -- we don't think there was a 4-2

01:37:34  21  disclosure to support that in this case.  And there was --

01:37:38  22  the argument that was actually made by the Defendant in

01:37:41  23  this case was just that the terms themselves were

01:37:44  24  indefinite, not that the way that they were used in the

01:37:49  25  preamble was indefinite.  They didn't actually make any

01:37:52   1   such argument, except that it -- as you see on the right of

01:37:55   2   Slide -- Slide 18, this is -- this is completely taken from

01:38:00   3   the -- the 4-2 disclosure.  And all they said is this term

01:38:05   4   is indefinite.  Or in the alternative, here's the

01:38:05   5   definition.

01:38:06   6          And so there is no argument that -- that Claim 108

01:38:11   7   as a whole is indefinite, just that these terms are.

01:38:14   8          We understand that -- that Your Honor had a -- had

01:38:19   9   a ruling in the other case of indefiniteness, and we think

01:38:22  10   that there's reasons why this is a different situation in

01:38:25  11   this case or that the evidence is different.

01:38:28  12          Here, there's submitted testimony on point that --

01:38:30  13   from Dr. Rhyne that a POSA would understand that each of

01:38:34  14   these terms is definite.  And that's at Paragraph 18.

01:38:37  15   There is no opposing expert testimony whatsoever against

01:38:41  16   his testimony.

01:38:41  17          We have noted that the Court has already found the

01:38:47  18   terms themselves to have their plain and ordinary meaning,

01:38:51  19   and so there's a finding that essentially would be

01:38:54  20   contradicted if the terms themselves were found indefinite

01:38:57  21   here.

01:38:57  22          And if you look at Slide 20, you'll see a cite

01:39:01  23   from Your Honor's prior claim construction at 56 on that

01:39:06  24   point.

01:39:08  25          But -- skip that -- so here's the thing.  In the

01:39:12  1  prior order, the -- the Court held Claim 81 definite, but

01:39:15  2  found Claim 108 indefinite.  And it's -- it's a reason

01:39:19  3  that's not been asserted in this case for indefiniteness in

01:39:22  4  the -- in the appropriate pre-trial -- or pre-briefing

01:39:25  5  disclosures.

01:39:26  6         In the last case what happened is -- and I -- I

01:39:29  7  will dig into this a little bit.  It appears that the Court

01:39:32  8  looked at the preamble and made a determination that the

01:39:35  9  first device performed the method.  And that makes a

01:39:38  10  certain amount of sense, as I will discuss.

01:39:41  11         Then the Court went to Claim 108 and said, well,

01:39:44  12  if the first device has to perform the method, this doesn't

01:39:47  13  make sense in the context of Claim 108.  If the preamble is

01:39:50  14  limiting and if the preamble requires the first device to

01:39:53  15  be the device that performs the method, it doesn't look

01:39:56  16  like the first device is doing 108.  And it appears to be

01:39:59  17  that's -- that's why indefinite was held in that case.  And

01:40:02  18  I'd like to explain the difference here.

01:40:04  19         What -- what happened in that case and the reason

01:40:06  20  the record is considerably different in this case is in

01:40:09  21  that case, originally, the Defendants did not ask for

01:40:14  22  indefiniteness of 108.  They only asked for indefiniteness

01:40:14  23  of Claim 81.

01:40:17  24         After Dr. Rhyne's testimony in that case, which

01:40:19  25  did not address Claim 108, was submitted and discovery

01:40:22  1  closed in that case and after Luminati submitted its

01:40:25  2  opening claim construction brief, only at that point did

01:40:31  3  Defendants in Tesonet say that they thought they should be

01:40:34  4  able to add indefiniteness of 108 because they felt like

01:40:37  5  it's the same as Claim 81.  And on that basis, that request

01:40:41  6  was granted.

01:40:43  7          But then what happened is a split ruling where the

01:40:44  8  Court actually found it's not the same as Claim 81.

01:40:46  9          And so here in this case is the first time this

01:40:48  10  Court has ever been addressed with direct evidence and

01:40:52  11  argument regarding 108 in the first instance.

01:40:56  12          It is notable that Claims 108 and 81 use the

01:41:02  13  identical preamble.  They have the exact same preamble in

01:41:04  14  both claims.  They both say that there is fetching that

01:41:08  15  involves four components, and they both say the fetching is

01:41:11  16  by a first device via a second device.

01:41:15  17          So the fetching in both actually calls out two

01:41:19  18  different devices as part of that fetching method.  It is

01:41:21  19  true that the overall method is controlled by the first

01:41:25  20  device.  But both the preamble in both claims actually

01:41:29  21  refers to two different devices as being involved in this

01:41:32  22  fetching.

01:41:32  23          So this -- this is Slide 23.  The two claims

01:41:39  24  address two aspects of the fetching.  Claim 81 -- the steps

01:41:43  25  of Claim 81 are directed to the fetching by the first

01:41:47  1  device, but Claim 108 is actually directed to the fetching

01:41:51  2  via the second device.  It's still a fetching by the first

01:41:55  3  device, but it's the first device asking the second device

01:41:57  4  to do things for it.

01:41:59  5          THE COURT:  Isn't that true of 81, as well?

01:42:01  6          MR. HARKINS:  Claim 81 -- they're both fetching by

01:42:04  7  the first device, but the steps that are talking about

01:42:07  8  Claim 81 is just what the first device itself does.

01:42:10  9          The steps in 80 -- in 108 talk about the steps

01:42:13 10  where the first device tells the second device to do things

01:42:16 11  and the second device does it.

01:42:18 12          THE COURT:  And what is the indication of the

01:42:22 13  difference in perspective?

01:42:25 14          MR. HARKINS:  I think you have to look at it as to

01:42:27 15  what the steps are that are being requested and in the

01:42:29 16  context of the specification, which is what Your Honor said

01:42:32 17  was the right way to look at this when it did its analysis

01:42:35 18  the first time.  But as I said, we didn't fully brief Claim

01:42:39 19  108 and didn't have expert testimony to provide the full

01:42:44 20  meaning of these claims with respect to each other.  So

01:42:47 21  we're attempting to do that now.

01:42:48 22          And Your Honor, I think, got it exactly right that

01:42:53 23  the Claim 81 -- every step in Claim 81 can be defined --

01:42:56 24  can be tied to a first device.  That is described in the

01:43:00 25  specification.

01:43:00  1          And if you look at the -- the steps that are

01:43:04  2   there, sending the first identifier to the first server,

01:43:08  3   this is at -- excuse me -- this is at Slide 24 where we

01:43:11  4   line them up side-by-side -- each of those steps is

01:43:14  5   something the first device itself does.

01:43:17  6          But when you look at Claim 81(d), it says, sending

01:43:21  7   a second request to the second device.  That's -- that's

01:43:24  8   Claim 81(d).  And (e) is receiving content from the second

01:43:28  9   device.

01:43:29  10         So what happens to the -- what happens to the

01:43:32  11  method -- the overall method once it leaves the first

01:43:36  12  device, that's where we get to Claim 8, 108.  So you can

01:43:41  13  see Claim 81(d) says sending a second request to the second

01:43:45  14  device.  That picks right up in Claim 108 where it says

01:43:49  15  108(b) -- 108(a) is just a second device identifying itself

01:43:52  16  to the first server.  That's -- that's an underlying

01:43:55  17  predicate to -- to it doing anything else.

01:43:57  18         But after that, it's 108(b) receiving a second

01:44:01  19  request from the first device.  Well, that's exactly the

01:44:03  20  request that's sent in 81(d).

01:44:04  21         And so now the second device is receiving that

01:44:07  22  second request from the first device, and the second

01:44:11  23  request includes the first content identifier and the third

01:44:14  24  identifier, the exact contents of that request that were

01:44:17  25  cited in 81(d).

01:44:18  1         Now, in 8 -- 108(c), in response to that request,

01:44:22  2  the second device is going to contact that -- the second

01:44:28  3  server, which is the web server, to obtain the content.

01:44:31  4  Then in 108(d), the second device actually does obtain the

01:44:35  5  content from the web server.

01:44:37  6         And in 108(e), it -- in response to receiving that

01:44:40  7  content, it sends the content back to the first device, at

01:44:43  8  which point the rest of the overall methodology is finished

01:44:46  9  at 81(e), where the first device receives the first content

01:44:50  10  from the second device.

01:44:52  11         The point here is not that they both require both

01:44:54  12  things to do something.  It's that the overall fetching is

01:44:58  13  by the first device.  That's 81.  But in Claim 108, it's by

01:45:03  14  the first device via a second device, at which point it's

01:45:07  15  told the second device to take over and actually conduct

01:45:11  16  the steps.

01:45:12  17         We think that's the fair reading of the preamble

01:45:14  18  in line with the steps that are shown in Claim 108.  And

01:45:17  19  you can see how they line up directly against Claim 81 so

01:45:21  20  that the -- the method is -- is moving now to a different

01:45:23  21  location.  And we're talking about the phrase "via a second

01:45:28  22  device."

01:45:28  23         On Slide 25, we have an analogy.  This is like a

01:45:34  24  driving analogy.  So this would be like a method for

01:45:38  25  getting a part -- a package by driving from Marshall, which

01:45:40  1  is like the first device, via Tyler, which you could

01:45:43  2  consider to be a second device, to Dallas, which is like

01:45:46  3  the second server, communicating with a dispatch center,

01:45:50  4  which is like the first server.

01:45:51  5        So at the beginning in Steps 81, you notify

01:45:54  6  dispatch of the trip, you -- you discover that Tyler is a

01:45:59  7  waypoint.  You leave Marshall toward Tyler with directions

01:46:00  8  to go to Dallas to get the package, and then you get the

01:46:04  9  package back from Tyler to Marshall.

01:46:06  10        And in Step 81, we're talking about what happens

01:46:09  11  at Tyler, that Tyler notifies this dispatch I'm available

01:46:12  12  as a waypoint.  And then the driver shows up from Marshall

01:46:17  13  and says, I have directions, please go to Dallas and get

01:46:19  14  the package for me, which is Marshall making those

01:46:23  15  directions, that first device.  And then he leaves and goes

01:46:26  16  to Dallas, gets the package, brings it back, and then

01:46:29  17  leaves Tyler towards Marshall with the package.

01:46:31  18        It's the -- this is the same thing that's

01:46:33  19  happening.  It's just that the steps -- the steps in 108

01:46:37  20  are by the first device via the second device, not just

01:46:40  21  what the first device itself is doing.

01:46:42  22        Okay.  So this is consistent with Dr. Rhyne's

01:46:46  23  undisputed testimony because the other side did not --

01:46:50  24  does -- does not disclose any expert testimony on this

01:46:53  25  point whatsoever.

01:46:53   1          Dr. Rhyne submitted testimony about Claim 81 at

01:46:58   2   Paragraphs 11 and 12 of his declaration and a drawing that

01:47:01   3   labeled all the components in Figure 11a of the '044

01:47:04   4   patent.

01:47:06   5          Then he -- the part that's new in this case

01:47:09   6   because it wasn't -- it was after discovery was over in the

01:47:12   7   other case, so this is the first time we were able to

01:47:15   8   submit testimony from Dr. Rhyne as to Claim 108.  And in 13

01:47:18   9   and 14 -- Paragraphs 13 and 14, he points to the same

01:47:21  10   figure and walks through how Claim 108 relates to that

01:47:25  11   second device 33b in Figure 11a to carry out the actions at

01:47:31  12   the request of the first device.

01:47:31  13          He doesn't stop there.  He also goes to a timing

01:47:36  14   diagram -- that's Figure 5b of the patent -- and for Claim

01:47:39  15   81, walks through how every single step can be associated

01:47:42  16   with the client device in Figure 5b.  And that's at

01:47:46  17   Paragraphs 15 and 16 of his declaration.

01:47:48  18          And then he moves over and shows how every step of

01:47:53  19   Claim 108 is done by the tunnel device, and that's at

01:47:58  20   claims -- at Paragraphs 15 and 17 of his declaration.

01:48:00  21          And in Slide 27, we've actually labeled every

01:48:02  22   single step in the claim and showed exactly where it

01:48:08  23   appears and why in the context -- and as we must do for --

01:48:14  24   for -- for indefiniteness, you have to read the claim in

01:48:17  25   light of the specification.  And with this level of detail,

01:48:20  1  specification supporting the idea that Claim 108 is the

01:48:23  2  first device operating via the second device or the tunnel

01:48:26  3  device, we think it's well supported that it's definite.

01:48:29  4        THE COURT:  Now, isn't it true that Dr. Rhyne's

01:48:34  5  declaration about 108 simply says that the claims can be

01:48:41  6  performed in a certain way, as opposed to that they are

01:48:46  7  done in a certain way?  In other words, he's just

01:48:50  8  indicating that one interpretation of it can be?

01:48:56  9        MR. HARKINS:  I think what he's saying is, is

01:48:58  10 it -- is it possible to do this without something that is

01:49:01  11 called the tunnel device -- for example, it is possible.

01:49:04  12       But what he says is look at the specification.

01:49:07  13 What would a person of ordinary skill in the art -- would

01:49:10  14 that person be able to understand the scope of the claim or

01:49:12  15 not?  Is it -- would they have reasonable certainty as to

01:49:15  16 what's going on here?  And what he says is it's absolutely

01:49:20  17 certain that reading Claim 108, it's not the client device

01:49:22  18 that's performing all these actions, but it is another

01:49:25  19 device that's in communication with that first device.  And

01:49:27  20 that's -- the claim itself says you do that.

01:49:29  21       He's -- what he says is once you look at the

01:49:32  22 figures, like -- like Figure 11a and Figure 5b and the

01:49:37  23 related text that's cited at the bottom of Slide 27, that a

01:49:41  24 person of ordinary skill in the art would have no trouble

01:49:44  25 understanding the scope and functioning of the claim, that

01:49:47 1  they would know that what's going on in Claim 108 is

01:49:50 2  that -- I see, this is the part that's being done via the

01:49:53 3  second device.

01:49:53 4          And he -- what he says about this can be done this

01:49:59 5  way is what he says is it can be done by something called a

01:50:00 6  tunnel device with the exact timing in the figure.  You're

01:50:03 7  not limited to that.  It could be other ways.  The timing

01:50:06 8  could be a little different, or there could be other

01:50:09 9  communications going back and forth that are not shown in

01:50:13 10 Figure 5b.  But this absolutely informs a person of

01:50:16 11 ordinary skill in the art how this claim functions and what

01:50:19 12 its meaning and scope is.

01:50:21 13         So as we know, claims are presumed to be definite

01:50:25 14 as a matter of law.  And the burden that Defendants needed

01:50:27 15 to come here with was to prove it by clear and convincing

01:50:30 16 evidence, and we have Nautilus at Page -- at 572, U.S. 898,

01:50:35 17 Page 912, Note 10 on that, Supreme Court decision.

01:50:39 18         And the test, we all agree, is whether a patent's

01:50:42 19 claims viewed in light of the specification and the

01:50:44 20 prosecution history inform those skilled in the art about

01:50:48 21 the scope of the invention with reasonable certainty.  And

01:50:51 22 that's at Page 910 of that decision.

01:50:53 23         So the -- in the light -- in light of the

01:50:56 24 specification is a critical aspect of the job that we have

01:50:58 25 to do to understand the claim and whether it's definite,

01:51:01  1  especially because the Patent Office already thought it was

01:51:04  2  definite, or they wouldn't have issued the claim.

01:51:06  3          And we have a citation on that.  It's the Eidos,

01:51:12  4  E-i-d-o-s, Display, LLC versus U -- AU Optronics Corp., 779

01:51:17  5  F.3d 1360.  And in that case, the Federal Circuit case in

01:51:23  6  2015, the District Court was reserved for failing to

01:51:27  7  provide -- take into consideration the specification, when

01:51:28  8  looking at things in light of the specification actually

01:51:30  9  provided sufficient guidance so that you would understand

01:51:33  10  the scope of the claim or a POSA would understand the scope

01:51:36  11  of the claim.

01:51:36  12          And so we believe in this case, there's -- there's

01:51:40  13  no dispute.  There's no disputed expert testimony, that

01:51:44  14  Dr. Rhyne has done a good job of walking through the

01:51:47  15  exact figures in the patent and text in the patent to show,

01:51:50  16  as well as the -- the claim in the patent to show that

01:51:53  17  Claim 81 is fetching by a first device.  And it shows the

01:51:57  18  part that's done by the first device and a hand-off to a

01:52:00  19  second device.  That's all shown in Claim 81.

01:52:02  20          Claim 108 is what happens after the hand-off where

01:52:07  21  the first device is fetching via the second device with the

01:52:10  22  focus on the aspects that are being performed via the

01:52:14  23  second device.

01:52:14  24          And we've cited some additional law at Slide 29,

01:52:21  25  which I think is probably also in our briefs about how

01:52:25   1   claims need to be construed to preserve their validity, in

01:52:29   2   the Tech. Licensing Corp. case, 545 F.3d 1316 at 1329.  How

01:52:34   3   when there's close questions of indefiniteness in

01:52:37   4   litigation, issued patents are properly resolved in favor

01:52:39   5   of the patentee, which is this Bancorp case, 359 F.3d 1367

01:52:45   6   at 1371.  And how District Courts have specifically said

01:52:49   7   that this principle still applies post-Nautilus.  We've

01:52:54   8   provided a citation for that.

01:52:56   9          And then another case we thought was valuable in

01:52:59  10   this exercise is the Jazz Pharm. -- Pharmaceuticals case at

01:53:07  11   27 -- 2017 U.S. District, Lexis 183344 at Page 7 where it

01:53:13  12   says:  If the meaning of the claim is discernible, even

01:53:18  13   though the task may be formidable and the conclusion may be

01:53:21  14   one over which reasonable persons will disagree, the claim

01:53:22  15   is sufficiently clear to avoid invalidity on indefiniteness

01:53:25  16   grounds.

01:53:26  17          And we think, given the -- the record in this

01:53:28  18   case, that we have shown, even if there's some debate or

01:53:33  19   dispute about it, that clearly there's a basis for finding

01:53:36  20   the claims definite in this case.

01:53:37  21          THE COURT:  Is there anything in the preambles

01:53:40  22   that supports the change in the perspective that you say we

01:53:48  23   should apply to the two claims?

01:53:51  24          MR. HARKINS:  The -- well, I would -- Your Honor,

01:53:53  25   I would say that -- and I brought it back to Slide 25

01:53:58  1  because it's got the quote of the preamble right up at the

01:54:01  2  top of that slide.  What you know from the preamble is that

01:54:03  3  the same preamble was used twice for two different claims.

01:54:07  4       And what you know in the preamble is that the

01:54:09  5  method is for fetching over the Internet a first content by

01:54:15  6  a first device via a second device.

01:54:17  7       And so what that tells you is that this -- this

01:54:21  8  method is going to involve a first device and a second

01:54:24  9  device.  And what exactly it is that are taking the steps,

01:54:27  10  you have to look at the steps to align them with what's

01:54:31  11  going on to understand is this the first device itself

01:54:33  12  that's doing these steps or is the first device at this

01:54:35  13  point telling the second device to take steps?

01:54:38  14       And Claim 81, it's just the first device doing it.

01:54:41  15  And in Claim 108, at this point, the first device is

01:54:44  16  instructing the second device.  And you get that --

01:54:47  17  Dr. Rhyne says a person of ordinary skill would understand

01:54:50  18  that from the -- from the claim -- and if I can go back to

01:54:53  19  Slide 24 -- the claim itself makes clear, it -- it

01:54:59  20  obviously isn't the first device that's doing Claim --

01:55:02  21  Claim 108 because it's receiving -- in Claim 108(b), you're

01:55:06  22  receiving a second request from the first device.  So you

01:55:10  23  know that the first device isn't receiving a request from

01:55:10  24  itself.

01:55:11  25       I actually think that's what Your Honor had a

01:55:12  1  problem with earlier was this seems like an impossible

01:55:16  2  conflict, like how can the first device be sending itself a

01:55:16  3  request?

01:55:20  4      And what we -- what -- what we've -- I think done

01:55:22  5  a much better job of coming back at and helping to explain

01:55:26  6  further is this is the first device -- this is the first

01:55:28  7  device instructing the second device.  And so at this

01:55:31  8  point, that -- the scope and the language itself makes

01:55:35  9  clear that now we've moved on to the part of the claim

01:55:37  10  that's talking about the second device and what it's doing

01:55:40  11  because it's the other device.  And it's the thing that's

01:55:43  12  receiving the request.  And it's the thing that's sending

01:55:46  13  this request back.

01:55:47  14      And, in fact, when you line up Claim 81(d) that

01:55:50  15  says you're sending the request to the second device and

01:55:54  16  108(b) that says whatever it is is receiving the -- the

01:55:57  17  request from the first device, you know that just those two

01:56:02  18  claims right next to each other tell you, they -- the

01:56:05  19  context of the claims side-by-side give you the context

01:56:08  20  that says here's the hand-off happening.  It's the

01:56:11  21  identical language or -- orchestrating a hand-off between

01:56:17  22  81(d) and 108(b), and then, again, back.

01:56:20  23      108(e) orchestrates the hand back -- hand-off back

01:56:22  24  to 81(e).  And the con -- even if we didn't have the

01:56:24  25  figures in the patent, I would argue that 81 and 108

01:56:28  1  side-by-side provide a POSA with enough context to

01:56:33  2  understand exactly what's doing the -- the method steps in

01:56:36  3  these claims.

01:56:37  4       But we also -- we don't have to go there because

01:56:40  5  we also have a lot of instruction from the specification,

01:56:42  6  and that -- and, again, Dr. Rhyne has walked through all of

01:56:45  7  this, and there's no dispute, and there's no opposing

01:56:48  8  evidence.

01:56:50  9       THE COURT:  All right.

01:56:50 10       MR. HARKINS:  Thank you, Your Honor.

01:56:52 11       THE COURT:  Thank you.

01:57:15 12       MR. FINDLAY:  Thank you, Your Honor.

01:57:17 13       I'll just -- I'll try to be brief.

01:57:18 14       First off, the argument that somehow we shouldn't

01:57:25 15  be able to raise indefiniteness we don't think has really

01:57:28 16  any merit.  Expert testimony is not required to prove -- if

01:57:37 17  that will come up -- is not required to prove

01:57:40 18  indefiniteness.

01:57:45 19       That's clear in some of the case law.  We cited a

01:57:48 20  couple of Federal Circuit cases.

01:57:50 21       And just the timeline on this, I think, is

01:57:51 22  appropriate.  We gave or disclosed our 4-2s in August 13th,

01:57:58 23  2019.  As Mr. Harkins indicated, we did identify

01:58:00 24  indefiniteness.  4-2 does not require expert testimony be

01:58:02 25  presented.  It doesn't require a detailed recitation of the

01:58:06  1  argument.  We raised it as we were required to do.

01:58:09  2       Your Tesonet claim construction order came out a

01:58:12  3  week later on August 20th.  We believe we're entitled to

01:58:15  4  rely on that, and we actually incorporated it into our

01:58:19  5  claim construction brief at Page 5.  There was no objection

01:58:22  6  to that from the other side.

01:58:25  7       I don't believe there's any prejudice to Plaintiff

01:58:28  8  in us relying on that indefiniteness opinion of yours in

01:58:31  9  the Tesonet case.  And, of course, now they haven't

01:58:34  10  suggested that there is.  There was never any motion to

01:58:36  11  strike filed.

01:58:39  12       So we think that -- we think those grounds are

01:58:42  13  baseless, if you will, for us to -- to suggest we can't

01:58:45  14  rely on the indefiniteness of 108.

01:58:47  15       Mr. Harkins points to Dr. Rhyne's late or second

01:58:53  16  declaration that wasn't in the Tesonet case as somehow

01:58:56  17  saving 108.  We don't think it does that.

01:59:00  18       Your question, I think, was -- was correct, Your

01:59:03  19  Honor.  You asked doesn't Ms. -- doesn't Dr. Rhyne talk

01:59:08  20  about how it can be performed, and that's exactly what he

01:59:11  21  says here in Paragraph 14.  He says:  Given the above

01:59:16  22  exemplary embodiment, in my opinion, a POSA would

01:59:19  23  understand Claim 108 to disclose fetching via a second

01:59:24  24  device where each claim steps can be performed.

01:59:26  25       But then here is where we think he really simply

01:59:28  1  is rewriting the claim language.  He says:  We -- can be

01:59:31  2  performed by the second device.  And then under Step --

01:59:35  3  Step E, he says the second device then sends the content

01:59:39  4  back to the first device.

01:59:40  5      We think this is just a complete rewriting of the

01:59:45  6  preamble claim language, Your Honor.

01:59:47  7      108, as Mr. Harkins admits, which is identical to

01:59:51  8  81, there's no change.  I don't think there's any

01:59:55  9  argument -- or I don't think Mr. Harkins was able to

01:59:57  10  satisfy your question, what is the change in perspective or

02:00:01  11  where is the proof or evidence of a change of perspective.

02:00:06  12  I don't think there is one.

02:00:06  13      And what basically we would submit Dr. Rhyne is

02:00:08  14  trying to do here is change by first device in the preamble

02:00:13  15  to by the second device, as is seen in his declaration, and

02:00:17  16  change via second device to back to the first device, as is

02:00:23  17  seen in his -- in his declaration.  And we simply don't

02:00:26  18  think there's any basis for that, Your Honor.  It is a

02:00:28  19  complete rewrite of the claim.

02:00:32  20      Unless you have any questions with that, we

02:00:35  21  reiterate that we think your preliminary construction of

02:00:38  22  indefiniteness is the right one.

02:00:40  23      THE COURT:  All right.  Thank you, Mr. Findlay.

02:00:55  24      MR. HARKINS:  Just to put a close -- I don't --

02:00:57  25  there was -- I don't need to respond to Mr. Findlay's

02:01:00  1  argument.  I think my argument stands.

02:01:02  2          I will just say that when Dr. Rhyne referred to

02:01:05  3  Step E as sending back to the first device, that's

02:01:10  4  literally the language of Claim 108 -- that's just Step E

02:01:11  5  of Claim 108.  So we didn't make it up.  It's Step -- Claim

02:01:15  6  108, Step E, says to send it back to the first device.

02:01:18  7          So I -- if Your Honor has further questions, I'd

02:01:21  8  be glad to talk to you about that.  Otherwise, I'll go on

02:01:24  9  to the second topic.

02:01:25  10          THE COURT:  No.  I will look hard at the arguments

02:01:27  11  you've made.  But --

02:01:30  12          MR. HARKINS:  Thank you very much, Your Honor.

02:01:31  13          The second topic is -- frankly, I don't have much

02:01:35  14  affirmative arguing to do anymore today, I don't think.

02:01:38  15          There are several terms where the Court in its

02:01:41  16  preliminary construction said plain and ordinary meaning,

02:01:44  17  but added a note that says:  Separately recited elements in

02:01:49  18  the claims refer to distinct components.  And that

02:01:52  19  occurred, I believe, at Preliminary Constructions C1, 2, 3,

02:01:57  20  4, E1, 2, 3, and K1 and 2.

02:02:02  21          If I missed any, this argument -- or this

02:02:05  22  discussion really applies to all of them.  I think I got

02:02:07  23  them all, but I intend to.  And it's just this.  We agree

02:02:10  24  with the plain and ordinary meaning construction.  We don't

02:02:12  25  think the note is necessary, and we're a little concerned

02:02:15   1    that when you have a note like this, it can lead to a --

02:02:19   2    start to get into what does a note accompany a construction

02:02:22   3    mean.

02:02:22   4            THE COURT:  Well, let me explain the meaning of

02:02:25   5    the note.  The note is not a part of the construction that

02:02:29   6    would go to the jury.  The note is intended to advise the

02:02:34   7    parties for the purpose of this hearing that the plain and

02:02:40   8    ordinary meaning will be expanded on in the claim

02:02:48   9    construction order, and that it will include what we're

02:02:52   10   setting out in this note.  In other words, that -- that is

02:02:56   11   part of the reasoning that the Court is going to provide

02:02:58   12   that will guide and limit the experts, but it is not

02:03:04   13   language that will be read to the jury.

02:03:06   14           MR. HARKINS:  Understood.  That -- that -- that

02:03:08   15   is -- I certainly appreciate that.

02:03:11   16           Our -- our ongoing concern about guidance to the

02:03:14   17   experts and not the experts is just so that I have it in

02:03:19   18   the record, that -- you know, it sounds like if -- the

02:03:20   19   construction of plain and ordinary meaning, we agree with

02:03:22   20   that.  So let me just put that out there.

02:03:24   21           As to the note, my only concern is now we can

02:03:28   22   starting get into a debate about what distinct components

02:03:31   23   are.  And while I conferred with counsel on the other side

02:03:33   24   this morning, prior to this, I just raised the issue of,

02:03:37   25   for example, what if we have two devices or a server and a

02:03:40  1  device that are in the same room, for example, but they

02:03:43  2  each have their own identifier, are -- are we going to get

02:03:46  3  an argument that that means that they're really not

02:03:48  4  distinct components because they're geographically

02:03:51  5  co-located, for example.

02:03:53  6         That -- that's why I -- I just prefer to just

02:03:58  7  leave it to plain and ordinary meaning, but I certainly

02:03:58  8  understand what Your Honor said.  And the construction

02:04:00  9  itself doesn't -- we believe that we have identified

02:04:02  10  distinct components in our infringement contentions.  So

02:04:05  11  I -- I doubt that this is a real issue, but that's --

02:04:08  12  that's why I raised it.

02:04:09  13         THE COURT:  I understand that.  And the Defendant

02:04:13  14  had been seeking a construction that included the term

02:04:17  15  "separate" to describe it.  I have not included "separate"

02:04:22  16  because I have found that that itself is not a very clear

02:04:28  17  term.

02:04:28  18         But in rejecting that, I also want to communicate

02:04:31  19  that we believe that the plain and ordinary meaning of

02:04:37  20  these claims will preserve the concept that those devices

02:04:43  21  are distinct.  And I agree with you that ultimately, there

02:04:47  22  may be infringement questions that are questions of fact,

02:04:52  23  but that's the purpose of including that.

02:04:55  24         MR. HARKINS:  Okay.  Thank you, Your Honor.

02:05:01  25         MR. FINDLAY:  We have nothing -- nothing to add to

02:05:03  1   that, Your Honor.  Thank you.

02:05:05  2          THE COURT:  All right.

02:05:06  3          MR. FINDLAY:  But I think that would put us up for

02:05:10  4   the partitioning, which is N.

02:05:45  5          And, Your Honor, we appreciate the Court's

02:05:46  6   preliminary construction on this.  There's just one aspect

02:05:49  7   that we wanted to raise.  And I know Your Honor saw it in

02:05:51  8   the briefs, so, obviously, didn't think it was appropriate

02:05:55  9   at this point to include.

02:05:57  10         We think the identity of the device or devices

02:05:59  11  that perform the partitioning is significant to this

02:06:03  12  invention.  And so that's what we would like to see some

02:06:08  13  clarification of or limitation of, if you will.

02:06:11  14         We don't think it's enough to simply focus on the

02:06:16  15  content slices, as the Court's construction do.  We think

02:06:19  16  Luminati prefers to leave this vague, plain and ordinary,

02:06:25  17  so that it can potentially selectively decide or point to

02:06:28  18  different devices as doing the partitioning.

02:06:30  19         If we look at the patent and the specification,

02:06:35  20  there are only two examples of what's doing the

02:06:39  21  partitioning.

02:06:40  22         The first is the client device decides among

02:06:43  23  multiple devices the content to be partitioned.  This can

02:06:48  24  be shown in Figure 10, we believe.  And then in the comment

02:06:53  25  to that that I have on the side, the content is partitioned

02:06:56  1  into slices in a content partition Step 101b.  And -- and

02:06:56  2  in one example each of the slices is allocated to a

02:07:02  3  different tunnel device and fetched via that tunnel device,

02:07:04  4  as explained here.

02:07:06  5        And this -- 62a, 62b, these are -- this is coming

02:07:10  6  from the -- the client device, if you will, Your Honor, the

02:07:16  7  first device.  We think that is clear, that that's what's

02:07:19  8  doing the partitioning in this example.

02:07:20  9        The only other -- there's other support for that,

02:07:23  10  as well, in the specification.  Column 109, 39 to 44, talks

02:07:27  11  about the client device.

02:07:30  12        The only other example, and it's a brief one, is

02:07:33  13  the acceleration server.  That's identified as an

02:07:36  14  alternative to the client device doing the partitioning.

02:07:40  15  That's Column 114 of the '866, 48 to 55.  Alternatively --

02:07:44  16  alternatively or in addition, the peer devices may be

02:07:47  17  selected by the acceleration server.

02:07:50  18        We think the device doing the partitioning must be

02:07:54  19  identified or limited in order to be consistent with the

02:07:57  20  purported invention.  If not, if it's just plain and

02:08:01  21  ordinary, we're concerned what would prevent Dr. Rhyne from

02:08:04  22  suggesting that it's the first server doing the

02:08:07  23  partitioning or some other -- or the target server or the

02:08:12  24  second server doing the partitioning.

02:08:13  25        I don't think there'd be anything to prohibit him

02:08:16  1  from making that argument if it's just plain and ordinary,

02:08:19  2  and so we would ask that there be some limitation.

02:08:21  3        THE COURT:  It sounds like your argument is that

02:08:23  4  we should limit this claim to the embodiments that are set

02:08:28  5  out in the specification.

02:08:30  6        MR. FINDLAY:  In this situation, yes, I think we

02:08:33  7  should, because those are the only two examples that are

02:08:35  8  given, Your Honor.

02:08:37  9        THE COURT:  Isn't there clear law that the Court

02:08:42 10  should not limit claims to the embodiments?

02:08:45 11        MR. FINDLAY:  There is law to that effect, Your

02:08:48 12  Honor.  But in this case, we think it will -- it will

02:08:55 13  defeat, I guess, some of the inventive concept of this

02:08:58 14  where it was clear that the -- that it was either the

02:09:01 15  client device or perhaps the acceleration server, which is

02:09:06 16  doing this partitioning.

02:09:08 17        To simply leave it open to any of those devices,

02:09:10 18  we don't think, is -- is appropriate.  I understand your --

02:09:13 19  Your Honor's comment with respect to the law, but we think

02:09:15 20  that is -- is just too broad.

02:09:22 21        THE COURT:  Well, generally, I think the law

02:09:25 22  provides that the patentee is entitled to the breadth of

02:09:28 23  the claims that are allowed.

02:09:30 24        Is there anything in particular that you would

02:09:32 25  argue should restrict that here?

| | | |
|---|---|---|
| 02:09:36 | 1 | MR. FINDLAY: Not other than what we've -- what |
| 02:09:38 | 2 | we've raised in our briefs and here today, Your Honor. |
| 02:09:40 | 3 | THE COURT: All right. |
| 02:09:41 | 4 | MR. FINDLAY: Thank you. |
| 02:09:41 | 5 | THE COURT: Thank you, Mr. Findlay. |
| 02:09:49 | 6 | MR. HARKINS: On this topic, Your Honor, unless |
| 02:09:53 | 7 | Your Honor has questions for me, I don't. We'd be willing |
| 02:09:56 | 8 | to submit on the argument as it stands. |
| 02:09:58 | 9 | THE COURT: All right. Thank you, Mr. Harkins. |
| 02:10:01 | 10 | MR. HARKINS: In that -- in that case, the only |
| 02:10:03 | 11 | other thing that's left, I believe, on our calendar for |
| 02:10:06 | 12 | this morning [sic] is the terms that were designated as |
| 02:10:09 | 13 | R and S. |
| 02:10:09 | 14 | We had suggested plain and ordinary meaning, which |
| 02:10:14 | 15 | we think is the better construction, but we are willing to |
| 02:10:17 | 16 | submit on the briefs. We don't need to present any |
| 02:10:20 | 17 | additional argument. |
| 02:10:21 | 18 | THE COURT: I think those -- R and S are |
| 02:10:25 | 19 | constructions that weren't suggested by either party. So |
| 02:10:27 | 20 | it's always important to me to give the parties an |
| 02:10:32 | 21 | opportunity at the hearing to comment on them if they have |
| 02:10:37 | 22 | any insights as to why they are wrong or how they can be |
| 02:10:45 | 23 | improved. |
| 02:10:46 | 24 | MR. HARKINS: Okay, Your Honor. |
| 02:10:47 | 25 | So we think plain and ordinary meaning covers it. |

02:10:50  1  We think that -- that partitioning based on the webpages

02:10:54  2  level can mean that the content comes from different

02:10:56  3  webpages.  I -- I don't -- as far as whether it would need

02:11:01  4  to include metadata and things like that, like -- like that

02:11:04  5  are tags or extraneous -- you know, other accompanying data

02:11:09  6  is something that could be suggested by saying you have to

02:11:13  7  grab the entire webpage.  And I don't know if that's what

02:11:16  8  Your Honor intended by the construction.

02:11:19  9       Certainly, what I think is intended by this claim

02:11:22  10  is you're getting content from one webpage, and then you're

02:11:25  11  getting content from a different webpage, which we think is

02:11:27  12  already captured by the language.  That's really it.

02:11:31  13       And I don't know, frankly, that your order changes

02:11:34  14  that.  So I don't know -- I just feel like plain and

02:11:39  15  ordinary meaning captures it just fine, so I -- that's why

02:11:42  16  we were proposing to submit on the briefs on that.

02:11:46  17       THE COURT:  Are you arguing that it can be -- that

02:11:49  18  this claim, Claim 18, could be satisfied by anything that

02:11:53  19  is on a webpage somewhere?

02:11:54  20       MR. HARKINS:  I -- I think it would be if the way

02:11:57  21  that you've divided up the content is at the webpages

02:12:01  22  level, so that I'm grabbing content from Page 1 of a

02:12:06  23  website and then Page 2 of a website, it doesn't

02:12:08  24  necessarily include everything that would get delivered

02:12:10  25  along with that page -- like ads and things like that may

02:12:14  1  not be included.  Those change from request-to-request.

02:12:18  2          But what you couldn't do is you couldn't say

02:12:21  3  webpage -- I'll give you a for instance.  If -- if I --

02:12:24  4  let's say I'm going to look for a set of -- I've requested

02:12:28  5  from Amazon.com.  I want to know all the top selling shoes.

02:12:34  6  And they have a list of 50 top selling shoes.  And I grab

02:12:38  7  the content that is the list of 50 top selling shoes.  And

02:12:42  8  the way I do it is Page 1 has 1 through 10, and I go get

02:12:44  9  that content.  That -- that page only has 10 search results

02:12:48  10  in it, and I go get it.  Then I go and get the next 10

02:12:51  11  search results, 11 through 20, and that's a different

02:12:55  12  webpage.

02:12:55  13          I think that meets the criteria of this claim,

02:12:58  14  even if it might not grab the fact that there's a dynamic

02:13:03  15  ad that's generated differently page-for-page, for example.

02:13:07  16          THE COURT:  All right.  I guess what constitutes a

02:13:10  17  webpage may be a dispute for another day.

02:13:12  18          MR. HARKINS:  Okay.  Well, that's -- that's why I

02:13:12  19  said we'd be willing to submit on the briefs even as it

02:13:16  20  was.  I don't --

02:13:16  21          THE COURT:  Okay.

02:13:16  22          MR. HARKINS:  I'm not sure that there's a -- I'm

02:13:18  23  not sure what the issue is here.  I just wanted to make it

02:13:20  24  clear that I think that what's happening here is a

02:13:24  25  distinction between webpages, rather than start to get into

02:13:27  1    the constitution of does it have to be everything that goes

02:13:29  2    along with the webpage or not.  That -- that's the

02:13:31  3    difference that we have.

02:13:33  4         THE COURT:  All right.

02:13:34  5         MR. HARKINS:  And -- and as to T -- or, excuse me,

02:13:38  6    S, actually, what's interesting about this is Your Honor in

02:13:42  7    the last hearing had caused us to go back and think about

02:13:45  8    this term a little differently and the -- the -- and what

02:13:49  9    we have concluded is that Your Honor was actually correct

02:13:53  10   and that the -- the meaning was a little broader than we

02:13:55  11   had originally presented.

02:13:57  12        And when I was in front of Your Honor the last

02:14:00  13   time on this exact same term, you said it seems to me that

02:14:04  14   all the parts of the content are included in all the

02:14:07  15   content slices just means there's a total amount of content

02:14:09  16   and a total amount of slices, and the total amount of

02:14:13  17   slices has to include the total amount of content.

02:14:15  18        And we went back and looked at it and agreed that

02:14:18  19   actually that's -- like a broad but reasonable

02:14:22  20   interpretation would encompass that scenario.  And so we

02:14:25  21   went back to our expert and said, is that -- is that

02:14:27  22   correct, and he said that does seem to be a reasonable

02:14:31  23   additional breadth of that claim language.  And so he

02:14:34  24   stated that in his declaration.

02:14:36  25        So, again, we have just suggested plain and

02:14:38  1  ordinary meaning.  But I'm a little concerned that the --

02:14:42  2  that the proposal that is in the preliminary construction

02:14:45  3  doesn't give the breadth that Your Honor had reasonably

02:14:48  4  provided to us at the last hearing and that we've submitted

02:14:52  5  with our expert testimony.

02:14:53  6          THE COURT:  All right.  I will look back at that.

02:14:55  7  Thank you, Mr. Harkins.

02:14:56  8          MR. FINDLAY:  And just very briefly, Your Honor,

02:14:58  9  as to R, we actually -- we think the clarification in your

02:15:05  10  construction is -- is preferable to the one that we had

02:15:07  11  submitted, so we are fine with that.

02:15:08  12          And you we are similarly fine with your

02:15:11  13  construction of S and feel no reason to argue otherwise.

02:15:15  14  Thank you.

02:15:15  15          THE COURT:  All right.  Thank you.

02:15:16  16          Anything further from either side?

02:15:19  17          MR. HARKINS:  No, Your Honor.

02:15:20  18          MR. FINDLAY:  No, Your Honor.  Thank you.

02:15:22  19          THE COURT:  All right.  Well, thank you,

02:15:23  20  gentlemen.  Your arguments have been helpful.  And I will

02:15:27  21  endeavor to get a ruling out promptly.

02:15:30  22          And with that, we are adjourned.  Thank you.

02:15:32  23          MR. FINDLAY:  Thank you, Your Honor.

02:15:33  24          COURT SECURITY OFFICER:  All rise.

02:15:37  25          (Hearing concluded.)

1                              <u>CERTIFICATION</u>

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    <u>/S/ Shelly Holmes</u> <u>          </u>          <u>1/27/20          </u>
     SHELLY HOLMES, CSR, TCRR               Date
10   OFFICIAL REPORTER
     State of Texas No.: 7804
11   Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25