# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **LUMINATI NETWORKS LTD.** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 2:18-cv-483-JRG** |
| | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **BISCIENCE INC.** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(c) AND 35 U.S.C. § 101

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................. 2

III.  ARGUMENT ......................................................................................................... 2

A.    The Patents-in-Suit Claim an Unpatentable Method of Sending an Internet Request from an Intermediary Device Rather than the Original Requestor .................................................. 2

    1.    The '044 patent claims the alleged invention in an abstract way .................................. 3

    2.    The '866 patent claims the alleged invention in an abstract way .................................. 6

B.    The Asserted Claims are Abstract Under Step 1 of *Alice* .................................................. 7

    1.    The '044 patent claims are abstract under *Alice* step 1 ................................................ 8

    2.    The '866 patent claims are abstract under *Alice* step 1 .............................................. 10

    3.    The '044 and '866 patent claims describe typical human interactions, applied to general purpose computers .................................................. 12

C.    Nothing in the Asserted Claims Converts the Abstract Idea to an Inventive Concept Under *Alice* Step 2 .................................................. 14

    1.    The '044 patent claims conventional computer devices to send and receive information using standard Internet protocols, and does not transform the claims into patent-eligible subject matter .................................................. 14

    2.    The '866 patent claims do not add anything that transforms the claims into patent-eligible subject matter .................................................. 17

IV.   CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014) ............................................................................... passim

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014) ........................................................................ 16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 .............................................................................................. 9, 11

*CyberFone Systems, LLC v. CNN Interactive Group, Inc.,*
558 F. App'x 988 (Fed. Cir. 2014) ............................................................ 9, 11, 12

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016) ...................................................................... 9, 17

*Intellectual Ventures I LLC v. Capital One Bank,*
792 F.3d 1363 (Fed. Cir. 2015) .................................................................. 2, 9, 11

*Interval Licensing LLC v. AOL, Inc.,*
896 F.3d 1335 (Fed. Cir. 2018) ..................................................................... passim

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
566 U.S. 66 (2012) ........................................................................................... 10

*Parus Holdings, Inc. v. Sallie Mae Bank,*
137 F. Supp. 3d 660, 673-74 (N.D. Cal. 2015) .................................................... 9

*Reese v. Sprint Nextel Corp.,*
774 Fed. App'x 656 (Fed. Cir. 2019) ........................................................... 8, 9, 17

*Specialized Monitoring Solutions, LLC v. ADT LLC,*
367 F. Supp. 3d 575, 581-82 (E.D. Tex. 2019)…............................................... 8, 11

STATUTES

35 U.S.C. § 101 ............................................................................................. 1, 19

OTHER AUTHORITIES

Fed. R. Civ. P. 12(c) ....................................................................................... 1, 19

Defendant BIScience (2009) Ltd. (which Plaintiff alleges is also known as BIScience Inc.) (hereinafter referred to as "BIScience") moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) to dismiss Luminati's patent infringement claims because the asserted patent claims are invalid under 35 U.S.C. § 101.[1]

## I.    INTRODUCTION

Luminati's claims are textbook examples of abstract claims that cannot survive pursuant to 35 U.S.C. § 101 and relevant Supreme Court and Federal Circuit case law. To avoid any procedural issues, BIScience waited for the Court to construe the asserted claims and now files this motion as soon as practicable following the Court's Claim Construction Memorandum Opinion and Order ("Cl. Const. Order") (Dkt. No. 130). If the Court grants this motion, it will be dispositive as to all asserted patent claims.

Luminati's alleged invention is simply the concept of using an intermediary to obtain information, so that the user seeking the information need not disclose the user's identity to the target which possesses the information. This is not just BIScience's interpretation of Luminati's purported invention—it is uncontested. Luminati described its own alleged "invention" during claim construction that it is able to obtain "that information from certain requesting devices, such as the routine practice of competitors seeking publicly available pricing information." In order to do that, "the residential proxy service of the claims sends requests through one or more of a large group of residential proxy devices, such as individual cell phones devices"… and "the target will allow the queries and not artificially block them."   Dkt. No. 109, (Lum. Cl. Constr. Br.) p. 2.

Luminati claimed this abstract invention in the broadest and most generic way possible. Its claims recite the "sending" and "receiving" over the Internet of information between general purpose

---

[1] A Rule 12(c) motion for judgment on the pleadings is an appropriate way to raise § 101 where, as here, there are no genuine issues of material fact precluding resolution of the § 101 issue.  *See, e.g., Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1341, 1342 n.4 (Fed. Cir. 2018).

computers and servers using standard Internet IP addresses and URL addresses. The Federal Circuit has made abundantly clear in *Interval Licensing*, *Electric Power Group*, *Intellectual Ventures* and other cases that claims directed to the sending, receiving, manipulation, or analysis of information fail the first step of the Supreme Court's *Alice* inquiry. And there is nothing in the claims that comes close to an advancement in computer technology or anything else that could be deemed to render the claims patent eligible under *Alice* step two.

In short, Luminati has acquired patents on the centuries-old abstract idea of using an intermediary to obtain information. Luminati cannot render the idea non-abstract by having a computer serve as the intermediary or by having the intermediaries use the Internet for communication. The Court should invalidate Luminati's claims under controlling precedent.

## II.     FACTUAL BACKGROUND

The Patents-in-Suit are U.S. Patent Nos. 9,241,044 (the "'044 patent") and 9,742,866 (the "'866 patent"). The asserted claims consist of: (i) independent claim 81 and dependent claims 82-107 from the '044 patent and (ii) independent claim 15 and dependent claims 16-28 from the '866 patent (the "Asserted Claims").  Dkt. No. 109, (Lum. Cl. Constr. Br.) p.2.  Luminati originally asserted independent claim 108 of the '044 patent, but the Court invalidated it as indefinite. Dkt. No. 130 (Cl. Constr. Order) at 20.

The Patents-in-Suit are divisionals, sharing the same inventors, specification and title. Their applications were filed on August 26, 2014 and claim priority to August 28, 2013. The '866 patent is a divisional of its parent, the '044 patent. The Court construed the Asserted Claims in a Claim Construction Memorandum Opinion and Order dated December 6, 2019, Dkt. No. 130.

## III.    ARGUMENT

### A.    The Patents-in-Suit Claim an Unpatentable Method of Sending an Internet Request from an Intermediary Device Rather than the Original Requestor

The Patents-in-Suit claim nothing more than general purpose computers and servers

sending or receiving information to or from one another over standard Internet connections, so that a requesting device can obtain information from a target server by using intermediary devices instead of directly contacting the target server itself. Luminati emphasized this point in claim construction when it explained the alleged inventions of the Patents-in-Suit:

> "A problem in the art was the fact that certain websites with public information nevertheless create technological roadblocks to obtaining that information from certain requesting devices, such as the routine practice of competitors seeking publicly available pricing information. To overcome these artificial hindrances to information voluntarily made public to others, the residential proxy service of the claims sends requests through one or more of a large group residential proxy devices, such as individual cell phone devices. As the proxy devices belong to real people who otherwise send such requests to target web servers as customers, the target will allow the queries and not artificially block them. Additional dependent claims of the inventions divide requests among a pool of residential proxy devices and select proxy devices, for example, based upon past activities, timing and geographic location, all of which makes it much harder for the target server to identify requests from a proxy device that originated from a competitor."

Dkt. No. 109, (Lum. Cl. Constr. Br.) p.2.

Similarly, in its Technology Tutorial, Luminati presented the following exemplary "Problem" that its inventors solved: A requestor at Sears.com seeks content from Target.com, but risks having its Internet request blocked because Sears is a competitor of Target. Dkt. No. 110, Ex.1, p.9. The "Solution" is that the Sears.com client uses a proxy device owned by "Ms. X," which Target.com allows to access its website, so that the content may be sent from Ms. X's device to Sears. *Id.* at 11; *see also id.* at 15-16 (showing use of proxy device to avoid being blocked by Craigslist based on geographical restriction). A variation of this "Solution" is that the content could be "partitioned" into slices and multiple proxy devices could obtain the content slices from the target server. *Id.* at 20 (using Craigslist example).

### 1. The '044 patent claims the alleged invention in an abstract way

Given the Federal Circuit's holdings[2] that the sending, receiving, and displaying of information by general purpose computer devices is abstract and unpatentable, it is important to examine the precise way the Asserted Claims recite the "invention." When doing so, one can see that Luminati claimed the alleged invention in the most high-level and abstract possible way. Claim 81, the only remaining independent Asserted Claim of the '044 patent, reads as follows:

> 81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
>
> (a)  sending the first identifier to the first server;
> (b)  sending a first request to the first server;
> (c)  receiving the second identifier from the first server;
> (d)  sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
> (e)  receiving the first content from the second device.

The Court held that "the lettered method steps are performed 'by a first device,' which is set forth in the preamble." Dkt. No. 130, p. 19 citing *Tesonet*, 2019 U.S. Dist.LEXIS 141513, at *76-83. The Court also adopted the reasoning and ruling expressed in *Tesonet* regarding the role of the various components in performing the steps of Claim 81. Dkt. No. 130, Cl. Const. Order, p.17.  In *Tesonet*, the Court construed "sending a first request" to mean "sending, by the first device, a request for an identifier of the second device." *Tesonet* Cl. Const. Order, Dkt. No. 121, p.62. Based on the preamble's requirement that content is fetched "from a second server," the Court further determined, in *Tesonet*, that "[t]he step of 'receiving the first content from the second device' thus requires that the content must be from the second server." *Id.* at 55.

Claim 81 is fairly described as follows: (a) a first device sends its own identifier (e.g., a

---

[2] *See, e.g., Interval Licensing LLC* and *Electric Power Group* cases discussed herein at Section III(B).

4

standard IP address or other Internet identifier)[3] to a server, (b) the first device sends a request to the server for an identifier of a second device; (c) the first device receives an identifier (e.g., a standard IP address or other Internet identifier) of the second device from the server; (d) the first device sends a request to the second device using the second device's identifier, with the request including a content identifier (*e.g.*, a standard Internet URL web address)[4] and an identifier of another (second) server which presumably possesses the content in question; and (e) the first device receives the content from the second device, where the content "must be from the second server" (*i.e.*, the target server).

The dependent Asserted Claims recite high-level, routine limitations in addition to those of claim 81, and may be grouped into categories. Claims 82, 87, 89, and 101 simply recite additional content requests or communications between devices—such as seeking additional content from an additional target server in the same manner as claim 81—and are nearly identical in nature to claim 81. Claims 83-86, 88, 90-91, and 106-07 recite that the claimed steps are performed based on a certain timing, such as before, after, or concurrently with another step. Claims 92-100 recite the selection of the second device based on high-level criteria such as "randomly" (claim 94) or based on "past activities" (claim 99). Claims 102-03 recite the "third server" and "second server" being either the "same" or "distinct" from one another. And claims 104-05 recite the "second content" and "first content" being either the "same" or "distinct."

As a result, the '044 patent claims routine and ordinary devices and servers that send and receive requests or content to or from one another in a routine and ordinary way. The '044 patent claims are abstract under step 1 of *Alice* as further discussed below in Section III(B)(1), and do

---

[3] Claim 81 requires identification "in the Internet," and the specification shows that the identifier may be an Internet IP address. *See, e.g.*, '044 Pat. at Fig. 5a, Fig. 15, 61:67-62:2.

[4] *See, e.g.*, *Tesonet* case, Dkt. No. 61 (Lum. Cl. Constr. Br.) at 15 (agreeing that a content identifier may be a standard Internet identifier such as a URL, IP address, or HTTP header).

not come close to claiming any additional features or inventive concepts that would render them patent-eligible under *Alice* step 2, as discussed below in Section III(C)(1).

### 2. The '866 patent claims the alleged invention in an abstract way

The '866 patent, a divisional of the '044 Patent, claims its alleged invention in a similarly abstract way. The single independent Asserted Claim of the '866 Patent recites the following:

> 15. A method for fetching a content over the Internet from a first server identified in the Internet by a second identifier via a group of multiple devices, each identified in the Internet by an associated group device identifier, the method comprising the step of partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:
>
> (a)   selecting a device from the group;
> (b)   sending over the Internet a first request to the selected device using the group device identifier of the selected device, the first request including the content slice identifier and the second identifier;
> (c)   in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and wherein the method further comprising the step of constructing the content from the received plurality of content slices, and wherein each of the devices in the group is a client device.

This claim thus requires the fetching of content from a server "via" intermediary devices (here "via a group of multiple devices") as in the '044 patent.

The claim additionally requires "partitioning the content into a plurality of content slices" and then, "for each of the content slices," sending an Internet request to a selected device, receiving each content slice, and then "constructing the content." These terms do not have specialized meanings and instead simply refer to the splitting and then re-constructing the content. "Partitioning the content" means "splitting the content into multiple content slices that each include some or all of the content (the resulting content slices may be overlapping or non-overlapping))" where a "content slice" is "some or all of the content, created by partitioning the content and useable with other content slices to re-construct the content." Dkt. No. 130, Cl. Constr. Order, p. 42 (citing *Tesonet*, 2019 U.S. Dist. LEXIS 141513, at *56–62 (citing '866 Patent col.168 ll.48–

6

50)). According to the *Tesonet* Claim Construction Memorandum Opinion and Order "Constructing the content" means "assembling or combining content slices so as to re-construct the original content." *Tesonet* Cl. Const. Order, Dkt. No. 121, p. 48. Further, claim 15 does not identify any particular device that must perform the claimed "partitioning" or "constructing" steps, further highlighting the abstractness of the claim.

Dependent claims 16-28 add certain high-level, routine steps to Claim 15. Claims 16-18 recite that partitioning of content is based on a common and ordinary attribute of content like "bit, nibble, byte, multi-byte, number, character, word, or string level" (claim 16), "file or program level" (claim 17), or "webpages level" of website content (claim 18). Claims 19-22 recite basic sizes or characteristics of content slices, such as all slices having the same size (claim 20) or at least two slices being the same (claim 21). Claims 23-24 recite the partitioning being either sequential or non-sequential. Claims 25-28 recite basic comparisons between the content slices and intermediary devices, such as having an equal number of content slices and devices (claim 25) or having fewer or more content slices than devices (claims 27-28).

The '866 Asserted Claims are therefore like claim 81 of the '044 patent and, according to Luminati, correspond to Luminati's Technology Tutorial Slide 20 which depicts the usage of multiple proxy devices to retrieve different pieces of the content instead of one proxy device. Dkt. No. 110, Ex.1 (Lum. Tech. Tutorial) at 19-20. The '866 patent, like the '044 patent, concerns the sending and receiving of information, which is abstract. *See infra* Section III(B)(2). The claims include no features that could render them patent eligible. *See infra* Section III(C)(2).

### B.    The Asserted Claims are Abstract Under Step 1 of *Alice*

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). *Alice* established a two-step test for determining whether a claim is directed to an unpatentable idea. First, the court determines

"whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Id.* at 217. Multiple Federal Circuit cases "involve claims that are directed to the collection, organization, analysis, and display of information," and the court "has repeatedly held that such claims are directed to abstract ideas." *Specialized Monitoring Solutions, LLC v. ADT LLC*, 367 F. Supp. 3d 575, 581-82 (E.D. Tex. 2019) (Bryson, Circuit Judge).

### 1.    The '044 patent claims are abstract under *Alice* step 1

Claim 81 is quoted and discussed above in Section III(A)(1). Its claim scope may be illustrated as follows, where first/second devices are shown here by laptop computers with either a "1" or "2" label, and first/second servers are shown by the physical computer object:



The diagram above illustrates the operations described in claim 81, in view of the Court's claim construction. The above diagram is also consistent with Figure 5b of the '044 patent, which supports the manner in which the Court interpreted claim 81.

There is little question that claim 81 is abstract under *Alice* step 1 and Federal Circuit case law. Not only is claim 81 primarily directed to the sending and receiving of standard Internet information or content between general purpose devices or servers, but it also recites nothing other than the sending and receiving of such information. That is the entirety of the claim.

This case is analogous to the recent Federal Circuit case *Reese v. Sprint Nextel Corp.*, 774 Fed. App'x 656 (Fed. Cir. 2019). *Reese* involved two method claims that—as with claim 81— recited lettered method steps for the "receiving" and "sending" of information between devices. *Id.* at 658-59. The Federal Circuit noted that "[t]he claims are directed to the abstract idea of

receiving information (a calling phone number flagged as private) and sending an indication (an audible tone) to a party already engaged in a call." *Id.* at 660. The claims were "akin to concepts of receiving and displaying (indicating) information (an incoming call from a private number) that fall into a familiar class of claims directed to abstract ideas." *Id.* The Federal Circuit rejected the plaintiff's argument that the claims "require specific telephone features" because "merely limiting claims to a particular technological environment does not render the claims any less abstract." *Id.*; *see also Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660, 673-74 (N.D. Cal. 2015) (invalidating as abstract claims for using a "computer and telecommunications network for receiving, sending and managing information from a subscriber to the network and from the network to a subscriber").

Similarly, in *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016), the court explained that the act of collecting information is "within the realm of abstract ideas." The court noted that "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.* at 1354. The court therefore held that claims involving "a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions" were directed to an abstract idea. *Id.*[5]

---

[5] The Federal Circuit has ruled similarly many times. *See, e.g., CyberFone Systems, LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 990, 992 (Fed. Cir. 2014) (claim was not patent eligible where it comprised obtaining data entered on a telephone, separating it into component parts, and sending those parts to different destinations based on the information in the transmitted data); *Intellectual Ventures I LLC v. Capital One Bank*, 792 F. 3d 1363, 1371 (Fed. Cir. 2015) (asserted claims "consist [ ] of nothing more tha[n] the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria, . . . and the transmission of information derived from that entered data to a computer use, all through the use of conventional computer components, such as a database and processors, operating in a conventional manner"); *Interval Licensing LLC v. AOL, Inc.*, 896 F. 3d 1335, 1346 (Fed. Cir. 2018) ("[T]he recited claims are directed to an abstract idea because they consist of general and conventional information acquisition and organization steps that are connected to, but do not convert the abstract idea . . . into a particular conception of how to carry out that concept."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F. 3d 1343,1347 (stating that "collecting data," "recognizing certain data within the collected data set, " and "storing that recognized data in memory" is abstract).

As in the above-cited cases, claim 81 recites the sending and receiving of information—namely (i) standard IP addresses or other Internet identifiers, (ii) standard URLs or other Internet content identifiers, and (iii) standard Internet content. *See supra* Section III(A)(1). Even if one could render the claims less abstract by limiting them to a technological environment—which is not permissible—there is no technological environment to speak of in claim 81 other than generalized Internet communications involving general purpose computer devices or servers.

Each remaining Asserted Claim is ultimately dependent from claim 81 and fails for the same reasons previously discussed because it simply appends a high-level, conventional step to an already abstract idea. *See, e.g.*, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 82 (2012) ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."). None of the dependent claims makes claim 81's steps less abstract. *See supra* Section III(A)(1) (discussing subject matter of dependent claims).

### 2.    The '866 patent claims are abstract under *Alice* step 1

Claim 15, the sole independent Asserted Claim of the '866 patent, is similar to the claims of the '044 patent. Again, content is fetched over the Internet from a target server (here the "first server") "via" intermediaries ("a group of multiple devices"). '866 patent, claim 15. The content is "partition[ed]" into "slices" such that each slice may be obtained from the target by a different intermediary and the content re-constructed, without any identification of the device that performs the partitioning or constructing. *See id.*; *see supra* Section III(A)(2). Once again, the claim is generic, such that a "slice" into which content is "partition[ed]" may even contain all of the content.

Claim 15 is abstract for the same reasons—and in view of the same cases—discussed above in Section III(B)(1) because it also relates to the collection and/or organization of data. The one

apparent difference between claim 15 of the '866 patent and claim 81 of the '044 patent is that the requested content is "partition[ed]" into "content slices" and then later "construct[ed]" (or re-constructed) after the "content slices" are received. These steps relate to the manipulation of data and are similarly abstract. "The Federal Circuit has observed that claims to computerized gathering, encoding, organizing, manipulating, transferring, and displaying data are directed to abstract ideas." *Specialized Monitoring Solutions,* 367 F. Supp. 3d at 586.

*CyberFone* is particularly relevant to the "partitioning" and "constructing" steps of claim 15. 558 F. App'x at 992. The method in *CyberFone* comprised obtaining data entered on a telephone, separating it into component parts, and sending those parts to different destinations based on information in the data. *Id.* at 990. The court held that "the idea of collecting information in classified form, then separating and transmitting that information[6] according to its classification, is an abstract idea that is not patent-eligible." *Id.* at 992. "[O]btaining, separating, and then sending information" does not confer patentability, and "mak[ing] the originally-gathered information accessible to different destinations without changing the content[7] or its classification" did not add anything of substance to the "mere collection and organization of data." *Id.* at 993.

*CyberFone* is not alone in recognizing that manipulating or splitting data, and sending/receiving such data, is not patentable. In *Intellectual Ventures*, the claims were not patentable where they "consist[ ] of nothing more tha[n] the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria, . . . and the transmission of information derived from that entered data to a computer user," through usage of conventional computers. 792 F.3d at 1371. Similarly, *Content Extraction* concerned "recognizing certain data within [a] collected data set" and storing the recognized data, and those claims were

---

[6] Claim 15 recites the "partitioning" or "splitting" of transmitted content, similar to *CyberFone*.
[7] Claim 15 re-constructs original content, similar to *CyberFone*'s "without changing the content" phrase.

also abstract. 776 F.3d at 1347; *see also Interval Licensing*, 896 F.3d at 1344-45 ("claims directed to a single display of information collected from various sources are abstract," and "collecting, analyzing, and displaying [] information, without more, is an abstract idea").

The dependent claims add only high level, routine steps to claim 15 and fail to render the claimed invention non-abstract. *See supra* Section III(A)(2) (describing dependent claims).

### 3.    The '044 and '866 patent claims describe typical human interactions, applied to general purpose computers

For purposes of *Alice* step one, courts may look to whether the claimed invention is essentially an aspect of basic human nature, disguised in the language of general-purpose computers or related technology. *See, e.g.*, *Interval Licensing,* 896 F.3d at 1344 (analogizing invention to "passing a note to a person who is in the middle of a meeting"). That is precisely the case with the Patents-in-Suit. Luminati describes its own alleged inventions as a method for a computer user to obtain information from a target server using an intermediary, so that the target server does not know the request is from the user. *See supra* Section III(A).

Using an intermediary to obtain information is a well-known, centuries-old human interaction. *See, e.g., Alice*, 573 U.S. at 220, 224 (stating that "use of a third-party intermediary (or 'clearing house') is also a building block of the modern economy" and rejecting claims where "[t]he computer is itself the intermediary"). Indeed, Luminati's alleged "invention" has likely occurred in every middle school across the country for decades as shown by the following example: Bill wants to know whether Alice has plans to go to the school dance. He does not want to ask her himself because he is shy (and he would not ask her to go if she already has plans), so he asks his friend Mike to suggest someone who could check with Alice first. Mike tells Bill to ask Alice's friend Susan. Bill therefore makes his request to Susan, who in turn obtains the relevant information from Alice and provides it to Bill.

Using a diagram modeled after the one in Section III(B)(1) relating to the alleged invention, the above "middle school" example yields the following diagram:



In other words, this basic use of an intermediary as shown above operates in exactly the same manner as Luminati's alleged invention, with the limited exceptions that (i) Bill, Alice, Mike, and Susan are represented by computers and servers in the alleged invention, (ii) the "device identifier" is the name of a person rather than an IP address, and (iii) the "content identifier" is a description of the requested information instead of a URL. One cannot obtain an invention over something so abstract by using general purpose computers as the actors that are communicating using general Internet communication protocols. *See Interval Licensing*, 896 F.3d at 1346 ("It is well-settled that placing an abstract idea in the context of a computer does not 'improve' the computer or convert the idea into a patent-eligible application of that idea.").

The above example is not the only example of using standard intermediaries. Everyone is also familiar with insurance brokers, who—for many decades predating Luminati's alleged invention—have served as intermediaries between customers and insurance companies. It is customary for a customer ("first device" in the meaning of the alleged invention) to use a book, computer website, or even a friend ("first server") to learn the name of an insurance broker ("second device"), and ask the insurance broker to obtain information from a third-party insurance company ("second server") and to provide such information back to the customer.[8]

---

[8] This insurance agent example does not include the requestor (customer) *secretly* obtaining the information from the insurance company through the intermediary. Although Luminati has emphasized that secrecy point as part of its invention, it is not claimed.

The '866 patent analysis is substantially the same. The alleged invention is no less abstract merely because one can break up the requested information into multiple pieces or "slices." Using the "middle school" example above, Bill could ask Mike for multiple intermediaries, instead of just one intermediary, who could each seek information from Alice. For example, Susan could ask Alice about whether she intends to go to the dance, and Jane, a second intermediary, could ask Alice what time she would want to go to the dance. Susan and Jane could report back to Mike, who could then compile the received information. This usage of content "slices" from multiple intermediaries does not render the alleged invention any less abstract.

### C.    Nothing in the Asserted Claims Converts the Abstract Idea to an Inventive Concept Under *Alice* Step 2

*Alice* step two looks to whether the elements of the claim, considered "both individually and 'as an ordered combination,'" add enough to "'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78). Neither the '044 nor the '866 Asserted Claims pass *Alice* step two.

#### 1.    The '044 patent claims conventional computer devices to send and receive information using standard Internet protocols, and does not transform the claims into patent-eligible subject matter

As already shown, the '044 Asserted Claims are nothing other than a series of abstract method steps where devices and servers send and receive information between one another. *See supra* Sections III (A)(1), III(B)(1). Further—and particularly relevant with respect to *Alice* step two—the '044 patent is very clear that its alleged invention is carried out by standard computers and servers, using the Internet. Indeed, this *must* be the case given that the "invention" is directed to routing an Internet information request to an intermediary computer device so that the intermediary can obtain the content over the Internet from a target server. *Tesonet* case, Dkt. No. 61 (Lum. Cl. Constr. Br.) at 1. If the '044 patent instead used specialized and novel equipment or communication protocols, the entire point of its alleged invention would be lost, as the target server

14

would not recognize and respond to the relevant communication. The '044 patent is crystal clear about the generalized computer equipment that is employed.

The specification of the '044 patent unequivocally states that a "device or network element" discussed in the patent may be any conceivable device with computing power, literally including a kitchen stove, refrigerator, or trash compactor:

> Any device or network element herein may comprise, consists of, or include a Personal Computer (PC), a desktop computer, a mobile computer, a laptop computer, a notebook computer, a tablet computer, a server computer, a handheld computer, . . . an air conditioner, dishwasher, clothes dryer, drying cabinet, freezer, refrigerator, kitchen stove, water heater, washing machine, trash compactor . . .

'044 Pat. at 164:64-165:10. And although the terms "device" and "server" are separately used in the Asserted Claims, the patent asserts that those terms are intended to be generic and used interchangeably. *Id.* at 116:64-67 ("Alternatively or in addition, each of the devices that are not denoted herein as servers, may equally function as a server in the meaning of client/server architecture."); 116:34-36 ("Alternatively or in addition, each of the devices denoted herein as servers, may equally function as a client in the meaning of client/server architecture.").[9]

Further, the conventional devices recited in the claims use standard Internet communication protocols:

> Any networking protocol may be utilized for exchanging information between the network elements (e.g., clients, tunnels, peers, servers) within the network (such as the Internet). For example, it is contemplated that communications can be performed using TCP/IP. Generally, HTTP and HTTPS are utilized on top of TCP/IP as the message transport envelope.

*Id.* at 166:1-6; *see also id.* at Fig. 5a, Fig. 15, 61:67-62:2 (referring to IP addresses as examples of "identifier[s]" of devices).

---

[9] The specification also states that "[t]he arrangements and methods described herein may be implemented using hardware, software or a combination of both." *Id.* at 165:35-37. "Device" has been construed, consistently with the above examples from the specification, as "a physical device." *Tesonet* case, Dkt. No. 121 (Cl. Constr. Order) at 15.

Luminati has claimed generic, off-the-shelf physical computing devices communicating over the Internet using only generic, ordinary protocols. Luminati has not identified, whether in its Amended Complaint or otherwise, any allegedly inventive concept that could somehow render its patent claims—which are implemented with generic devices and generic protocols over the well-known Internet—patent eligible. To the contrary, Luminati's allegations in its pleadings highlight the generic nature of its claims. Luminati concludes in its Amended Complaint that BIScience's accused product includes a first device, second device, first identifier, and second identifier simply because "BIScience's proxy residential network used for the GeoSurf service comprises numerous devices each of which is identifiable by its own IP address ("identifier"), which are stored on servers through the execution of Server Software under the control and/or direction of BI Science." Dkt. No. 28 (Amend. Compl.) at ¶ 34. Luminati alleges that "this network would permit a user to access Internet content ('First Content'), identifiable by a content identifier such as a URL ('First Content Identifier') from a target server ('Second Server'), identifiable by its own corresponding IP address ('Third Identifier')." *Id.* at ¶ 35.

Simply put, Luminati appears to have done as much as possible to make its claims generic and non-specific. Luminati's claims are so broad as to encompass the "basic concept" related here to the sending and receiving of information to allow an intermediary to obtain information from a server. "That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014). Indeed, "[t]he computers in *Alice* were receiving and sending information over networks connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient." *Id.*; *see also Interval Licensing*, 896 F.3d at 1347 (stating that the claims were "so broad that they encompass the basic concept of displaying two sets of information, using any means to display them without overlap, in which the secondary data set is acquired and organized

by generic, conventional steps"). As in *Reese*, "[n]othing in the claims requires anything other than conventional [] equipment to perform the generic functions of receiving and sending information." 774 Fed. App'x at 661. The patent claims focus solely on the result of obtaining content via an intermediary device, as opposed to an improved computer or network. *See Interval Licensing*, 896 F.3d at 1344 (citing cases for proposition that a "result-based" alleged invention does not pass muster under Section 101).

In *Electric Power Group*, the Federal Circuit emphasized that "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes." 830 F.3d at 1355. The court pointed out that "[t]he claims in this case do not even require a new source or type of information, or new techniques for analyzing it." *Id.* The claims did not require "anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Id.* at 1355.

Independent claim 81 recites usage of off-the-shelf, conventional computer devices to send and receive content or data among one another, and does not render the claims patent eligible. Each remaining Asserted Claim is ultimately dependent from claim 81 and fails for the same reasons previously discussed because no claim adds anything that would make the claimed invention patent eligible. *See supra* Section III(A)(1). The dependent claims do not add any arguable patent-eligible concept to claim 81 because they are directed to basic concepts such as additional content requests as in claim 81, the timing of steps, high-level criteria for the selection of a second device, and/or whether target servers or content are the same or different. *See id.*

### 2.    The '866 patent claims do not add anything that transforms the claims into patent-eligible subject matter

As with the '044 patent, there is nothing to transform claim 15 of the '866 patent into a patent-eligible invention. The two patents share a common specification, so the discussion above concerning

the disclosure of general-purpose computers and Internet communications applies with equal weight with respect to the '866 patent. *See supra* Section III(C)(1).

The idea of "partitioning" content into "slices" (or re-constructing the content) also does not render the alleged invention patent eligible. The patent describes no particular technology or inventive methodology for partitioning content, and Luminati has admitted that "the word 'partition' is used broadly in the '866 patent." *Tesonet* case, Dkt. No. 61 (Lum. Cl. Constr. Br.) at 23. Indeed, dependent claims 16-18 recite that partitioning of content is based on a common and ordinary attribute of content like "bit, nibble, byte, multi-byte, number, character, word, or string level" (claim 16), "file or program level" (claim 17), or "webpages level" of website content (claim 18). Further, Luminati has clarified, in their recent attempt to amend their infringement contentions[10], that "partitioning" and "selecting" can be nothing more than a human user visiting the same website more than once. Plaintiff's Amended Infringement Contentions ('866 Patent), pp. 37 and 38.

In short, Luminati tries to claim the abstract notion of partitioning and then re-constructing content obtained from standard Internet sources without any technological improvements or even any technological requirements beyond standard computer and Internet usage. This is legally impermissible. *Interval Licensing* pointed out the "generic" instructions and "broad functions" discussed in the patent specification at issue, among other things, to reject the notion that the patent provided an improvement in computing. 896 F.3d at 1346. Luminati relies in a generic fashion on typical HTML communications among generic computers to accomplish its claimed steps, and the claims fail to pass muster under *Alice* step two.

As with the '044 patent claims, claim 15 of the '866 patent fails to "offer a particular solution to a problem" but instead attempts to broadly claim an "information-based improvement" like the "presentation of information in conjunction with other information" in *Interval Licensing*. *See id.* at

---

[10] Plaintiff served its amended infringement contentions which are improper and the subject of BIScience's Motion to Strike Plaintiff's Amended Infringement Contentions.

1347. Claim 15 recites the exchanges, organizations, or manipulations of information, but not a technical solution. "Such an information-based improvement is not an improvement 'rooted in computer technology.'" *Id.*

Nor do the dependent claims add any arguably patent-eligible concept to claim 15. *See supra* Section III(A)(2). Instead, the dependent claims' references to standard ways to split content, different content sizes, or the relative numbers of content slices and intermediary devices are restricted to standard, general-purpose computer environments, like claim 15.

## IV.    CONCLUSION

For these reasons, BIScience respectfully requests that the Court hold all of Luminati's Asserted Claims invalid under 35 U.S.C. § 101 and dismiss Luminati's patent-infringement claims pursuant to Fed. R. Civ. P. 12(c).

Dated: February 10, 2020                                  Respectfully submitted,

                                                         */s/ Eric H. Findlay*
                                                         Eric H. Findlay (TX Bar No. 00789886)
                                                         Brian Craft (TX Bar No. 04972020)
                                                         Debby Gunter (TX Bar No. 24012752)
                                                         FINDLAY CRAFT, P.C.
                                                         102 North College Avenue, Suite 900
                                                         Tyler, Texas 75702
                                                         Tel: (903) 534-1100
                                                         Fax: (903) 534-1137
                                                         Email: efindlay@findlaycraft.com
                                                         Email: bcraft@findlaycraft.com
                                                         Email: dgunter@findlaycraft.com


                                                         Ronald Abramson
                                                         M. Michael Lewis
                                                         Liston Abramson LLP
                                                         405 Lexington Ave.
                                                         s46th Floor
                                                         New York,, NY 10174
                                                         212-257-1630
                                                         Fax: 917-633-5568
                                                         ron.abramson@listonabramson.com
                                                         michael.lewis@listonabramson.com

*ATTORNEYS FOR DEFENDANT*
*BISCIENCE*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  This document will be served on Defendant in accordance with the Federal Rules of Civil Procedure.

*/s/ Eric H. Findlay*
Eric H. Findlay