# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-CV-00483-JRG |
| v. | § | |
| | § | FILED UNDER SEAL |
| BI SCIENCE, INC., | § | |
| Defendant. | § | |

## PLAINTIFF LUMINATI NETWORKS LTD.'S
## MOTION TO ENFORCE SETTLEMENT AGREEMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND.............................................................................................. 2

III. DEFENDANT'S REQUESTS FOR MATERIAL CHANGES TO ALREADY AGREED UPON SETTLEMENT TERMS ........................................................................................... 6

IV. ARGUMENT....................................................................................................................... 7

   a. The Court Has the Authority to Determine the Validity of Agreement ............................. 7

   b. The Parties' Acceptance of the Mediator's February 23, 2020 Proposal Created a Valid Enforceable Settlement Agreement. .................................................................................. 8

   c. Defendant's Request for a "More Formal" Settlement Agreement Does Not Render the February 23, 2020 Settlement Agreement Unenforceable. ................................................. 9

   d. Agreement to a Mediator's Proposal Creates a Valid and Enforceable Agreement.......... 11

V. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904 (5th Cir. 2000) ..................................... 10
*In re Deepwater Horizon*, 786 F.3d 344 (5th Cir. 2015) ...................................................... 8, 9, 10
*Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386 (5th Cir. 1984)............................................ 7, 8
*Neurovision Med. Prods., Inc. v. Meditronic Pub. Ltd. Co.*, No. 2:16-CV-00127-JRG-RSP, 2017 U.S. Dist. LEXIS 51610 (E.D. Tex. Apr. 4, 2017) ....................................................... 7, 8, 9, 10
*Thorton v. AT&T Advertising, L.P.*, 390 S.W.3d 702 (Tex.App. 2012)......................................... 8

## I. INTRODUCTION

Having agreed to a mediator's proposal on February 23, 2020 ("Settlement Agreement"), and jointly filed a motion to stay the case based on this settlement, Defendant BI Science (2009) Ltd., also known as BI Science Inc. ("BI Science" or "Defendant") has refused to execute the Settlement Agreement and now demands modifications to its material terms to the detriment of Luminati Networks Ltd. ("Luminati").

The Settlement Agreement includes ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. A full and complete set of terms was reduced to writing and agreed upon by both sides and confirmed in writing on behalf of the parties by Mediator William Cornelius, Jr. ("Mediator"), and that final Settlement Agreement is attached as Exhibit A.[1] Then, after Luminati relied upon the Settlement Agreement in jointly moving the court to stay the case and took other steps in good faith to follow the agreement, BI Science began to demand material changes to the Settlement Agreement now that the consequences of Luminati's motion for sanctions are in the past. Luminati has repeatedly and in good faith moved forward according to the terms of the Settlement Agreement by adding its own signature to the Mediator Signed Copy and requesting BI Science do the same, and at BI Science's request incorporating those terms into a more traditional settlement agreement with standard boilerplate. But BI Science steadfastly refuses to confirm the agreement and instead continues to insist on material changes. It is too late to rewrite a completed Settlement Agreement.

---

[1] As detailed in Mediator Cornelius's February 23, 2020 email announcing the agreement, the mediator's proposal that resulted in settlement comprised three separate writings: ███████████████████████████████████████████████████████████████████████████ Ex. B. The mediator subsequently signed a writing ("Mediator Signed Copy") on behalf of the parties confirming the final terms of the settlement. Ex. A.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████████

## II. FACTUAL BACKGROUND

███████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████
███████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████
████████████████   ████████████████████
████████████████████████████████████ *Id.*
████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████



(emphasis added)

In response to a request from the Mediator, Plaintiff's counsel sent an email on February 23, 2020 at 9:28 A.M. Eastern ▮▮▮ (Ex. J):

▮▮▮

The Mediator informed us that ▮▮▮ and sent an email shortly afterwards at 9:49 A.M. Eastern to both Parties stating,

> "I am very pleased to report that the mediator's proposal has resulted in a settlement. Incorporated into that is ▮▮▮
>
> Unless you object, I will notify Judge Gilstrap of the settlement and request that he cancel Monday's hearing. I will tell him a motion to stay is forthcoming. I will advise if he wants it filed before he will cancel the hearing." (Ex. B).

Defendant's counsel responded at 9:56 A.M. Eastern stating, "Thanks for all your hard work Bill." *Id*.

In this email correspondence, Defendant's counsel neither objected to the Mediator's Proposal nor challenged the terms of the Settlement Agreement. At 12:10 P.M. Eastern, the Mediator informed the parties that he had heard from Judge Gilstrap and that "[h]e will cancel

3

[the] hearing." (Ex. K). Plaintiff's counsel sent the draft joint motion to stay representing that "all matters in controversy between the Parties have been settled, in principle," which was approved by Defendant's counsel at 10:49 A.M. Eastern and subsequently filed shortly thereafter (Dkt. No. 166). (Ex. L). Following the Mediator's 1:10 P.M. Eastern email that the hearing would be cancelled, Defendant's counsel emailed all parties, including the Mediator, asking Plaintiff's counsel for an agreement that the parties would not file "the 6am notice that was called for in [J. Gilstrap's] Order[.]" (Ex. K). That same day, the Court granted the parties' Joint Motion to Stay All Deadlines and Notice of Settlement (Dkt. 167) ordering that all deadlines in the above-captioned case are stayed for thirty days from the date of the Order.

On February 24, 2020, the Mediator submitted to the Court an accurate Supplemental Mediator's Report stating that "[a]fter Mediation was conducted on December 18, 2019, continuing discussions, negotiations, and a mediator's proposal have resulted in settlement of all claims." (Dkt. No. 168). That same day, Plaintiff's counsel consolidated the agreed upon terms in one document and sent that document to the Mediator to ensure that it accurately incorporated the terms of the Settlement Agreement. The Mediator confirmed the accuracy of the document and sent back a signed copy ("Mediator Signed Copy") (Ex. A).

On February 25, 2020, Plaintiff's counsel sent the Mediator Signed Copy to Defendant's counsel signed by Plaintiff with a signature line for Defendant (Ex. C), copying the Mediator, requesting a signed copy of that copy and ████████████████████████████████

████████████████████████████████.

> We received the completed settlement as confirmed by Bill Cornelius that both sides had agreed. We think we should make sure we also have it with our client's signatures. That should also streamline moving forward on executing on the terms. The agreement from Bill ████████████████████████████████
> ████████████████████████████████ Can you please have your client sign and send back ASAP?

4



(Ex. M at 3)

In response, Defendant's counsel stated, ███████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ (*Id.* at 3). Plaintiff's counsel responded reiterating that "[i]t is our understanding we have a final deal[.]" (*Id.* at 2).

On February 27, 2020, Defendant's counsel emailed Plaintiff's counsel copying the Mediator requesting "a more formal agreement setting forth the details and particulars of how the settlement is put into effect in [sic] needed." (*Id.* at 2). Plaintiff's counsel responded that same day providing a more formal version of the settlement agreement (Ex. N), tracking the terms and language that the Parties agreed to and the Mediator confirmed in writing, requesting in good faith that Defendant send any edits for review. (Ex. M at 1). Despite Plaintiff's good faith attempt to draft a more formalized Settlement Agreement acceptable to defendant, Defendant's counsel responded on March 1, ███████████████████████████████ that was a point of negotiation and agreed upon just prior to the Parties entering the Settlement Agreement. (Ex. O at 4).

On March 9, Luminati again requested that BI Science send a signed copy of the settlement agreement and also proposed an █████████████████ (Ex. P) to coordinate the Parties in executing the Settlement Agreement. (Ex. O at 2-3). However, given the lack of response and impending deadlines, Luminati indicated that it was considering raising the issue with the Court.

5

In Defendant's March 11, 2020 response, BI Science stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮," despite BI Science already agreeing to the ▮▮▮▮▮ before the Parties entered the Settlement Agreement. (*Id.* at 1). For the first time, and without challenging the accuracy of the Mediator Signed Copy or other draft "formal" writings that Luminati sent to BI Science, BI Science proposed material edits to the agreement ("BI Science Proposed Modifications" Ex. Q) asserting ▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. O at 1).

### III. DEFENDANT'S REQUESTS FOR MATERIAL CHANGES TO ALREADY AGREED UPON SETTLEMENT TERMS ARE IMPROPER

The BI Science Proposed Modifications attached to Defendant's March 11, 2020 email proposed extensive changes to the material terms of the February 23, 2020 Settlement Agreement. In addition to other material changes, the BI Science Proposed Modification included the following changes to essential terms:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

In addition to others, the above modifications are significant changes to the essential terms of the February 23, 2020 Settlement Agreement that both Parties negotiated through the Mediator. The attached exhibit R is a redline comparing the BI Science Proposed Modifications against the draft agreement proposed to BI Science on February 27, 2020.

## IV. ARGUMENT

Given BI Science's refusal to sign the Mediator Signed Copy and attempt to change essential terms of the Settlement Agreement through the BI Science Proposed Modifications, Luminati has no choice but to seek relief from the Court, including specifically a finding that the February 23, 2020 Settlement Agreement is a binding agreement on the Parties. To permit BI Science to enter a Settlement Agreement, only to turn around and tear up material terms of that agreement once the consequences of Luminati's pending motion for sanctions (Dkt. 159) have passed while Luminati faces a looming deadline ▓▓▓▓▓▓▓▓▓▓, would be a grave injustice to Luminati, which—in good faith—has relied upon and faithfully sought to follow the agreement to its own detriment.

### a. The Court Has the Authority to Determine the Validity of Agreement

"A district court in the Fifth Circuit has inherent power to enforce a settlement agreement in a case pending before it." *Neurovision Med. Prods., Inc. v. Meditronic Pub. Ltd. Co.*, No. 2:16-CV-00127-JRG-RSP, 2017 U.S. Dist. LEXIS 51610, at *5 (E.D. Tex. Apr. 4, 2017) (citing *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984)). "The court has the ability to summarily enforce a settlement 'if no material facts are in dispute,' but 'when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed evidentiary hearing on disputed issues of the validity and scope of the agreement.'" *Neurovision*, No. 2:16-CV-00127-JRG-RSP, at *5

7

(quoting *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015)). "Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-S. Towing*, 733 F.2d at 389.

      **b.    The Parties' Acceptance of the Mediator's February 23, 2020 Proposal Created a Valid Enforceable Settlement Agreement.**

"The existence of a valid contract requires an offer, acceptance in strict compliance with terms of the offer, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding." *Id.* at 15 (citing *Thorton v. AT&T Advertising, L.P.*, 390 S.W.3d 702, 705 (Tex.App. 2012)).

In *Neurovision*, No. 2:16-CV-00127-JRG-RSP, at *3 (E.D. Tex. Apr. 4, 2017), this Court determined that a valid contract existed when (1) the plaintiff stated in an email that "we accept your offer[,]" in addition to summarizing the material terms of the agreement; and (2) defendant responded stating, "This is excellent news. Thanks for working through[,]" without disputing any material term summarized in the previous email or "[taking] issue with the accepting party's characterization of the state of negotiations as an accepted offer. *Id.* at *7 (internal quotations omitted). *See also In re Deepwater Horizon*, 786 F.3d at 355 (finding that contract formation shall be judged by parties' "overt acts and words").

Further, "[c]ourts generally find there is agreement on *all of the material terms of settlement* where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *Neurovision*, No. 2:16-CV-00127-JRG-RSP, at *8-9 (quoting *See In re Deepwater Horizon*, 786 F.3d at 357 n. 26) (internal quotations omitted) (emphasis added).

8

Here, like in *Neurovision*, a valid contract existed (1) when Plaintiff stated in an email to the Mediator that it accepted the mediator's proposal ███████████████████████ ███████████████████████████████████████████████████████████████████ ██████████ (Ex. F); (2) when afterwards the Mediator confirmed that BI Science accepted the agreement announcing to both parties that "the mediator's proposal has resulted in a settlement" and further summarized the specific documents comprising the agreement along with a representation that such documents had been shared with BI Science (Ex. B); and (3) when Defendant confirmed the accuracy of the Mediator's announcement of the settlement by stating, "Thanks for your hard work Bill" and did not take any issue with the Mediator's identification of the specific documents comprising the accepted offer. *Id*.

Additionally, subsequent to the Mediator's announcement, the Parties filed the Joint Motion to Stay All Deadlines and Notice of Settlement, notifying this Court that "all matters in controversy between the Parties have been settled, in principle." (Dkt. No. 166). There is no reasonable dispute that the Mediator's proposal resulted in a valid, enforceable settlement. Moreover, there is an agreement here on all of the material terms of the settlement, as the mediated Settlement Agreement expressly includes ████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████. Accordingly, Plaintiff requests this Court to find that a valid and enforceable contract resulted from the February 23, 2020 Settlement Agreement.

      **c.**    **Defendant's Request for a "More Formal" Settlement Agreement Does Not Render the February 23, 2020 Settlement Agreement Unenforceable.**

Defendant's request for a "more formal" settlement agreement and its March 11, 2020 Modification of the Settlement Agreement does not render the February 23, 2020 Settlement

9

Agreement unenforceable. Following *Neurovision*, "[c]ourts routinely enforce settlement agreements even where the precise wording . . . has not been finalized." No. 2:16-CV-00127-JRG-RSP, at *9 (quoting *In re Deepwater Horizon*, 786 F.3d at 357 n.26). "Merely because an agreement contemplates future acts does not make the agreement unenforceable." *DietGoal Innovations LLC v. Taco John's Int'l, Inc.*, No. 14-CV-00144-F, at *16 (D. Wyo. Oct. 1, 2014) (noting that "subsequent negotiations over the terms of the draft release agreement constitute[d] reduction of the already-formed settlement to a formal document.") (citing *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 911 (5th Cir. 2000)).

In this case, Defendant requested a "more formal agreement" as a ruse to improperly attempt to renegotiate the mediated February 23, 2020 Settlement Agreement. When Plaintiff provided a more formal version of the settlement agreement in good faith, tracking the terms and language that the Parties agreed to and the Mediator confirmed in writing, Defendant has continued to refuse to execute the Settlement Agreement while demanding changes to essential terms of that agreement. As addressed above, the BI Science Proposed Modifications reach far beyond simply formalizing and/or finalizing the mediated settlement. In fact, Defendant concedes in the March 11, 2020 email that Defendant is seeking ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. M) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). This is not at all what the parties agreed to and BI Science has no basis to change the terms of the final Settlement Agreement.

Defendant's purported need for formalization and/or finalization of the mediated settlement does not render the February 23, 2020 Settlement Agreement unenforceable. Further,

Defendant's attempt to renegotiate already settled terms does not indicate that the February 23, 2020 was not valid or enforceable. Accordingly, Plaintiff respectfully requests this Court to issue an order recognizing the Settlement Agreement as valid and compelling BI Science to execute the terms of that agreement.

### d. Agreement to a Mediator's Proposal Creates a Valid and Enforceable Agreement

In *DietGoal*, the court found that a defendant who did not pay or tender an agreed upon payment breached the terms of a mediated agreement under Texas law. *DietGoal Innovations LLC v. Taco John's Int'l, Inc.*, No. 14-CV-00144-F, at *18  In that case, the Court appointed a mediator and ordered the parties to engage in mediation. Following mediated negotiations, on April 11, 2014, the mediator sent an e-mail notifying the parties that "I can now report that both sides accept the proposal so there is agreement to settle the case []." *Id.* at *6. In the days following the mediated settlement, plaintiff's counsel sent defendant's counsel a draft release settlement agreement to memorialize the mediation settlement terms announced by the mediator on April 11, 2014. Afterwards, the parties exchanged emails to discuss the draft release agreement, and on April 23, 2014, defendant's counsel emailed plaintiff's counsel a redline copy of plaintiff's draft release agreement, which included "additional and unreasonable material terms and conditions the parties had never agreed to in the [] mediation settlement." *Id.* at *7. Defendant in *DietGoal* never signed the last draft circulated by plaintiff. Given the circumstances, the district court found that under Texas law defendant breached the terms of the settlement agreement, because "Defendant [n]ever paid or tendered payment of $55,000.00 to Plaintiff . . . [and because] Defendant never signed Plaintiff's tendered release agreement even after Plaintiff made numerous apparently good faith efforts to draft a liability release acceptable to Defendant." *Id.* at *18.

This case involves almost identical facts as *DietGoal*. On February 23, 2020, the Mediator notified the Parties stating, "I am very pleased to report that the mediator's proposal has resulted in a settlement." (Ex. E). In the days following the mediation settlement and notice of the settlement to this Court, like in *DietGoal*, Defendant's counsel emailed Plaintiff's counsel a redlined copy of Plaintiff's draft Settlement Agreement, which included "additional and unreasonable material terms and conditions the parties had never agreed to in the [] mediation settlement." *DietGoal*, No. 14-CV-00144-F, at *7. Further, like in *DietGoal*, BI Science has not signed the Mediator Signed Copy circulated by Plaintiff, the subsequent more formal versions, or executed ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. As such, and in accordance with the ruling of *DietGoal*, Plaintiff respectfully requests the Court find the February 23, 2020 Settlement Agreement to be valid and enforceable.

## V.   CONCLUSION

For the reasons provided above, Plaintiff respectfully requests that the Court find that the February 23, 2020 Settlement Agreement is a valid, enforceable settlement agreement.

Dated:  March 18, 2020

By: */s/ Korula T. Cherian*
S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP

12

        1936 University Ave, Ste. 350  
        Berkeley, CA  94702  
        (510) 944-0190  
        Email: sunnyc@ruyakcherian.com  
        Email: bobh@ruyakcherian.com  

        Ronald Wielkopolski  
        RuyakCherian LLP  
        1700 K St. NW, Suite 810  
        Washington, DC 20006  
        Email: ronw@ruyakcherian.com  

        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served this 18th day of March 2020, with a copy of this document via electronic mail.

        /s/ Korula T. Cherian

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

        /s/ Korula T. Cherian

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the counsels for the parties have complied with Local Rule CV-7(h). Counsel participating on the March 18, 2020 meet and confer included: Robert Harkins, Ron Wielkopolski and Calvin Capshaw on behalf of Plaintiff; Eric Findlay and Debby Gunter on behalf of Defendant.

/s/ *Ronald Wielkopolski*