Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

[Emblem of the State of Israel]

**In the Supreme Court**

**Leave for Civil Appeal 44/21**

| | |
|---|---|
| Before: | The Honorable Justice I. Amit |
| | The Honorable Justice D. Mintz |
| | The Honorable Justice Y. Willner |
| The Petitioner: | B.I. Science (2009) Ltd. |

v.

| | |
|---|---|
| The Respondent: | Luminati Networks Ltd. |

Motion for leave to appeal from a judgment by the Tel Aviv-Jaffa District Court (the Honorable Judge Judith Shevach, Deputy President of the Court) in Originating Motion 62712-05-20 dated November 29, 2020

| | |
|---|---|
| For the Petitioner: | Adv. Asaf Biger; Adv. Niran Dor |
| For the Respondent: | Adv. Dr. Saar Pauker; Adv. Benny Winston |

## Judgment

**Justice D. Mintz:**

A petition for leave to appeal a judgment by the Tel Aviv-Jaffa District Court (the Honorable Judge Judith Shevach, Deputy President of the Court) dated November 29, 2020 in Originating Motion 62712-05-20, in which the Respondent's motion to enforce an arbitral award that was issued in the State of Texas, in the United States, on April 29, 2020, was granted.

**The background for the motion**

1. The background for the proceeding is a dispute between the Petitioner and the Respondent, two companies that operate in the field of proxy servers, which is based on the Respondent's claim that the Petitioner, in its activity, violated its intellectual property rights. The Respondent filed an action against the Petitioner with a federal court in the State of Texas, and the proceeding was transferred to mediation before Mr. William Cornelius (hereinafter: the **"Arbitrator"**). On February 23, 2020, the Arbitrator filed a joint motion, on behalf of the parties, for a stay of the proceeding, given that they had reached an agreement in principle on a settlement (hereinafter: the **"Settlement Agreement"**). The next day, the Arbitrator drew up an additional document, entitled "Mediated Settlement." The end of that document stated that the parties agreed to bring any dispute with respect to the provisions and terms of the settlement to binding arbitration before the Arbitrator (hereinafter: the **"Arbitration Clause"**).

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

2. The Respondent believed that the Petitioner was refraining from performing the Settlement Agreement, and, against that background, it filed a motion to recognize the validity of the Settlement Agreement with the court in the United States. On April 13, 2020, after having heard the argumentation by the parties, the court accepted the Respondent's assertion that the parties had reached a Settlement Agreement that contains an Arbitration Clause.

3. Accordingly, the parties contacted the Arbitrator, so that he would decide the dispute on the merits. On April 29, 2020, an arbitral award was issued, which required the Petitioner to perform certain acts that are not relevant to the decision on the basic question posed in the present Petition (hereinafter: the **"Arbitral Award"**). Subsequently, the Respondent filed with the court in Texas a Motion for Enforcement of the Settlement Agreement and Arbitral Award.

4. On May 27, 2020, the Respondent filed a "Motion for the Certification of a Foreign Arbitral Award" with the District Court, together with a motion to grant various temporary remedies. The Petitioner, in its Response, argued that the motion should be denied. *Inter alia*, it argued that, in light of the filing of the motion for the enforcement of the Arbitral Award in Texas, the Respondent should have initiated a proceeding under the Enforcement of Foreign Judgments Law, 5718-1958 (hereinafter: the **"Enforcement of Foreign Judgments Law"**), and not a proceeding for the certification of an arbitral award under the Arbitration Law, 5728-1968 (hereinafter: the **"Arbitration Law"**). In its opinion, this is not merely a procedural question, given that, pursuant to Section 3(2) of the Enforcement of Foreign Judgments Law, one of the conditions for declaring a foreign judgment enforceable is that the judgment can no longer be appealed. In addition, the Arbitral Award contained an "exclusive jurisdiction clause" to the courts in Texas and therefore the Respondent was not allowed to submit the motion in Israel, Additionaly, the Settlement Agreement was signed by the Arbitrator alone, and the parties did not sign it, in contravention of the provisions of Article 2 of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 1958 (hereinafter: the **"New York Convention"**), and, for this reason as well, it is not possible to enforce the Arbitral Award. The Respondent also did not file a reply to the Petitioner's opposition to the enforcement of the award. Finally, the Petitioner argued that the Settlement Agreement is invalid. This, because the parties had not reached a final and binding agreement, including the Arbitration Clause on which the litigation before the Arbitrator was based. An appeal of the federal court's ruling that there is a binding settlement agreement is pending, and, therefore, that ruling also cannot be relied upon.

5. As stated, the Respondent did not file a reply to the Petitioner's opposition. Nonetheless, the District Court learned its position from the various pleadings that it filed in the proceeding. In brief, the Respondent believed that it was entitled to receive the enforcement order under the provisions of the New York Convention, given that the Petitioner had not proven the fulfillment of the conditions set forth therein that justify refraining from enforcing a foreign arbitral award.

6. In order to provide a complete picture, it should be stated that, on July 2, 2020, after the motion to certify the Arbitral Award had been filed with the District Court, the court in Texas certified the Arbitral Award. The Petitioner filed an appeal from that judgment with the Federal Court of

Appeals, which, as of the date that the judgment that is the object of the present Petition was rendered, has not yet been decided.

**The District Court judgment**

7. The District Court rejected the Petitioner's argument with respect to the invalidity of the Arbitration Clause and ordered that the award be enforced. After a review of the evidentiary material, it was determined that the material indicates that the Petitioner and its counsel consented to the Settlement Agreement and the Arbitration Clause set forth therein. In addition, the Petitioner appended no evidence to indicate that the Arbitration Clause is invalid. The argument that the form of the agreement – i.e., the absence of the parties' signatures – precludes the enforcement of the Arbitral Award in Israel was also rejected, and the court stated that counsel for the Petitioner had given the Arbitrator approval, by email, to apply to the court in connection with the agreement, which also included the Arbitration Clause. That approval fulfills the requirement for written form provided in Article 2(2) of the New York Convention.

8. As for the procedural framework, the court rejected the Petitioner's argument that, in light of the certification of the Arbitral Award by the court in Texas, the only track for the "adoption" of the Arbitral Award is the track outlined in the Enforcement of Foreign Judgments Law, and not that in the Arbitration Law, under which the motion to certify the award had been filed. The court believed that the Petitioner's interpretation of Section 3(2) of the Enforcement of Foreign Judgments Law, that proceedings for recognition and enforcement of a foreign arbitral award should not be initiated as long as a proceeding with respect to its validity is pending in a foreign court, cannot be reconciled with Regulation 4 of the Regulations for the Execution of the New York Convention (Foreign Arbitration), 5738-1978, and the provisions of Article 6 of the New York Convention. Those two provisions confer upon the court the authority to adjourn the proceedings in a motion to certify a foreign arbitral award, when a motion to set aside or to suspend the award has been filed with the competent authority in the place where it was issued, and they do not state that the filing of those motions, *per se*, leads to the striking of the motion to certify the award.

9. The court further stated that the Petitioner had not indicated a reason why the holder of an arbitral award, which was certified in the country according to whose laws the arbitration had been conducted, should be "discriminated against," relative to the holder of a foreign arbitral award that had not yet been subjected to any judicial review. Thus, an entity that does not have a foreign judgment certifying the arbitral award that was issued in its favor can file a motion to certify the arbitral award in the country where it is domiciled. On the other hand, an entity whose arbitral award that was issued in its favor was certified in a foreign judgment will be forced to wait until the foreign judgment becomes a peremptory judgment, in order to be able to enforce it under the Enforcement of Foreign Judgments Law. In addition, the Motion to Certify the Award was filed before the certification by the court in Texas, and the Petitioner did not prove that the judgment certifying the award is the result of a motion initiated by the Respondent.

10. The Petitioner's arguments with respect to an exclusive jurisdiction clause for the court in Texas and the Respondent's lack of a response were also rejected by the court, although it did state that the Respondent should have filed a response to the Petitioner's opposition. In summary, the court ordered the enforcement of the Arbitral Award.

**The arguments by the parties**

11. This is the background for the Petition before me. The Petitioner has made a plethora of arguments against the District Court's judgment. Its principal argument is that the court erred in rejecting its argument that the Arbitral Award was engulfed in the judgment of the Texas court, which certified it, and, therefore, it is not appropriate to recognize and enforce the Arbitral Award at this stage. Aside from that, the Arbitral Award contained a jurisdiction clause that refers to the court in Texas, and, therefore, the Respondent was not even entitled to file a motion to enforce it in Israel. Furthermore, the Respondent's conduct was tainted with grievous procedural flaws, which justified denying its motion to enforce the Arbitral Award. Finally, the Petitioner petitioned, in the alternative, to stay the hearing of the Motion to Enforce the Award pending a decision in the appeal that it filed from the judgment certifying the Arbitral Award in the United States, pursuant to Article 6 of the New York Convention, and the court did not address that request.

12. In its Response, the Respondent argued that the Motion is not one of the cases that justify granting leave to appeal. On the merits, the Respondent rejects the Petitioner's argument that the Arbitration Clause is invalid. The Petitioner did not refer to any evidence indicating lack of consent to conduct the arbitration proceeding. Quite the opposite is true: the evidence indicates that counsel for the Petitioner cooperated with the arbitration proceeding. As for the certification of the Arbitral Award by the court in the United States: according to the Respondent, that certification does not preclude its enforcement in Israel. There is no logic to the Petitioner's argument that certifying the Arbitral Award actually worsens the situation of the party seeking to enforce it, which can now only file a motion under the Enforcement of Foreign Judgments Law and not under the New York Convention. Nor is there any real substance to the Petitioner's argument that the provision of the Arbitral Award that grants jurisdiction with respect to the Arbitral Award to the court in Texas, blocks the Respondent from filing a motion to enforce the Arbitral Award in Israel. Said provision is a provision in an arbitral award, and not a contractual clause, which was not intended to constitute a procedural barrier to the enforcement of the Arbitral Award outside the United States. Moreover, the Petitioner's argument that the court had not addressed its request to stay the proceedings should be rejected, because the court did consider the request. In any event, the Petitioner abandoned its request to stay the proceedings in its summations before the court; and, on the merits, given that the Petitioner did not file a motion to set aside the Arbitral Award, it does not fulfill the conditions set forth in Section 6 of the New York Convention.

**Discussion and decision**

13. Following a review of the Petition, the Response, and the appendices attached by the parties, and by virtue of the power vested in me pursuant to Regulation 149 of the Regulations of Civil

Procedure, 5779-2018, I have come to the conclusion that the Petition should be granted and should be heard as an appeal, but only with respect to the question of whether the way to enforce a foreign arbitral award that has already been certified in the country in which it was issued, is by filing a motion under Section 29A of the Arbitration Law, or whether the track that should be followed is that set forth in the Enforcement of Foreign Judgments Law. At the same time, I have come to the conclusion that the appeal should be dismissed, and this is what I will recommend to my colleagues that we do.

The additional arguments made by the Petitioner in the Petition do not transcend the individual matter between the parties and do not justify granting leave to appeal (see: Leave for Civil Appeal 1751/21, **Kenes v. Vaknin**, Section 7 (March 17, 2021); Leave for Civil Appeal 1847/21, **Gal Am Properties Ltd. v. Urban Renewal Response (2016)Ltd.**, Section 8 (March 17, 2021)).

14. A foreign arbitral award is defined in Section 1 of the Arbitration Law as an arbitral award that was issued outside Israel. A foreign arbitral award, like a "local" arbitral award, binds the parties as *res judicata* by its very existence. The rationale for this is that an arbitral award draws its force from the consent of the parties. However, for the purpose of enforcing the arbitral award, it must be adopted in Israel. The Arbitration Law and the New York Convention regulate the manner in which a foreign arbitral award is absorbed in Israel. Section 29A of the Arbitration Law confers upon a court in Israel the authority to certify or to set aside a foreign arbitral award to which an international convention applies. The section reads as follows:

> A motion to certify or to set aside a foreign arbitral award to which an international convention applies, when Israel is a party to that convention, and when the convention determines provisions in the matter, will be filed and heard pursuant and subject to those provisions.

The parties do not dispute that the New York Convention, which deals with arbitral awards that were issued in another country than that in which their recognition or their enforcement is sought, applies to the present case. Article 3 of the New York Convention states as follows:

> Each contracting state shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions, or higher fees or charges on the recognition or enforcement of arbitral awards to which this convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.

The New York Convention further provides that a litigant seeking recognition and enforcement of a foreign arbitral award is required to produce, along with his motion, the original arbitral award and the original arbitration agreement (Article 4 of the New York Convention). From these requirements, we learn that for the purposes of recognition and enforcement, the certification of the arbitral award in the country in which it was issued is not required. This is one of the principal innovations of the New York Convention over the 1927 Geneva Convention, the international

arbitration convention that preceded it. One of the conditions for recognition and enforcement of a foreign arbitral award under the Geneva Convention was proof that the arbitral award had been certified in the country in which it was issued – that is, a demand for double "recognition" (this rule is called the **Double Exequatur Doctrine**). The New York Convention also provides a closed list of grounds for opposition to recognition and enforcement of an arbitral award (Article 5 of the New York Convention).

15. The double exequatur requirement was replaced in Article 5(1)(e) of the New York Convention. Instead of that requirement, Article 5 sets forth a closed list of grounds for opposing the recognition and enforcement of a foreign arbitral award: an agreement that is not valid (Article 5(1)(a)); not having given the opponent an opportunity to raise its arguments in the arbitration proceeding (Article 5(1)(b)); an arbitral award that decides issues that were not submitted to the arbitrator to decide – that is, an argument of lack of jurisdiction (Article 5(1)(c)); the arbitration was not conducted pursuant to the arbitration agreement (Article 5(1)(d)); the arbitral award was set aside or suspended by the competent authority in the country in which it was issued (Article 5(1)(e)). Article 5(1)(e) is the article relevant to the present case, in light of the Petitioner's argument that it is not appropriate to recognize and enforce the Arbitral Award at this time, before the decision certifying it in the place in which it was issued (Texas) has become peremptory. That article states as follows:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (a)…
>
> (b)…
>
> (c)…
>
> (d)…
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

In other words, the possibility of opposing the recognition of a foreign judgment under the ground set forth above only exists when the award "has not yet become binding" or has been "set aside" or "suspended." In the present case, the Arbitral Award was not set aside and was not suspended, but the decision certifying it has not yet become peremptory, as the Petitioner's appeal from it is pending before the Federal Court of Appeals. Based on a simple reading, there is accordingly a basis for the belief that, as long as the Arbitral Award has not yet been finally certified in such a way that it can no longer be appealed in the country in which it was issued, it "has not yet become binding on the parties" – and, therefore, the law is on the Petitioner's side.

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

16. However, there is a consensus in this regard among learned academics and courts in many countries that the word "becomes binding" does not mean that the party that was awarded the arbitral award must file a motion for certification of the arbitral award in the country in which it was issued in order for the arbitral award to be recognized and enforced in another country. According to this position, an interpretation proposing that the fact that the arbitral award has yet to be certified in the original country constitutes grounds for refusal of recognition and enforcement pursuant to the New York Convention undermines the intention of the drafters of the convention, who, as stated, sought to cancel the double exequatur requirement provided in the Geneva Convention (Dana H. Freyer & Hamid G. Gharavi, *Finality and Enforceability of Foreign Arbitral Awards: From "Double Exequatur" to the Enforcement of Annulled Awards: A Suggested Path to Uniformity Amidst Diversity*, 13 ICSID Foreign Inv. L.J. 101, 106 (1998) (hereinafter: **"Freyer & Gharavi"**). However, said statement of what it does not mean is not sufficient, and content must be injected into the term "becomes binding."

17. Several interpretative approaches to the term can be found in judgments of the various courts and among academics. According to the first approach, the examination of whether a foreign arbitral award has "become binding" must be performed in accordance with the laws of the country pursuant to whose laws the arbitration was conducted (hereinafter: the **"Original Country"**). In other words, the arbitral award only "becomes binding" pursuant to the New York Convention when it becomes binding pursuant to the law of the Original Country. This interpretation has been criticized as damaging the uniformity of the enforcement and recognition of judgments by virtue of the New York Convention and that it will lead to different results with respect to arbitral awards issued in different countries. According to the second interpretation, a foreign arbitral award "becomes binding" pursuant to the New York Convention when it is no longer possible to appeal from it on the merits. According to this approach, the arbitral award "becomes binding" even if a motion to set it aside can still be filed. A third approach states that the arbitral award "becomes binding" when it is no longer possible to appeal from it in arbitration proceedings, as distinct from an appeal before a court (see: Fertilizer Corp. of India v. IDI Management, 517 F. Supp. 948 (S.D. Ohio 1981)). Finally, a fourth interpretation is that the arbitral award "becomes binding" unless set aside or suspended by the competent authority. According to this interpretation, as soon as the arbitral award is issued, it becomes binding pursuant to the New York Convention and a motion to recognize and enforce it can be filed. In other words, a final arbitral award has been rendered (for details about the different interpretative approaches, see: Freyer & Gharavi, pages 107-109). The matter has yet to be discussed in Israeli case law, and in my opinion, the correct interpretation is that an arbitral award "becomes binding" when it is no longer possible to file an appeal from it in arbitration proceedings. "Becomes binding" in the context of the New York Convention means that the arbitration proceeding has come to an end with an arbitral award that is ready to be certified by the competent court, and not at a later stage.

18. The issue of recognition and enforcement of foreign arbitral awards that were certified or set aside in the Original Country by virtue of the New York Convention and its ramifications has also yet to be discussed in case law. This issue arises in the first place in light of the wording of Article 5 of

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

the New York Convention, according to which it "may refuse" even when there are grounds to oppose enforcement and recognition such as the fact that the arbitral award was set aside by the competent authority. For the sake of discussion, I will present several possible scenarios. As a point of departure, we will assume that an arbitral award was issued in favor of B and against C in country A, which is the Original Country. Given those opening conditions, we will examine several main cases in which the issue could arise:

(a) **C filed a motion to set aside the arbitral award in the Original Country, and the competent court set aside the arbitral award**. Several main approaches can be seen with respect to enforcement and recognition of foreign arbitral awards that were set aside by the competent court. The first is the "territorial approach." According to that approach, the place pursuant to whose laws the arbitration was conducted determines the law that will apply to the proceeding, including with respect to recognition and enforcement pursuant to the New York Convention. In accordance with such, the setting aside of the arbitral award in the Original Country makes it impossible to enforce it, since there is no longer anything to enforce (*ex nihilo nil fit*). This was the prevalent interpretative approach for many years. According to the second approach, the "universalistic approach," the legal system in which recognition and enforcement of the foreign arbitral award is requested is entitled to ignore a decision to set aside the arbitral award in the Original Country if there are no grounds for setting aside pursuant to the arbitration laws that apply in it. This position relies on interpretation of Article 7 of the New York Convention, according to which:

> The provisions of the present Convention shall not … deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon.

This principle is known as the Most Favorable Right principle. It is the approach used in French law, but has not struck roots in other legal systems (for details about the French approach and criticism thereof, see: Hamid G. Gharavi, *Enforcing Set Aside Arbitral Awards: France's Controversial Steps beyond the New York Convention*, 6 J. Transnat'l L. & Pol'y 93 (1996)). A third approach relies on the words of the New York Convention ("the award *may* be refused …), and states that such setting aside does not prevent the possibility of recognition and enforcement of the arbitral award. **In general**, setting aside the arbitral award in the Original Country bars its enforcement and recognition in a foreign country. However, the court has discretion in the matter, and is able to recognize and enforce the arbitral award even though it was set aside in the Original Country. Such recognition and enforcement will only occur in unusual cases in which the court reaches the conclusion, for example, that the decision to set aside the arbitral award was issued by a forum that is not independent or that is biased (for such a case in Holland, see: Yukos Capital SARL/OAO Rosneft, Gerechtshof [Hof], Amsterdam, Apr. 28, 2009; this is also the approach used in England: Jonathan Hill, *The Significance of Foreign Judgments Relating to an Arbitral Award in the Context of an*

8

*Application to Enforce the Award in England*, 8(2) J. PRIV. INT'I L. 159, 175 (2012) (hereinafter: **"Hill"**)).

(b) **C filed a motion to set aside the arbitral award in the Original Country and the competent court denied the motion**. In this case, the judgment of the court in the Original Country may give rise to *res judicata* and to cause of action estoppel that bars C from making identical claims when coming to oppose the motion to recognize and enforce the arbitral award (this is the case in the law in practice in England: House of Spring Garden v. Waite [1991] 1 QB 241; and in the United States: Gulf Petro Trading Co. Inc. v. Nigerian National Petroleum Corp., 288 F. Supp. 2d 783 (N.D. Tex. 2003). The New York Convention does not address cases such as this. However, naturally, denial of a motion to set aside the arbitral award in the Original Country will weaken C's opposition to recognition and enforcement by virtue thereof.

(c) **B filed a motion for certification of the arbitral award in the Original Country and the competent court granted the motion** (similar to this case). The position accepted in literature is that there is no symmetry between a judgment setting aside the arbitral award and a judgment certifying it. In other words, a judgment certifying the arbitral award is less important, in the context of the New York Convention. According to this position, the court in the country in which recognition and enforcement is requested must examine independently whether one of the grounds provided in Article 5 of the Convention exists. One of the main explanations for this approach with respect to the lack of symmetry is the fact that Article 5(1)(e) deals expressly with a judgment that sets aside the arbitral award and states that its setting aside is one of the reasons to refuse to recognize and enforce a foreign judgment, as stated. In contrast, the Convention does not address certification of an arbitral award by the court in the Original Country (Hill, 176-177). However, similar to the case in which a motion to set aside an arbitral award was denied in the Original Country, its certification can also give rise to cause of action estoppel that bars C from raising claims already raised before the competent court in the Original Country (*ibid.*, 181).

19. In any event, initiation of an arbitral award certification proceeding in the Original Country, and even certification of the arbitral award, do not prevent a motion to recognize and enforce from being filed by virtue of Section 29a of the Law, pursuant to the New York Convention. The Petitioner's interpretation, that the foreign arbitral award was "swallowed up" by the foreign judgment that certifies it, so that after its certification in the Original Country, or initiation of a certification proceeding, it is no longer possible to file a motion to recognize and enforce pursuant to Section 29a of the Arbitration Law, goes against the purpose of the New York Convention – creation of an alternative mechanism for resolving international disputes. Moreover, it will lead to a state of affairs whereby the State of Israel breaches undertakings that it accepted upon itself when signing the Convention (see: Martin L. Roth, *Recognition by Circumvention: Enforcing Foreign Arbitral Awards as Judgments under the Parallel Entitlements Approach*, 92 CORNELL L. REV. 573, 581 (2007) (hereinafter: **"Recognition by Circumvention"**)).

20. A related question is whether, after the arbitral award has been certified by the competent court, the party in whose favor it was issued can also begin a parallel track of enforcement of a foreign judgment, which is regulated in the Enforcement of Foreign Judgments Law. According to the approach that recognizes such a possibility, which is known as the "parallel entitlement" approach, a person who has a foreign arbitral award and a foreign judgment certifying such, can take action, either in the manner mapped out in the New York Convention for enforcement and recognition of a foreign arbitral award, or by means of enforcement of a foreign judgment. This is the accepted approach in the United States (see, for example: Seetransport Wiking Trader Schiffahrtsgesellschaft Mbh& Co v. Navimpex Centrala Navala 29 F.3d 79 (2d Cir. 1994); Island Territory of Curacao v. Solitron Devices Inc. 489 F.2d 1313 (2d Cir. 1973); Recognition by Circumvention 584-586), and the position adopted in India and Australia (see: Maxi Scherer, *Effects of Foreign Judgments Relating to International Arbitral Awards: Is the 'Judgment Route' the Wrong Road?,* 4 J. Int'l Disp (2013) Resol. 587, 600). To a certain extent, this approach was also adopted in Israel, by the way, in Leave for Civil Appeal 10854/07 **Fikelhotz (Bodner) v. Jamie Sohacheski** (March 17, 2010)). It was ruled in that case that an American judgment in which an arbitral award is certified can be enforced by means of the Enforcement of Foreign Judgments Law. However, I am of the opinion that even though the possibility of using that track should not be completely blocked, the ideal path for recognition and enforcement of foreign judgments should only be through the route provided in Section 29a of the Arbitration Law and in the New York Convention. In other words, use of the Enforcement of Foreign Judgments Law to enforce an arbitral award that was certified should be the exception, which will only be applied in rare cases.

21. In conclusion, with respect to this Motion, there is no flaw in the District Court's judgment that a motion to enforce the foreign arbitral award can be filed even though a parallel motion to certify it was filed in the Original Country. As for the additional issues discussed, they can be summed up as follows:

    a. The term "becomes binding" that appears in Article 5(1)(e) of the New York Convention means that it is no longer possible to file an appeal from the arbitral award in the arbitration proceeding, as distinct from an appeal before a court.

    b. In general, after the arbitral award is set aside in the Original Country, it should not be recognized and enforced by virtue of the New York Convention, except for exceptional cases. For example, the decision to set it aside was made by a judicial forum that is not autonomous and independent.

    c. On the other hand, certification of the arbitral award in the Original Country does not automatically lead to recognition and enforcement by virtue of the New York Convention. However, rejection of claims pertaining to the validity of the arbitral award in a motion to certify or set it aside could give rise to cause of action estoppel that bars identical claims from being raised in the opposition to enforcement and certification of the arbitral award in Israel.

    d. The way to certify and enforce foreign arbitral awards is the track provided in Section 29a of the Arbitration Law and in the New York Convention. However, in rare and unusual cases,

Translated from the Hebrew
Legaltrans.com | Rina Ne'eman

following certification of the arbitral award by the competent court in the Original Country, it will be possible to recognize the foreign judgment that certifies it by means of the track provided in the Enforcement of Foreign Judgments Law.

I therefore propose to my colleagues that the Appeal should be denied, and the Petitioner will be charged with the Respondent's costs in the amount of NIS 15,000.

Justice

<u>Justice I. Amit</u>:

I concur.

Justice

<u>Justice Y. Willner</u>:

I concur with the comprehensive and interesting judgment of my colleague, Justice D. Mintz.

Justice

Decided as stated in the judgment of Justice D. Mintz

Handed down on this day, 9 Iyar 5781 (April 21, 2021)

| Justice | Justice | Justice |
|---|---|---|

_____

21000440_N04.docx

Information center, tel. 077-2703333, *3852; website, https://supreme.court.gov.il

11