NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**BRIGHT DATA LTD.,**
*Plaintiff-Cross-Appellant*

v.

**BI SCIENCE (2009) LTD.,**
*Defendant-Appellant*

**BI SCIENCE INC.,**
*Defendant*

_____

2020-2118, 2020-2181, 2021-1664, 2021-1667

_____

Appeals from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00483-JRG, Chief Judge J. Rodney Gilstrap.

_____

Decided: August 30, 2023

_____

ROBERT M. HARKINS, JR., Cherian LLP, Berkeley, CA, argued for plaintiff-cross-appellant. Also represented by KORULA T. CHERIAN; RONALD WIELKOPOLSKI, Washington, DC; COLBY DAVIS, Allen & Overy LLP, Washington, DC.

MICHAEL A. CHARISH, Charish Law Group PC, New York, NY, argued for defendant-appellant. Also argued by

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC. Also represented by JOHN CHRISTOPHER ROZENDAAL,.

Before PROST, SCHALL, and HUGHES, *Circuit Judges*.

PROST, *Circuit Judge*.

Bright Data Ltd. ("Bright Data")[1] sued BI Science (2009) Ltd. and BI Science Inc. (individually or collectively, "BI Science")[2] for patent infringement in the Eastern District of Texas. The district court entered final judgment that: (1) incorporated all terms of the parties' mediated settlement agreement; (2) incorporated all terms of the arbitration award (the product of an arbitration that followed the district court's enforcement of the settlement); and (3) held claim 108 of U.S. Patent No. 9,241,044 ("the '044 patent") invalid as indefinite. J.A. 3. BI Science appeals, arguing that the district court erred by finding an enforceable agreement. Bright Data cross-appeals the district court's determination that claim 108 of the '044 patent is invalid as indefinite. We affirm.

## BACKGROUND

Bright Data brought claims of patent infringement—asserting the '044 patent and U.S. Patent No. 9,742,866 ("the '866 patent")—and false advertising against BI

---

[1] Bright Data was formerly known as Luminati Networks Ltd. Order (June 9, 2021), ECF No. 40.

[2] The district court indicated that it is unclear whether BI Science (2009) Ltd. and BI Science Inc. are merely two names for the same entity or whether the two entities are separate. J.A. 2 n.1.

Science.[3] J.A. 656–83; *see also* Am. Compl., *Luminati Networks Ltd. v. BI Sci. Inc.*, No. 2:18-cv-00483 (E.D. Tex. Feb. 19, 2019), ECF No. 28. BI Science, a company headquartered and with its principal place of business in Israel, moved to dismiss for lack of personal jurisdiction. J.A. 727–32. The district court denied that motion, determining that it had specific personal jurisdiction over BI Science based on its purposeful contacts with Texas and the direct relationship between those contacts and its alleged infringement and false advertising. J.A. 858–68.

After its motion to dismiss was denied, BI Science answered and counterclaimed for declaratory judgment of invalidity. Answer to Am. Compl. and Countercl. ¶¶ 109–114, *Luminati Networks Ltd.*, No. 2:18-cv-00483 (E.D. Tex. May 28, 2019), ECF No. 85. Subsequently, as part of claim construction, claim 108 of the '044 patent was determined to be invalid as indefinite. J.A. 1373–74, 1410. This determination was later incorporated into the district court's final judgment, J.A. 3, and is the subject of Bright Data's cross-appeal.

Following its claim construction order, the district court noted its "opinion that th[e] case could benefit from renewed mediation efforts" and ordered the parties to conduct a mediation session within ten days. J.A. 1449. Nineteen days later, on February 23, 2020, the parties filed a joint motion to stay and notice of settlement, which (1) stated "[t]he Parties hereby notify the Court that all matters in controversy between the Parties have been settled, in principle," (2) requested a thirty-day stay "so that appropriate dismissal papers may be submitted," and (3) was signed by counsel for Bright Data and BI Science. J.A. 1474–75. The district court granted the joint motion

---

[3] Bright Data also brought claims of tortious interference, J.A. 683, but the district court declined to exercise supplemental jurisdiction over those claims, J.A. 861–63.

to stay and cancelled the hearing set for the following day. J.A. 1477. The next day, the mediator also filed a report indicating that mediation had "resulted in settlement of all claims." J.A. 1478.

Bright Data moved to enforce the settlement about a month after the joint notice of settlement was filed. J.A. 1479–95. BI Science opposed with arguments related to why its performance should be excused. J.A. 1547–54. At a hearing on the motion to enforce, BI Science argued for the first time that there was no binding agreement between the parties. The district court disagreed, determining that "[i]t's clear that the major points were agreed to and a meeting of the minds was reached at the time the Court was informed of the settlement." J.A. 1694. And since "that resolution includes at a minimum a binding provision that any unresolved issues . . . would be resolved by binding arbitration," the court instructed the parties to either work together to resolve, or submit to arbitration to resolve, any outstanding issues related to the settlement terms. J.A. 1693–94.

After arbitration, the district court entered final judgment that fully incorporated the settlement agreement and arbitration award. J.A. 3. The judgment also incorporated the court's indefiniteness determination on claim 108 of the '044 patent. *Id.* BI Science timely appealed. Bright Data timely cross-appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

BI Science raises two issues on appeal. First, it argues that the district court erred by denying its motion to dismiss for lack of personal jurisdiction. Second, it argues that the district court erred by finding a binding agreement between the parties. As for the cross-appeal, Bright Data raises a single issue. It argues that the district court's indefiniteness determination as to claim 108 of the '044 patent was erroneous. We address these issues in that order:

(1) personal jurisdiction; (2) existence of an enforceable agreement; and (3) indefiniteness.

I

Because jurisdiction is a threshold matter, we address it first. Unlike with subject-matter jurisdiction, a party can consent to personal jurisdiction. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–04 (1982). BI Science dedicated significant briefing to its argument that the district court erred by denying BI Science's motion to dismiss for lack of personal jurisdiction. *See* Appellant's Br. 21–38; Appellant's Reply Br. 24–31. But BI Science also acknowledged that if we affirm the district court's determination that a binding settlement agreement was formed, then the district court had personal jurisdiction over BI Science for purposes of enforcing that settlement agreement—i.e., it had consented to personal jurisdiction at least to that extent. Oral Arg. at 0:40–57.[4] For the reasons discussed below, we affirm the district court's determination that there was an enforceable agreement. As a result, we need not reach BI Science's personal-jurisdiction arguments related to the underlying lawsuit.[5]

II

We apply the law of the regional circuit, here the Fifth Circuit, when reviewing a district court's enforcement of a settlement agreement. *Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 825 (Fed. Cir. 2006). Under Fifth

---

[4] https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-2118_06072023.mp3.

[5] This dispute about personal jurisdiction also does not impact the cross-appeal issue because BI Science itself brought a counterclaim of invalidity. *See* Answer to Am. Compl. and Countercl. ¶¶ 109–114, *Luminati Networks Ltd.*, No. 2:18-cv-00483 (E.D. Tex. May 28, 2019), ECF No. 85.

Circuit law, "[a] district court may summarily enforce a settlement agreement if no material facts are in dispute, and in such circumstances we review the district court's order for abuse of discretion only." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (footnote omitted); *cf. Haggart v. United States*, 943 F.3d 943, 947 (Fed. Cir. 2019) ("[W]e join the majority of our sibling courts in holding that a district court's decision whether to summarily enforce a settlement agreement is reviewed for an abuse of discretion."). When the district court's enforcement of a settlement agreement does depend on resolution of factual disputes, its factfindings are reviewed for clear error. *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 614 (5th Cir. 2014).

BI Science argues that any finding by the district court that there was a meeting of the minds related to the settlement agreement was clearly erroneous. Appellant's Br. 39. Considering the record before the district court and the positions taken before it, we discern no error.

When Bright Data moved to enforce the settlement against BI Science, it represented that "[a] full and complete set of terms was reduced to writing and agreed upon by both sides and confirmed in writing," and it attached that writing as an exhibit. J.A. 1482. Additionally, Bright Data presented a detailed factual narrative about mediation and the parties' resulting seventeen-term agreement. J.A. 1482–85. In opposition, BI Science did not contest Bright Data's position that there was an agreement between the parties, nor did it challenge Bright Data's factual narrative. Instead, BI Science's arguments were *premised* on the existence of an agreement; it asked that performance under the settlement be either excused or delayed. J.A. 1549–50. BI Science did contend, in support of its excuse or delay arguments, that the operative agreement was not the final or formal version of the settlement. J.A. 1550 n.3; J.A. 1552. Still, regardless of this characterization of the agreement's formality, one would search in vain for any hint that BI Science did not consider itself bound or did not

intend to bind itself to the agreement when it filed this opposition.

When the district court held a hearing on the motion to enforce, BI Science argued for the first time that the mediated settlement "by itself is not a fully binding settlement" and that it did not "contain[] all the material elements and requirements needed to form a completely binding settlement agreement." J.A. 1659–60. However, its attorney also affirmed that he had knowingly participated in the filing of the joint notice of settlement representing that all matters were resolved, J.A. 1658–59—the precise type of notice the district court noted BI Science's counsel had "signed off on . . . probably hundreds of times in [his] practice before th[at] [c]ourt," J.A. 1676. Further, while BI Science's counsel was careful not to call the parties' agreement a settlement, he still acknowledged that *something* was agreed to. J.A. 1661 ("We agreed and came to an agreement on a framework to settle the case."); J.A. 1672 ("[W]e agreed to a framework proposed by the mediator as a way to hopefully get this case resolved."); J.A. 1676–77 ("[W]e had an agreement to settle the case in principle based on the mediator's proposal in that framework, if you will."); J.A. 1692 ("There's no question that was part of the agreement."). The district court also heard testimony from the mediator that he understood both parties to have accepted his proposal and resolved the dispute. J.A. 1692–93.

The district court did not err in concluding that the parties' correspondence and conduct, both at the time of agreement and in response to the motion to enforce, objectively indicated mutual assent. Thus, we see no basis to disturb the district court's conclusion that when "both sides knowingly caused to be filed a joint notice . . . there was a resolution and a settlement of this case," which included "at a minimum a binding provision that . . . any unresolved issues would be resolved by binding arbitration." J.A. 1693–94.

We also note that the extent to which BI Science raised factual disputes related to a meeting of the minds is difficult to discern. Indeed, even on appeal, BI Science confusingly argues both that the facts surrounding the mediated settlement are undisputed, Appellant's Br. 39, while also contending that "Bright Data cannot demonstrate that there are no disputed issues of material fact . . . because there is no objective evidence of a meeting of the minds, or mutual assent," *id.* at 56. The district court made reasonable inferences about mutual assent based on the facts as presented in Bright Data's motion, which BI Science did not contest or challenge, and in light of representations BI Science's counsel made to the court. BI Science has not shown clear error in those inferences or, to whatever extent they were put at issue, pointed to a clearly erroneous apprehension of the facts that underlie them.

As for BI Science's additional argument that the district court erred in finding a binding agreement because the mediated settlement was missing material terms, we disagree. Appellant's Br. 51–53. We note that this argument too was not presented in BI Science's opposition to the motion to enforce. At the hearing, BI Science argued that the mediated settlement was "a multifaceted, complicated agreement," and given this complexity it was missing key terms. J.A. 1673. The district court did not err in rejecting this contention. *See* J.A. 1694.

BI Science primarily argues that the absence of terms defining time for performance rendered the agreement nonbinding—i.e., timing was essential or material. We are not persuaded. "Generally, the materiality of a contract term is determined on a contract-by-contract basis, in light of the circumstances of the contract." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014). BI Science has not explained, either here or at the district court, why terms specifying the timing of performing certain obligations were necessarily essential to this particular settlement agreement. Time for

performance has been found nonessential in other settlement agreements. *See CherCo Props. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App. 1999); *cf. Houston Cnty. v. Leo L. Landauer & Assocs.*, 424 S.W.2d 458, 463 (Tex. App. 1968) ("[W]here the contract does not fix a time for performance, the law allows reasonable time for its performance."); *Jennings v. Jennings*, 625 S.W.3d 854, 865 (Tex. App. 2021) (noting that even where timing is included as a term, "a date of performance in a contract does not in itself mean that the parties intended timely performance to be of the essence"). We do not see a reason to conclude otherwise based on the circumstances here.[6]

Next, BI Science argues that the district court erred by concluding that there was an enforceable settlement agreement because the agreement does not comply with the requirements of Texas Rule of Civil Procedure 11 ("Texas Rule 11"). We need not address whether the agreement here complies with Texas Rule 11 because BI Science forfeited this argument by failing to raise it at the district court. Indeed, there are several independent reasons to find forfeiture here. First, BI Science never mentioned Texas Rule 11 at the district court until after a final judgment was entered. Oral Arg. at 20:36–21:19; *see also* Appellant's Reply Br. 16 (citing only briefing on a motion to stay enforcement of the final judgment in support of its argument that this issue was raised at the district court). Next, even setting aside BI Science's failure to raise the specific rule, its applicability is contingent on a threshold choice-of-law argument that BI Science also failed to present. Finally, evaluating compliance with Texas Rule 11 would require resolving factual issues that were not

---

[6] We also reject BI Science's argument that terms 10 and 12 of the agreement are facially contradictory. The terms simply refer to the separate obligations of each party.

presented based on a record that was not developed with those issues in mind.

At the outset, we are unpersuaded that noncompliance with Texas Rule 11 is merely a new argument supplied in support of a properly raised issue—namely, contract invalidity. BI Science's position would require us to find that any assertion that a contract is invalid preserves all arguments about every possible basis for contract invalidity. This asks too much. *See Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 401–02 (5th Cir. 2022) (where the district court had passed on contract enforceability in general, the issue of contract invalidity under a particular state statute was forfeited where it was raised for the first time on appeal); *cf. In re KP Eng'g, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023) (theory of unjust enrichment based on fraud, duress, or undue advantage presented for the first time on appeal was forfeited even where theory of unjust enrichment based on passive receipt of a benefit was presented at the district court); *Green Tree Servicing v. House*, 890 F.3d 493, 503 (5th Cir. 2018) (finding new theory in support of invalidity of arbitration clause was forfeited because it was not raised before the district court even where a different theory of invalidity was raised at the district court); *Colony Ins. Co. v. Wright ex rel. Wrongful Death Beneficiaries of Wright*, 16 F.4th 1186, 1189 n.1 (5th Cir. 2021) (finding forfeiture where party pointed to a new clause in insurance policy on appeal to support its previously raised position that there was coverage); *id.* at 1191 (Costa, J., concurring) (explaining why even though contract interpretation is a legal question subject to de novo review, it is not a "pure question of law" such that it should be excepted from the rules of forfeiture); *cf. also Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1273 (Fed. Cir. 2012) ("This court reviews claim constructions without deference. However, a party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below." (cleaned up)).

Simply put, BI Science's Texas Rule 11 arguments do not amount to "supplementing an [existing invalidity] argument with new authority." *Thomas*, 34 F.4th at 402. Instead, compliance with Texas Rule 11 is a new issue, which was not presented—via BI Science's cursory arguments about contract invalidity at the hearing—or passed upon at the district court.

Regardless, BI Science's failure to raise an issue about the applicability of Texas state law at the district court is another reason to find forfeiture here. The Fifth Circuit has concluded that "[f]ailure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis." *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011); *see also Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 540 (5th Cir. 1987).[7] Even though Bright Data's motion to enforce the settlement argued that federal law governed questions of contract validity because of the underlying federal claims, J.A. 1489, BI Science did not ask the district court to engage in a choice-of-law analysis, assert that Texas law applied, or identify any particularities to Texas contract law (even aside from Texas Rule 11) that might impact the district court's determination that there was an enforceable agreement between the parties. The application of Texas Rule 11 was predicated on BI Science first prevailing on this unadvanced choice-of-law argument at the district court.[8]

---

[7] "Though previous cases may have used the term 'waiver' instead of 'forfeiture,' their holdings are good law for a case, like this one, involving the issue of forfeiture." *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 n.8 (Fed. Cir. 2020).

[8] Because the only substantive contract law difference identified between federal common law and Texas state law relates to BI Science's forfeited argument about

Finally, even if the applicability of Texas law and non-compliance with Texas Rule 11 were both proper new arguments in support of an issue already presented, BI Science still failed to preserve the factual disputes required to resolve the question of compliance with Texas Rule 11. Texas Rule 11 requires, among other things, that a settlement "be in writing, signed and filed with the papers as part of the record." Tex. R. Civ. P. 11. However, the district court was never asked to pass upon the question of whether the series of emails between the parties and the mediator culminating in the agreement to file a joint notice of settlement were, taken together, sufficient to satisfy the writing requirement—or which emails should be considered part of the whole. Likewise, the district court was never asked to determine which emails from BI Science's attorney could be considered "signed" by considering "the context and surrounding circumstances." *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 529 (Tex. App. 2011). Indeed, at oral argument, BI Science could not point to anywhere in the record where its counsel raised the issue of signatures at all. Oral Arg. at 23:46–24:40. "Once we start dissecting the record, we find ourselves exactly where the forfeiture rule says we should not be—deciding issues based on inadequately developed facts." *Colony Ins. Co.*, 16 F.4th at 1191 (Costa, J., concurring).

In sum, we affirm the district court's determination that there was a binding settlement agreement between the parties. Since BI Science does not challenge any of the arbitrator's determinations about disputed contract terms, we affirm the district court's judgment to the extent it

---

Texas Rule 11, we decline to resolve the parties' dispute about which law applies. Citations to Texas contract cases in this opinion are illustrative of general contract principles and do not indicate an implicit resolution of this dispute.

Case 2:18-cv-0483-JRG Document 428 Filed 08/30/23 Page 13 of 16 PageID #: 7025

BRIGHT DATA LTD. v. BI SCIENCE (2009) LTD.   13
incorporated the settlement agreement and incorporated the arbitration award.

### III

On cross-appeal we also affirm the district court's determination that claim 108 of the '044 patent is indefinite. The '044 patent generally relates to "an apparatus and method for improving communication over the Internet by using intermediate nodes, and in particular, to using devices that may doubly function as an end-user and as an intermediate node." '044 patent col. 1 ll. 13–17.

Claim 108 is reproduced below:

108.   A method for fetching over the Internet a first content, identified by a first content identifier, *by a first device*, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier *via a second device* identified in the Internet by a second identifier, using a first server, the method comprising the steps of:

> (a) sending the second identifier to the first server;
>
> (b) receiving a second request from the first device, the second request includes the first content identifier and the third identifier;
>
> (c) in response to receiving the second request, sending the first content identifier to the second server using the third identifier;
>
> (d) receiving the first content from the second server; and
>
> (e) in response to receiving the first content, sending the first content to the first device using the first identifier.

'044 patent claim 108 (emphasis added).

Section 112's definiteness requirement mandates that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). "We review a determination of indefiniteness de novo." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). To the extent reliance on extrinsic evidence is appropriate, we review any relevant factfindings for clear error. *Id.*

The district court first concluded that the preamble of claim 108 is limiting. J.A. 1366. Bright Data does not challenge that determination. Next, the district court concluded that the claim is indefinite because "[t]he recital of 'via a second device' in Claim 108 fails to find any reasonably clear meaning in the context of the remainder of the claim, in particular as to the steps recited in the body of the claim." J.A. 1373. The court also found Bright Data's arguments and expert testimony about whether all the steps *can* be performed by the second device unhelpful in providing reasonable certainty about which steps *must* be performed by the second device. J.A. 1374. We agree with the district court's analysis.

Bright Data argues that a person of ordinary skill in the art ("POSA") would understand that all the steps of claim 108 are performed by the "second device." In other words, despite the preamble's requirement that the steps are, among other things, "[a] method for fetching over the Internet a first content, identified by a first content identifier, *by a first device*," '044 patent claim 108 (emphasis added), a POSA would understand that a first device need not perform any of the enumerated steps. In support of this argument, Bright Data contends that a POSA would understand both that "second device" is synonymous with the specification's discussion of "tunnel device" and that the focus of claim 108 is on the steps performed by this second/tunnel device. Bright Data contrasts this

understanding with claim 81, bearing an identical preamble, which it contends involves steps a POSA would understand to be performed by the client/first device. In addition, Bright Data points to expert testimony explaining that the enumerated steps in claim 108 *could* be performed by a second device. Cross-Appellant's Br. 48 (citing J.A. 1047–51). We are not persuaded that the specification or this expert testimony resolves the uncertainty created by the language of claim 108.

The specification does not define a tunnel device as a second device. In fact, the specification explains that "[a] device may be *both* a client device and a tunnel device, and the roles may be assumed one at a time, or may be employed in parallel using multitasking or multiprocessing." '044 patent col. 51 ll. 43–46 (emphasis added). Thus, even if we look to the specification's descriptions of a tunnel device, there is still a zone of uncertainty about the roles of a "first device" and a "second device" required to practice claim 108.

Similarly, Bright Data's expert's testimony that a second device could perform the steps does not resolve this uncertainty. If all the steps are performed by the "second device," then the role of "by a first device" in the preamble is unknown. Alternatively, if "by a first device" means that some of the steps are performed by that device (Bright Data insists this is not the case), then it is uncertain which steps those are. Thus, even if Bright Data is correct that a POSA would understand from the language of the steps alone that they *can* be performed by a second device, there is no reasonable certainty about how to harmonize an understanding of the limiting preamble with the body of the claim.

For these reasons, we affirm the district court's determination that claim 108 of the '044 patent is invalid as indefinite.

## Conclusion

We have considered the parties' remaining arguments and find them unpersuasive. We affirm the district court's final judgment.

**AFFIRMED**

## Costs

No Costs.